UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
: 05 Civ. 7583 (WHP)
IN RE SMITH BARNEY TRANSFER
AGENT LITIGATION  :  MEMORANDUM AND ORDER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

    The present application involves the appointment of lead plaintiff and lead counsel in this consolidated putative class action. Plaintiffs assert claims against Defendants Smith Barney Management Limited ("Smith Barney") and Citigroup Global Markets, Inc. ("Citigroup Global Markets") pursuant to, inter alia, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 36 of the Investment Company Act of 1940, 15 U.S.C. § 80a-35. Class members Jeffrey Weber and Operating Engineers Local 649 Annuity Trust Fund (collectively, "Local 649") move for selection as lead plaintiff and for designation of their attorneys, Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard"), as lead counsel. Class members Charles Chiumento, Maurice and Vivaine Benoudiz, Charles Walkiewicz and David F. Zagunis (collectively, the "Chiumento Group") also move for selection as lead plaintiff and for designation of their attorneys, Stull, Stull & Brody ("Stull, Stull") and Weiss & Lurie, as lead counsel. For the reasons set forth below, this Court appoints Local 649 as lead plaintiff and approves Local 649's selection of Bernstein Liebhard as lead counsel.

BACKGROUND

Smith Barney and Citigroup Global Markets are divisions of Citigroup Asset Management, an investment advisor and management services provider. (Amended Complaint in Shropshire v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 7818 (WHP), dated Oct. 10, 2005 (the "Compl.") ¶ 2.) Smith Barney is an investment advisor to the Smith Barney Family of Funds (the "Funds"), which oversees $97 billion in assets. (Compl. ¶¶ 1, 13.) Citigroup Global Markets is responsible for providing the bulk of Smith Barney's administrative services. (Compl. ¶ 14).

Transfer agents provide many of the administrative services required by Smith Barney. A transfer agent is responsible for, inter alia, processing transactions in Fund shares, processing dividend transactions and calculating daily net asset values. (Compl. ¶ 26.) From June 1, 1989 through September 30, 1999, Smith Barney's transfer agent services were outsourced to First Data Investor Services Group ("First Data"), which is not affiliated with Citigroup Asset Management. (Compl. ¶15.) The Smith Barney business was profitable for First Data because of a favorable fee schedule and the low cost of serving the Funds. (Compl. ¶ 27.)

First Data entered into a new contract as of October 1, 1999 to provide transfer agent services for the Funds. (Compl. ¶¶ 59-62, 77.) Under the new arrangement, the primary transfer agent for the Funds was the predecessor to Citicorp Trust Bank ("CTB"), an affiliate of Citigroup Asset Management. (Compl. ¶ 77.) Although responsible for providing all of Smith Barney's transfer agent services, CTB consisted merely of a small customer service call center. (Compl. ¶¶ 77-78.) CTB subcontracted the vast majority of the transfer agent work to First Data. (Compl. ¶ 77.) Pursuant to the subcontract, First Data received significantly lower fees than it

had previously charged. (Compl. ¶ 3.) Yet CTB did not pass those discounts on to the Funds. To the contrary, CTB continued to charge the Funds its higher pre-1999 transfer agent fees, thereby earning over $90 million in profits between October 1999 and September 2004. (Compl. ¶¶ 77, 80.)

Defendants are required to advise each Fund's board of directors regarding the retention of transfer agent services. (Compl. ¶ 1.) Plaintiffs contend that Defendants violated their fiduciary duty to the Funds, and misled the investing public, by concealing their scheme to withhold the fee discounts from the Funds. (Compl. ¶¶ 1, 5, 82.)

The purported class period is August 26, 2000 through August 26, 2005. (Compl. ¶ 20.) The only class complaint asserting claims pursuant to the Exchange Act was filed on October 11, 2005 under the caption Shropshire v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 7818 (WHP). The next day, notice of the complaint was published over Business Wire, a national news-wire. On December 12, 2005, both Local 649 and the Chiumento Group moved for selection as lead plaintiff. In addition to the Shropshire case, four complaints containing nearly identical factual assertions were filed in this Court. See Chilton v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 7583 (WHP), Complaint dated Aug. 26, 2005; Ratner v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 8356 (WHP), Complaint dated Sept. 28, 2005; Weber v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 8357 (WHP), Complaint dated Sept. 28, 2005; Brinn v. Smith Barney Fund Mgmt. LLC, No. 05 Civ. 8399 (WHP), Complaint dated Sept. 30, 2005. By Order dated December 28, 2005, this Court consolidated all of these cases pursuant to Fed. R. Civ. P. 42(a).

