UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re                             :      05 CV 7583 (WHP)

                                 :      ECF case

SMITH BARNEY FUND TRANSFER AGENT    :

LITIGATION                         :

                                 :

                                 :

------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED AND AMENDED COMPLAINT BY DEFENDANTS SMITH
BARNEY FUND MANAGEMENT LLC, CITIGROUP GLOBAL MARKETS, INC.,
THOMAS JONES AND LEWIS DAIDONE**

BAKER BOTTS LLP
One Shell Plaza
910 Louisiana St.
Houston, TX 77002
(713) 229-1231

*Counsel for Defendant
Thomas W. Jones*

MAYER, BROWN, ROWE & MAW LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Counsel for Defendant
Lewis E. Daidone*

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel.: (212) 230-8800
Fax: (212) 230-8888

*Counsel for Defendants Smith Barney Fund
Management LLC and Citigroup Global
Markets, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ..................................................................................... 4

BACKGROUND ..................................................................................................... 4

ARGUMENT ........................................................................................................ 12

I.     PLAINTIFFS' DIRECT CLAIMS TO RECOVER TRANSFER AGENT
       FEES ON BEHALF OF FUND SHAREHOLDERS (WHETHER UNDER
       SECTION 10(b) OR OTHERWISE) SHOULD BE DISMISSED BECAUSE
       SUCH CLAIMS BELONG SOLELY TO THE FUNDS AND CAN ONLY
       BE PURSUED DERIVATIVELY. ................................................................. 12

II.    PLAINTIFFS' CLAIMS TO RECOVER EXCESSIVE TA FEES UNDER
       SECTION 36(b) OF THE INVESTMENT COMPANY ACT MAY NOT BE
       MAINTAINED AS A DIRECT ACTION ON BEHALF OF FUND
       SHAREHOLDERS AND ARE INSUFFICIENT AS A MATTER OF LAW. ............... 17

       A.     Plaintiffs' Section 36(b) Claims Must Be Pleaded Derivatively ........................... 17
       B.     Plaintiffs Lack Standing To Bring Derivative Claims On Behalf
              Of Funds In Which They Own No Shares And Cannot Plead A
              Section 36(b) Claim As A Class Action .............................................................. 19
       C.     Plaintiffs' 36(b) Claim Should Be Dismissed Because None Of
              The Defendants Received TA Fees. .................................................................... 22
       D.     Section 36(b) Limits Recovery To Fees Paid By The Funds In
              The 12 Months Before Suit Was Filed ................................................................ 23

III.   CTB'S DISGORGEMENT OF VIRTUALLY ALL TA PROFITS RECEIVED
       FROM ALL SMITH BARNEY FUNDS OVER A SIX-YEAR PERIOD
       PRECLUDES FURTHER RECOVERY FROM ANY DEFENDANT. ......................... 24

IV.    PLAINTIFFS' COMPLAINT DOES NOT STATE A FRAUD CLAIM UNDER
       SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10b-5. ......... 26

       A.     The Complaint Does Not Allege Any Actionable Misrepresentations Or
              Omissions. ........................................................................................................... 28
              1.     Plaintiffs' Fraud Claim Rests Entirely On Alleged Omissions
                     Concerning The Details Of The New Transfer Agent Arrangement. ....... 28
              2.     Defendants Had No Duty To Disclose The Details Of
                     The New TA Arrangement ....................................................................... 30
              3.     The Alleged Omissions Were Not Material. ............................................ 32
       B.     The Complaint Does Not Allege Loss Causation. ................................................ 33
       C.     Plaintiffs' Section 10(b) Claims Against The Individual Defendants
              Should Also Be Dismissed For Failure Adequately To Plead Scienter. ............... 38

|   |   | 1. | The Complaint Does Not Allege Facts Showing That Jones Or Daidone Had Any Motive To Engage In Wrongdoing. | 38 |

1. The Complaint Does Not Allege Facts Showing That Jones Or Daidone Had Any Motive To Engage In Wrongdoing. .......................... 38

2. The Complaint Does Not Allege Facts Demonstrating Conscious Misbehavior Or Recklessness By Jones Or Daidone. ................................ 39

V.    PLAINTIFFS' SECTION 10(b) CLAIMS AGAINST THE CORPORATE DEFENDANTS AND ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE TIME-BARRED. ............................................................ 42

    A.    The Allegations Concerning Public Disclosures Do Not Relate Back To The Original Complaints. ................................................... 43

    B.    The New Complaint Against The Individual Defendants Does Not Relate Back To The Original Complaints Against The Corporate Defendants. .............. 46

    C.    Because Plaintiffs Had Constructive Knowledge Of The Facts Underlying Their Allegations Before June 1, 2004, The Section 10(b) Claim Against The Corporate Defendants, And All Claims Against Jones And Daidone, Are Time-Barred. ................................................... 47

VI.    PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS. ............................................................ 50

    A.    Plaintiffs' Failure To State A Claim Against The Controlled Entities Precludes Recovery Against Any Controlling Persons. ........................... 50

    B.    Plaintiffs Have Inadequately Pleaded Control As To This Specific Transaction. ................................................................ 51

    C.    Plaintiffs Have Not Adequately Pleaded Jones' and Daidone's Culpable Participation. ................................................................ 52

CONCLUSION .................................................................................................... 53

# TABLE OF AUTHORITIES

## CASES

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) .................................................................................. 38, 39

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ................................................................................................ 30

*Ainbinder v. Kelleher*,
    No. 92 Civ 7315 (SS), 1997 WL 420279 (S.D.N.Y. July 25, 1997),
    *aff'd*, 152 F.3d 917 (2d Cir. 1998) .................................................................... 45, 46

*Bank Brussels Lambert v. Chase Manhattan Bank*,
    No. 93 Civ. 5298 (LMM), 1999 WL 672302 (S.D.N.Y. Aug. 27, 1999) ...................... 43, 46

*Barker v. Henderson, Franklin, Starnes & Holt*,
    797 F.2d 490 (7th Cir. 1986) ................................................................................... 52

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................ 30

*Bennett v. United States Trust Co.*,
    770 F.2d 308 (2d Cir. 1985) ................................................................................... 34

*Benzon v. Morgan Stanley Distrib. Inc.*,
    No. 03 Civ. 0159, 2004 WL 62747 (M.D. Tenn. Jan. 8, 2004),
    *aff'd,* 420 F.3d 598 (6th Cir. 2005), ........................................................... 30, 31, 32

*Benzon v. Morgan Stanley Distrib. Inc.*,
    420 F.3d 598 (6th Cir. 2005), ................................................................................ 33

*Bernstein v. Somekh*,
    452 F. Supp. 1373 (S.D.N.Y 1978) ......................................................................... 19

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ................................................................................................ 27

*Boguslavsky v. Kaplan*,
    159 F.3d 715 (2d Cir. 1998) ................................................................................... 50

*Boland v. Engle*,
    113 F.3d 706 (7th Cir. 1997) ................................................................................... 14

