UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re                                                    :     05 CV 7583 (WHP)
                                                         :     ECF case
SMITH BARNEY FUND TRANSFER AGENT                         :
LITIGATION                                               :
                                                         :
                                                         :
-------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS THE CONSOLIDATED AND AMENDED COMPLAINT BY DEFENDANTS
SMITH BARNEY FUND MANAGEMENT LLC, CITIGROUP GLOBAL
<u>MARKETS, INC., THOMAS JONES AND LEWIS DAIDONE</u>**

BAKER BOTTS LLP
One Shell Plaza
910 Louisiana St.
Houston, TX 77002
(713) 229-1231

*Counsel for Defendant*
*Thomas W. Jones*


MAYER, BROWN, ROWE & MAW LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Counsel for Defendant*
*Lewis E. Daidone*

WILMER CUTLER PICKERING
 HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel.: (212) 230-8800
Fax: (212) 230-8888

*Counsel for Defendants Smith Barney Fund*
*Management LLC and Citigroup Global*
*Markets, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

SUMMARY OF REPLY ARGUMENT ....................................................................1

ARGUMENT ...........................................................................................................3

I.     PLAINTIFFS' EXCESSIVE FEE CLAIMS MAY ONLY BE
ASSERTED AS A DERIVATIVE ACTION, NOT AS A CLASS
ACTION, AND MAY NOT BE ASSERTED ON BEHALF OF FUNDS
IN WHICH THE NAMED PLAINTIFFS HOLD NO SHARES. ......................3

      A.     Plaintiffs' Claims To Recover TA Fees Paid By The Funds
(Whether Under Section 36(b) Of The ICA Or Section 10(b) Of
The Exchange Act) May Only Be Brought As Derivative Claims. ...........3

      B.     Plaintiffs Do Not Have Standing To Bring Derivative Claims On
Behalf Of Funds In Which The Named Plaintiffs Do Not Own
Shares, And Plaintiffs May Not Style Such Claims As A Class
Action. ........................................................................................................6

II.     THE FUNDS WILL ALREADY RECOVER FAR MORE THAN THE
VERY LIMITED DAMAGES THAT PLAINTIFFS HAVE STANDING
TO PURSUE. ...................................................................................................8

III.     BECAUSE TOTAL TA FEES WERE DISCLOSED IN FUND
PROSPECTUSES, PLAINTIFFS HAVE NOT STATED A FRAUD
CLAIM UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE
ACT. ..............................................................................................................11

      A.     The Complaint Does Not Allege A Material Misrepresentation
Where Total TA Fees Were Disclosed To Shareholders. ......................12

           1.     Plaintiffs Have Not Alleged A Misrepresentation Or
Omission Actionable Under Section 10(b) Of The
Exchange Act. ............................................................................12

           2.     The Alleged Omissions Are Not Material As A Matter Of
Law. ...........................................................................................14

      B.     The Complaint Does Not Sufficiently Allege Loss Causation. ..............15

      C.     Plaintiffs Have Not Alleged Scienter As To The Individual
Defendants. ............................................................................................19

i

IV.    PLAINTIFFS' SECTION 10(b) CLAIMS ARE BARRED BY THE
       STATUTE OF LIMITATIONS. ....................................................................21

       A.    Plaintiffs' Allegations Do Not "Relate Back" To The Original
             Complaints. ..............................................................................................21

       B.    The Fund Prospectuses And News Articles Put Plaintiffs On
             Inquiry Notice. ..........................................................................................23

             1.    Resolution Of The Inquiry Notice Issue In Defendants'
                   Favor At The Motion To Dismiss Stage Is Appropriate. ..........................23

             2.    The Prospectus Supplements Contained Sufficient Storm
                   Warnings. ....................................................................................................24

             3.    The Court Should Consider The Existence Of The 43
                   Media Articles In Its Inquiry Notice Analysis. ...........................................25

             4.    Because Plaintiffs Fail To Allege That They Took Any
                   Action To Investigate After The Prospectus Supplements,
                   They Are Charged With Inquiry Notice Over Two Years
                   Before The Complaint Was Filed. .............................................................26

V.     PLAINTIFFS' CONTROL PERSON ARGUMENTS ARE WRONG. ...........................27

CONCLUSION ...........................................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Benzon v. Morgan Stanley Distributors, Inc.*,
420 F.3d 598 (6th Cir. 2005) ........................................................................................14

*Blue Chips Stamps v. Manor Drugs Stores*,
421 U.S. 723 (1975) ..............................................................................................18, 19

*Castillo v. Dean Witter Discover & Co.*,
No. 97 Civ. 1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998) .................12, 14, 16

*Chill v. General Electric Co.*,
101 F.3d 263 (2d Cir. 1996) .........................................................................................21

*Cohen v. Fund Asset Management*,
No. 79 Civ. 2512, 1980 WL 1488 (S.D.N.Y. Mar. 31, 1980) ..................................5

*Commercial Union Assurance Co. v. Milken*,
17 F.3d 608 (2d Cir. 1994) ..........................................................................................10

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984) .......................................................................................................4

*De la Fuente v. DCI Telecommunications*,
206 F.R.D. 369 (S.D.N.Y. 2002) ............................................................................24, 25

*Dura Pharmaceuticals Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................16, 18, 28

*Fallick v. Nationwide Mutual Insurance Co.*,
162 F.3d 410 (6th Cir. 1998) .........................................................................................8

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2004) ..........................................................................................................7

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) .............8

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
No. 04 Civ. 4885 (SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ..........4, 6, 7

*In re Bausch & Lomb, Inc. Securities Litigation*,
941 F. Supp. 1352 (W.D.N.Y. 1996) ...........................................................................22

*In re Bayer AG Securities Litigation,*
   No. 03 Civ. 1546 (WHP), 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ............................27

*In re Complete Management Inc. Securities Litigation,*
   153 F. Supp. 2d 314 (S.D.N.Y. 2001) ..................................................................................23

*In re Dynex Capital, Inc. Securities Litigation,*
   No. 05 Civ. 1897 (HB), 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) ...................................21

*In re Franklin Mutual Funds Fee Litigation,*
   388 F. Supp. 2d 451 (D.N.J. 2005) ......................................................................................5, 7

*In re Keyspan Corp. Securities Litigation,*
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................................21

*In re Lord Abbett Mutual Fund Fees Litigation,*
   385 F. Supp. 2d 471 (D.N.J.), *vacated in part on reconsideration,*
   417 F. Supp. 2d 624 (D.N.J.), *superseded by,*
   407 F. Supp. 2d 616 (D.N.J. 2005) .........................................................................................7

*In re Lord Abbett Mutual Fund Fees Litigation,*
   407 F. Supp. 2d 616 (D.N.J. 2005) .....................................................................................7, 19

*In re Merrill Lynch & Co.,*
   273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................................8, 26

*In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation,*
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) .....................................................................................4

*In re Morgan Stanley & Van Kampen Mutual Fund Securities Litigation,*
   No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ........................ *passim*

*In re Mutual Funds Investment Litigation,*
   384 F. Supp. 2d 845 (D. Md. 2005) ...........................................................................5, 17, 18

*In re NYSE Specialists Securities Litigation,*
   405 F. Supp. 2d 281 (S.D.N.Y. 2005) ..................................................................10, 11, 17, 18

*In re Parmalat Inc. Securities Litigation,*
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...................................................................................18

*In re Regeneron Pharmaceuticals, Inc. Securities Litigation,*
   No. 03 Civ. 3111 (RWS), 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)...................................28

*In re Salomon Analyst Winstar Litigation,*
   373 F. Supp. 2d 241 (S.D.N.Y. 2005) ...................................................................................24

*In re Salomon Analyst Winstar Litigation,*
No. 02 Civ. 6171 (GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ..........................24, 26

*In re Salomon Smith Barney Mutual Fund Fees Litigation,*
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ............................................................................ *passim*

*In re Yukos Oil Securities Litigation,*
No. 04 Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)...............2, 27, 28, 29

*Kamen v. Kemper Financial Services,*
500 U.S. 90 (1992)..................................................................................................................4

*Kauffman v. Dreyfus Fund, Inc.,*
434 F.2d 727 (3d Cir. 1970) ..................................................................................................6

*Krinsk v. Fund Asset Management, Inc.,*
654 F. Supp. 1227 (S.D.N.Y. 1987), .....................................................................................5

*LC Capital Partners LP v. Frontier Ins. Group,*
318 F.3d 148 (2d Cir. 2003) ...................................................................................24, 25, 26

*Lapidus v. Hecht,*
232 F.3d 679 (9th Cir. 2000) .................................................................................................3

