UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
IN RE SMITH BARNEY FUND       :    05 Civ. 7583 (WHP)
TRANSFER AGENT LITIGATION     :
                              :    MEMORANDUM AND ORDER
------------------------------X

WILLIAM H. PAULEY III, District Judge:

Plaintiffs Operating Local 649 Annuity Trust ("Local 649"), Jeanne Chilton ("Chilton"), and Jeffrey Weber ("Weber") bring this putative class action against Defendants Smith Barney Fund Management LLC ("SBFM"), Citigroup Global Markets, Inc. ("CGMI"), Thomas Jones ("Jones") and Lewis Daidone ("Daidone") (Jones and Daidone together, the "Individual Defendants"), alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Count I"), Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Count II"), and Section 36(b) of the Investment Company Act of 1940, 28 U.S.C. § 80 (the "ICA") ("Count III"). Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' motion is granted.

BACKGROUND

For the purposes of this motion, the Court accepts the following allegations as true: SBFM and the asset management operations of CGMI are part of Citigroup Asset Management ("CAM"), which provides investment management and advisory services to the 105 funds in the Smith Barney Family of Funds (the "Funds"). (Consolidated and Amended Class Action Complaint, dated June 1, 2006 ("Complaint" or "Compl.") ¶¶ 1-2, 23.) Between September 11, 2000 and May 31, 2005 (the "Class Period"), Local 649 bought shares in the

Smith Barney Capital Preservation Fund, Chilton bought shares in the Citistreet Large Company Stock Fund, and Weber held shares in the Smith Barney Large Cap Growth And Value Fund. (Compl. ¶¶ 14-16.)

In 1999, CAM recommended that the Funds contract with its affiliate (an entity now known as Citicorp Trust Bank ("CTB")) for transfer agent services. (Compl. ¶ 1, 4.) CTB would provide customer service and subcontract all other services to the Funds' existing transfer agent, First Data Investor Services ("FDIS").[1] FDIS would perform the services at a 33.5% to 60% discount, with CAM retaining the majority of the savings. (Compl. ¶ 4.) CAM did not disclose to the Funds either the savings or that FDIS would continue to perform most transfer agent services. (Compl. ¶¶ 5-6.) CAM also failed to disclose a side-letter with FDIS, pursuant to which it agreed to provide investment banking and asset management revenue to various Citigroup entities (the "Revenue Guarantee"). (Compl. ¶ 6.) Several of the Funds entered into these contracts with CTB.

Throughout the Class Period, the Funds issued public filings containing disclosures about their contracts for transfer agent services (Compl. ¶¶ 11, 114, 117) as well as details about the actual fees charged (Declaration of John Rothermich, dated October 3, 2006, ¶¶ 4-5 Exs. C: Excerpt from Smith Barney Trust II Prospectus, filed with the Securities and Exchange Commission ("SEC") on March 15, 2002 & D: Smith Barney Capital Preservation Fund Annual Report (Form N30-D), filed with the SEC on December 26, 2002 at 9, 12). The prospectuses disclosed neither the alleged profit-inflating motive behind the arrangement nor the Revenue Guarantee. (Compl. ¶ 11.)

---

[1] PFPC, Inc. acquired First Data Investor Services in December 1999. This Court will use "FDIS" to refer to both companies.

2

Daidone, a Senior Vice President and director of SBFM and a managing director of CGMI, negotiated the contracts at issue, presented the proposals to the Funds' boards, and signed the Funds' prospectuses during the Class Period. (Compl. ¶ 7.) Jones, CEO of CAM, recommended CTB's proposal to the Funds. (Compl. ¶ 8.)

In 2001 and 2002, the Funds' trustees created several new funds, among them the Smith Barney Capital Preservation Fund. On CAM's recommendation, all of these funds entered into contracts with CBT and FDIS on the same terms as the already-existing Funds. (Compl. ¶¶ 98-102.)

