**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
| --- | --- |
| In re | 05 Civ. 7583 (WHP) |
|  | ECF case |
| SMITH BARNEY TRANSFER AGENT LITIGATION |  |
|  |  |
| This document relates to: all actions |  |

## REPLY IN FURTHER SUPPORT OF RENEWED MOTION TO DISMISS THE CONSOLIDATED AND AMENDED COMPLAINT

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

*Counsel for Defendants Smith Barney Fund*
*Management LLC and Citigroup Global*
*Markets Inc.*

BAKER BOTTS LLP
One Shell Plaza
910 Louisiana St.
Houston, TX 77002
(713) 229-1231

*Counsel for Defendant*
*Thomas W. Jones*

SCHULTE ROTH & ZABEL LLP
1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
(202) 729-7470

*Counsel for Defendant*
*Lewis E. Daidone*

# TABLE OF CONTENTS

**I. PLAINTIFF LACKS STANDING TO ASSERT SECTION 10(b) CLAIMS** .................1

    A.   Plaintiff's Claims Are Derivative, Not Direct ....................................................1

    B.   Plaintiff Lacks Standing To Assert Claims Based On Securities It Did Not Own .............6

    C.   "Holder" Claims Are Not Permitted Under Section 10(b) ................................................11

**II. PLAINTIFF'S CLAIMS ARE TIME-BARRED** ................................................12

    A.   The Complaint Does Not Relate Back To Any Earlier Complaint....................................12

    B.   The Complaint Was Filed More Than Two Years After A Reasonably Diligent Plaintiff Would Have Discovered Facts Constituting The Alleged Violation..................12

**III. THE ALLEGATIONS AGAINST JONES FALL FAR SHORT OF CONSCIOUS RECKLESSNESS AND DO NOT SUPPORT AN INFERENCE THAT HE HAD AN INTENTION TO DECEIVE, MANIPULATE, OR DEFRAUD** ..............................................................................15

    A.   Plaintiff's Reliance On The Group Pleading Doctrine Is Erroneous ................................16

    B.   Plaintiff's Access-To-Information Theory Is Inapplicable Because There Is No Allegation That Jones Participated In Making The Public Statements.............................17

    C.   Plaintiff Fails To Allege Jones Engaged In Deliberate Illegal Activity ...........................18

    D.   The Casey Opinion Cannot Support An Inference Of Scienter With Respect To Alleged Misrepresentations Not At Issue In The SEC Suit................................................19

    E.   An Inference That Jones Was Consciously Reckless With Respect To Statements He Never Reviewed Or Approved Is Not Compelling ......................................................20

**CONCLUSION** ..............................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Abrahamson v. Fleschner*,
    568 F.2d 862 (2d Cir. 1977)...............................................................................11

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................................9

*Amorosa v. Ernst & Young LLP*,
    No. 03 Civ. 3902, 2009 U.S. Dist. LEXIS 112633 (S.D.N.Y. Nov. 30, 2009) ......................11

*Birnbaum v. Newport Steel Corp.*,
    193 F.2d 461 (2d Cir. 1952)...............................................................................11

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)........................................................................................6, 11

*Bond Opportunity Fund v. Unilab Corp.*,
    No. 99 Civ. 11074, 2003 WL 21058251 (S.D.N.Y. May 9, 2003),
    *aff'd*, 87 F. App'x 772 (2d Cir. 2004)..................................................................16

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994).........................................................................................20

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)..............................................................................10

*City of Sterling Heights Police & Fire Retirement System v. Abbey National, PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006)..................................................................18

*Forsythe v. Sun Life Finance, Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006)..................................................................1, 3

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp.*,
    No. 00-Civ-8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)................................16

*Gunther v. Capital One, N.A.*,
    No. 09-cv-2966, 2010 U.S. Dist. LEXIS 35465 (E.D.N.Y. Apr. 8, 2010).......................10

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003)................................6, 9

*Hoffman v. USB-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008)...........................................................................6, 10

*Hunt v. Alliance North American Government Income Trust, Inc.*,
    159 F.3d 723 (2d Cir. 1998)...............................................................................................5

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004).............................................................................19

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
    No. 04 Civ. 4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ...........................9

*In re Atlas Air Worldwide Holdings Inc. Securities Litigation*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004).............................................................................18

*In re BISYS Securities Litigation*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005).............................................................................16

*In re Blech Securities Litigation*,
    No. 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ...........................9

*In re Cross Media Marketing Corp. Securities Litigation*,
    314 F. Supp. 2d 256 (S.D.N.Y. 2004).............................................................................16

*In re Dreyfus Aggressive Growth Mutual Fund Litigation*,
    No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ...........................6

*In re Global Crossing, Ltd. Securities Litigation*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)...............................................................................8

*In re Grand Theft Automobile Video Game Consumer Litigation*,
    No. 06-MD-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006).......................9, 10

*In re MobileMedia Securities Litigation*,
    28 F. Supp. 2d 901 (D.N.J. 1998) ...................................................................................10

*In re Mutual Funds Investment Litigation*,
    384 F. Supp. 2d 845 (D. Md. 2005)........................................................................5, 11, 19

*In re Pfizer Inc. Securities Litigation*,
    584 F. Supp. 2d 621 (S.D.N.Y. 2008).............................................................................17

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................................9

*In re Refco, Inc. Securities Litigation*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)....................................................................17

*In re Salomon Analyst Level 3 Litigation*,
350 F. Supp. 2d 477 (S.D.N.Y. 2004).....................................................................8

*In re Salomon Smith Barney Mutual Fund Fees Litigation*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006)....................................................................10

*In re Scholastic Corp. Securities Litigation*,
252 F.3d 63 (2d Cir. 2001)....................................................................................18