DISCUSSION

I. Lead Plaintiff

   A. Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the appointment of a lead plaintiff in actions brought pursuant to the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(B). First, the PSLRA requires the plaintiff who files the first-covered action to publish notice to the class within 20 days of filing the action, to inform class members of their right to seek designation as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). All lead plaintiff motions must be filed "not later than 60 days after the date on which the notice is published." 15 U.S.C § 78u-4(a)(3)(A)(i)(II).

Next, the PSLRA requires that the Court select as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the plaintiff who is "most adequate":

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).  The PSLRA favors the selection of institutional investors as lead plaintiff. See, e.g., In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 99 (S.D.N.Y. 2005); Dolan v. Axis Capital Holdings Ltd., No. 04 Civ. 8564 (RJH), 2005 WL 883008, at *3 (S.D.N.Y. Apr. 13, 2005).

B.  Lead Plaintiff Motions

Local 649 and the Chiumento Group each submitted a timely motion for appointment as lead plaintiff.  Class notice was published on October 11, 2005.  Both lead plaintiff motions were filed on December 12, 2005, the final day of the 60-day filing period. Fed. R. Civ. P. 6(a); 15 U.S.C § 78u-4(a)(3)(A)(i)(II).

C.  Financial Interest

Local 649's financial interest in the relief sought is significantly greater than the Chiumento Group's interest.  During the class period, Local 649 purchased over 75,000 Fund shares while the Chiumento Group purchased fewer than 13,000 shares.  The parties also calculated their respective "average dollar holdings" in the Funds, which represents the total dollar amount invested in a Fund for one day during the class period, divided by the number of days in the class period.  Local 649 and the Chimento Group had average dollar holdings of $8,395,128 and $308,619, respectively.  (Declaration of Joseph R. Seidman, Jr. dated Dec. 12, 2005 ("Seidman Decl."), Ex 1; Declaration of Jules Brody, dated Dec. 12, 2005, Ex. C.) Therefore, Local 649 is presumptively the most adequate plaintiff unless it cannot satisfy the requirements of Rule 23.

D.  Adequacy and Typicality

Rule 23(a) sets forth the following four prerequisites to class certification: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In this District, however, only the typicality and adequacy elements are relevant to the selection of a lead plaintiff.  See, e.g., Dolan, 2005 WL 883008, at *4; Shi v. Sina Corp., No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *7-8 (S.D.N.Y. July 1, 2005); In re eSpeed, 232 F.R.D. at 102; Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

Typicality is satisfied when all claims arise from the same course of events, and each class member makes similar legal arguments to prove a defendant's liability.  See, e.g., Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  "It is well established that the Lead Plaintiff's claims do not have to be identical to the other class members' claims." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 253 (S.D.N.Y. 2003); accord In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249, 257 (S.D.N.Y. 2004); In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122-23 (S.D.N.Y. 2002); In re NASDAQ Market-Makers Antitrust Litig., 172 F.R.D. 119, 127 (S.D.N.Y. 1997).  Here, the assertions of fact contained in the five complaints are nearly identical.  Like all Plaintiffs, Local 649 alleges that Defendants fraudulently concealed, and unlawfully retained, the discounts withheld by CTB.

Because Local 649's claims do not markedly differ from those of other class members, Local 649 has established typicality for the purposes of the present motion.

The Chiumento Group contends that Local 649 lacks standing to sue on behalf of many class members, and therefore lacks typicality, because Local 649 purchased shares in only two of Smith Barney's numerous Funds. The implication of the Chiumento Group's contention is that this Court must appoint a lead plaintiff to represent each Smith Barney Fund. This Court disagrees.

"[N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case." In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003); see also In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (stating that "lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit"); In re Leapfrog Enters., Inc. Sec. Litig., No. 03 Civ. 5421 (RMW), 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) ("[L]ead plaintiffs need[] only to prove that they suffered a concrete injury because of defendants' wrongdoing, not every injury alleged by the class."). "[A]ny requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." Hevesi v. Citigroup, Inc., 366 F.3d 70, 83 n.13 (2d Cir. 2004); see also Weinberg, 216 F.R.D. at 254 ("Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation and obstruct any efficient and controlled process." (internal quotations omitted)). For

these reasons, it would be premature to address the standing issue on the current motions. See Yates v. Open Joint Stock Co., No. 04 Civ. 9742 (NRB), 2005 U.S. Dist. LEXIS 7717, at *6-7 (S.D.N.Y. Apr. 29, 2005) ("Defendants' arguments [that the lead plaintiff applicant lacked standing] are properly addressed at the class certification stage, not in the context of a motion to appoint lead counsel."); Weinberg, 216 F.R.D. at 254 (same).