*Castillo v. Dean Witter Discover & Co.,*
    No. 97 Civ. 1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998) .................... 30, 35, 38

*Chill v. General Electric Co.,*
    101 F.3d 263 (2d Cir. 1993) ................................................................................ 40

*Clark v. Nevis Capital Management, LLC,*
    04 Civ. 2702 (RWS), 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ........................................ 30

*Cornwell v. Robinson,*
    23 F.3d 694 (2d Cir. 1994) ................................................................................ 46, 47

*Cromer Fin. Ltd. v. Berger,*
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .................................................................... 53

*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984) ........................................................................................ 18

*Dietrich v. Bauer,*
    76 F. Supp. 2d 312 (S.D.N.Y. 1999) .................................................................... 52

*Dodds v. Cigna Securities, Inc.,*
    12 F.3d 346 (2d Cir. 1993) ................................................................................ 47

*Dresner v. Utility.com, Inc.,*
    371 F. Supp. 2d 476 (S.D.N.Y. 2005) .................................................................. 51

*Dura Pharm. Inc. v. Broudo,*
    544 U.S. 336 (2005) .................................................................... 27, 34, 36, 37

*Enterprise Mortgage Acceptance Co., LLC, Sec. Litig. v. Enterprise Mortgage Acceptance Co.,*
    391 F.3d 401 (2d Cir. 2005) .............................................................................. 46

*Ferber v. Travelers Corp.,*
    785 F. Supp. 1101 (D. Conn. 1991) .................................................................... 51

*Forsythe v. Sun Life Fin., Inc.,*
    417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................*passim*

*Friedman v. Bache Halsey Stuart Shields, Inc.,*
    No. 80-C-1111, 1985 U.S. Dist. LEXIS 21106 (N.D. Ill. Apr. 2, 1985) .............................. 26

*Gabriel Capital, L.P. v. NatWest Fin., Inc.,*
    122 F. Supp. 2d 407 (S.D.N.Y. 2000),
    *abrogated by In re IPO Securities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003)........... 53

*Geiger v. Solomon-Page Group, Ltd.*,
    933 F. Supp. 1180 (S.D.N.Y. 1996) .................................................................... 32

*Green v. Nuveen Advisory Corp.*,
    186 F.R.D. 486 (N.D. Ill. 1999) .............................................................. 15, 24

*Herman v. Steadman*,
    50 F.R.D. 488 (S.D.N.Y. 1970) .......................................................................... 21

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
    No. 04 Civ. 4885 (SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 18, 2005) ............ 16, 19, 21, 22

*In re American Express Co. Securities Litigation*,
    02-CV-5533 (WHP), 2004 WL 632750 (S.D.N.Y. Mar. 31, 2004) ................................. 43, 46

*In re American Mutual Funds Fee Litigation*,
    No. CV 04-5593-GAFRNBX, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) ............... 20, 24

*In re Bausch & Lomb, Inc. Sec. Litigation*,
    941 F. Supp. 1352 (W.D.N.Y. 1996) ............................................................. 44, 45

*In re Blech Securities Litigation*,
    961 F. Supp. 569 (S.D.N.Y. 1997) ..................................................................... 52

*In re CINAR Corp. Securities Litigation*,
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) ............................................................. 52, 53

*In re Carter-Wallace, Inc. Securities Litigation*,
    220 F.3d 36 (2d Cir. 2000) ............................................................................. 38

*In re Dreyfus Mutual Funds Fee Litigation*,
    428 F. Supp. 2d 357 (W.D. Pa. 2006) ............................................................. 18, 21

*In re Dynex Capital, Inc. Securities Litigation*,
    No. 05 Civ. 1897 (HB), 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) ...................... 40

*In re Eaton Vance Mutual Funds Fee Litigation*,
    380 F. Supp. 2d 222 (S.D.N.Y.)
    *adhered to on reconsideration*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005) ................. 23

*In re Eaton Vance Mutual Funds Investment Litigation*,
    403 F. Supp. 2d 310 (S.D.N.Y. 2005) ........................................................... 15 19

*In re Evergreen Mutual Funds Fee Litigation*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006) ............................................................. 23

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
 308 F. Supp. 2d 249 (S.D.N.Y. 2004)................................................................51

*In re Franklin Mutual Funds Fee Litigation*
 388 F. Supp. 2d 451 (D.N.J. 2005) .................................................................18

*In re Gen. Dev. Corp. Bond Litigation (Gen. Dev. I),*
 800 F. Supp. 1128 (S.D.N.Y. 1992),
 *aff'd sub nom. Menowitz v. Brown,* 991 F.2d 36 (2d Cir. 1993) ...........................48

*In re Goldman Sachs Mutual Funds,*
 No. 04 Civ. 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ..........................15, 23

*In re Independent Energy Holdings PLC Securities Litigation,*
 154 F. Supp. 2d 741 (S.D.N.Y. 2001)................................................................53

*In re Initial Public Offering Securities Litigation,*
 399 F. Supp. 2d 261 (S.D.N.Y. 2005)................................................................36

*In re Keyspan Corp. Securities Litigation,*
 383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...............................................................41

*In re Livent, Inc. Noteholders Securities Litigation,*
 151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................38

*In re Livent, Inc. Securities. Litigation,*
 78 F. Supp. 2d 194 (S.D.N.Y. 1999)................................................................52

*In re Lord Abbett Mutual Funds Fee Litigation,*
 407 F. Supp. 2d 616 (D.N.J. 2005) .............................................................19, 21

*In re Merrill Lynch & Co.,*
 273 F. Supp. 2d 351 (S.D.N.Y. 2003),
 *aff'd,* 396 F.3d 161 (2d Cir. 2005)................................................................4

*In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation,*
 272 F. Supp. 2d 243 (S.D.N.Y. 2003)..........................................................*passim*

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,*
 289 F. Supp. 2d 416 (S.D.N.Y. 2003)...............................................................47

*In re Merrill Lynch Ltd. Partnerships ,*
 154 F.3d 56 (2d Cir. 1998)........................................................................47

*In re Morgan Stanley & Van Kampen Mutual Fund Securities Litigation,*
 No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006).........................*passim*

*In re NYSE Specialists Securities Litigation,*
405 F. Supp. 2d 281 (S.D.N.Y. 2005) ................................................................ 26

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation,*
636 F. Supp. 1138 (C.D. Cal. 1986) .................................................................. 26

*In re Salomon Analyst Metromedia Litigation,*
236 F.R.D. 208 (S.D.N.Y. 2006) ...................................................................... 30

*In re Salomon Analyst Winstar Litigation,*
No. 02 Civ. 6171 (GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ................................. 49

*In re Salomon Smith Barney Mut. Fund Fees Litigation,*
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ......................................................... *passim*

*In re Twinlab Corp. Securities Litigation,*
103 F. Supp. 2d 193 (E.D.N.Y. 2000) ............................................................... 53

*In re Worldcom Inc. Securities Litigation,*
308 F. Supp. 2d 214 (S.D.N.Y. 2003) .......................................................... 44, 50