*Lentell v. Merrill Lynch & Co.,*
396 F.3d 161 (2d Cir. 2005) ................................................................................................16

*Levitt v. Bear Sterns & Co.,*
340 F.3d 94 (2d Cir. 2003) ..................................................................................................27

*Lewis v. Casey,*
518 U.S. 343 (1996).................................................................................................................6

*Newman v. Warnaco Group, Inc.,*
335 F.3d 187 (2d Cir. 2003) ................................................................................................25

*Rothman v. Gregor,*
220 F.3d 81 (2d Cir. 2000) ..................................................................................................27

*S.E.C. v. Jones,*
No. 05 Civ. 7044 (RCC), 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006) ..............................20

*S.E.C. v. PIMCO Advisors Fund Management LLC,*
341 F. Supp. 2d 454 (S.D.N.Y. 2004) .................................................................................13

*S.E.C. v. Seaboard Corp.*,
  677 F.2d 1301 (9th Cir. 1982) ...................................................................22, 23

*Saunders v. Putnam American Government Income Fund*,
  No. JFM-04-560, 2006 WL 1888906 (D. Md. July 7, 2006) ..................................18

*Seimers v. Wells Fargo & Co.*,
  No. 05 Civ. 04518 (WHA), 2006 WL 2355411 (N.D. Cal Aug. 14, 2006) .................. *passim*

*Shah v. Meeker*,
  435 F.3d 244 (2d Cir. 2006) .............................................................................26

*Strougo v. Bassini*,
  282 F.3d 162 (2d Cir. 2002) .............................................................................3, 6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ..........................................................................7

## STATUTES

15 U.S.C. § 78u-4(b)(2) ....................................................................................28

15 U.S.C. § 80a-35(b) .......................................................................................10

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, 1 *Newberg on Class Actions* (4th ed. 2002) .........................6

## PRELIMINARY STATEMENT

Rather than address Defendants' primary arguments, Plaintiffs' opposition proffers irrelevant cases that involve significantly different alleged misconduct and damages than the present case, distorts Defendants' arguments, and misstates the established law. Plaintiffs also repeatedly misrepresent that the Defendants "have admitted" the central allegations of the Complaint, an apparent reference to the May 2005 SEC settlement of Citigroup Global Markets, Inc. and Smith Barney Fund Management LLC ("Corporate Defendants"). (*See, e.g.*, Plaintiffs' Opp. at 1, 23.) The Corporate Defendants reached their agreement with the SEC "without admitting or denying the findings" of the SEC's administrative order. (*See* Rothermich Decl., Ex. B, at 1.) Thomas Jones and Lewis Daidone ("Individual Defendants") were not even parties to the SEC proceeding.[1]

## SUMMARY OF REPLY ARGUMENT

Plaintiffs essentially ignore the substantial, on-point authority holding that claims to recover allegedly excessive mutual fund fees can only be brought by mutual fund shareholders as derivative claims and cannot be styled as a class action. Their argument that this issue is premature contradicts both Supreme Court and Second Circuit authority holding that the named Plaintiffs' standing is properly considered on a motion to dismiss. And their arguments concerning class certification under Rule 23 are entirely irrelevant; not one of the cases they cite in their class certification discussion involved derivative claims.

---

[1]     Plaintiffs likewise claim that Michael Yellin, a CAM executive in 1999, settled with the SEC by "admitting" its case against him, and that Yellin "specifically implicated" Jones and Daidone. (Plaintiffs' Opp. at 6.) These claims, too, are false, for Yellin also settled, for a modest $50,000, without admitting or denying anything and without "implicating" anyone. *See In re Yellin*, Advisors Act Release No. 2501, at 1 (March 26, 2006), *available at* www.sec.gov/litigation/admin/ia-2501.pdf.

Plaintiffs do not dispute:  (a) that shareholders are only entitled to recover excessive transfer agent ("TA") fees under section 36(b) of the Investment Company Act ("ICA") for the twelve months before the original complaint was filed; (b) that under the Corporate Defendants' settlement with the SEC, CTB will return essentially all of its TA profits for a six-year period to the Funds, with interest and a penalty; and (c) that any recovery Plaintiffs obtain should be reduced by the amount of such disgorgement.  Accordingly, because Plaintiffs at best have standing under section 36(b) to seek on behalf of two funds any allegedly excessive fees paid by those two Funds over a twelve-month period, there are no damages for Plaintiffs to recover.

Plaintiffs fail to distinguish the numerous mutual fund fee cases holding that where fund prospectuses accurately disclose the total fees paid by a mutual fund, as well as the recipient of the fees, shareholders cannot bring a fraud claim under section 10(b) of the Securities Exchange Act based on a failure to disclose additional information about the distribution of the fees.

Plaintiffs mischaracterize established Second Circuit law concerning inquiry notice for the purpose of the application of Sarbanes-Oxley's two-year limitations period to securities fraud claims.  The disclosures in the Funds' prospectuses and voluminous media reports were sufficient storm warnings to put Fund shareholders on inquiry notice.  Since the Complaint does not allege that Plaintiffs made any inquiry in response to these disclosures, they are charged with inquiry notice, at the latest, as of March 2004, and their section 10(b) claims are time-barred.

Finally, Plaintiffs' arguments in support of their section 20(a) controlling person claim against the Individual Defendants are foreclosed by this Court's recent decision in *In re Yukos Oil Securities Litigation*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) (Pauley, J.).

## ARGUMENT

### I. PLAINTIFFS' EXCESSIVE FEE CLAIMS MAY ONLY BE ASSERTED AS A DERIVATIVE ACTION, NOT AS A CLASS ACTION, AND MAY NOT BE ASSERTED ON BEHALF OF FUNDS IN WHICH THE NAMED PLAINTIFFS HOLD NO SHARES.

Any claim to recover the TA fees paid by the Funds may only be brought as a derivative claim on behalf of the Funds. Because Plaintiffs concede that their claims to recover TA fees paid by the Funds -- under both section 36(b) of the Investment Company Act and section 10(b) of the Securities Exchange Act -- are not derivative, these claims should be dismissed.

#### A. Plaintiffs' Claims To Recover TA Fees Paid By The Funds (Whether Under Section 36(b) Of The ICA Or Section 10(b) Of The Exchange Act) May Only Be Brought As Derivative Claims.

Defendants' primary argument in their opening brief was simple: the allegedly excessive TA fees were paid by *the Funds*, based on alleged misrepresentations *to the Funds*. The only possible injury to Fund shareholders was the alleged pro rata diminution of the value of their shares resulting from such fee payments. Therefore, any claim by Fund shareholders to recover the fees may only be brought as a derivative action on behalf of the Funds. *See Strougo v. Bassini*, 282 F.3d 162, 171, 174 (2d Cir. 2002) ("To sue directly under Maryland law, a shareholder must allege an injury distinct from an injury to the corporation . . . . [A]dvisory fees[] and other transaction costs incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed . . . only through a suit on behalf of the corporation."); *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (applying Massachusetts law). Tellingly, Plaintiffs do not even mention this argument until page 42 of their 45-page brief, and then fail to address it adequately.

Plaintiffs wrongly suggest that Defendants argue that the real injury was to the Corporate Defendants, or that shareholders of the Corporate Defendants should assert the derivative claim.

(Plaintiffs' Opp. at 43).  Defendants have never made that argument.  Defendants argued, rather, that the only injury alleged in the Complaint was to the *Funds* themselves, in the form of the allegedly excessive TA fees *by the Funds* to CTB.  (*See* Opening Br. at 12-16.)  Indeed, the fact section of Plaintiffs' own brief highlights that their core allegations concern misrepresentations and damages to the Funds, not to shareholders directly.  (*See, e.g.*, Plaintiffs' Opp. at 4 (noting alleged misrepresentations to the Funds' boards); *id.* at 7 ("Defendants' actions drained money out of the Funds [and] increased the Funds' expenses.").)  Plaintiffs fail to meaningfully address or distinguish the substantial authority from this and other districts that is precisely on point and requires dismissal of their direct fee claims.  Because Plaintiffs' alleged injuries from the TA fee payments are not distinct from those suffered by the Funds themselves, claims arising from such fee payments must be asserted by shareholders as derivative claims on behalf of the Funds.  *See, e.g., In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 597 (S.D.N.Y. 2006); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *3-*4 (S.D.N.Y. Oct. 19, 2005); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 259-61 (S.D.N.Y. 2003).