Plaintiffs claim that they relied on the alleged omissions in the prospectuses and were injured because (1) Defendants "paid tens of millions of dollars more for transfer agent services than were necessary;" (2) they purchased shares in the Funds at distorted Net Asset Value ("NAV"); and (3) they suffered lost opportunity damages because the money paid in excessive fees could have been invested for further gains. (Compl. ¶¶ 136-68.)

DISCUSSION

I. Motion to Dismiss Standard

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). Dismissal is proper where a plaintiff fails to

plead the basic elements of a cause of action. See Wright v. Giuliani, No. 99 Civ. 10091 (WHP), 2000 WL 777940, at *4 (S.D.N.Y. June 14, 2000). The issue on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

II. Securities Fraud Claims against All Defendants

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege, inter alia, a material misrepresentation or omission. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005). Elements of securities fraud claims must be pleaded with particularity. Fed. R. Civ. P. 9(b); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994).

Where the total amount of fees paid by a mutual fund for various services is disclosed, other information about the fees, such as their allocation or the transfer agent's profit margin, is not material. See, e.g., In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *9 (S.D.N.Y. Apr. 18, 2006) ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . . The allocation of the fees is immaterial, because it could have no effect on share price."); Geiger v. Solomon-Page Group, Ltd., 933 F. Supp. 1180, 1187 (S.D.N.Y. 1996) (omission of fact that selling shareholders were

employed by issuers' underwriters was immaterial as a matter of law). An individual who knows the amount of fees paid by a fund can compare it to its competitors in deciding whether to invest. See Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 609 (6th Cir. 2005) ("Given that all of the information necessary to compare the different class shares was in the prospectuses, the alleged omissions . . . are not material."). This is because it is the amount of fees, not their allocation or a transfer agent's profit margin, that is relevant to the price and value of the funds. In re Morgan Stanley, 2006 WL 1008138, at *9 ("Unlike an ordinary share of stock traded on the open market, the value of a mutual fund share is calculated according to a statutory formula. Share price is a function of [NAV], the pro-rata share of assets under management, minus liabilities such as fees.").

It is undisputed that Defendants disclosed the amount of fees paid by the Funds. Thus, Plaintiffs were in possession of all material information; i.e., they knew the value of the Funds. See Benzon, 420 F.3d at 609. The allocation of—or motivation behind—the fee arrangement is immaterial to a decision to purchase fund shares "because it could have no effect on share price." In re Morgan Stanley, 2006 WL 1008138, at *9.

Plaintiffs' reliance on Siemers v. Wells Fargo & Co., No. 05 Civ. 04518 (WHA), 2006 WL 2355411, at *18 (N.D. Cal. Aug. 14, 2006), is misplaced. In that case, while the total fees were disclosed, the district court concluded that the kickback scheme undergirding the fees tainted investment advice and therefore was material to investors. Siemers, 2006 WL 2355411, at *18. Here, Plaintiffs do not allege that CAM's undisclosed profits resulted in tainted investment advice to Plaintiffs or the Funds. Accordingly, Plaintiffs have failed to state a claim under Section 10(b) and Rule 10b-5, and Count I is dismissed.

III. Section 20(a) Claims against the Individual Defendants

Section 20(a) of the Exchange Act provides for control person liability "to the same extent as" the controlled entity that committed the violation. 15 U.S.C. § 78t(a). As stated above, Plaintiffs have failed to establish any underlying primary violation of federal securities law. Accordingly, Count II is also dismissed. See Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 501 (S.D.N.Y. 2005) (dismissing § 20(a) claim where plaintiffs failed to establish any underlying liability); In re Merrill Lynch & Co. Research Reports Secs. Litig., 272 F. Supp. 2d 243, 264 (S.D.N.Y. 2003) (same).

IV. ICA § 36(b) Claims against SBFM

The Second Circuit has characterized an action under § 36(b) as a "private right of derivative action." Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 433 (2d Cir. 2002); see also In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 597 (S.D.N.Y. 2006) (collecting cases and noting that while § 36(b) has no demand requirement, it must be pleaded as a derivative claim); In re Dreyfus Mut. Funds Fee Litig., 428 F. Supp. 2d 357, 359-60 (W.D. Pa. 2006) (finding that § 36(b) claims are a "subclass of . . . traditional derivative suits," with no demand requirement); cf. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991) (finding no demand requirement in § 36(b) because the statute expressly allows shareholders to bring such an action "on behalf of" the company) (citing Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 540 (1984)).