*In re Smith Barney Fund Transfer Agent Litigation*,
No. 05 Civ 7583, 2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007),
*aff'd in part, vacated in part,* 595 F.3d 86 (2d Cir. 2010)...................................1, 2

*In re Smith Barney Transfer Agent Litigation*,
No. 05 Civ. 7583, 2006 WL 991003 (S.D.N.Y. Apr. 17, 2006),
*aff'd, Chilton v. Smith Barney Fund Mgmt. LLC*, No. 07-5257-CV,
2010 WL 521023 (2d Cir. Feb. 16, 2010)............................................................7, 8

*In re Towers Finance Corp. Noteholders Litigation*,
996 F. Supp. 266 (S.D.N.Y. 1998)........................................................................19

*In re Van der Moolen Holding N.V. Securities Litigation*,
405 F. Supp. 2d 388 (S.D.N.Y. 2005)...................................................................16

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)..................................................................................15

*King County, Washington v. IKB Deutsche Industriebank AG*,
No. 09 Civ. 8387, 2010 U.S. Dist. LEXIS 48999 (S.D.N.Y. May 18, 2010)...........6

*Lewis v. Casey*,
518 U.S. 343 (1996)................................................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993)..............................................................................9

*Merck & Co. v. Reynolds*,
130 S. Ct. 1784 (2010).....................................................................................12, 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006)................................................................................................11

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC,*
No. 08 Civ. 5093, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ..............................9

*Novak v. Kasaks,*
216 F.3d 300 (2d Cir. 2000)..................................................................17, 18

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC,*
595 F.3d 86 (2d Cir. 2010)....................................................................3

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999)..........................................................................9

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce,*
-- F. Supp. 2d --, No. 08 Civ. 8143, 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010)............15, 18

*S.E.C. v. Jones,*
No. 05 Civ. 7044(RCC), 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006) ................................19

*S.E.C. v. PIMCO Advisors Fund Management LLC,*
341 F. Supp. 2d 454 (S.D.N.Y. 2004)..........................................................5

*Siemers v. Wells Fargo & Co.,*
No. C 05-04518, 2006 WL 2355411 (N.D. Cal. 2006) ................................................5

*Stoneridge Investments Partners, LLC v. Scientific-Atlanta, Inc.,*
552 U.S. 148 (2008).......................................................................15, 20

*Strougo v. Bassini,*
282 F.3d 162 (2d Cir. 2002)..................................................................1

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.,*
No. 05 Civ. 1898, 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005) ............................................10

*Tedesco v. Mishkin,*
689 F. Supp. 1327 (S.D.N.Y. 1988)............................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007).........................................................................20

*Yung v. Lee,*
160 F. App'x 37 (2d Cir. 2005) .............................................................17

## STATUTES

15 U.S.C. § 78j(b)...........................................................................6

28 U.S.C. § 1658(b) ...................................................................................................................12

Defendants Citigroup Global Markets Inc., Smith Barney Fund Management LLC, Thomas W. Jones, and Lewis E. Daidone (collectively, "Defendants") respectfully submit this reply in further support of their renewed motion to dismiss the consolidated and amended complaint ("Complaint").

## ARGUMENT

## I. PLAINTIFF LACKS STANDING TO ASSERT SECTION 10(b) CLAIMS

### A. Plaintiff's Claims Are Derivative, Not Direct

This Court has already found in the context of Plaintiff's Section 36(b) claim under the Investment Company Act that the distinction between a direct and a derivative claim turns, under relevant State law, on whether the plaintiff shareholder alleges an injury distinct from any injury to the underlying corporation. *See In re Smith Barney Fund Transfer Agent Litig.*, No. 05 Civ. 7583, 2007 WL 2809600, at *4 (S.D.N.Y. Sept. 26, 2007) (Pauley, J.) ("Under both Maryland and Massachusetts law, a suit is derivative in nature if the shareholders' injury is not 'distinct' from that suffered by the corporation"), *aff'd in part, vacated in part*, 595 F.3d 86 (2d Cir. 2010); *see also Strougo v. Bassini*, 282 F.3d 162, 170 (2d Cir. 2002) (under Maryland law courts ask "whether the shareholders' injury is 'distinct' from that suffered by the corporation"); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (under Massachusetts law a cause of action is derivative if the shareholder is harmed "because the corporate entity has been injured"). Plaintiff's Section 10(b) claim alleges no injury distinct from the injury allegedly suffered by the Funds due to the allegedly improper transfer agent fees because Plaintiff's only allegation of injury is that its shares lost value when the Funds themselves lost money. Compl. ¶¶ 136-38. This Court's holding concerning the derivative nature of the injury alleged under State law likewise applies to Plaintiff's Section 10(b) claim such that this securities fraud claim should be dismissed.

Plaintiff's opposition brief does not address, as it must, the relevant standard under State law, which confirms this injury is derivative and not direct. That test requires that Plaintiff allege an injury that is "distinct" from that suffered by the Funds. *See Smith Barney*, 2007 WL 2809600, at *4. Instead of citing a case applying Massachusetts or Maryland law, Plaintiff parrots the elements of Section 10(b), and then asserts that the "real difference" between derivative and direct claims is that "derivative allegations sound in mismanagement, whereas federal securities claims, as here, relate to public misstatements and/or omissions." Opp. at 19; *see also id.* at 15 (suggesting that claims are direct because "this [is] a 10(b) case" and "Plaintiff states a claim under Section 10(b)").