If, in fact, every Fund requires representation in the class leadership, the lead plaintiff may include additional named plaintiffs in this consolidated action. Hevesi, 366 F.3d at 83; In re Global Crossing, 313 F. Supp. 2d at 205; In re Portal Software, Inc. Sec. Litig., No. 03 Civ. 5138 (VRW), 2005 U.S. Dist. LEXIS 41178, at *8 (N.D. Cal. Mar. 9, 2005). To the extent "that disagreements [between groups of plaintiffs] may arise throughout this action . . . [this Court] reserves the right to modify [the] lead plaintiff structure." Barnet v. Elan Corp., No. 05 Civ. 2860 (RJH), 2005 WL 1902855, at *6, (S.D.N.Y. Aug. 8, 2005); accord Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 408 (S.D.N.Y. 2004).

Regardless, the Chiumento Group itself purchased shares in only a small percentage of the Funds, and it fails even to identify the remaining Funds so that additional lead plaintiffs could be selected to represent them. In other words, the Chiumento Group's lead plaintiff application suffers from the same purported infirmity the Chiumento attributes to Local 649's application.

Local 649 has also demonstrated that, for the purposes of the present motion, it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and

experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." Barnet, 2005 WL 1902855, at *6; see also Shi, 2005 U.S. Dist. LEXIS 13176, at *9. It is undisputed that both Local 649 and Bernstein Liebhard possess the resources and experience necessary to lead the class. The Chiumento Group contests the adequacy of Local 649 on the grounds that Local 649 owned shares in only two funds. However, there is nothing before the Court at this time to indicate that Local 649's interests conflict with those of shareholders in the other Funds. See Shi, 2005 U.S. Dist. LEXIS 13176, at *9. Absent a showing that Local 649 cannot vigorously pursue claims on behalf of those shareholders, Local 649 has satisfied the adequacy requirement.

The Chiumento Group also contends that Local 649 submitted a defective certification. The PSLRA requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class [to] provide a sworn certification . . . personally signed by such plaintiff and filed with the complaint, that . . . states that the plaintiff has reviewed the complaint and authorized its filing . . . ." 15 U.S.C. § 78u-4(a)(2)(A). According to the Chiumento Group, the signatory of Local 649's certification, Robert Markham, neglected to: (1) demonstrate his authority to act on behalf of Local 649; (2) indicate the precise date of his signature; and (3) demonstrate that he reviewed the complaint asserting Exchange Act claims, given that not all complaints in these related actions were brought pursuant to the Exchange Act.

Contrary to the Chiumento Group's assertions, the Local 649 certification complied with the PSLRA's requirements. First, Markham certified that he was "agent and attorney-in-fact with full power and authority to bring suit to recover for investment losses," and that he was "authorized to sign this Certification on behalf of Plaintiff." (Seidman Decl. Ex 1.)

Nothing more is required to establish the signer's authority. Weinberg, 216 F.R.D. at 255. Next, the certification indicates that Markham signed in December 2005. The Chiumento Group does not cite to any authority suggesting that a more precise date is needed, and this Court sees no reason to invalidate the certification on such grounds. Finally, because a certification is only required when an action is filed under Section 10(b) of the Exchange Act, it follows that the complaint referred to in the certification contains Exchange Act claims. For these reasons, Local 649's certification satisfies the requirements of the PSLRA.

Local 649 is presumptively the most adequate lead plaintiff. Because the Chiumento Group has failed to rebut this presumption, Local 649 shall serve as lead plaintiff in these consolidated actions.

II. Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The court should generally employ a deferential standard in reviewing the lead plaintiff's choices." In re Cendent Corp. Litig., 264 F.3d 201, 274 (3d Cir. 2001). Local 649's proposed lead counsel, Bernstein Liebhard, has ample experience serving as lead counsel in securities fraud actions governed by the PSLRA. (Seidman Decl. Ex 3.) Accordingly, this Court appoints Berstein Liebhard as lead counsel.

## CONCLUSION

These consolidated actions shall proceed with Local 649 as lead plaintiff and Bernstein Liebhard as lead counsel.

Dated: April 17, 2006
      New York, New York

                              SO ORDERED:

                              _____
                              WILLIAM H. PAULEY III
                              U.S.D.J.

*Counsel of Record*:

Jules Brody
Stull Stull & Brody
6 East 45th Street, 5th Floor
New York, NY 10017

Sandy A Liebhard, Esq.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, NY 10016

Joshua M. Lifshitz
Bull & Lifshitz, LLP
18 East 41st Street
New York, NY 10017
*Counsel for Plaintiffs*

Robert Bruce McCaw, Esq.
Wilmer, Cutler & Pickering (NYC)
399 Park Avenue, 30th Floor
New York, NY 10022
*Counsel for Defendants*