*Int'l Fidelity Insurance Co. v. City of New York,*
263 F. Supp. 2d 619 (E.D.N.Y. 2003) ............................................................... 26

*Kahn v. Kohlberg, Kravis, Roberst & Co.,*
970 F.2d 1030 (2d Cir. 1992) ...................................................................... 47

*Kalnit v. Eichler,*
264 F.3d 131 (2d Cir. 2001) ......................................................... 38, 39, 40, 42

*Kamen v. Kemper Fin. Services, Inc.,*
500 U.S. 90 (1991) .............................................................................. 13

*Kauffman v. Dreyfus Fund Inc.,*
434 F.2d 727 (3d Cir. 1970) .................................................................. 20, 21

*Kramer v. Time Warner Inc.,*
937 F.2d 767 (2d Cir. 1991) ....................................................................... 4

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
501 U.S. 350 (1991) ............................................................................. 50

*Lapidus v. Hecht,*
232 F.3d 679 (9th Cir. 2000) ................................................................. 13, 14

*LC Capital Partners L.P. v. Frontier Insurance Group, Inc.,*
    318 F.3d 148 (2d Cir. 2003) ............................................................................... 47

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005) ................................................................... 34, 36, 37

*Lewis v. Casey,*
    518 U.S. 343 (1996) ......................................................................................... 21

*Lewis v. Chiles,*
    719 F.2d 1044 (9th Cir. 1983) .......................................................................... 19

*Lieber v. Invesco Balanced Fund/INV,*
    371 F. Supp. 2d 852 (S.D. Tex. 2005) .............................................................. 20

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,*
    734 F. Supp. 1071 (1990), *rev'd on other grounds,* 967 F.2d 742 (2d Cir. 1992) ................ 25

*Marcus v. Frome,*
    275 F. Supp. 2d 496 (S.D.N.Y. 2003) ............................................................... 50

*Mutchka v. Harris,*
    373 F. Supp. 2d 1021 (C.D. Cal. 2005) ............................................................. 19

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ......................................................................... 40, 42

*Olmsted v. Pruco Life Ins. Co.,*
    283 F.3d 429 (2d Cir. 2002) .............................................................................. 19

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ......................................................................................... 19

*Papilsky v. Berndt,*
    466 F.2d 251 (2d Cir. 1972) .............................................................................. 16

*Pfeiffer v. Bjurman, Barry & Associates,*
    No. 03 Civ 9741 (DLC), 2004 WL 1903075 (S.D.N.Y. Aug. 24, 2004) .............................. 23

*Resnik v. Swartz,*
    303 F.3d 147 (2d Cir. 2002) .............................................................................. 31

*Rohrbaugh v. Investment Co. Institute,*
    No. Civ. A. 00-1237, 2002 WL 31100821 (D.D.C. July 2, 2002) ......................................... 15

*S.E.C. v. First Jersey Securities, Inc.,*
    101 F.3d 1450 (2d Cir. 1996) ................................................................. 26, 50, 51

*S.E.C. v. Seaboard Corp.,*
    677 F.2d 1301 (9th Cir. 1982) ................................................................. 43, 44, 45

*SEC v. Texas Gulf Sulfur Co.,*
    446 F.2d 1301 (2d Cir. 1971) ................................................................. 26

*San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Co.,*
    75 F.3d 801 (2d Cir. 1996) ................................................................. 39

*Segen ex. rel. KFx Inc. v. Westcliff Capital Management,*
    299 F. Supp. 2d 262 (S.D.N.Y. 2004) ................................................................. 26

*Shah v. Meeker,*
    435 F.3d 244 (2d Cir. 2006) ................................................................. 47, 48, 49

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ................................................................. 27, 38

*Singer v. Olympia Brewing Co.,*
    878 F.2d 596 (2d Cir. 1989) ................................................................. 26

*Strigliabotti v. Franklin Resources, Inc*
    No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ......................................... 15

*Strougo v. Bassini,*
    282 F.3d 162 (2d Cir. 2002) ................................................................. 13, 14

*Suez Equity Investors L.P. v. Toronto-Dominion Bank,*
    250 F.3d 87 (S.D.N.Y. 2001) ................................................................. 34

*Trustee of the HERIU Welfare Pension Fund v. Amivest Corp.,*
    733 F. Supp. 1180 (N.D. Ill. 1990) ................................................................. 33

*Weiner v. Winters,*
    50 F.R.D. 306 (S.D.N.Y. 1970) ................................................................. 21

*Williams v. Bank One Corp.,*
    No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) ........................................... 20

*Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.,*
    371 F. Supp. 2d 845 (S.D. Tex. 2005) ................................................................. 20, 23

## STATUTES & RULES

Fed. R. Civ. P. 9(b) ............................................................................................ 27

Fed. R. Civ. P. 15(c)(2) ...................................................................................... 43

15 U.S.C. § 78bb(a) ............................................................................................ 38

15 U.S.C. § 80a-35(b) .................................................................................. 18, 25

15 U.S.C. § 80a-35(b)(3) .............................................................................. 22, 24

## OTHER AUTHORITIES

7C Charles A. Wright et. al., *Federal Practice and Procedure* § 1826 (2d. ed. 1986) ................ 19

10 Fed. Proc., L. Ed. § 25:86 (2005) ................................................................... 21

Defendants Citigroup Global Markets, Inc. ("CGMI") and Smith Barney Fund Management LLC ("SBFM") (together, the "Corporate Defendants"), as well as Thomas W. Jones and Lewis E. Daidone (together, the "Individual Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the Consolidated and Amended Complaint ("Complaint") under rule 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq.* ("PSLRA").

## PRELIMINARY STATEMENT

This case arises from an investigation by the Securities and Exchange Commission ("SEC") into the process by which the Corporate Defendants recommended to the boards of directors for the Smith Barney branded mutual funds (the "Funds") that they enter into a contract with a predecessor of Citicorp Trust Bank, fsb ("CTB") to provide transfer agent services to the Funds. On May 31, 2005, the SEC published an order ("Settlement Order") resolving the SEC's allegations against the Corporate Defendants. The SEC alleged that the Corporate Defendants misled the Funds' boards of directors in recommending that the boards approve the contract with CTB. The SEC further alleged that the approval of the contract with CTB resulted in the Funds' payment of excessive transfer agent fees to CTB. Without admitting or denying the SEC's allegations, the Corporate Defendants agreed to disgorge essentially all profits CTB earned for transfer agent services under the contract, plus interest, plus an $80 million civil penalty.

Most of the allegations in the Complaint duplicate verbatim the allegations made by the SEC in the Settlement Order. This case is pleaded as a class action on behalf of all persons who purchased, redeemed, or held shares in any of the Funds between September 11, 2000 and May 31, 2005 ("Class Period"). (Compl. at 1.) The Complaint asserts claims against the Corporate and the Individual Defendants under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Complaint also asserts a claim against the Corporate

1

Defendants pursuant to section 36(b) of the Investment Company Act of 1940, and asserts "controlling person" claims against the Individual Defendants pursuant to section 20(a) of the Exchange Act. These claims are brought on behalf of a purported class of all shareholders of the Funds, and seek to recover for those shareholders directly the same transfer agent fees to be reimbursed to the Funds under the Settlement Order.