The cases cited by Plaintiffs to rebut this line of authority are either mischaracterized, inapplicable to the present facts, or inconsistent with this Court's precedent.  The Supreme Court's earlier decision in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n.11 (1984) makes clear that the reference in *Kamen v. Kemper Financial Services*, 500 U.S. 90, 108 (1992), to excessive fee claims under section 36(b) of the ICA as "direct" simply denotes the Court's holding that section 36(b) claims are not subject to the pre-suit demand requirement imposed on other derivative claims.  Section 36(b) claims must still be alleged as derivative claims on behalf

of the Funds.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d at 596-97;

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 468 (D.N.J. 2005).

      Other cases cited by Plaintiffs are irrelevant.  For instance, both *Cohen v. Fund Asset*

*Management*, No. 79 Civ. 2512, 1980 WL 1488, at *4 (S.D.N.Y. Mar. 31, 1980), and *Krinsk v.*

*Fund Asset Management, Inc.*, 654 F. Supp. 1227, 1235 (S.D.N.Y. 1987), dismissed derivative

claims brought on behalf of mutual funds because the sales charges at issue had been paid

directly by shareholders, not by the funds.  The present case is exactly the opposite:  as the

Complaint makes clear, the TA fees were paid by the Funds directly.

      The section 10(b) securities fraud cases Plaintiffs cite are similarly inapplicable because

none of these opinions even consider whether the shareholder fraud claims were derivative or

direct.  Moreover, unlike the present case and the other fee cases cited by Defendants above, the

shareholders in the section 10(b) cases cited by Plaintiffs alleged injuries distinct from those

suffered by the mutual funds themselves.  For instance, in *Seimers v. Wells Fargo & Co.*, No. 05

Civ. 04518 (WHA), 2006 WL 2355411 (N.D. Cal Aug. 14, 2006), not only were the challenged

fees paid by the advisors (not the funds directly), but the harm suffered by investors included the

distinct (non-derivative) claim that the challenged payments to brokers resulted in "biased advice

from broker-dealers." *Id.* at *1, *6.  Likewise, in *In re Mutual Funds Investment Litigation*, a

consolidated mutual fund market-timing case, plaintiffs alleged that some shareholders (the

market timers) had profited at the expense of other shareholders.  *In re Mut. Funds Inv. Litig.*,

384 F. Supp. 2d 845, 856-57 (D. Md. 2005).  Those facts -- where the gravamen of the complaint

is not that the mutual funds themselves were defrauded but that one group of shareholders

benefited at another group of shareholders' expense -- are antithetical to a derivative claim.

**B.**    **Plaintiffs Do Not Have Standing To Bring Derivative Claims On Behalf Of Funds In Which The Named Plaintiffs Do Not Own Shares, And Plaintiffs May Not Style Such Claims As A Class Action.**

Contrary to Plaintiffs' argument, it is black letter law that the named plaintiffs' standing to bring a class action is, generally, properly considered at the motion to dismiss stage, before briefing on class certification.  The very treatise Plaintiffs rely on agrees that named plaintiffs' standing is a prerequisite to asserting class claims and should be considered on a motion to dismiss.  *See* Alba Conte & Herbert B. Newberg, 1 *Newberg on Class Actions* § 2:9 (4th ed. 2002).  In support, that treatise cites a leading case, *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970), where the court dismissed class action claims by a mutual fund shareholder for lack of standing precisely because the plaintiff's claims were derivative of injuries to the funds themselves.  In *Kauffman*, the Court explained that a plaintiff who only held shares in four of the 65 funds at issue could not assert derivative claims on behalf of a class of shareholders of all 65 funds:  "[A] predicate to appellee's right to represent a class is his eligibility to sue in his own right.  What he may not accomplish himself, he may not achieve as a representative of a class."  *Id.* at 734; *see also Strougo*, 282 F.3d at 174 (affirming dismissal of direct class claim against investment fund directors for lack of standing where claim could only be asserted derivatively).  The Third Circuit's holding in *Kauffman* aligns with Supreme Court precedent. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'." (internal citations omitted)).

Recent cases have carefully applied this rule and dismissed for lack of standing mutual fund excessive fee claims styled as class actions.  *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d at 604-07; *In re AllianceBernstein Mut. Fund Excessive Fee*

*Litig.*, 2005 WL 2677753, at *10.  These cases reasoned that, because the claims against the defendant investment advisors were derivative, only named plaintiffs holding shares in the allegedly injured fund could establish the requisite injury required to have standing to sue.  *Id.* (because "the named plaintiffs have not purchased shares in the forty-eight Funds at issue, they cannot establish injuries caused by the advisers of those Funds"); *see In re Salomon Smith Barney*, 441 F. Supp. 2d at 608 (plaintiffs lacked standing to assert 36(b) claim on behalf of 68 mutual funds in which they held no shares).[2]  Thus, Plaintiffs only have standing to assert derivative claims on behalf of the two funds in which they owned shares that actually used CTB as TA.

The cases Plaintiffs cite do not suggest a different result.  For starters, none of Plaintiffs' cases address the issue of standing to bring derivative claims.  And even if they did, they still fail to support Plaintiffs' position.  Plaintiffs primarily rely on *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-84 (2004).  But there, the Second Circuit held merely that the *lead* plaintiff need not have standing to bring all of the claims asserted in the complaint.  *Id. Hevesi* said nothing about the requirement (articulated by the Supreme Court) that at least one named plaintiff must have standing to bring every claim.  *See also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) (holding that *lead* plaintiff need not have standing to bring every claim alleged, but noting that several cases have dismissed class claims where no named

---

[2]      Defendants have found only a single case appearing to assert the contrary.  *See In re Lord Abbett Mut. Fund Fees Litig.*, 385 F. Supp. 2d 471, 480 (D.N.J.), *vacated in part on reconsideration*, 417 F. Supp. 2d 624, 631 (D.N.J.), *superseded by* , 407 F. Supp. 2d 616 (D.N.J. 2005).  This decision is at odds with the overwhelming majority of cases in this and other districts, and with the same court's later holding in *In re Franklin Mutual Funds Fee Litigation*, 388 F. Supp. 2d 451, 468 n.13 (D.N.J. 2005).  Moreover, on reconsideration, the *Lord Abbett* court dismissed all of the plaintiffs' direct claims because they alleged only derivative injuries. *In re Lord Abbett Mut. Fund Fees Litig.*, 407 F. Supp. 2d 616, 626 (D.N.J. 2005).

plaintiff had standing). *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2003 WL 21672085, at *1 (S.D.N.Y. July 16, 2003), is similarly inapplicable, because it involved claims as to only one mutual fund, and *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), does not deal with mutual funds at all, but rather concerns class claims concerning ERISA benefit plans.

Ultimately, Plaintiffs fail to distinguish the overwhelming body of law showing that Plaintiffs here lack standing to bring derivative excessive fee claims on behalf of Funds in which they own no shares, and that Plaintiffs cannot bring such claims on behalf of a shareholder class.[3]

## II.   THE FUNDS WILL ALREADY RECOVER FAR MORE THAN THE VERY LIMITED DAMAGES THAT PLAINTIFFS HAVE STANDING TO PURSUE.

Plaintiffs do not dispute that any damage award they might recover under section 36(b) of the ICA must be reduced by amounts disgorged by CTB to the Funds pursuant to the Corporate Defendants' Settlement Order with the SEC.  (Opening Br. at 24-26.)  Plaintiffs likewise do not dispute that pursuant to the Settlement Order and subject to the approval of the proposed Distribution Plan by the SEC and the IRS, CTB and the Corporate Defendants will pay to the Funds over $210 million in disgorgement, interest and penalties.  Furthermore, they do not dispute that this amount is comprised of, according to the Settlement Order (and the allegations of Plaintiffs' own Complaint):  (1) CTB's revenue less expenses (*i.e.* total profit) from the TA

---

[3]     Plaintiffs' contention that the Court may not conclude on a motion to dismiss that CTB did not serve as TA to the Citistreet Fund held by named plaintiff Jeanne Chilton is similarly off-base.  It is well established that the Court may consider documents cited by or otherwise integral to the Complaint, as well as public disclosure documents that are required to be, and have actually been, filed with the SEC. *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003).  Here, the Complaint cites the June 2002 proxy statement for the Citistreet Funds, which indicates that Citistreet Funds Management LLC served as TA for the Citistreet Funds, not CTB.  (Rothermich Decl., Ex. A at A-1 to A-2.)  Thus, the Complaint fails to allege that the Citistreet fund held by Ms. Chilton suffered any damage from allegedly excessive TA fees paid to CTB, and Ms. Chilton should be dismissed for lack of standing.

fees paid by all Smith Barney Funds, plus interest, from October 1, 1999 through September 30, 2004 ($109,004,551); (2) the total TA fee revenue received by CTB from December 1, 2004 through January 1, 2006, minus actual operating expenses ($9.4 million), (3) the $17 million SBFM received in connection with the Revenue Guarantee, plus interest, and (4) an $80 million civil penalty.  (Opening Br. at 9-10.)