That being said, whether Plaintiffs' claims are direct or derivative in nature is determined by the law of state in which the funds are incorporated. See In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *3 (S.D.N.Y. Oct. 19, 2005) (citing Kamen, 500 U.S. at 108-09; In re Dreyfus Aggressive Growth Mut. Fund

6

Litig., No. 98 Civ. 4318 (HB), 2000 WL 10211, at *4 (S.D.N.Y. Jan. 6. 2000) (same). It is uncontested that the Funds were formed either as Maryland corporations or Massachusetts business trusts.

Under both Maryland and Massachusetts law, a suit is derivative in nature if the shareholders' injury is not "distinct" from that suffered by the corporation. See, e.g., In re AllianceBernstein, 2005 WL 2677753, at *3-4 (citing Strougo v. Bassini, 282 F.3d 162, 170 (2d Cir. 2002) ("[T]he question the Maryland courts ask is not whether the shareholder suffered injury; if a corporation is injured[,] those who own the corporation are injured too. The inquiry, instead, is whether the shareholders' injury is 'distinct' from that suffered by the corporation.") and Jackson v. Stuhlfire, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990) (holding that, under Massachusetts law, indirect harms suffered by all shareholders must be brought derivatively)). Accordingly, "if a plaintiff alleges . . . breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor." In re AllianceBernstein, 2005 WL 2677753, at *4 (internal citations and quotation marks omitted).

Plaintiffs have alleged a harm to the Funds—the excessive fees paid by the Funds—but no distinct harm to themselves. Their allegations that "Defendants paid tens of millions of dollars more for transfer agent services than were necessary" and that the money paid in excessive fees could have been invested for further gains (Compl. ¶¶ 136, 138) demonstrate that all alleged damages stem from the purportedly excessive fees paid to CTB by the Funds. In re AllianceBernstein, 2005 WL 2677753, at *4 (dismissing a § 36(b) claim on the ground that "any decrease in shareholder equity was simply the predictable consequence of a reduction in the overall value of the Funds. . . . [T]he Amended Complaint contains no evidence demonstrating . .

7

. any . . . type of distinct injury"); In re Salomon Smith Barney, 441 F. Supp. 2d at 594-97 (same). Plaintiffs also assert that they purchased the Funds' shares at "distorted" NAVs (Compl. ¶ 137), because the NAV would have been higher absent the excessive fee payments. However, this allegation is simply a re-wording of the excessive fee claim—the NAV is a function of the Funds' total assets under management—and does not state a distinct injury. Accordingly, Count III is dismissed with leave to replead as a derivative claim.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket No. 69) is granted. Counts I and II are dismissed with prejudice. Plaintiffs may replead Count III by October 19, 2007.

Dated: September 26, 2007
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[2] Defendants seek dismissal of Plaintiffs' Section 10(b) and Rule 10b-5 claim on the same grounds. This Court need not address that argument because, as discussed above, Plaintiffs have failed to allege facts sufficient to state a claim under Section 10(b) and Rule 10b-5.

Case 1:05-cv-07583-WHP   Document 82   Filed 09/26/07   Page 9 of 9

*Counsel of Record:*

Sandy A. Liebhard, Esq.
U. Seth Ottensoser, Esq.
Joseph R. Seidman, Jr., Esq.
Bernstein, Liebhard & Lifshitz LLP
10 East 40th Street
New York, NY 10016
*Lead Counsel for Lead Plaintiffs*

Michael O. Ware, Esq.
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, NY 10019
*Counsel for Defendant Daidone*

G. Irvin Terrell, Jr., Esq.
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
*Counsel for Defendant Jones*

Robert B. McCaw, Esq.
WilmerHale
399 Park Avenue
New York, YN 10022
*Counsel for Defendants Smith Barney Fund Management LLC and Citigroup Global Markets, Inc.*