Plaintiff's opposition brief underscores the derivative nature of the injury pleaded under relevant State law. For example, Plaintiff contends that Defendants engaged in a "self-interested transaction" that caused injury to "*the Funds and their shareholders*," Opp. at 3 (emphasis added), that Defendants' actions "siphoned money out of *the Funds* and increased *the Funds'* expenses," *id.* at 7 (emphasis added), and that "Class Members were injured when Defendants diverted money *from the Funds*," *id.* at 22 (emphasis added). These are derivative injuries *to the Funds*. Even Plaintiff's alleged "lost opportunity" damages are non-distinct and thus derivative insofar as they are shared on a pro-rata basis by all investors and flow from an injury to the Funds. Plaintiff maintains that its lost opportunity damages are not "speculative," and therefore are recoverable, because the damages alleged can be calculated by direct reference to the return that would have been earned on the money had it remained *in the Funds*, thereby increasing the value *of the Funds*. Opp. at 19-20. Such injuries to Plaintiff as a shareholder are derivative because the Funds themselves allegedly lost the opportunity to make higher returns, and the Funds' shareholders, in turn, only lost this opportunity through their pro rata investment in the

Funds. Plaintiff's brief recognizes the derivative nature of the injury. *See id.* at 7 ("Plaintiff and the Class also suffered definable lost opportunity damages because the amounts wrongfully removed would have grown *at the rate of the particular fund*" (emphasis added)); *id.* at 19-20 ("Plaintiffs' lost opportunity damages are the amount of money removed *from each fund* times the return rate over the relevant time period." (emphasis added)).

Plaintiff's other arguments should not alter the conclusion that the injury that Plaintiff allegedly incurred is not unique from the injury to the Funds. ***First***, Plaintiff contends that because the Second Circuit noted in its opinion on appeal that Plaintiff "seeks damages that inure to its own benefit" it must have alleged a "special" direct injury. Opp. at 18 (quoting *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 98 (2d Cir. 2010)). But the fact that Plaintiff seeks damages that "inure" to its own benefit is precisely the reason why its claim must be dismissed as an improper direct claim. Even assuming that Plaintiff has been injured, it alleges only *derivative* injuries—an issue the Second Circuit did not address.

***Second***, Plaintiff claims that it must have alleged a distinct injury because some members of the putative class—namely, those who have sold their Fund shares—will not be made whole by the distribution to the Funds resulting from the recently-approved SEC Distribution Plan. *See* Opp. at 15, 19. This argument is at best a policy dispute with the limits of a derivative recovery. Derivative suits, by definition, benefit the company, a benefit which "inures" to current shareholders and not former shareholders. *See Forsythe*, 417 F. Supp. 2d at 112, n.15 ("The plaintiffs also argue that a direct action is necessary to vindicate the rights of class members no longer holding their shares. This argument is unavailing because such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy (because it was the

fund that was injured directly), not the individual shareholders").  Plaintiff's tacit

acknowledgement that current shareholders of the Funds will be compensated by disgorgement

pursuant to the SEC settlement itself shows that the claims here are derivative.

Since Defendants filed their opening brief, the injury to the Funds has been compensated,

and current shareholders have benefitted derivatively from an increase in the value of the Funds.

On May 12, 2010, the SEC issued an order directing the disbursement of the disgorgement-

related portions of the Fair Fund, totaling over $110 million, to the custodians of the Funds or

their successors that engaged CTB as transfer agent and paid fees between October 1, 1999, and

November 30, 2004, to be paid to such funds in proportion to the fees paid, subject to certain

adjustments.  *See* Order Directing Disbursement of Fair Fund, available at: http://www.sec.gov

/litigation/admin/2010/34-62088.pdf; *see also* Order Approving Plan of Distribution (April 15,

2010), available at: http://www.sec.gov/litigation/admin/2010/34-61917.pdf.  The custodians

disbursed the funds to the respective mutual funds (except, where noted, the amounts to be

reimbursed to Legg Mason Partners Fund Advisor, LLC ("Legg Mason"), which had advanced

the amount of this disgorgement to the listed funds) on May 26, 2010.  *See* accompanying

Declaration of Lori A. Martin, dated June 14, 2010 ¶¶ 2-3, and Exhibits A and B.  One of the

funds to which Legg Mason had previously advanced disgorgement amounts was the Capital

Preservation Fund, *id.* at ¶ 2; Ex. A, at p. 5, in which Plaintiff allegedly purchased (*see*

Certification of Operating Engineers Local 649 Annuity Trust Fund, attached as Exhibit 1 to the

Declaration of Joseph R. Seidman (Dkt. No. 49)).[1/]

---

[1/]  The extent to which Plaintiff has been derivatively compensated from the distribution of funds pursuant to the SEC Distribution Plan would require Plaintiff to update its PSLRA certification to reflect current shareholdings.  According to its certification from December 2005, Plaintiff added to its overall shareholding in Capital Preservation Fund throughout the purported class period (*see* Certification of Operating Engineers Local 649 Annuity Trust Fund, attached as

Finally, none of the cases cited by Plaintiff applies the relevant Maryland or Massachusetts State law regarding derivative claims, and in any event none expressly "held" (Opp. at 16) that shareholders had properly stated direct claims under the circumstances applicable here. For instance, the court in *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998) does not address whether plaintiffs had pleaded a direct or a derivative loss. *Hunt* is distinguishable for additional reasons as well; notably, the injury suffered by the plaintiffs was caused by a misrepresentation of the intrinsic value of the underlying investment, based on a misleading representation that a currency risk could be hedged. *Id.* at 724-26. There are no such allegations here.