Plaintiffs' efforts to piggyback a shareholder class action on the SEC's Settlement Order are misguided. *First*, as explained in Part I below, Plaintiffs lack standing to bring direct claims to recover the allegedly excessive transfer agent fees. The transfer agent fees were paid by the Funds, not shareholders. Because any resulting injuries – such as the alleged diminution of the value of Fund assets – were to the *Funds*, shareholders may only assert claims to redress the injuries as a derivative action on behalf of the Funds. Because the Complaint asserts claims solely on behalf of Fund shareholders (Compl. at 1), and nowhere alleges that it is bringing any claims as derivative actions on behalf of the Funds, its claims to recover the allegedly excessive transfer agent fees paid by the Funds – whether asserted as securities fraud claims under section 10(b) or as a breach of duty claim under section 36(b) of the ICA – should be dismissed for lack of standing.

*Second*, even if the Complaint had properly styled its claim to recover the excessive fees under section 36(b) of the ICA as a derivative claim, each Plaintiff only has standing to assert derivative claims on behalf of the Funds in which the named Plaintiff actually owns shares. Every case Defendants have found has dismissed section 36(b) excessive fee claims styled as class actions or brought on behalf of Funds in which the named plaintiffs held no shares.

*Third,* the Corporate Defendants' disgorgement of over $100 million in transfer agent profits and other revenues, plus interest, plus an $80 million civil penalty, leaves Plaintiffs with

2

no damages to recover.  As detailed in Part III below, under the terms of the Settlement Order, CTB will repay more than all of its profits from the TA contract.  Pursuant to a proposed Distribution Plan submitted by the Corporate Defendants and currently under consideration by the SEC, these amounts will be returned to the Funds.  As the Funds will already be made whole once the Distribution Plan is consummated, any further recovery by Plaintiffs for the same injuries alleged in the Settlement Order would constitute an impermissible double recovery. Indeed, section 36(b) of the ICA allows Plaintiffs to recover only excessive fees paid in the 12 months before the original complaint was filed, and only for funds in which the named Plaintiffs actually hold shares.

*Fourth*, as set forth in Part IV below, putting aside the derivative nature of Plaintiffs' alleged injury, the Complaint has not sufficiently pleaded other requisite elements of a fraud claim under section 10(b).  The Funds' prospectuses accurately disclosed the total fees and expenses paid by the Funds, including TA fees, and Defendants had no duty to disclose additional details concerning the TA arrangement.  Accordingly, the Complaint has not alleged an actionable misrepresentation or omission.  Further, the Complaint does not sufficiently allege a causal connection between Defendants' alleged omissions and any damages suffered by Fund shareholders because it does not allege how Defendants' alleged omissions in the prospectuses and other public disclosures affected the price of the Funds' shares.  Finally, the section 10(b) claim against the Individual Defendants is insufficient due to Plaintiffs' failure to properly plead scienter.

*Fifth*, as set forth in Part V, in addition to the deficiencies in the substance of the Plaintiffs' allegations, their fraud claim against the Corporate Defendants and all of their claims

3

against the Individual Defendants are time-barred under the limitations period established by the Sarbanes-Oxley Act.

*Sixth*, as set forth in Part VI, Plaintiffs have failed to satisfy their pleading burden with respect to all three required elements of their section 20(a) claim.

For the foregoing reasons, the Plaintiffs have failed to state a claim, and the Complaint should be dismissed in its entirety against all Defendants.

## STANDARD OF REVIEW

The Court must accept the allegations in the Complaint as true for the purposes of this motion to dismiss.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  In addition to the Complaint's well-pleaded factual allegations, the Court may also consider documents cited by or otherwise integral to the Complaint, as well as public disclosure documents that are required to be, and have actually been, filed with the Securities and Exchange Commission.  *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (citing cases), *aff'd*, 396 F.3d 161 (2d Cir. 2005).

## BACKGROUND

**Parties and Other Relevant Entities**

The Complaint is brought on behalf of shareholders of the approximately 105 SEC-registered mutual funds for which CTB and its predecessors served as TA at some point during the Class Period.  The Funds are open-end investment companies and business trusts incorporated in Maryland and Massachusetts with more than $97 billion in assets.  (Compl. ¶ 23.)

The three named plaintiffs are Operating Local 649 Annuity Trust ("Local 649"), Jeanne Chilton, and Jeffrey Weber (collectively, "Plaintiffs").  Local 649 allegedly purchased shares in the Smith Barney Capital Preservation Fund during the Class Period, Ms. Chilton purchased

4

shares in the Citistreet Large Company Stock Fund during the Class Period, and Mr. Weber held shares in the Smith Barney Large Cap Growth and Value Fund during the Class Period. (Compl. ¶¶ 14-16.) The Complaint does not allege whether Plaintiffs sold their shares or when they were sold, or whether their shares increased or decreased in value before, during, or after the Class Period. The fund in which named plaintiff Jeanne Chilton allegedly purchased shares, the Citistreet Large Company Stock Fund, never used CTB for transfer agent services before, during or after the Class Period. In fact, the June 2002 proxy statement cited in the Complaint (*Id.* ¶ 122) states that CitiStreet Funds Management LLC (the "Manager"), not CTB, served as transfer agent for the CitiStreet Large Company Stock Fund. (Rothermich Decl., Ex. A, at A-1–A-2.)

Defendant SBFM, a Delaware limited liability company, was the registered investment adviser for the Funds during the Class Period. SBFM managed and advised the Funds pursuant to contracts with the Funds. SBFM was an affiliate of defendant CGMI, a New York corporation, and was part of Citigroup Asset Management ("CAM"), the asset management business unit of Citigroup, Inc. On December 1, 2005, Citigroup, Inc. sold substantially all of its worldwide asset management business – including its mutual fund business – to Legg Mason, Inc. ("Legg Mason"). As part of this transaction, SBFM became a wholly owned subsidiary to Legg Mason.

CTB is a chartered federal savings bank and an affiliate of the Corporate Defendants. During the Class Period, CTB and its predecessors acted as the primary transfer agent for the Funds and are hereinafter collectively referred to as "CTB."

Defendant Lewis Daidone was a senior vice president of SBFM and a managing director of CGMI.  (Compl. ¶ 7.)  The Complaint alleges that Defendant Thomas Jones "was the Chief Executive Officer of CAM during the class period."  (*Id.* ¶ 8.)

**TA Selection Process**

From 1989 through 1999, First Data Investor Services Group ("First Data") provided TA services for the Funds pursuant to a contract with SBFM's predecessor.  (*Id.* ¶ 25.)  As TA, First Data provided all ordinary TA services for the Funds, including processing buy, sell and dividend transactions in the Fund shares, calculating sales charges and commissions, operating a customer call center, distributing proxy and other materials, and performing a variety of additional accounting functions.  (*Id.* ¶ 36.)