Plaintiffs' response to these facts is merely to suggest --without citing a single allegation in the Complaint -- that there *might* be some additional damages that Plaintiffs will be able to prove at trial.  Plaintiffs hypothesize, for instance, that there might be some closed-ended Smith Barney funds that were not taken into account in the Settlement Order.  (Plaintiffs' Opp. at 29.) But the Complaint specifically states that it is brought on behalf of "open-end management investment companies."  (Compl. ¶ 23.)  Plaintiffs' speculation in a legal brief concerning the possible existence of closed-end funds cannot replace the allegations in their Complaint.

Plaintiffs argue that because the Settlement Order only required disgorgement of fees through September 30, 2004, while the Class Period extends through May 31, 2005, the Complaint seeks recovery for damages not addressed by the Settlement Order.  (Plaintiffs' Opp. at 28-29 & n.21.)  This argument ignores the fact that the Settlement Order also required CTB to hold its pre-tax profits for December 1, 2004 through January 1, 2006 in escrow and to repay to the Funds the difference between the escrowed amount and the amount the Funds would have paid had the new TA contract been in effect during this period.  (Opening Br. at 9-10.)  This escrowed amount totaled approximately $9.4 million and was paid in its entirety to the Funds in April 2006.  (*Id.* at 10.)  Furthermore, pursuant to the Settlement Order, CTB also disgorged its pre-tax profits for 11 months preceding the Class Period (October 1999 through August 2000).

(Rothermich Decl., Ex. B at 15, ¶ 65.)  Thus, the Settlement Order effectively required disgorgement of profits for a period of time 14 months *longer* than the Class Period.

The Defendants' and CTB's disgorgement to the Funds under the Settlement Order -- TA fee revenue less expenses (*i.e.* profits) for a six-year period, plus interest, plus an $80 million penalty -- will dwarf any amount that the Plaintiffs have standing to recover on the claims alleged in the Complaint.  That is especially so since the plain language of section 36(b) of the ICA strictly limits recovery to actual damages incurred by the Funds in the 12 months before the original class action complaint was filed, *see* 15 U.S.C. § 80a-35(b), and, as explained in Part I, *supra*, Plaintiffs only have standing to recover the TA fees paid by the two Funds in which the named plaintiffs allegedly own shares and which used CTB for TA services.  Even if there were room for debate at the margins concerning the SEC's precise calculation of CTB's total TA profits, the disgorgement by CTB and Defendants of nearly six years worth of profits is, under the Complaint's own allegations, many times larger than any allegedly excessive TA fees (over a period of 12 months) that Plaintiffs might have standing (derivatively) to pursue.

The Court may conclude that the Complaint has failed to allege any recoverable damages in excess of the amounts already disgorged because the Complaint tracks the SEC's allegations practically verbatim, the SEC has already ordered the Corporate Defendants to disgorge to the Funds all of their profits (plus penalty), and Plaintiffs only have standing to bring excessive fee claims for a tiny subset of Funds over a limited time period.  *Cf. Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994) (rejecting plaintiffs' disgorgement claim based on losses from $10.5 million investment where defendant had already agreed to repay $1.1 billion).  The clarity of the amounts recovered by the Funds under the Settlement Order distinguishes this case from cases like *In re NYSE Specialists Securities Litigation*, 405 F. Supp. 2d 281 (S.D.N.Y.

2005), where the court noted that the structure of the settlement itself indicated that the SEC was uncertain about its damages calculations. *See id.* at 310 (Noting that "the customer disadvantage [or loss] calculations [performed by the SEC] . . . were no more than estimates . . . ."). Here, there are no allegations in the Complaint or Plaintiffs' brief that provide any basis to doubt the SEC's calculation of CTB's TA fee profits.

## III.   BECAUSE TOTAL TA FEES WERE DISCLOSED IN FUND PROSPECTUSES, PLAINTIFFS HAVE NOT STATED A FRAUD CLAIM UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT.

Plaintiffs argue inconsistently about the nature of their fraud claim under section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. When attempting to explain how the Complaint alleges an actionable omission in prospectuses and other shareholder disclosures, Plaintiffs argue that "the nature of the fraud was not in the excessive nature of the fees but in the fraudulent nature of the fee structure." (Plaintiffs' Opp. at 20.) But when attempting to explain how the alleged omissions in Fund prospectuses actually caused a loss to shareholders, Plaintiffs revert to the allegation that Defendants "drained" money from the Funds by charging excessive TA fees for doing limited work. (*Id.* at 25.) Regardless of how Plaintiffs seek to characterize the Complaint, the fact is that the only loss alleged is the allegedly excessive TA fees paid by the Funds.

These losses cannot be the subject of a section 10(b) fraud claim. First, as explained in Part I above, these fees were paid by the Funds, and any claim to recover them can only be brought by shareholders of each Fund as a derivative action. Second, directly on-point precedent from this jurisdiction proves that there was no actionable misrepresentation or omission about the TA arrangement where the amount of TA fees paid by the Funds was accurately disclosed in Fund prospectuses and annual financial statements. And third, if there were material omissions,

11

the Complaint fails to allege how such omission caused any direct injury to Fund shareholders.

Accordingly, Plaintiffs' section 10(b) securities fraud claim should be dismissed in its entirety.

      **A.**      **The Complaint Does Not Allege A Material Misrepresentation Where Total TA Fees Were Disclosed To Shareholders.**

            1.      <u>Plaintiffs Have Not Alleged A Misrepresentation Or Omission Actionable Under Section 10(b) Of The Exchange Act.</u>

Plaintiffs concede that the Fund prospectuses and financial statements accurately disclosed to shareholders the amount of TA fees paid by the Funds to CTB over the entire class period. As a result, Defendants' opening brief showed that Plaintiffs' Rule 10b-5 claim should be dismissed for failure to allege an actionable misstatement or omission. (*See* Opening Br. at 28-33 (citing *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *7 (S.D.N.Y. Apr. 18, 2006); *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272 (RPP), 1998 WL 342050, at *9 (S.D.N.Y. June 25, 1998).) Even Plaintiffs acknowledge that in these cases, "disclosing total fees . . . neutralized any allegations of fraud." (Plaintiffs' Opp. at 20.)

Plaintiffs respond by arguing that "the nature of the fraud was not in the excessive nature of the *fees* but in the fraudulent nature of the *fee structure*." (Plaintiffs' Opp. at 20 (emphasis in original).) Plaintiffs argue that the Fund prospectuses and proxy statements cited in the Complaint gave the misleading impression that the new TA structure "was a garden-variety arrangement." (*Id.* at 16-17; Compl. ¶115.) The allegedly misleading disclosures stated that the Funds paid fees to CTB and First Data to act as TA and sub-TA respectively, and that CTB and First Data would fulfill ordinary TA functions. (Plaintiffs' Opp. at 16; Compl. ¶ 114.) Plaintiffs fail to articulate exactly what about these disclosures were misleading or harmful. Plaintiffs do not allege that TA functions were not performed by CTB and First Data, or that these services were performed deficiently. Instead, Plaintiffs assert, over and over, that the division of fees and

responsibilities between CTB and First Data was not disclosed and that CTB received excessive fees for performing limited work. These assertions are insufficient as a matter of law because an omission, absent a duty to disclose, is not actionable, and Plaintiffs do not argue that SEC Form N1-A, or any other regulation, obligated Defendants to disclose the division of fees and services between primary TA and sub-TA. *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 WL 1008138, at *7. (*See also* Opening Br. at 30-31.)

The materially misleading statements and/or omissions alleged in *S.E.C. v. PIMCO Advisors Fund Management LLC,* 341 F. Supp. 2d 454 (S.D.N.Y. 2004), and *Seimers v. Wells Fargo & Co.*, No. 05 Civ. 04518 (WHA), 2006 WL 2355411 (N.D. Cal Aug. 14, 2006), are distinguishable from those alleged in this case. Both *PIMCO* and *Siemers* involved conduct by the defendants that directly contradicted their explicit statements and directly caused the plaintiffs' injuries. In *PIMCO*, the mutual fund prospectuses and other communications stated that the PIMCO funds took active measures to prevent market timing trades in the funds' shares, but the defendants secretly allowed such activities to the detriment of certain shareholders. *PIMCO*, 341 F. Supp. 2d at 464-65. In *Siemers*, fund prospectuses misleadingly stated that the investment adviser *may* consider sales of fund shares when deciding which brokers to utilize, when in fact the investment adviser and broker-dealer had "already entered into firm kickback agreements." *Siemers*, 2006 WL 2355411, at *6.