None of the other cases cited by Plaintiff addresses whether the alleged losses gave rise to derivative claims. *E.g.*, *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2006 WL 2355411, at *5, 9, 11-13 (N.D. Cal. 2006) (as to Section 10(b) claims, defendants made arguments about duty to disclose, materiality, scienter, loss causation, damages, and statute of limitations); *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 853 (D. Md. 2005) ("The motions to dismiss raise issues of holder standing, the reach of scheme liability, reliance, causation, and scienter"). In addition, in *Siemers*, the plaintiff had alleged a non-derivative harm that was not suffered by the funds themselves. He allegedly received "biased advice from broker-dealers when he thought he was getting impartial recommendations." 2006 WL 2355411 at *1. Plaintiff's other cases (Opp. at 17, n.12) are likewise inapposite. *See S.E.C. v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 458 (S.D.N.Y. 2004) (plaintiffs were not even shareholders—plaintiff was the SEC—such that the court did not address the relevant question whether *shareholders* could bring

---

Exhibit 1 to the Declaration of Joseph R. Seidman (Dkt. No. 49)), and Plaintiff has provided no record of any sales post-dating the end of the alleged class period. *See also id.* (certification of Jeffrey Weber showing no sales transactions).

direct Section 10(b) claims); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2003 WL 21672085, at *1 (S.D.N.Y. July 16, 2003) (plaintiff did not allege a Section 10(b) violation, and claimed damages based on the alleged improper valuation of fund assets that *inflated* net asset value; opinion addressed motion for class certification, to appoint a class representative, and to appoint class counsel); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) (addressing class certification motion).

 **B.**  **Plaintiff Lacks Standing To Assert Claims Based On Securities It Did Not Own**

   There is no dispute that the named plaintiffs did not purchase or sell securities issued by 102 of the 105 distinct Funds. *See* Opp. at 14; Compl. ¶¶ 14-16.[2/] Claims based on injury to Funds in which no named plaintiff owned shares should be dismissed for lack of standing. *See* Defs. Br. at 16-18. A plaintiff "lacks standing to bring a claim if it did not suffer the injury that gives rise to that claim." *King County, Washington v. IKB Deutsche Industriebank AG*, No. 09 Civ. 8387, 2010 U.S. Dist. Lexis 48999, at *3 (S.D.N.Y. May 18, 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). This requirement is a question of Article III and statutory standing in the context of a securities claim under Section 10(b), which arises only "in connection with the purchase or sale of any security," 15 U.S.C. § 78j(b). *See, e.g.*, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975); *Hoffman v. USB-AG*, 591 F. Supp. 2d 522, 530-31 (S.D.N.Y. 2008). As numerous courts in this Circuit have held, a plaintiff who did not purchase a particular security cannot have suffered any injury in connection with that security, and cannot state a claim under Section 10(b). *See, e.g.*, *Hoffman*, 591 F. Supp. 2d at 531 ("With regard to the sixty-eight funds of which Plaintiffs own no shares, Plaintiffs do not have standing

---

   [2/] Defendants do not dispute—assuming other requirements are met—that Plaintiff has standing to assert claims *based on shares of securities it actually purchased or sold during the class period*.

to assert any claims because Plaintiffs cannot satisfy the standing requirements") (citation omitted); *see also* Defs. Br. at 16-18 (citing cases).

Plaintiff cites no authority from this Circuit addressing standing to bring claims in connection with securities it did not purchase. Plaintiff's mere assertion that "there is no question that Plaintiff and the other named plaintiffs have standing to proceed with this litigation," Opp. at 9; *see also id.* at 8 (setting forth standard for Article III standing), is insufficient to demonstrate Article III standing or the express statutory standing requirement set out in Section 10(b). *See* Defs. Br. at 16-18.

Although standing requirements preclude Plaintiff's assertion of claims in connection with securities it did not purchase, Plaintiff asks the Court to defer ruling on standing until class certification. Plaintiff asserts (1) that this Court has already decided that the standing inquiry should be addressed on motion for class certification, *see* Opp. at 10; (2) that certain district courts have supposedly treated standing "as an issue for class certification," *see id.* at 10-13; and (3) that the Court should make an exception to constitutional and statutory standing requirements based on policy grounds, to permit Plaintiff to act as a class representative for owners of securities Plaintiff did not own, *see id.* at 13-14. Case law in this Circuit does not support these arguments.

***First***, this Court has neither considered nor rejected the argument that Local 649 lacks standing to bring claims based on injuries that it did not suffer. The Court's memorandum and order appointing a lead plaintiff was limited to the designation of Local 649 as the "most adequate lead plaintiff." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006 WL 991003, at *6 (S.D.N.Y. Apr. 17, 2006), *aff'd, Chilton v. Smith Barney Fund Mgmt. LLC*, No. 07-5257-CV, 2010 WL 521023 (2d Cir. Feb. 16, 2010). Appointment of most adequate lead

plaintiff, a motion on which Defendants take no position, identified the plaintiff with the greatest financial stake in the litigation, and did not address whether Local 649 has constitutional and statutory standing to assert any of the claims in the action. *See In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) ("While plaintiffs are correct that lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit, the selection of *lead* plaintiffs does not remove the basic requirement that at least one *named* plaintiff must have standing to pursue each claim alleged." (emphasis in original)). Consistent with the recognition that standing may well require a named plaintiff who purchased shares of each of the 105 Funds, the Court indicated that additional named plaintiffs, if any, should be included in the consolidated and amended complaint. *See In re Smith Barney Transfer Agent Litig.*, 2006 WL 991003 at *4 ("If, in fact, every Fund requires representation in the class leadership, the lead plaintiff may include additional named plaintiffs in this consolidated action"); *accord In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (permitting lead plaintiff to add named plaintiffs to consolidated and amended complaint). Local 649 may have the largest stake in the case among those that have sued in an action, and is thus the presumptive lead plaintiff under the PSLRA. But lead plaintiff status does not confer standing on Local 649 to pursue claims that no named plaintiff has standing to bring.