In mid-1997, SBFM began a project to consider alternatives to the TA relationship with First Data.  (*Id.* ¶ 38.)  Ultimately, SBFM recommended that the Funds enter into a contract with CTB under which it would serve as the primary TA for the Funds and contract with First Data to act as a sub-TA.  (*Id.* ¶¶ 62-71.)  The decision to recommend First Data as sub-TA was based on a number of factors, including substantial TA fee discounts offered by First Data, elimination of conversion risk involved in switching to another TA software platform, and First Data's agreement to provide a specified amount in annual asset management and investment banking business to Citigroup affiliates over the five-year life of the sub-TA agreement ("Revenue Guarantee").  (*Id.* ¶¶ 62-66.)  In December 1999, First Data's parent, First Data Corporation, sold First Data's TA business to PFPC, Inc. ("PFPC").  For the sake of convenience, First Data and PFPC are hereinafter referred to collectively as "First Data."

**Fee Caps and TA Fee Reductions**

As part of the new TA arrangement, SBFM agreed to implement a TA fee reduction for the Funds in the form of a per-account annual fee cap of $13 to $14.50 per account, depending

6

on share class. (*Id.* ¶ 67.) The fee caps lowered the total TA fees paid by the Funds by 23% for the period from June 1999, when the fee caps were implemented, through September 2004. (*Id.* ¶ 91, n.6.)

**Disclosures to the Fund Boards**

In March 1999, some employees of the Corporate Defendants, including Individual Defendant Daidone, submitted to the Funds' boards of directors a memorandum describing the TA selection project ("Board Memo"). At Fund board meetings in the first half of 1999, they presented a Power Point presentation ("Presentation") to the Funds' boards concerning the proposed TA arrangement. (*Id.* ¶¶ 76, 95.)

According to the Complaint, the Board Memo and Presentation were materially misleading. (*Id.* ¶¶ 77-90.) In particular, the Board Memo and Presentation allegedly failed to emphasize that generating revenue was a primary goal of the TA selection process, and failed to disclose the Revenue Guarantee. (*Id.* ¶¶ 78-84.) The Board Memo and Presentation also allegedly failed fully and accurately to describe how TA functions would be divided between CTB and First Data, and allegedly suggested that CTB would be a much more substantial operation than it actually was. And, while the Board Memo disclosed that CTB would earn a 33% profit margin, the Complaint alleges that the Memo should have disclosed that the profit margin would be calculated as 70% if the payments to First Data were subtracted from revenue rather than treated as expenses of CTB. (*Id.* ¶¶ 86-88.) Finally, the Board Memo allegedly did not disclose that First Data had offered to perform all TA services for reduced fees that, according to the Complaint, would have provided greater savings to the Funds than the proposal recommended by Defendants. (*Id.* ¶ 78.)

**CTB's Services, Fees, and Revenue**

The Funds' boards approved the recommendation, and, on October 1, 1999, CTB became

the TA for the Funds, and First Data became a sub-TA.  According to the Settlement Order, from

October 1, 1999 through September 30, 2004, CTB earned net pre-tax profits (TA fee revenues

less sub-TA payments and actual operating expenses) of approximately $92.5 million

(Rothermich Decl., Ex. B, at 15, ¶ 67).  (The Complaint alleges that CTB's pre-tax profit for the

Class Period, September 11, 2000 through May 31, 2005, was approximately $89.5 million.

(Compl. ¶ 94.))  During the Class period, SBFM and its affiliates also received approximately

$17 million in gross revenues under the Revenue Guarantee.  (*Id.*)

**Fee Disclosures In Fund Prospectuses**

Before, during and after the Class Period, all aggregate fees paid by the Funds were

disclosed in the Funds' prospectuses and annual reports to shareholders.  As required by SEC

regulations, every Fund prospectus included a "fee table" listing administrative, advisory and

sales fees.  (*See*, Rothermich Decl., ¶ 4 & Ex. C.)  TA fees paid by the funds were included in the

"other expenses" line of the fee tables, which stated miscellaneous operating expenses paid by

the Funds as a percentage of each Fund's total assets.  The prospectuses clearly categorized the

"other expenses" as expenses paid directly by the Funds (as opposed to sales and redemption

fees charged directly to shareholders).  (*Id.*)  The amount of TA fees paid by each Fund, separate

and apart from other operating expenses included in the "other expenses" line in the prospectus

fee tables, were disclosed annually in the detailed financial statements included in each Fund's

annual report to shareholders.  (*See, e.g.*, Rothermich Decl., ¶ 5 & Ex. D, at 9, 12.)

In addition to disclosing the total fees paid by each Fund, the Funds' prospectuses also

disclosed that CTB served as the Funds' TA and that First Data served as sub-TA.  (Compl. ¶¶

114, 117.)  The prospectuses provided a general description of CTB's and First Data's

responsibilities, and stated that CTB and First Data received monthly fees based on the number of shareholder accounts maintained. (*Id.*)

## SEC Investigation And Settlement Order

In late 2003, the SEC commenced an inquiry into the process by which CTB became TA for the Funds. (Compl. ¶ 125.) The Corporate Defendants disclosed this development in supplements to Fund Prospectuses filed between November 28 and December 2, 2003. The supplements disclosed that SBFM was providing information regarding the TA arrangement to the SEC, the New York State Attorney General, and the United States Attorney. The supplements also discussed the Revenue Guarantee, noting that it had not been disclosed to the Funds' boards of directors, and that SBFM had agreed to pay to the Funds the monies it received from the Revenue Guarantee. The supplements further disclosed that SBFM was undertaking an independent review to verify that transfer agent fees paid by the Funds were fairly priced. (*Id.* ¶ 125.) The Corporate Defendants made additional disclosures concerning the government investigations regarding the TA matter in subsequent Fund prospectuses, including prospectuses dated March 1, 2004 (*Id.* ¶ 127), August 28, 2004 (*Id.* ¶ 129), January 31, 2005 (*Id.* ¶ 131), and February 25, 2005 (*Id.* ¶ 133).

On May 31, 2005, the SEC issued an Order Instituting Administrative Cease and Desist Proceedings against SBFM and CGMI ("Settlement Order"), which resolved the SEC's allegations against the Corporate Defendants concerning the alleged misrepresentation to the Funds' boards and the allegedly excessive fees earned by CTB. (Rothermich Decl., Ex. B, at 1, ¶¶ I.-II.) (The Individual Defendants were not parties to the Settlement Order, and the SEC has filed a separate civil action against the Individual Defendants.) The Settlement Order also memorialized the Corporate Defendants' agreement to disgorge $109,004,551.00 (the total pre-tax profit CTB earned as TA to the Funds from October 1, 1999 through September 30, 2004

plus the approximately $17 million SBFM and its affiliates received under the Revenue Guarantee with First Data),[1] and to pay prejudgment interest of $19,055,630 and a civil penalty of $80 million.  (*Id.* at 19, IV.E-F; Compl. ¶ 10.)  Finally, the Settlement Order mandated that CTB's pre-tax profits from December 1, 2004 through January 1, 2006, when the Funds entered a new TA contract, be held in escrow and that CTB pay to the Funds the difference between the TA fees the Funds paid during this time period and the amount of TA fees the Funds would have paid had the new TA contract been in effect during this period.  This amount totaled approximately $9.4 million.  (Rothermich Decl., Ex. B, at 18, ¶ 72; Ex. E.)