Here, however, CTB's conduct was consistent with statements in the Funds' prospectuses: as stated in the prospectuses, CTB and First Data entered into a sub-TA contract, and TA fees were calculated and paid as stated in the prospectuses and annual financial statements. There is no ambiguity in the Fund prospectuses concerning whether TA fees would be charged or what entities would collectively receive TA fees, and the Funds' annual reports

disclosed the amount of the fees as a stand-alone item.  (Opening Br. at 8-9.)  Accordingly, the

Court should follow the reasoning of *Morgan Stanley* and *Castillo*:  where total fees paid by

mutual funds are disclosed to shareholders and the applicable regulations did not require

disclosure of additional details, the fee structure cannot be the subject of a securities fraud claim

under section 10(b) and Rule 10b-5(b).

2.     The Alleged Omissions Are Not Material As A Matter Of Law.

Plaintiffs attempt to repackage their excessive fee claims by arguing that they were

deceived into thinking that TA fees were being used for a legitimate purpose, which caused them

to overvalue Fund shares.  (Plaintiffs' Opp. at 19-20.)  But the *Morgan Stanley* decision rejected

a nearly identical argument.  There, the plaintiffs argued that: "[h]ad [plaintiffs] known that a

substantial portion of those [fees associated with the proprietary mutual funds] was not a

legitimate outlay for services that would benefit the [proprietary] Funds, but was merely being

used to finance the programs challenged in this lawsuit without benefit to the Fund shareholders,

the value placed on those shares at the time of the purchase would have been less." *In re*

*Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 WL 1008138, at *9.  The Court

rejected this argument as "incorrect as a matter of law," because where "[a]ll fees charged to the

shareholder were disclosed . . . [t]he allocation of fees is immaterial because it could have no

effect on share price." *Id.* at *9.

In other words, where total TA fees are disclosed, additional information concerning the

TA fee structure is immaterial as a matter of law because the allocation of fees does not affect

the value of the Fund shares.  The only fact about TA fees that would affect the Funds'

performance is the *amount* of TA fees.  A reasonable investor would not base investment

decisions on the structure of TA fees when the total amount paid by the funds was disclosed. *See*

*Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 609 (6th Cir. 2005) ("Given that all

14

information necessary to compare the different class shares was in the prospectuses, the alleged

omissions [in the prospectuses] . . . are not material."). This is particularly true where, as here,

there is no suggestion that Plaintiffs' investment decisions were influenced by the TA function,

that TA services were deficient, or that the transfer agent function caused Plaintiffs harm other

than the amount of TA fees.

Again, the *Seimers* case is not only inconsistent with *Morgan Stanley* and other cases

cited by Defendants, but also distinguishable from the present case on the materiality issue.

Crucial to the *Seimers* court's holding that the alleged omissions in that case were material was

the fact that the undisclosed payments to brokers for pushing sales of the mutual funds held by

the plaintiffs could result in shareholders receiving biased advice from the brokers receiving the

payments: "If the payments [to brokers] were enough to drive sales, disclosure of them would

have been material to an investor considering a broker's advice to buy those shares." *Siemers*,

2006 WL 2355411, at *6. Thus, in *Siemers*, it was alleged that the fee structure resulted in a

direct, undisclosed harm to shareholders -- biased investment advice -- independent of the harm

caused by the amount of fees paid. Here, the Complaint does not allege any harm independent of

the TA fees paid by the Funds.

CTB and First Data, working together, provided precisely the TA services that the

prospectuses stated the Funds would receive. And the total fees that they collectively received

from the Funds were accurately disclosed to shareholders. Under these circumstances, just as in

*Morgan Stanley*, *Castillo*, and *Benzon*, any omission about the distribution of fees or the division

of labor between CTB and First Data is immaterial as a matter of law.

**B.      The Complaint Does Not Sufficiently Allege Loss Causation.**

Since any excessive TA fees paid by the Funds can only be recovered by shareholders

though a derivative action, the Court should sustain Plaintiffs' direct section 10(b) claim only if

the alleged prospectus omissions caused shareholders some injury distinct from the TA fees. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) (plaintiffs must allege that "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered"). But the alleged injury Plaintiffs rely upon to sustain their 10(b) claims -- that "tens of millions of dollars were drained out of Class members' accounts" (Plaintiffs' Opp. at 25) -- is nothing more than a repackaging of the allegation that the Funds paid excessive TA fees. Plaintiffs fail to identify a single paragraph of the Complaint that alleges any injury distinct from and independent of the allegedly excessive TA fees. Accordingly, the Court should follow the other recent decisions dismissing similar mutual fund fee claims under section 10(b) for failure to allege loss causation where the total fees were accurately disclosed. *See, e.g., In re Salomon Smith Barney*, 441 F. Supp. 2d 579, 590 (S.D.N.Y. 2006); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *9 (S.D.N.Y. Apr. 18, 2006); *Castillo*, 1998 WL 342050, at *5.

Plaintiffs basically ignore Defendants' arguments that the Complaint's bare allegation that shareholders were "damaged by purchasing Funds' shares at distorted NAV values" is insufficient under the pleading standards established by the Supreme Court in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005), and the Second Circuit in *Lentell*. (Opening Br. at 33-34.) Plaintiffs concede that the Complaint does not allege any change in the price of Fund shares corresponding to disclosures concerning the TA arrangement in Fund prospectuses and prospectus supplements, dated between late 2003 and May 31, 2005. They also fail to address the absence of information in the Complaint concerning when they bought Fund shares, whether they sold these shares, the purchase and sale prices of these transactions, or the Funds' performance during the Class Period. Nor do Plaintiffs explain how the prospectus'

descriptions of the TA arrangement resulted in "distorted NAV values," (Compl. ¶ 137), or how such allegedly "distorted NAV values" caused Fund shareholders any cognizable loss.

Instead, Plaintiffs rest their entire case on a weak analogy to two cases that involved unusual facts quite different from the facts here. *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 856-57 (D. Md. 2005); *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 315 (S.D.N.Y. 2005). Most significantly, unlike the present case, both of these cases alleged a scheme by the defendants to profit at the expense of shareholders in a way that *entirely concealed* from shareholders the scheme's effect on the value of plaintiffs' shares. The *Mutual Funds* case concerned, *inter alia*, class claims that certain insider shareholders had drained plaintiffs' returns through an arbitrage scheme involving frequent buying and selling of the funds' shares. *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 851-52 & n.1. Not only was the dilution of the funds' returns by the insider investors entirely concealed from the plaintiff shareholders, but some fund prospectuses misrepresented that these funds employed affirmative measures to prevent market-timed trades of their shares. *Id.* at 863-64. Likewise, in the *Specialists* case, the plaintiffs alleged that the specialist firms responsible for maintaining the trading markets for particular securities on the floor of the New York Stock Exchange and executing buy and sell orders engaged in *undisclosed manipulation of an entire securities market* for their own benefit and at the expense of the buyers and sellers of the shares. *See In re NYSE Specialists*, 405 F. Supp. 2d at 289-92. Furthermore, under the "unique facts" in the *Specialists* case, where defendants allegedly used their market-making position to harm shareholders, the court held that plaintiffs had alleged an actual loss immediately upon their purchase of securities

at an inflated price because they could not resell these securities at an "'equivalent value.'" *Id.* at 315-16 (discussing *Dura Pharm.*, 544 U.S. at 341).  Plaintiffs make no such allegation here.[4]

Here, just as in the *Salomon Smith Barney* and *Morgan Stanley & Van Kampen* cases, the effect of TA fees on the value of Plaintiffs' shares was not hidden.  The Funds' prospectuses and annual financial statements disclosed both the amount and recipients of the fees paid; "[t]he allocation of fees is immaterial, because it could have no effect on share price." *In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, at *9.  Thus, the allegation in the Complaint that the TA disclosures in the prospectuses "distorted the NAV " of the Funds (Compl. ¶¶ 137, 144) makes no sense, and even if it did, Plaintiffs fail to explain how a "distortion" of the Funds' NAVs injured shareholders.  Indeed, the same judge who wrote the opinion in the *Mutual Funds* case, Judge Motz, relied on loss causation pleading deficiencies to dismiss an insider trading claim in a related market timing decision, holding that where "the only allegation of damage plaintiff asserts is that it paid 'distorted prices' for Putnam funds," the loss causation pleading standards established in *Dura* are not satisfied. *Saunders v. Putnam Am. Gov't Income Fund*, No. JFM-04-560, 2006 WL 1888906, at *1 (D. Md. July 7, 2006); *see also In re Parmalat Inc. Sec. Litig.*, 375 F. Supp. 2d 278, 305-06 (S.D.N.Y. 2005) ("defendant's misrepresentation [must] conceal[] the subject that caused the loss."). [5]

---

[4]     Plaintiffs' loss causation argument also relies on *Seimers v. Wells Fargo & Co.,* 2006 WL 2355411 (N.D. Cal Aug. 14, 2006).  *Seimers* is distinguishable because there the Court found something that the Complaint in the present action entirely fails to allege: injury to shareholder plaintiffs from the fee payments *other than the fees themselves.*  (*See supra* at Part III.A.2.)  It is also noteworthy that the loss causation analysis in *Siemers* does not cite a single authority to support its conclusions.