**Second**, Local 649 contends that the Court should treat standing "as an issue for class certification" and defer ruling because Local 649 may be adequate pursuant to Rule 23 to serve as a *class representative* on behalf of all Funds. Plaintiff's argument conflates the role of a class representative with that of a named plaintiff. Class representative status cannot confer *standing* to bring a claim in the first place. *See* Defs. Br. at 16-18. Plaintiff's cases addressing

appointment of class representatives under Rule 23 are not controlling on the standing issue that is the subject of this motion.[3/] Judge Baer so held, in *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, No. 08 Civ. 5093, 2010 WL 1172694, at *7 & n.8 (S.D.N.Y. Mar. 26, 2010), in which he addressed the same cases Plaintiff cites here, and explained that such cases under Rule 23 provide no support for a threshold *standing* argument.

Plaintiff's other cases fare no better. Local 649 cites *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06-MD-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006), in which the plaintiffs alleged that sale of a video game with an inappropriate content rating violated the consumer protection laws of all 50 states. The defendants moved to dismiss claims based on the laws of states where named plaintiffs did not purchase the video game for lack of standing, and the plaintiffs argued that the court should defer its ruling on standing until class certification. Because ruling on the standing challenge would require a complex choice of law analysis and potential application of numerous state statutes, Judge Kram agreed to defer ruling on standing, relying on the Supreme Court's decisions in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (reaching class certification before Article III issues because class certification issues were "logically antecedent" and dispositive), and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (same).

But the *Ortiz/Amchem* exception does not apply to a "straightforward securities case," as Judge Kram recognized in *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, No. 04

---

[3/] *See* Opp. at 12 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003) (adjudicating motion to certify a class); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) (adjudicating, *inter alia*, motion to modify class certification order); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 207-08 (S.D.N.Y. 1995) (adjudicating motion to certify a settlement class); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55-57 (S.D.N.Y. 1993) (adjudicating motion to certify a class); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (same)).

Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005) (holding that plaintiffs lacked standing to sue on behalf of mutual funds in which they did not invest). *See In re Grand Theft Auto*, 2006 WL 3039993, at *2 (distinguishing *AllianceBernstein*); *see also Gunther v. Capital One, N.A.*, No. 09-cv-2966, 2010 U.S. Dist. Lexis 35465, at *23-24 (E.D.N.Y. Apr. 8, 2010) (siding with "prevailing interpretation by courts in this Circuit" and dismissing claim for lack of standing); *Hoffman*, 591 F. Supp. 2d at 531 ("Significant authority in this circuit has limited *Ortiz* (and *Amchem*) to the unique context of global-mass settlements"); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 606 (S.D.N.Y. 2006) ("The better reasoned decisions favor the traditional test, so that Article III standing is determined first, before proceeding to the issue of determining the class").[4/]

**Third**, Plaintiff offers prudential considerations as to why standing should be overlooked in this case; namely, Plaintiff avers that it "could always add scores of additional named plaintiffs to represent each fund." Opp. at 13. Assuming that Local 649 knows of other potential named plaintiffs who purchased or sold shares of other Funds during the purported class period and who are inclined to bring suit, it fails to explain why such additional claims brought by such proper named plaintiffs would create "substantial inefficiencies," *id.*, or why additional named

_____

[4/] Plaintiff also cites *In re MobileMedia Securities Litigation*, 28 F. Supp. 2d 901 (D.N.J. 1998), but the issue there was whether a purchaser of stocks could bring claims on behalf of purchasers of notes from the same issuer, *see id.* at 911 n.7, not whether a purchaser of one mutual fund may bring suit on behalf of purchasers of other issuers. *Compare Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898, 2005 WL 2148919, at *4, 7-8 (S.D.N.Y. Sept. 6, 2005) (holding that plaintiff had standing to assert claims on behalf of purchasers of different classes of securities from the *same* issuer, but noting that a "named plaintiff in a class action that purchased securities from one issuer does not have standing to bring claims on behalf of purchasers of securities from a *different issuer*" (emphasis in original)). Finally, Plaintiff cites *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007), but the only standing issue in that case was whether *any* named plaintiff had constitutional standing. *See id.* at 240-41 (noting that the court previously remanded because district judge had not addressed standing objections).

plaintiffs would necessarily modify this Court's appointment of *lead* plaintiff under the PSLRA, *see id.* at 14. Plaintiff's suggestion that the mere filing of claims by additional plaintiffs who invested in other Funds would "undermine" its (or its counsel's) ability to serve as lead plaintiff or that Congress intended the PSLRA's lead plaintiff provision to inhibit legitimate plaintiffs from bringing their claims does not make sense. In any event, even if "inefficiencies" were to result from the addition of other plaintiffs, this consideration cannot overcome the standing requirements under Article III and *Blue Chip Stamps*. *See* Defs. Br. at 16-18.

**C.      "Holder" Claims Are Not Permitted Under Section 10(b)**

Under settled law, investors who merely held shares during a relevant class period, but did not purchase or sell, have no private right of action under Section 10(b) of the Exchange Act. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 80-82 (2006); *Blue Chip Stamps*, 421 U.S. 723. All such claims—such as that of named plaintiff Weber—should be dismissed.

Citing the decision of Judge Motz in *In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 845, 854 (D. Md. 2005), Plaintiff argues that *Blue Chip Stamps* and *Dabit* are distinguishable. But courts in this Circuit have repeatedly applied *Blue Chip Stamps* and *Dabit* for the proposition that Defendants advance here, namely that holders during the class period lack statutory standing to assert a Rule 10b-5 violation. *See, e.g.*, *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977) ("[T]he requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities."); *Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902, 2009 U.S. Dist. Lexis 112633, at *40-41 (S.D.N.Y. Nov. 30, 2009) (rejecting "holder claims" premised on alleged misrepresentations made after plaintiff purchased shares); *see also Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) (only actual purchasers and sellers have standing in a 10b-5

- 11 -

case).  Indeed, as Local 649 concedes, *Dabit* addressed a plaintiff who alleged that he would have sold but for the defendants' alleged misrepresentations—the same "holder" allegation Plaintiff asserts here.  *See* Opp. at 21-22.