Pursuant to the Settlement Order, CTB and the Corporate Defendants have already paid to the Funds:  (1) the $17 million received under the Revenue Guarantee, plus approximately $7 million in interest (Rothermich Decl., Ex. B, at 19, ¶ IV.E); and (2) the escrowed $9.4 million in profits for the period December 1, 2004 through January 1, 2006, which was paid to the Funds in April 2006.  (Rothermich Decl., Ex. E).  The remaining sum to be distributed pursuant to the Settlement Order – over $183 million – was paid to the U.S. Treasury Department on June 8, 2005 and, if the Distribution Plan is approved, will be paid to the Funds.  (Rothermich Decl., Ex. B, at 19-20, ¶¶ IV.E-H.)  Taking these amounts together, once the proposed Distribution Plan is consummated, CTB and the Corporate Defendants will have paid to the Funds over $210 million in disgorgement, interest and penalties.

---

[1]    Since the Class Period begins approximately one year after the period for which disgorgement was calculated by the Settlement Order, the approximate operating expenses alleged in the Complaint for the Class Period, $10.5 million (Compl. ¶ 104), differ from the approximate $11.5 million in operating expenses as stated in the Settlement Order.

**Allegations Against The Individual Defendants**

The Complaint contains little in the way of specific allegations about the Individual Defendants.  The Complaint alleges generally that they each "had the ability to prevent" allegedly misleading statements made by the Corporate Defendants, (Compl. ¶ 149), and that they had "supervisory involvement in the day-to-day operations of" CAM and CGMI (*Id.* ¶ 150).  The Complaint does not allege that either Individual Defendant expected concrete personal benefits from the matters in suit.

As for Jones, the Complaint does not allege that he personally supervised the TA review or handled negotiations with First Data.  Instead, the Complaint alleges that those tasks were handled by another CAM employee, Michael Yellin, and that Yellin reported to Jones.  (*Id.* ¶ 2.)  The Complaint alleges generally that Jones "was an integral participant in the scheme" (*Id.* ¶ 139); that he "made the decision to recommend the affiliated TA proposal to the Funds' boards" (*Id.* ¶ 3); that he expected the proposal to result in CAM's making "much of the profit" that the previous TA, First Data, had otherwise been making (*id.*); and that he "took no meaningful steps to ensure that the Funds' boards were informed of the material terms of the TA proposal (*Id.* ¶ 3).

Apart from these generalities, the Complaint alleges that Jones received a memorandum recommending that the Funds switch from First Data to another TA, DST (*Id.* ¶ 51); and that Jones (at the request of Travelers' CEO) instructed Yellin and Daidone to continue negotiating with First Data to see if they would match DST's offer (*Id.* ¶ 53).  Those negotiations led to Yellin's recommendation that Jones approve a sub-TA agreement with First Data.  The Complaint does not allege that Jones took any role with respect to overseeing disclosures to the Fund Boards or to shareholders.  The Complaint alleges that Jones failed to inform certain Fund Boards of certain material facts during an August 6, 2001 meeting (*Id.* ¶ 99), but does not allege

that Jones was even *at* the meeting, or had any role with respect to disclosures therein. The same holds true for additional meetings during 2002. (*Id.* ¶¶ 100-02.)

Daidone, like Jones, is alleged to have had "an instrumental role in the scheme." (Compl. ¶ 7.) Beyond that, details are scarce. Daidone is alleged to have recommended at one point a vendor other than First Data (*Id.* ¶ 51), and then to have negotiated the contracts with First Data (*Id.* ¶ 7). He is alleged to be identified in some prospectuses and to have signed others. (*E.g.*, *Id.* ¶ 116.) The Complaint alleges that Daidone gave the boards misleading information in 1999 (*Id.* ¶ 77, 91, 95), but it is not explained how he can be responsible for securities filings made after he left CAM. The Complaint omits to mention that Daidone left his CAM job in 2003.

## ARGUMENT

**I.    PLAINTIFFS' DIRECT CLAIMS TO RECOVER TRANSFER AGENT FEES ON BEHALF OF FUND SHAREHOLDERS (WHETHER UNDER SECTION 10(b) OR OTHERWISE) SHOULD BE DISMISSED BECAUSE SUCH CLAIMS BELONG SOLELY TO THE FUNDS AND CAN ONLY BE PURSUED DERIVATIVELY.**

The core allegations in the Complaint are copied nearly verbatim from the Settlement Order and from the SEC's amended complaint in its civil action against the Individual Defendants. Like the SEC, Plaintiffs allege that the Funds were injured through payment of excessive TA fees to CTB. (Compl. ¶ 13.) Unlike the SEC, however, Plaintiffs – in a strained effort to frame their excessive fee claims as a class action – do not seek to make the *Funds* whole, but instead seek to recover the same damages directly for Fund *shareholders*. (*Id.* at 1 & 50-51, ¶¶ 140-47.) To do so, Plaintiffs allege that Defendants violated section 10(b) of the Securities Exchange Act and Rule 10b-5 by misleading shareholders – not the Fund boards – in prospectuses and other public disclosures concerning the TA arrangement.

Plaintiffs' direct claims on behalf of shareholders are unsustainable, however, because the only *injuries* alleged in the Complaint – the same allegedly excessive TA fees addressed by

the SEC's allegations – were suffered by the Funds, not by shareholders. To the extent Defendants' alleged misrepresentations caused any injury to shareholders, their injury is purely derivative – resulting from the proportionate diminution in the value of their shares caused by the alleged injury to the Funds. Accordingly, claims to recover the allegedly excessive TA fees paid by the Funds – whether asserted as a section 10(b) securities fraud claim, under section 36(b) of the ICA, or under other provisions of the ICA or Investment Advisers Act – may only be brought as a derivative claim on behalf of the Funds. Consistent with cases in this and other Circuits that have considered similar claims, Plaintiffs' direct section 10(b) claim in Count I of the Complaint should be dismissed.

The question of whether a claim against an investment adviser for damages to a mutual fund may be brought as a direct action on behalf of shareholders or as a derivative claim on behalf of the fund is controlled by the law of the state where the mutual fund is incorporated. *Strougo v. Bassini*, 282 F.3d 162, 168-69 (2d Cir. 2002); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 259 (S.D.N.Y. 2003) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). Here, the Funds are either business trusts organized under the laws of Massachusetts or investment companies incorporated in Maryland.