[5]     The novel loss causation theory accepted by the *Mutual Funds* case that allowed *holders* of mutual fund shares to assert claims, as opposed to purchasers and sellers, does not apply here. *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 854-55 & n.6 & n.7 (citing *Blue Chips Stamps*, 421 U.S. 723).  In *Mutual Funds*, the court decided not to apply the plain language of

Plaintiffs' are also wrong that their allegations that they "received less return on the investments [in the Funds] than [they] would have absent the fraudulent scheme" adequately pleads loss causation. (Plaintiffs' Opp. at 25; Compl. ¶ 138.)  Even if the Funds' allegedly lost investment opportunities were actionable under section 10(b), the claim could only be brought derivatively.  The alleged "injury is indistinguishable from injury to the Funds themselves, as each investor's diminished marginal return on investment is merely a reflection of the Funds' overall diminished performance." *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 626 (D.N.J. 2005).  Furthermore, as discussed in Defendants' Opening Brief, because total fees were disclosed, this "lost opportunity" theory of loss causation also fails because Plaintiffs could not have been deceived regarding the percentage of Fund assets that would be spent on TA fees and the percentage available to invest.  (Opening Br. at 37-38.)  Finally, Plaintiffs cannot recover pursuant to section 10(b) for speculative damages such as lost investment profits that they or the Funds "could have" made. *See, e.g.*, *In re Salmon Smith Barney*, 441 F. Supp. 2d at 589. (internal citations omitted).

**C.    Plaintiffs Have Not Alleged Scienter As To The Individual Defendants.**

In response to the Individual Defendants' challenge to the adequacy of the scienter allegations in this action, Plaintiffs make the bizarre claim that Jones and Daidone "have *admitted* their role in the scheme in the SEC settlement," (Plaintiffs' Opp. at 23 (emphasis in original)).  Plaintiffs apparently rest this claim on the SEC settlement with the Corporate

---

*Blue Chips Stamps* because the court found that plaintiffs were injured precisely *because* they held shares while defendants engaged in certain securities transactions. *Id.*  Here, Plaintiffs cannot directly recover the TA fees paid by the Funds and have not pleaded any harm, thus the Court should apply the prohibition on Rule 10b-5 claims by securities *holders* (as opposed to purchasers and sellers) established in *Blue Chips Stamps*, 421 U.S. at 754-55 and dismiss lead plaintiff Jeffrey Webber's securities fraud claim because he only alleges that he held Fund shares during the Class Period and not that he purchased or sold them.  (*See* Opening Br. at 27 n.4.)

Defendants.  But Jones and Daidone were not parties to the settlement, while the Corporate

Defendants did not admit any of the SEC's allegations.

Beyond this specious charge, Plaintiffs rest their case on Judge Casey's brief opinion in

the related civil suit by the SEC against Jones and Daidone, *SEC v. Jones and Daidone*, 05

Civ. 7044 (RCC).  (*See* Plaintiffs' Opp. at 21-24.)  There, the SEC has charged the Individual

Defendants with one count of aiding and abetting violations of subsections 206(1) and 206(2) of

the Investment Advisors Act of 1940, 15 U.S.C. § 80b-6(1) and 80b-6(2), which require advisors

to deal candidly and fairly with mutual funds.  The SEC alleges that the Corporate Defendants

did not make adequate board disclosures in connection with the CTB's 1999 appointment as

transfer agent, and that Jones and Daidone aided and abetted that alleged violation.

An executive's scienter in a securities fraud case can be established by pleading motive

and opportunity (which Plaintiffs disclaim, Plaintiffs' Opp. at 23), or by pleading "facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." (Plaintiffs'

Opp. at 23-24 n.19.)  In his brief opinion denying the Individual Defendants' motion to dismiss,

Judge Casey concluded that the SEC's allegations concerning conduct in 1999 sufficed to

support the possibility that Jones and Daidone intended to help the Corporate Defendants to

mislead the Funds' boards in 1999 when the boards were deciding whether to approve the TA

contract, *S.E.C. v. Jones*, No. 05 Civ. 7044 (RCC), 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006).

But that is incorrect.  Plaintiffs trumpet the fact that they have made "the *exact same allegations*"

as the SEC (Plaintiffs' Opp. at 21 (emphasis in original)).  However, Plaintiffs' case does not

arise out of the 1999 presentations to the Funds' boards, but instead concerns disclosures made to

shareholders years later.  Plaintiffs' acknowledgement that they have merely copied the SEC's

pleading verbatim exposes the weakness of their argument.

Whatever Jones knew about board disclosures in 1999, Plaintiffs' Complaint does not allege a single fact beyond his position in the corporate hierarchy to suggest that he had anything to do with shareholder communications, let alone that Jones intended those communications to be fraudulent. Scienter requires more than a "position in the corporate hierarchy." *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 WL 314524, at *8-*9 (S.D.N.Y. Feb. 10, 2006).

The scienter case against Daidone is nearly as weak. To be sure, Daidone signed some prospectuses. (Plaintiffs acknowledge (Plaintiffs' Opp. at 5 n.6) that Daidone left his job in 2003; he signed nothing in 2004 or 2005.) Knowledge that the boards were misled in 1999, however, is not the same as knowledge that a prospectus filed years later is misleading. That a defendant's signature appears on a document "says nothing about whether [he] intended to defraud investors," *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 388 (E.D.N.Y. 2003), but Plaintiffs have alleged nothing more for the period after 1999.

In the absence of motive, a plaintiff bears a "significant burden" to plead facts suggesting conscious misbehavior or recklessness. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996). Perhaps, as Judge Casey concluded, the SEC met that burden alleging 1999 facts in connection with 1999 disclosures. To plead scienter for the securities filings at issue in this action, Plaintiffs had a burden to add more to the 1999 facts than to allege high positions and a few prospectus signatures. It is a burden they have not met.

## IV.   PLAINTIFFS' SECTION 10(b) CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

### A.   Plaintiffs' Allegations Do Not "Relate Back" To The Original Complaints.

As an initial matter, Plaintiffs appear not to dispute that their allegations against the Individual Defendants (asserted for the first time in the June 2006 Complaint) do not "relate

back" to the original complaints filed in August and September 2005.  (Opening Br. at 42, 46.)

Accordingly, the limitations period as to the Individual Defendants must be measured from June

2, 2006, the date the Complaint was filed.

As to the Corporate Defendants, Plaintiffs' brief fails to address the fact that the Rule

10b-5 claim in the present Complaint is based on factual allegations that were not contained in

the original complaints.  The conduct, transaction, or occurrence underlying all claims in the

initial complaints, including the perfunctory Rule 10b-5 claim in the amended Shropshire

complaint, is Defendants' allegedly misleading presentations to the *Funds' boards*.  (Opening

Br. at 45.)  The Rule 10b-5 claim in the present Complaint, however, is based entirely on alleged

misrepresentations or omissions *to investors* in *Fund prospectuses* and *proxy statements* that

were never mentioned in any of the previously filed complaints.  Furthermore, the initial

complaints did not allege any fraudulent misstatements or omissions occurring after June 1999,

whereas the Complaint alleges fraudulent omissions through May 2005.

Where a Rule 10b-5 claim in an amended complaint alleges new omissions that occurred

during a different time period and that concern different documents than the original complaint,

it sets forth a "separate act of alleged fraud" and does not relate back to the Rule 10b-5 claim

alleged in the original complaint. *In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352,

1365-66 (W.D.N.Y. 1996).  Plaintiffs do not dispute that here, just as in *S.E.C. v. Seaboard

Corp.*, 677 F.2d 1301 (9th Cir. 1982), the initial complaints were copied nearly verbatim from an

SEC Order that alleged a fraud on the Funds independent of a fraud on the shareholders, and that

prospectuses are mentioned for the first time in the present Complaint. *Id.* at 1304-05, 1314.