## II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

### A.    The Complaint Does Not Relate Back To Any Earlier Complaint

In its opposition brief, Plaintiff advances no argument that the Complaint relates back to any prior complaint, stating only that "should the Court deem it relevant, Plaintiff incorporates by reference its relation back argument set forth in its opposition to Defendants' original motion to dismiss."  Opp. at 39, n.21.  Accordingly, the Complaint should be dismissed as untimely, unless it was filed within two years after "the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation."  28 U.S.C. § 1658(b); *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1789-90, 1798 (2010).  It was not.[5]

### B.    The Complaint Was Filed More Than Two Years After A Reasonably Diligent Plaintiff Would Have Discovered Facts Constituting The Alleged Violation

The statute of limitations period began to run on December 1, 2003, or at the very latest by March 1, 2004—more than two years before the Complaint was filed on June 1, 2006— because Fund prospectuses and media publications issued during this time period disclosed the facts that constitute Plaintiff's Section 10(b) claim, including scienter.  The disclosures covered each of the four ways in which the Complaint alleges fraud: (1) the Revenue Guarantee; (2) the allegedly misleading process that led to the TA arrangement, including insufficient disclosures to

---

[5] The claims against Jones and Daidone do not relate back to any complaints filed before June 1, 2006, for the additional reason that none of the earlier complaints named Jones or Daidone as defendants.  *See* Defs. Br. at 26-27.

Fund boards; (3) the amount and fairness of TA fees; and (4) misstatements concerning the division of labor between the TA and sub-TA. *See* Defs. Br. at 22-23.

Plaintiff gives three unavailing reasons why a reasonably diligent investor would not have discovered the facts constituting the alleged securities fraud from the disclosures in the Funds' prospectus supplements and media publications.

*First*, Plaintiff argues that disclosures in the Fund prospectuses and media publications are insufficient because they were limited to the Revenue Guarantee. This assertion is factually incorrect. The disclosures stated that the regulatory and internal investigations concerned the entire TA business of Citigroup Asset Management ("CAM") and the fairness of TA fees charged. *See* Compl. ¶ 125; Rothermich Decl., Ex. F. Disclosing that the Revenue Guarantee existed and that the Boards were not previously informed of it reveals the fundamental facts which, according to Plaintiff, constitute the fraud—Defendants' alleged "faithlessness" and that the TA arrangement "siphoned" money that belonged to the Funds to the Defendants. *See* Opp. at 6, 30. Indeed, Plaintiff expressly argues that the Revenue Guarantee indicates scienter. *See, e.g.*, Opp. at 27. To the extent Plaintiff alleges scienter—and it does not with respect to Jones and Daidone, *see infra* Part III & n.5—Plaintiff cannot both insist that allegations about the Revenue Guarantee suffice to establish scienter while denying that disclosures related to the Revenue Guarantee fail to reveal facts constituting the alleged fraud.

*Second*, Plaintiff argues that statements in Fund prospectuses and media publications did not sufficiently disclose scienter. But disclosures concerning criminal and civil investigations and CAM's acknowledgment that the TA arrangement was inappropriate provided a basis to assert scienter in the TA arrangement to the extent it is alleged in the pending Complaint. Plaintiff acknowledges that there were disclosures that the SEC and U.S. Attorney were

investigating the presence of intentional misconduct, "disclosure violations," and "kickbacks," Compl. ¶ 125; *see also* Rothermich Decl., Ex. F.  Again, Plaintiff cannot argue both that the presence of "kickbacks" is evidence of scienter, *see* Opp. at 7, 30, 31, while denying that these disclosures reveal facts constituting the alleged fraud.

***Third***, Plaintiff's attempt to analogize its allegations to the facts of *Merck* fails because the disclosures in this case differed in kind from the disclosures in *Merck*.  In *Merck*, the Supreme Court held that disclosures about private products liability lawsuits and a warning letter to the company by the FDA, both of which were challenged by the company, failed to reveal facts constituting securities fraud by the company.  *See* 130 S. Ct. at 1799.  Here, by contrast, the corporate Defendants filed prospectus supplements that disclosed investigations by the SEC and the U.S. Attorney, and acknowledged that the TA arrangement "was not done the way it should have been."  Rothermich Decl., Ex. F.

Under these circumstances, a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation (including scienter) by December 1, 2003, such that the Complaint is time-barred.  Even if the statute of limitations did not start running by that time, it certainly began to run by March 1, 2004.  Because this is well before June 1, 2004 (*i.e.*, more than two years before the filing of Plaintiff's claims), the Complaint should be dismissed.

**III. THE ALLEGATIONS AGAINST JONES FALL FAR SHORT OF CONSCIOUS RECKLESSNESS AND DO NOT SUPPORT AN INFERENCE THAT HE HAD AN INTENTION TO DECEIVE, MANIPULATE, OR DEFRAUD**

Key concessions in Plaintiff's opposition require dismissal of the claims against Jones for failure to plead a strong inference of scienter.[6]

- Plaintiff does not dispute that it is only the *public statements to Fund shareholders* "about and the Adviser's transfer agent structure," Opp. at 23, on which it seeks to impose liability on Jones. Defs. Br. at 30 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 149 (2008)).