To determine whether a claim is derivative, Massachusetts and Maryland both apply the same bedrock principle of corporate law: "an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself . . . and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock." *In re Merrill Lynch.*, 272 F. Supp. 2d at 259 (Maryland law); *see Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (Massachusetts law). Accordingly, in order to bring a direct action, a shareholder must allege that she has "sustained an injury distinct from that allegedly

inflicted upon an investment company." *In re Merrill Lynch*, 272 F. Supp. 2d at 260; *see Lapidus*, 232 F.3d at 683.

Applying these black letter standing requirements, it is clear that the Complaint alleges a paradigm example of a derivative claim. *Strougo*, 282 F.3d at 174 (". . . [A]dvisory fees[] and other transaction costs incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed . . . only through a suit on behalf of the corporation."). The Complaint is clear that the TA fees received by CTB were paid directly *by the Funds*, not by individual shareholders: "From the inception of the CTB TA contract in October 1999, CTB billed the Funds and received TA fee payments on a monthly basis." (Compl. ¶ 105.) Indeed, the fee tables in the Fund prospectuses expressly note that the "other fees" – including TA fees and advisory fees – are operating expenses paid by the Funds, rather than sales charges and other fees charged directly to individual shareholders. (Rothermich Decl., ¶ 4 & Ex. C; ¶ 5 & Ex. D, at 12.)

It follows that the only injury Fund *shareholders* could have suffered from Defendants' alleged misconduct was the diminution in the value of their shares resulting from the Funds' payment of the allegedly excessive fees: "As a result of the scheme, . . . . members of the Class suffered harm. . . . Defendants' actions drained money out of the *Funds* throughout the Class Period, increased the *Funds'* expenses, and distorted the net asset value ("NAV") of the *Funds*." (Compl. ¶ 13 (emphasis added).) Plaintiffs have not alleged – and cannot allege – that the selection of CTB as TA caused them any direct injury. Because Plaintiffs have suffered no injury distinct from the injury suffered by the Funds themselves, they lack standing to bring the direct claims asserted by the Complaint. *See Lapidus*, 232 F.3d at 683 (dismissing direct claim under section 18(f) of the ICA); *Boland v. Engle*, 113 F.3d 706, 715-16 (7th Cir. 1997) (ICA

14

claims that assert rights of investment companies should normally be pleaded derivatively); *In re Merrill Lynch,* 272 F. Supp. 2d at 259-61 (dismissing direct claims brought under section 34 of the ICA as the injuries alleged were to the funds); *Rohrbaugh v. Inv. Co. Inst.*, No. Civ. A. 00-1237, 2002 WL 31100821, at *6-*7 (D.D.C. July 2, 2002) (finding under Massachusetts and Maryland law that ICA claim was derivative in nature where plaintiffs failed to allege independent injury); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 490 (N.D. Ill. 1999) (concluding under Massachusetts law that "[d]iminution in value of the common stock due to advisory fees paid by the Funds is an injury to the Funds, and any harm to the plaintiffs as common shareholders is derivative in nature").

Defendants have found only one case holding that mutual fund shareholders' claims against an investment adviser to recover excessive advisory fees are not derivative and may proceed as a direct action. *See Strigliabotti v. Franklin Res., Inc.,* No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) (finding shareholders could bring state law breach of fiduciary duty claims for excessive fees directly). The court reasoned that because the value of each fund investor's share was reduced pro rata for the excessive fees charged to the funds, that shareholders suffered a direct injury. *Id.*, 2005 WL 645529 at *8. This conclusion is contrary to the overwhelming weight of case law, and has been expressly criticized by several subsequent decisions. *See, e.g., In re Goldman Sachs Mut. Funds,* No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *6 (S.D.N.Y. Jan. 17, 2006) (disagreeing with *Strigliabotti* and holding that "a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation."); *In re Eaton Vance Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 310, 316 (S.D.N.Y. 2005) (finding *Strigliabotti* "at odds with the overwhelming majority of cases to have addressed the issue" and "inconsistent with . . .

15

Massachusetts law") (internal citations omitted); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (same).

Indeed, directly analogous cases in this District have dismissed similar breach of duty claims brought by mutual fund shareholders against the funds' investment adviser for failure to plead them as derivative claims. *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *3-*4 (S.D.N.Y. Oct. 18, 2005); *In re Merrill Lynch*, 272 F. Supp. 2d at 260. The *AllianceBernstein* court, applying Massachusetts and Maryland law, concluded that the only injury suffered by shareholders due to allegedly improper marketing fees paid by the funds (and misused by the investment adviser) was indirect, through the diminution of the funds' assets. The court thus dismissed the shareholders' direct claims against the funds' investment adviser for beach of fiduciary duty. 2005 WL 2677753, at *4. Similarly, in *Merrill Lynch & Co., Inc. Research Reports,* the class plaintiffs sought damages against the investment adviser for the diminution in value of their mutual fund shares caused by purchasing certain securities for the fund at inflated prices and for excessive advisory fees paid to the adviser as a result of the wrongful purchases. *See* 272 F. Supp. 2d at 260. The court dismissed the shareholders' direct claims, holding that "plaintiff's supposed injuries, and those of the purported class, are not distinct from those of the Fund; rather, they are alleged to arise because the Fund's net asset value declined." *Id.* at 261; *see also Papilsky v. Berndt*, 466 F.2d 251, 253, 255 (2d Cir. 1972) (stating that an action by mutual fund shareholder under section 36(b) of the ICA and section 10(b) of the Exchange Act against fund's investment adviser to recover excessive fees is derivative and belongs solely to the fund).

Here, just as in *Alliance Bernstein*, *Merrill Lynch*, and the other cases cited above, Plaintiffs' alleged damages resulted solely from the diminution in value of their Fund shares

stemming from the *Funds'* alleged payment of excessive TA fees.  These allegations present a

derivative claim, and Plaintiffs' direct claim to recover for such damages under section 10(b)

should be dismissed.


II.     **PLAINTIFFS' CLAIMS TO RECOVER EXCESSIVE TA FEES UNDER SECTION 36(B) OF THE INVESTMENT COMPANY ACT MAY NOT BE MAINTAINED AS A DIRECT ACTION ON BEHALF OF FUND SHAREHOLDERS AND ARE INSUFFICIENT AS A MATTER OF LAW.**

Plaintiffs' claim against defendant SBFM in Count III of the Complaint to recover the

allegedly excessive TA fees under section 36(b) of the Investment Company Act is similarly

flawed.  First, the Plaintiffs have improperly pleaded their section 36(b) claim as a direct claim

on behalf of shareholders instead of a derivative claim on behalf of the Funds.  Second, even if

their claim was properly pleaded as derivative, Plaintiffs can only sue on behalf of the two funds

in which they allegedly owned shares.  Third, the language of 36(b) expressly limits proper

defendants to the actual recipient of the improper fees, but here, none of the named Defendants

received the allegedly excessive TA fees.  Fourth and finally, because section 36(b)(3) explicitly

limits recovery of excessive fees to the twelve months before the complaint is filed, Plaintiffs

cannot assert any claim under section 36(b) to recover excessive TA fees paid by the Funds prior

to August 26, 2004, one year before the first complaint was filed in these consolidated actions.