The fact that the amended Shropshire complaint included a Rule 10b-5 cause of action does not

make relation back appropriate because, just as in *Bausch & Lomb*, the fraud alleged in the Complaint is a separate act from the fraud alleged in the initial complaint.

Plaintiffs' cases are not on point. Plaintiffs rely on decisions where, unlike here, the initial complaints and the amended complaints alleged misrepresentations and omissions directed to the same audience, disseminated in the same documents or communications, and occurring during substantially the same time period. For example, in *In re Complete Management Inc. Securities Litigation*, 153 F. Supp. 2d 314, 336 (S.D.N.Y. 2001), the amended complaint alleged misstatements and omissions in the same prospectuses and registration statements underlying the initial complaint.

Because the Plaintiffs' Rule 10b-5 claim does not arise out of the same conduct, occurrence, or transaction as the facts alleged in the initial complaints, this claim should be treated as filed on June 2, 2006 for statute of limitations purposes. As discussed *infra*, this date is more than two years after Plaintiffs should have discovered their alleged cause of action.

**B.      The Fund Prospectuses And News Articles Put Plaintiffs On Inquiry Notice.**

Disclosures by the Corporate Defendants beginning in late 2003 constituted storm warnings that triggered Plaintiffs' duty to investigate whether Defendants had engaged in fraudulent conduct. Because the Complaint and Plaintiffs' opposition brief fail to allege that they undertook any investigation in response to these storm warnings, Plaintiffs are charged as being on inquiry notice before June 2, 2004 and their Rule 10b-5 claim is barred under Sarbanes Oxley's two-year limitations period.

1.      Resolution Of The Inquiry Notice Issue In Defendants' Favor At The Motion To Dismiss Stage Is Appropriate.

Plaintiffs' assertion that it is inappropriate to grant a motion to dismiss on inquiry notice grounds misstates the applicable law. The Second Circuit has expressly held that the inquiry

23

notice issue can be resolved at the motion to dismiss stage. *LC Capital Partners LP v. Frontier Ins. Group*, 318 F.3d 148, 156 (2d Cir. 2003). In fact, numerous decisions in this Circuit have granted motions to dismiss on inquiry notice grounds. (*See* Opening Br. at 47; *see also In re Salomon Analyst Winstar Litig.*, 373 F. Supp. 2d 241, 245 (S.D.N.Y. 2005).)

>    2.    The Prospectus Supplements Contained Sufficient Storm Warnings.

The December 2003 and March 2004 prospectus disclosures were sufficient to put Plaintiffs on inquiry notice. (Opening Br. at 47-48.) Plaintiffs are "not required to have notice of the entire fraud being perpetrated to be on inquiry notice. Rather, plaintiffs have a duty to inquire into the reliability of a defendant's representations where there is information that suggests that there are *any* material misrepresentations [or omissions]." *De la Fuente v. DCI Telecomm.*, 206 F.R.D. 369, 381 (S.D.N.Y. 2002) (internal citations omitted); *see also In re Salomon Analyst Winstar Litig.*, No. 02 Civ. 6171 (GEL), 2006 WL 510526, at *5 (S.D.N.Y. Feb. 28, 2006). Disclosures are sufficient storm warnings where they "relate[] to the misrepresentations later alleged [by plaintiffs]." *LC Capital Partners, LP*, 318 F.3d at 155.

Beginning in late 2003, supplements to the Funds' prospectuses disclosed the existence of the Revenue Guarantee. These supplements also revealed that the Revenue Guarantee had not previously been disclosed to the Funds' boards of directors and that the Corporate Defendants had agreed to reimburse the Funds for $16 million in payments they received pursuant to the Revenue Guarantee. (Compl. ¶ 125.) The Complaint alleges four reasons why the Fund prospectuses were materially misleading. (*Id.* at ¶ 115.) Two of these reasons -- non-disclosure of the Revenue Guarantee and allegedly inadequate disclosures concerning the TA arrangement to the Funds' boards (*id.*) -- were explicitly discussed in these supplemental prospectuses. If, as alleged in the Complaint, non-disclosure of these facts in earlier Fund prospectuses were material omissions, then these prospectus supplements were sufficient to put Plaintiffs on inquiry notice

because they disclosed "information suggest[ing] that [Fund prospectuses contained] *any* material misrepresentations [or omissions]." *De la Fuente*, 206 F.R.D. at 381. (internal citations omitted).  Moreover, the prospectus supplements also disclosed CAM's undertaking to review TA fees "to verify that [they] were fairly priced as compared to competitive alternatives." (Compl. ¶ 125.)  This disclosure implicates the other material omission alleged in the Complaint (the allegation that shareholders were not told that CTB was inflating its profits at the expense of shareholders by charging excessive TA fees.)  (Compl. ¶ 115.)  Thus, the prospectus supplements disclosed facts that "relate[] to" all of the alleged material omissions alleged by Plaintiffs. *LC Capital Partners*, 318 F.3d at 155.

Plaintiffs, incredibly, analogize this case to *Newman v. Warnaco Group, Inc.* where the Second Circuit deemed a defendant's statements too "benign" to constitute storm warnings.  335 F.3d 187 (2d Cir. 2003).  In *Warnaco*, there were no investigations by regulatory agencies and prosecutors that, if revealed, would have put plaintiffs on inquiry notice.  *Id.* at 194.  Here, by contrast, the prospectus supplements stated that CAM had "briefed the SEC, the New York State Attorney General and other regulators [concerning the TA arrangement] . . . , as well as the U.S. Attorney who is investigating the matter."  (Compl. ¶ 125.)  Citigroup's March 1, 2004 Form 10K also disclosed these regulatory investigations.  (Opening Br. at 48-49.)  These disclosures of government investigations contradict Plaintiffs' assertion that the prospectus supplements merely provided a "benign" explanation of the TA arrangement.  (Plaintiffs' Opp. at 34-35.)

       3.     The Court Should Consider The Existence Of The 43 Media Articles In Its Inquiry Notice Analysis.

Not only do the disclosures in the Funds' prospectus supplements and Citigroup's Form 10K standing alone constitute sufficient storm warnings, these storm warnings were amplified by 43 media articles concerning the TA matter dated between late November 2003 and March 2,

2004. Contrary to Plaintiffs' assertions, this Court is permitted to take judicial notice of the

existence of these 43 media articles at the motion to dismiss stage and consider them when

determining whether Plaintiffs were on inquiry notice. *See Shah v. Meeker*, 435 F.3d 244, 249-

51 (2d Cir. 2006); *In re Salomon Analyst Winstar Litig.*, 2006 WL 510526, at *4 n.6.

> 4.   <u>Because Plaintiffs Fail To Allege That They Took Any Action To
> Investigate After The Prospectus Supplements, They Are Charged With
> Inquiry Notice Over Two Years Before The Complaint Was Filed.</u>

When faced with storm warnings such as the prospectuses, prospectus supplements, and

news articles discussed above, plaintiffs are under a duty to inquire. *LC Capital Partners*, 318

F.3d at 154. "If the investor makes no inquiry once the duty arises, knowledge will be imputed

as of the date the duty arose." *Id.* Plaintiffs "have the burden of affirmatively pleading facts

demonstrating that they have sued in a timely fashion, as timeliness is an element of the

plaintiffs['] cause of action." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 379 n.63

(S.D.N.Y. 2003) (internal citation and subsequent history omitted).

Plaintiffs do not allege that they undertook *any* investigation or inquiry in response to the

storm warnings discussed above. (*See, e.g.* Compl. ¶¶ 125-26; Plaintiffs' Opp. at 35-37.) Thus,

just as in *Merrill Lynch*, they are charged with inquiry notice sometime between late 2003 and

March 2004. Because, as discussed above, the Rule 10b-5 claim alleging material omissions in

Fund prospectuses does not relate back to prior complaints, this claim is treated for statute of

limitations purposes as filed on June 2, 2006, more than two years after Plaintiffs were on

inquiry notice of their claims, and after the statute of limitations had expired. The decisions in

*Rothman v. Gregor* and *Levitt v. Bear Stearns* do not alter this result because there, unlike here,

the plaintiffs affirmatively pleaded that they undertook an investigation in response to storm

warnings. *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000); *Levitt v. Bear Stearns & Co.*, 340

F.3d 94, 101-04 (2d Cir. 2003).