- Plaintiff concedes that Jones had no role in making any of the allegedly misleading communications to Fund shareholders. Opp. at 33.

- Plaintiff admits that the Complaint falls short of pleading scienter through allegations of motive and opportunity, Opp. at 35, and ignores that when "motive is not apparent" the allegations of conscious recklessness "must be correspondingly greater," *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

Instead, the opposition asks the Court to presume Jones's scienter based on his position in the corporate hierarchy. *See, e.g.*, Opp. at 33 ("[Jones] may be presumed responsible for the misleading communications."). But "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, -- F. Supp. 2d --, No. 08 Civ. 8143, 2010 WL 961596, at *10 (S.D.N.Y. Mar. 17, 2010) (Pauley, J.) (rejecting plaintiffs' assertion that the individual defendant received contradictory information because he was "ultimately in charge of all CIBC's activities related to subprime exposure"). Reliance on Jones's position in the corporate hierarchy to presume scienter is particularly

---

[6] In the initial briefs filed in support of this motion Daidone advanced the arguments that scienter was not adequately pleaded as to him. Daidone continues to rely on the initial briefs in support of these assertions. In addition, as to both Jones and Daidone, Plaintiff advances no new arguments in support of its Section 20(a) claim. *See* Opp. at 40. For the reasons above and in Defendants' opening brief (Defs. Br. at 33), the Section 20(a) claim should be dismissed for failure to plead the requisite state of mind or any underlying Section 10(b) violation.

illogical here given that Jones was the CEO of CAM and that the alleged misstatements were contained in prospectuses and filings issued by the Funds, not CAM. *See, e.g.*, Compl. ¶¶ 118, 121, 124.

## A.    Plaintiff's Reliance On The Group Pleading Doctrine Is Erroneous

Multiple courts have held that the group pleading doctrine is inapplicable following the passage of the PSLRA. *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003) ("the PSLRA has eliminated the 'group pleading' doctrine"), *aff'd*, 87 F. App'x 772 (2d Cir. 2004); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 262 (S.D.N.Y. 2004) (the PSLRA's "use of the singular 'defendant' counsels against group pleading").

To the extent it survives following the passage of the PSLRA, the applicability of the group pleading doctrine "has no effect on the PSLRA's *scienter* requirement." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005). Rather, the doctrine merely gives plaintiffs the benefit of a presumption that certain kinds of group-published statements were made by certain kinds of defendants; it does not permit plaintiffs to presume those defendants' state of mind. *Id.* at 438-40. Thus "even where statements are imputed to all defendants pursuant to the group pleading doctrine, plaintiffs still must establish scienter as to each defendant." *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 408 (S.D.N.Y. 2005) (internal quotations and citations omitted). Plaintiff has failed to do so as to Jones.

In addition to its ineffectiveness in establishing scienter, application of the group pleading doctrine is "extremely limited in scope." *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 637 (S.D.N.Y. 2008). This Court has explicitly held that "the doctrine only applies where the officers or directors of the company participated in the preparation and dissemination of the group published document." *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,

No. 00-Civ-8688, 2003 WL 22218643, at *5 (S.D.N.Y. Sept. 25, 2003) (Pauley, J.) (internal

quotations and citation omitted). Alleging "direct involvement" in the everyday business of the

entity releasing the document is "critical." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641

(S.D.N.Y. 2007). For example, in *Pfizer* and *Refco*, the courts held that the plaintiffs met this

burden through allegations that the individual defendants were *personally involved* in drafting or

approving the specific filings. *Pfizer*, 584 F. Supp. 2d at 638; *Refco*, 503 F. Supp. 2d at 642.

There is no allegation that Jones had any direct, personal involvement in the Funds'

allegedly misleading prospectuses or SEC filings. Plaintiff's attempt to correct this fatal defect

by pointing to a vague allegation concerning Jones's role as CAM CEO fails. *See Yung v. Lee*,

160 F. App'x 37, 42 (2d Cir. 2005). In *Yung*, the Second Circuit upheld the dismissal of

plaintiffs' securities fraud claims because an allegation that the defendant "own[ed] and

control[led]" the entity making the public statement was "insufficient to plead [defendant's]

participation in the securities offer at issue, even under the group pleading doctrine." *Id.*

("[a]ssuming *arguendo* that the group pleading doctrine survives"); *see also Refco*, 503 F. Supp.

2d at 641 (holding that an allegation that a defendant "owned and controlled the identified

speaker will be insufficient" to invoke the group pleading doctrine (internal quotations omitted)).

**B.** **Plaintiff's Access-To-Information Theory Is Inapplicable Because There Is No Allegation That Jones Participated In Making The Public Statements**

Plaintiff's argument that it adequately pled Jones's scienter through allegations

purportedly showing he had "access to information about the scheme" is also invalid. Opp. at

26. To invoke the access-to-information theory, a plaintiff must "specifically allege[]

defendants' knowledge of facts or access to information contradicting *their* public statements."

*Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (emphasis added). Plaintiff did not do so.

Plaintiff did not allege that Jones made or was involved in any public statement, and thus did not allege that he knew or had access to any fact "contradicting [*his*] public statements."  *See id*.  In all the cases Plaintiff cites for the access-to-information theory, the individual defendants were alleged to have personally participated in making the purported misrepresentations.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 70 (2d Cir. 2001); *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 357-58 (S.D.N.Y. 2006); *In re Atlas Air Worldwide Holdings Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004).

Additionally, "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  *Novak*, 216 F.3d at 309; *see Plumbers & Steamfitters*, 2010 WL 961596, at *9 (holding that plaintiffs did not meet this burden because they did not "provide specific instances in which Defendants received information that was contrary to *their* public declarations") (emphasis added).  Unsupported allegations that Jones was regularly "briefed" and was "aware" of the scheme, *see, e.g.*, Compl. ¶¶ 2-3, 8, are not sufficient, particularly when there is no allegation Jones knew the contents of the allegedly misleading disclosures.