For all of these reasons, discussed in greater detail below, Plaintiffs' section 36(b) claim

to recover excessive fees in Count III of the Complaint should be dismissed.

A.     **Plaintiffs' Section 36(b) Claims Must Be Pleaded Derivatively.**

Like their securities fraud claim under Section 10(b), the Plaintiffs' breach of fiduciary

duty claim under section 36(b) of the ICA is improperly pleaded as a direct, not derivative,

claim.  The Complaint expressly states that all of Plaintiffs' claims are asserted solely on behalf

of shareholders in the funds.  (Compl. at 1 ("Lead Plaintiff . . . brings this action . . . on behalf of

all persons and entities who purchased, redeemed or held shares in the Smith Barney Funds."))

Nowhere does the Complaint state that it is brought on behalf of the Funds themselves.  Indeed,

although the *ad damnum* clauses of the Complaint ask the Court to order disgorgement of the TA

fees, rescission of the TA contract, and removal of SBFM as the Funds' adviser (Compl. at 55),

the Complaint nowhere indicates how Plaintiffs, as shareholders of two Funds, have standing to

demand such remedies – remedies that could only be sought by the Funds themselves.  Because

the claim authorized by section 36(b) may only be asserted derivatively on behalf of the mutual

funds that paid excessive fees, Plaintiffs' direct claim under the statute should be dismissed.

      The plain language of section 36(b) authorizes suits by mutual fund shareholders to

recover excessive advisory fees "on behalf of the fund."  15 U.S.C. § 80a-35(b).  Any recovery

obtained by a shareholder under section 36(b) goes to the injured fund that paid the excessive

advisory fees, not to the plaintiff shareholder.  *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523,

535 n.11 (1984).  (Although the Court in *Daily Income Fund* referred to 36(b) claims as "direct,"

it did so solely to convey its holding that 36(b) claims are not subject to the pre-suit demand

requirement in Rule 23.1 of the Federal Rules of Civil Procedure.  464 U.S. at 535 n.11.)

Because an action under section 36(b) thus presents a textbook example of a derivative claim – a

claim by a shareholder to recover for injuries suffered by the fund where all recovery goes to the

fund – it must be expressly pleaded as a derivative claim.  *In re Salomon Smith Barney Mut.*

*Fund Fees Litig.*, 441 F. Supp. 2d 579, 597 (S.D.N.Y. 2006) (internal citation omitted).  Indeed,

courts have routinely dismissed section 36(b) claims improperly pleaded as direct actions on

behalf of shareholders.  *See, e.g.*, *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 357, 359

(W.D. Pa. 2006); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 467-68 & n.12

18

(D.N.J. 2005); *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 320 (S.D.N.Y. 2005); *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 632-33 (D.N.J. 2005); *Mutchka v. Harris,* 373 F. Supp. 2d 1021, 1025 (C.D. Cal. 2005); *see also Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002) ("Congress explicitly provided in § 36(b) of the ICA for a private right of derivative action for investors in regulated investment companies alleging that investment advisors breached certain fiduciary duties."). Plaintiffs' section 36(b) claim in Count III should likewise be dismissed for failure to plead it as a derivative claim.

> **B.    Plaintiffs Lack Standing To Bring Derivative Claims On Behalf Of Funds In Which They Own No Shares And Cannot Plead A Section 36(b) Claim As A Class Action.**

Even if the Plaintiffs had properly pleaded their 36(b) claim as a derivative action, they still would only have standing to assert the claim on behalf of the two Smith Barney Funds in which they actually hold shares. *See In re AllianceBernstein*, 2005 WL 2677753, at *3-*4, *9- *10; *Forsythe*, 417 F. Supp. 2d at 119. Because injury is a threshold prerequisite to standing, a mutual fund shareholder's standing to assert a derivative claim is contingent on his or her ownership in the injured fund. *In re AllianceBernstein*, 2005 WL 2677753, at *10 ("Without the requisite demonstration of an injury, 'none [of the named Plaintiffs] may seek relief on behalf of himself or any other member of the class.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974))). Without such ownership interest, the shareholder suffers no indirect damage through the alleged harm to the corporation, and has no standing to sue. *In re AllianceBernstein*, 2005 WL 2677753, at *10; *Forsythe*, 417 F. Supp. 2d at 117-19.[2] Every case that Defendants have

---

[2]      It is a well-established rule that shareholders lack standing to bring derivative claims unless they owned a stake in the injured corporation at the time of the alleged injury and continuously through the filing of a complaint and the ensuing litigation. *See Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983); *Bernstein v. Somekh*, 452 F. Supp. 1373, 1374 (S.D.N.Y 1978); *see generally* 7C Charles A. Wright et. al., *Federal Practice and Procedure* § 1826 (2d.

been able to find has thus concluded that mutual fund shareholders lack standing to bring

derivative claims against an investment adviser – whether to recover excessive fees under

section 36(b) or under other sections of the ICA or Investment Advisers Act – on behalf of funds

in which the named plaintiffs own no shares. *See, e.g., Kauffman v. Dreyfus Fund Inc.*, 434 F.2d

727 (3d Cir. 1970) (dismissing mutual fund fee claims brought on behalf of funds named

plaintiffs did not own); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d at

607 (holding that plaintiffs lacked standing to assert 36(b) claim on behalf of 68 mutual funds in

which they held no shares); *Lieber v. Invesco Balanced Fund/INV*, 371 F. Supp. 2d 852, 858

(S.D. Tex. 2005) (dismissing excessive fee class action derivative claim on behalf of funds in

which plaintiff held no shares); *Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors,

Inc.*, 371 F. Supp. 2d 845, 850-51 (S.D. Tex. 2005) (dismissing state law breach of fiduciary duty

claim against investment adviser on behalf of fund in which plaintiff held no shares); *In re Am.

Mut. Funds Fee Litig.*, No. CV 04-5593-GAFRNBX, 2005 WL 3989803, at *1 (C.D. Cal. Dec.

16, 2005) ("Plaintiffs lack standing to bring their Section 36(b) claim on behalf of the funds in

which they do not own shares."); *Forsythe*, 417 F. Supp. 2d at 119 (same); *Williams v. Bank One

Corp.*, No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003) (rejecting plaintiff's

derivative suit on behalf of all mutual funds within a particular family by virtue of his investment

in two of the funds); *Weiner v. Winters*, 50 F.R.D. 306, 310-11 (S.D.N.Y. 1970) ("There is

---

ed. 1986) (citing cases and discussing "continuous ownership" standing requirement).  At least
one court has concluded that this general derivative standing requirement, in addition to the plain
language of section 36(b) of the ICA (authorizing excessive fee claims by "a security *holder*" of
the injured fund), requires that a mutual fund shareholder bringing a 36(b) claim must own
shares of the injured fund at the time the action was initiated.  *See Forsythe v. Sun Fin., Inc.*, 417
F. Supp. 2d at 117-18.  Because the Complaint does not allege that any of the named plaintiffs
currently own Fund shares, it fails to satisfy this basic standing requirement.