Based on the foregoing analysis, the Court should ignore the Plaintiffs'
mischaracterization of well-established Second Circuit law, and dismiss their section 10(b) fraud
claims on the independent ground that they are time-barred.

## V.   PLAINTIFFS' CONTROL PERSON ARGUMENTS ARE WRONG.

Finally, Plaintiffs' Opposition does nothing to save their controlling persons claims
against the Individual Defendants under section 20(a) of the Exchange Act.

Plaintiffs' argument that culpable participation need not be pled with particularity,
(Plaintiffs' Opp. at 38 n.27), is disproved by this Court's recent opinion in *In re Yukos Oil
Securities Litigation*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)
(Pauley, J.).  In *Yukos*, this Court noted that the PSLRA imposes a heightened pleading standard
on securities class action claims with a state of mind element.  *Id.* at *23 (discussing 15 U.S.C. §
78u-4(b)(2)).  "Because Section 20(a) requires proof that the defendant acted with a particular
state of mind," the Court concluded, "the PSLRA requires that, like scienter, the 'culpable
participation' element of control person liability must be pled with particularity."  *Id.*; *see also In
re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30,
2004) (Pauley, J.).

*Yukos* likewise disproves Plaintiffs' argument that that the *mens rea* required for culpable
participation is not scienter but rather something "akin to negligence."  (Plaintiffs' Opp. at 39.)
Where a plaintiff fails to allege scienter, he also fails to allege culpable participation.  *See Yukos*,
2006 WL 3026024, at *23 (dismissing section 20(a) claims against one defendant because "the
Complaint fails to allege his scienter"); *see also, e.g., In re Regeneron Pharm., Inc. Sec. Litig.*,
No. 03 Civ 3111 (RWS), 2005 WL 225288, at *11 n.4 (S.D.N.Y. Feb. 1, 2005) (culpable
participation element requires "particularized allegations that defendants acted *with scienter*"

(emphasis added)).  Because the Complaint does not plead scienter with particularity, *see* Part III.C., *supra*, Plaintiffs' section 20(a) claims must be dismissed.

Indeed, Plaintiffs' argument to the contrary would require dismissal of the claim on statute of limitations grounds.  The PSLRA makes clear that a private plaintiff may not maintain a securities claim that includes a state-of-mind element without "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  And decades of precedent make clear that securities fraud claims require "proof of scienter, *i.e.*, wrongful state of mind."  *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  In arguing that the scienter and particularity requirements do not apply to their section 20(a) claims, Plaintiffs' Opp. at 38 n.27, Plaintiffs must mean that their section 20(a) claims are not claims for fraud.  But if that is so, then the section 20(a) claims are not covered by the expanded Sarbanes-Oxley statute of limitations for "claim[s] of fraud, deceit, manipulation, or contrivance."  Without the benefit of that expanded statute of limitations, Plaintiffs' section 20(a) claims are untimely if they were not brought within one year of when Plaintiffs were placed on inquiry notice.  Since the June 2, 2006 Complaint against Jones and Daidone cannot possibly relate back to earlier complaints that did not name them as defendants, and since nobody can deny that the May 31, 2005 SEC Order served as definitive, adequate notice to inform all plaintiffs of their potential claims, the section 20(a) claims against Jones and Daidone would be untimely even if the Court discounted the many earlier notice events in 2003 and 2004.  In short, since there is no relation back against the Individual Defendants under Rule 15, Plaintiffs' current theory of the section 20(a) claim makes the claim even more untimely than it would be under the two-year limitations period discussed above, at Part IV.

28

Finally, Plaintiffs all but concede much of the remainder of the section 20(a) claims. Substantial portions of Plaintiffs' claims against Daidone are foreclosed by Plaintiffs' admission that he left his position at CAM in 2003.  (Plaintiffs' Opp. at 5 n.6; *see also* Opening Br. at 12.) Since Daidone could not conceivably be deemed a controlling person after that, Plaintiffs have effectively conceded their section 20(a) action against him for any of the Corporate Defendants' alleged violations in 2004 and 2005.  And Plaintiffs do not dispute that the controlling person claims, which derive from the claims against the Corporate Defendants, must be dismissed in their entirety if and when the claims against the Corporate Defendants are dismissed.  *See Yukos*, 2006 WL 3026024, at *23.

## CONCLUSION

For the foregoing reasons, the Plaintiffs have failed to state a claim against the Corporate

Defendants under either Section 10(b) of the Exchange Act and Rule 10b-5 promulgated

thereunder or under section 36(b) of the ICA.  Plaintiffs have likewise failed to state a claim

against the Individual Defendants under section 10(b), Rule 10b-5, or section 20(a).  The

Complaint should therefore be dismissed in its entirety as against all Defendants.


Dated: December 19, 2006



                                        Respectfully submitted,


                                        ___/s/_____
                                        Robert B. McCaw (RM-7427)
                                        John C. Rothermich (JR-8594)
                                        WILMER CUTLER PICKERING HALE
                                          AND DORR LLP
                                        399 Park Avenue
                                        New York, NY 10022
                                        Tel: (212) 230-8800
                                        Fax: (212) 230-8888

                                        and

                                        Mark D. Cahn
                                        WILMER CUTLER PICKERING HALE
                                          AND DORR LLP
                                        1875 Pennsylvania Avenue, NW
                                        Washington, DC 20036
                                        Tel: (202) 663-6000
                                        Fax: (202) 663-6363

                                        *Counsel for Defendants Smith Barney*
                                        *Fund Management LLC and*
                                        *Citigroup Global Markets, Inc.*

_____/s/_____

Michael O. Ware (MW-0290)
Ryan P. Farley (RF-2486)
MAYER, BROWN, ROWE & MAW LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

and

Richard J. Morvillo (RM-0441)
Peter H. White (PW-6556)
MAYER, BROWN, ROWE & MAW LLP
1909 K St., NW
Washington, DC 20006
(202) 263-3000

**_Counsel for Defendant_**
**_Lewis E. Daidone_**

_____/s/_____

G. Irvin Terrell, Jr. (GT-3459)
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana St.
Houston, TX 77002-4995
(713) 229-1231

and

Joshua A. Klein
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7700

**_Counsel for Defendant_**
**_Thomas W. Jones_**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------  x
  In re                                             :    05 CV 7583 (WHP)
                                                    :    ECF case
  SMITH BARNEY FUND TRANSFER AGENT                  :
  LITIGATION                                        :
                                                    :
                                                    :
--------------------------------------------------  x
```

## CERTIFICATE OF SERVICE

I, John Rothermich, hereby certify that on December 19, 2006, I served counsel on the attached service list, via Federal Express overnight delivery, with true and correct copies of the Reply Memorandum of Law in Further Support of Motion to Dismiss the Consolidated and Amended Complaint by Defendants Smith Barney Fund Management LLC, Citigroup Global Markets, Inc., Thomas Jones and Lewis Daidone.

Dated: New York, New York
       December 19, 2006

                                        Respectfully submitted,

                                        By: _____
                                            John Rothermich (JR-8594)

In re Smith Barney Fund Transfer Agent Litigation,

**05 CV 7583 (WHP)**

Sandy A. Liebhard, Esq.
U. Seth Ottensoser, Esq.
Joseph R. Seidman, Jr., Esq.
BERNSTEIN, LIEBHARD & LIFSHITZ LLP
10 E. 40th St.
New York, N.Y. 10016
(212) 779-1414
*Lead counsel for lead plaintiffs*

Jules Brody, Esq.
Aaron L. Brody, Esq.
STULL STULL & BRODY
6 East 45th Street
New York, NY 10017
(212) 687-7230
*Counsel for plaintiffs*

Deborah M. Gross, Esq.
LAW OFFICES OF BERNARD M. GROSS P.C.
Suite 450, John Wanamaker Bldg.
Juniper and Market Streets
Philadelphia, PA 19102
(215) 561-3600
*Counsel for plaintiffs*

Joshua M. Lifshitz, Esq.
BULL & LIFSHITZ LLP
18 East 41st Street, 11th Floor
New York, New York 10017
(212) 213-6222
*Counsel for plaintiffs*

Patricia C. Weiser, Esq.
Robert B. Weiser, Esq.
THE WEISER LAW FIRM P.C.
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
(610) 225-2677
*Counsel for plaintiffs*

Joseph H. Weiss, Esq.
Richard A. Acocelli, Esq.
WEISS & LURIE
551 Fifth Avenue
New York, NY 10176
(212) 682-3025
*Counsel for plaintiffs*