### C.     Plaintiff Fails To Allege Jones Engaged In Deliberate Illegal Activity

Plaintiff argues that Jones's "persistent illegal activity is probative of scienter," Opp. at 25, but fails to allege that Jones participated in any "deliberately illegal behavior."  *Novak*, 216 F.3d at 311.  "Deliberate[ly] illegal behavior" includes intentional misconduct such as "securities trading by insiders privy to undisclosed and material information, or knowing sale of a company's stock at an unwarranted discount."  *Id.* at 308 (internal citations omitted).  Nowhere does the Complaint allege any of these examples of deliberately illegal conduct.

Nor do the allegations as to Jones bear any relationship to the conduct in the other cases on which Plaintiff relies.  In one case, scienter was alleged because the defendants were "charged

with deceptive acts"—"late trading [which] is itself illegal"—"the very commission of which reflect[ed] guilty knowledge."  *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 851, 861-62, 865 (D. Md. 2005).  In a second, the court granted the plaintiffs' uncontested motion for summary judgment against individual defendants based on their guilty pleas in criminal cases involving preparation of false financial records.  *In re Towers Fin. Corp. Noteholders Litig.*, 996 F. Supp. 266, 275-76 (S.D.N.Y. 1998).  In another, the individual defendant engineered a transaction making it appear that AOL was receiving $20 million in advertising revenue, when it in fact was not, so that the $20 million could be booked as revenue in the last quarter before AOL's merger with Time Warner.  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 229-30 (S.D.N.Y. 2004).  In contrast, the Complaint does not assert that Jones engaged in any deliberately illegal activities, such as insider trading, preparing false financials, or booking false revenues.  Instead, Plaintiff alleges that others (not Jones) failed to fully disclose to Fund shareholders the facts concerning the transfer agent arrangement.  Compl. at ¶ 115.

> **D.**     **The Casey Opinion Cannot Support An Inference Of Scienter With Respect To Alleged Misrepresentations Not At Issue In The SEC Suit**

Judge Casey's opinion is irrelevant.  It concerned the SEC's allegations of pre-Class Period non-disclosures to *the Funds' boards*.  *S.E.C. v. Jones*, No. 05 Civ. 7044(RCC), 2006 WL 1084276, at *2-*3, *7 (S.D.N.Y. Apr. 25, 2006) (examining SEC's claim for aiding and abetting an Investment Company Act violation).  It is no indicator that Plaintiff has adequately pled Jones's scienter with respect to statements that others (not Jones) made years later *to Fund shareholders*.

Plaintiff's insistence that its allegations are identical to the SEC's, Opp. at 23-25, merely indicates that the Complaint amounts to nothing more than a claim for aiding and abetting an

ICA violation. Plaintiff's "§ 10(b) implied private right of action," however, "does not extend to aiders and abettors." *Stoneridge*, 552 U.S. at 158. In *Stoneridge*, the Court rejected the plaintiff's "scheme liability" theory and noted that adopting such theory would "undermine Congress' determination that this class of defendants should be pursued by the SEC and not by private litigants." *Id.* at 163; *see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) (rejecting a private securities claim for aiding and abetting).

E.      **An Inference That Jones Was Consciously Reckless With Respect To Statements He Never Reviewed Or Approved Is Not Compelling**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) requires dismissal of the claims against Jones. Jones is alleged to be neither an investment adviser owing fiduciary duties to the Funds nor an officer involved in making disclosures to the Fund shareholders. It is unreasonable to infer that Jones was so consciously reckless as to indicate an "intention to deceive, manipulate, or defraud," *id.* at 313 (internal quotation omitted), with respect to statements that he did not make to shareholders to whom he owed no fiduciary duty. Such an inference is nowhere as compelling as any other inference, including negligence or that Jones had no responsibility for or participation in the alleged misstatements. Accordingly, the Court should dismiss all Plaintiff's claims against Jones.

## CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Complaint should be dismissed with prejudice.

Dated: June 14, 2010

Respectfully submitted,

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By:＿＿＿/s/Lori A. Martin＿＿＿＿＿＿＿
Lori A. Martin
(lori.martin@wilmerhale.com)
Peter K. Vigeland
(peter.vigeland@wilmerhale.com)
David S. Lesser
(david.lesser@wilmerhale.com)
Catherine Marlantes Rahm
(catherine.rahm@wilmerhale.com)
Brian Sutherland
(brian.sutherland@wilmerhale.com)
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

and

David P. Nicolardi
(david.nicolardi@wilmerhale.com)
1875 Pennsylvania Avenue, NW
Washington, DC 20036
Tel: (202) 663-6000
Fax: (202) 663-6363

*Counsel for Defendants Smith Barney
Fund Management LLC and Citigroup
Global Markets Inc.*

BAKER BOTTS LLP


By: ___/s/G. Irvin Terrell, Jr.___
G. Irvin Terrell, Jr.
(irv.terrell@bakerbotts.com)
One Shell Plaza
910 Louisiana St.
Houston, TX 77002
(713) 229-1231

*Counsel for Defendant*
*Thomas W. Jones*


SCHULTE ROTH & ZABEL LLP


By: ___/s/Richard J. Morvillo___
Richard J. Morvillo
(Richard.Morvillo@srz.com)
Peter H. White
(Peter.White@srz.com)
1152 Fifteenth Street, NW, Suite 850
Washington, DC  20005
(202) 729-7470

*Counsel for Defendant*
*Lewis E. Daidone*

US1DOCS 7573089v2