## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE SMITH BARNEY
FUND TRANSFER AGENT LITIGATION

05 Civ. 7583 (WHP)

## LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**BERNSTEIN LIEBHARD LLP**
Sandy A. Liebhard
U. Seth Ottensoser
Christian Siebott
Stephanie M. Beige
Joseph R. Seidman, Jr.
10 East 40th Street
New York, New York 10016
(212) 779-1414

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

I.  RELEVANT FACTS AND PROCEDURAL HISTORY ................................................. 1

II.  DISCUSSION ......................................................................................................... 5

    A.  Legal Standard ....................................................................................... 5

    B.  Under *American Pipe*, the First Complaint Tolls the Claims Asserted
        by All Class Members, Including the New Plaintiffs ................................. 5

        1.  The *American Pipe* Doctrine Tolls the Statute of Limitations
            for Unnamed Class Members ...................................................... 5

        2.  The Rationale of *American Pipe* Applies Equally to Statutes
            of Repose ................................................................................. 8

    C.  The Supreme Court's Decision In *Lampf* Does Not Preclude Tolling
        of Statutes of Repose Under *American Pipe* ........................................ 10

        1.  Tolling Pursuant to *American Pipe* is Not Equitable Tolling .................. 11

        2.  Recent Decisions Cited by Defendants Misinterpret *American Pipe* ....... 14

    D.  *American Pipe* Tolling Applies Until a Definitive Ruling on Class
        Certification, Even as to Class Claims and Even if Named Plaintiffs Lack
        Standing ................................................................................................. 15

        1.  *American Pipe* Applies Where Named Plaintiffs Lack Standing ............. 16

    E.  Public Policy Support Suspending Statutes of Limitations and Statutes
        of Repose for Unnamed Class Members ............................................... 19

III.  CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*American Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................................ *passim*

*Arctic Slope Native Ass'n, Ltd. v. Sebelius*,
   583 F.3d 785 (Fed. Cir. 2009) ......................................................................................11, 12

*Arivella v. Lucent Techs., Inc.*,
   623 F. Supp. 2d 164 (D. Mass. 2009) ...................................................................................12

*Belcher v. Eli Lilly & Co.*,
   394 Fed. App'x 821 (2d Cir. 2010) .......................................................................................11

*Bright v. United States*,
   603 F.3d 1273 (Fed. Cir. 2010) .............................................................................................12

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
   No. Civ. 00-4285, 2002 WL 33934282 (D.N.J. June 26, 2002) ............................................18

*Catholic Soc. Servs., Inc. v. Immigration and Naturalization Serv.*,
   232 F.3d 1139 (9th Cir. 2000) ...............................................................................................16

*Cleveland v. Caplaw Enters.*,
   448 F.3d 518 (2d Cir. 2006) .....................................................................................................5

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983) ..................................................................................................5, 6, 7, 17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...................................................................................................................5

*In re Elscint Ltd. Sec. Litig.*,
   674 F. Supp. 374 (D. Mass. 1987) .........................................................................................19

*In re Flag Telecom Holdings*,
   352 F. Supp. 2d 429 (S.D.N.Y. 2005) ....................................................................................18

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
   770 F. Supp. 2d 618 (S.D.N.Y. 2011) ....................................................................................14

*Fox v. Eaton*,
   615 F.2d 716 (6th Cir. 1980) ..................................................................................................19

*Goad v. Celotex Corp.*,
   831 F.2d 508 (4th Cir. 1987) ...................................................................................................9

*Goodman v. Lukens Steel Co.,*
   777 F.2d 113 (3d Cir. 1985)*, aff'd*, 482 U.S. 656 (1987) ......................................................17

*Griffin v. Singletary,*
   17 F.3d 356 (11th Cir. 1994) ...................................................................................18, 20

*Haas v. Pittsburgh Nat'l Bank,*
   526 F.2d 1083 (3d Cir. 1975)...................................................................................17, 18

*Harris v. City of New York,*
   186 F.3d 243 (2d Cir. 1999)............................................................................................5

*Hinkle by Hinkle v. Henderson,*
   85 F.3d 298 (7th Cir. 1996) ...........................................................................................9

*In re IndyMac Mortgage-Backed Sec. Litig., No. 09 Civ. 4583 (LAK),*
   2011 WL 2508254 (S.D.N.Y. June 21, 2011) ................................................................18

*In re Initial Pub. Offering Sec. Litig., No. 21 MC 92SAS,*
   2004 WL 3015304 (S.D.N.Y. 2004)..........................................................................18, 20

*Joseph v. Wiles,*
   223 F.3d 1155 (10th Cir. 2000) ..............................................................................12, 13

*Korwek v. Hunt,*
   827 F.2d 874 (2d Cir. 1987).....................................................................................15, 16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
   501 U.S. 350 (1991).................................................................................................10, 11

*In re Lehman Brothers Sec. and ERISA Litig., No. 09 MD 02017 (LAK),*
   2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011).................................................................14

*McKowan Lowe & Co. v. Jasmine, Ltd.,*
   295 F.3d 380 (3d Cir. 2002).....................................................................................16, 19

*Merck & Co. v. Reynolds,*
   130 S. Ct. 1784 (2010)...................................................................................................9

*Order of R.R. Telegraphers v. Ry. Express Agency,*
   321 U.S. 342 (1944).......................................................................................................7

*P. Stolz Family P'ship L.P. v. Daum,*
   355 F.3d 92 (2d Cir. 2004).............................................................................................9

*Platoro Ltd., Inc. v. Unidentified Remains of a Vessel,*
   614 F.2d 1051 (5th Cir. 1980) ......................................................................................19

*Popoola v. MD-Individual Practice Ass'n, Inc.,*
    230 F.R.D. 424 (D. Md. 2005)............................................................................18

*Rose v. Ark. Valley Envtl. & Util. Auth.,*
    562 F. Supp. 1180 (W.D. Mo. 1983) ...........................................................18, 19

*In re Smith Barney Transfer Agent Litig.,* No. 05 Civ 7583 (WHP),
    2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007)..................................................3

*In re Smith Barney Transfer Agent Litig.,* No. 05 Civ 7583 (WHP),
    2011 WL 350289 (S.D.N.Y. Jan. 25, 2011) ....................................................3

*State Farm Mut. Auto Ins. Co. v. Boellstorff,*
    540 F.3d 1223 (10th Cir. 2008) .................................................................6, 12

*Stone Container Corp. v. United States,*
    229 F.3d 1345 (Fed. Cir. 2000)......................................................................11

*Valenzuela v. Kraft, Inc.,*
    801 F.2d 1170 (9th Cir. 1986) .......................................................................19

*In re Wachovia Equity Sec. Litig.,*
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)............................................................18

*In re Worldcom Sec. Litig.,*
    496 F.3d 245 (2d Cir. 2007)......................................................6, 8, 9, 12, 13

*Zerilli-Edelglass v. N.Y.C. Transit Auth.,*
    333 F.3d 74 (2d Cir. 2003)............................................................................12

**STATUTES**

28 U.S.C. § 1658(b) .............................................................................................8, 10

28 U.S.C. § 1658(b)(2) ...........................................................................................9

28 U.S.C. § 2072(b) ................................................................................................14

**RULES**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

**OTHER AUTHORITIES**

Calvin W. Corman, *Limitation of Actions* § a 11.1.1 (1991) ...........................................................9

Adolph J. Levy, *Solving Statute of Limitations Problems* § 301, at 76 (1987) ............................9

1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:15, at 460 (7th ed. 2011) .............11

## INTRODUCTION

In *American Pipe & Const. Co. v. Utah*, the Supreme Court held that filing a class action tolls the statute of limitations for all members of the putative class.  414 U.S. 538 (1974).  The Court has time and again reiterated the purpose behind its holding – to give effect to Rule 23 and avoid the "needless multiplicity of actions" that would result if prospective class members were forced to file prophylactic suits to protect their claims if class certification is denied.  Defendants contend that this long standing rule does not apply to statutes of repose.  Defendants are wrong.  The rationale and policies underlying the Supreme Court's *American Pipe* decision apply equally to both statutes of limitation and statutes of repose.  And most courts considering the issue agree.  Similarly, Defendants argue that the *American Pipe* rule does not apply if the original representative plaintiff lacked standing.  Once again, Defendants are wrong.  Such an exception would vitiate the doctrine and spawn exactly the multiplicity of actions the doctrine is designed to avoid:  non-named class members would be forced to file their own actions to safeguard their claims in case the lead plaintiff turns out not to have had standing.

This Court should follow the Supreme Court's reasoning in *American Pipe*, hold that the statutes of limitation and repose were tolled when the original class action complaint was filed, and deny the motion for judgment on the pleadings.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

On May 31, 2005, Defendants Smith Barney Fund Management LLC ("Smith Barney") and Citigroup Global Markets Inc. ("Global Markets") essentially admitted to a scheme of self-dealing concerning transfer agent fees paid by the Smith Barney family of mutual funds and alleged misrepresentations and omissions concerning those fees when it entered into an agreement with the Securities and Exchange Commission ("SEC"), agreeing to pay a total of

over $200 million in fines and disgorgement penalties as a result of their violations of the Investment Advisors Act ("IAA").

Following the SEC settlement, a number of putative class actions were filed against the Defendants asserting claims based on violations of the federal securities laws and breaches of fiduciary duty. On December 30, 2005, the Court consolidated the various actions and appointed the International Union of Operating Engineers Local 649 Annuity Fund ("Local 649") as Lead Plaintiff.

On June 1, 2006, Local 649 filed its Consolidated and Amended Class Action Complaint (the "First Complaint") on behalf all persons who purchased, held and/or sold shares of the Smith Barney Family of Funds (the "Funds") from September 11, 2000 through May 31, 2005, inclusive (the "Class Period"). The First Complaint alleged that Smith Barney, Global Markets, Lewis E. Daidone ("Daidone"), and Thomas Jones ("Jones") (collectively referred to as "Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 36(b) of the Investment Company Act of 1940 ("ICA") by intentionally negotiating an unfavorable contract for transfer agent services that caused the Funds to be charged unnecessary fees. Fund shareholders believed they were paying for transfer agent services when, in fact, the fees went to a Smith Barney affiliate and provided no benefit to the Funds or their shareholders. Local 649 also alleged that Daidone, SVP and Director of Smith Barney and a Managing Director of Global Markets and Jones, were liable as "controlling persons" under Section 20(a) of the Exchange Act.

On October 3, 2006, Defendants moved to dismiss the First Complaint. On September 26, 2007, the Court granted Defendants' motion. In doing so, the Court held that: (1) Lead Plaintiff had not identified any material false statements under the Exchange Act;

(2) Lead Plaintiff did not adequately allege loss causation; and (3) Lead Plaintiff's claims under the ICA should have been pled derivatively. *See In re Smith Barney Fund Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2007 WL 2809600, at **2-5 (S.D.N.Y. Sept. 26, 2007). The Court granted Lead Plaintiff leave to replead the ICA claims by October 19, 2007. Lead Plaintiff chose not to replead and, accordingly, final judgment was entered on November 6, 2007. Lead Plaintiff timely appealed on November 16, 2007.

On February 16, 2010, the United States Court of Appeals for the Second Circuit issued an opinion vacating and remanding this Court's judgment with respect to Lead Plaintiff's claims under Section 10(b) and Rule 10b-5, holding that Lead Plaintiff adequately alleged materiality and loss causation, while affirming this Court's dismissal of Lead Plaintiff's Section 36(b) claim.

Defendants then insisted on briefing their remaining arguments in a renewed motion to dismiss. On January 25, 2011, this Court granted in part and denied in part Defendants' second motion to dismiss. *See In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2011 WL 350289 (S.D.N.Y. Jan. 25, 2011).[1] Among other things, this Court held that Local 649 did not have standing to assert claims relating to funds in which it did not invest (there are a total of 105 mutual funds and Local 649 invested in one of them). However, pursuant to a stipulation between the parties, Defendants agreed that new plaintiffs could be added to the complaint to address the standing issue.

Subsequently, when presented with the stipulation concerning the parties' agreement at a conference held on February 16, 2011, the Court noted that "[t]here is a strange caveat in paragraph 3 of the proposed stipulation and order that suggested to me that there was something else afoot." Tr. at 8:9-11 (attached as Ex. 1). Paragraph 3 of the stipulation states that

---

[1] The Court also dismissed all claims against Defendant Jones.

Defendants could, "if appropriate, move to dismiss the amended pleading with respect to any additional named plaintiffs or allegations (e.g., if a new plaintiff lacks standing or asserts only a 'holder' claim, or if the amended pleading asserts new allegations against Thomas Jones)." Stip. ¶ 3 (attached as Ex. 2). When asked by the Court to clarify, counsel for Defendants stated that "we're reserving rights *only if* they asserted claims on behalf of plaintiffs for which there wouldn't be standing." Tr. at 9 (emphasis added).

Accordingly, on May 5, 2011, Local 649 filed the Second Consolidated and Amended Class Action Complaint (the "Second Complaint"), which contained 14 named plaintiffs who purchased shares in 36 of the 105 Funds. On July 1, 2011, Local 649 filed the Third Consolidated and Amended Class Action Complaint (the "Third Complaint"), which added an additional plaintiff who purchased shares in one additional Fund.[2]

Soon after the filing of the Second Complaint, on June 10, 2011, despite their prior representations to the Court and counsel, Defendants requested a pre-motion conference in connection with their current motion to dismiss the claims asserted in the Second Amended Complaint on behalf of the new plaintiffs asserting a statute of limitation defense. Local 649 responded to this request on June 17, 2011, stating, among other things, that Local 649 and its counsel relied on defense counsel's prior representation and spent significant time and effort adding new plaintiffs to address the standing issue. As set forth in Lead Counsel's June 17th response, Defendants could have raised the issue at the February 16, 2011 conference but chose not to do so. Instead, Defendants stood by while Local 649 and its counsel spent significant time and resources litigating the action (the parties are in the middle of discovery including document production, interrogatories and depositions).

---

[2] Two plaintiffs named in the Second and Third Complaints have since decided not to proceed as representative plaintiffs.

The Court held a pre-motion conference on June 24, 2011 and Defendants filed the current motion to dismiss on July 8, 2011.  Also, pursuant to the Court's scheduling order, on July 15, 2011, Local 649 filed its motion for class certification.

## II.    DISCUSSION

### A.    Legal Standard

On a Rule 12(c) motion, the court is to accept as true all factual allegations in the complaint and draw all inferences in favor of the plaintiff.  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  A court may dismiss the complaint on statute of limitations grounds only if the complaint clearly shows the claim is out of time.  *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

### B.    Under *American Pipe*, the First Complaint Tolls the Claims Asserted by All Class Members, Including the New Plaintiffs

#### 1.    The *American Pipe* Doctrine Tolls the Statute of Limitations for Unnamed Class Members

Under the doctrine established by the Supreme Court in *American Pipe* and its progeny:

> [T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983) (quoting *American Pipe*, 414 U.S. at 554).  In a series of cases, the Supreme Court has extended its holding several times: (1) for class members who seek to intervene once the class certification motion is denied, *American Pipe*, 414 U.S. at 552-53; (2) for class members who opt out once the certification motion is granted, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974); and (3) for class members who file separate suits once class certification is denied, *Crown, Cork & Seal*, 462 U.S. at 353-54.

The Second Circuit extended the *American Pipe* doctrine to include class members who filed separate suits asserting the same claims as those asserted in the class action before a motion to certify a class is decided, but whose actions would otherwise have been time-barred.  *See In re Worldcom Sec. Litig.*, 496 F.3d 245, 251-52 (2d Cir. 2007).  The Second Circuit reiterated that the purpose of the *American Pipe* doctrine is to avoid the "needless multiplicity of actions" that would result if prospective class members were forced to file suit out of fear of denial of class certification.  *Id.* at 253-54 (citing *Crown, Cork & Seal*, 462 U.S. at 351).  The court also stated that permitting tolling does not conflict with the purpose of statutes of limitations -- to put defendants on notice of claims against them and to prevent plaintiffs from sleeping on their rights.  *Id.* at 352.

"The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action until and unless they received notice thereof and chose not to continue."  *WorldCom*, 496 F.3d at 255 (citation and quotation marks omitted); *accord State Farm Mut. Auto Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1229 (10th Cir. 2008) ("Conceptually, *American Pipe* incarnates the principle that the class action is a representative creature.").  In *American Pipe*, the Supreme Court noted that the Federal Rules had been amended to make Rule 23(b)(3) class actions "truly representative."  *American Pipe*, 414 U.S. at 550; *see also id.* at 545-50 (discussing amendments).  As a consequence, the Court reasoned, "the filing of a timely class action complaint commences the action for all members of the class as subsequently determined."  *Id.* at 550.

The Supreme Court recognized that the purpose underlying Rule 23 would be undone if there were no tolling for absent class members.  The "principal purpose" of class actions, the Court said, is to promote "efficiency and economy of litigation."  *American Pipe*, 414 U.S. at

6

553.  If statutes of limitations were not suspended while claims on behalf of a putative class are

asserted, absent class members would be induced to file prophylactic suits or motions to

intervene to protect their claims in the event class certification is denied or the putative class

narrowed so as to exclude them.  This creates "precisely the multiplicity of activity which Rule

23 was designed to avoid in those cases where a class action is found 'superior to other available

methods for the fair and efficient adjudication of the controversy.'"  *Id.* at 551 (quoting Fed. R.

Civ. P. 23(b)(3)); *see also id.* at 553-54 (noting that where class certification turns upon "subtle

factors" that may be treated differently by different judges, "a rule requiring successful

anticipation of the determination of the viability of the class would breed needless duplication of

motions").  By suspending the statute of limitations while class certification is being considered,

*American Pipe* "protect[s] the policies behind the class action procedure."  *Crown, Cork & Seal

Co.*, 462 U.S. at 349.

    The Supreme Court also found that suspending the statute of limitations for claims

asserted on behalf of unnamed class members was "in no way inconsistent with the functional

operation of a statute of limitation."  *American Pipe*, 414 U.S. at 554.  Statutes of limitations, the

Court observed, are designed "to promote justice by preventing surprises through the revival of

claims that have been allowed to slumber until evidence has been lost, memories have faded, and

witnesses have disappeared."  *Id.* (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*,

321 U.S. 342, 348-49 (1944)).  These policies are not violated by stopping the statute of

limitations while claims are being asserted on behalf of a party in a class action because a class

action's assertion of claims notifies defendants of the claims.  414 U.S. at 555 (noting that the

filing of a class action "notifies the defendants not only of the substantive claims being brought

against them, but also of the number and generic identities of the potential plaintiffs who may

participate in the judgment"). Thus, the *American Pipe* tolling doctrine protects the primary purpose of class actions without undermining the protections afforded by statutes of limitations.

### 2.    The Rationale of *American Pipe* Applies Equally to Statutes of Repose

Contrary to Defendants' arguments, the rationale underlying the *American Pipe* doctrine for suspending statutes of limitations applies equally to statutes of repose.

First, the fundamental concept underlying *American Pipe* -- that unnamed class members "should be considered plaintiffs to the suit" unless and until class certification is denied or they are excluded from the class, and therefore the "filing of a class action satisfie[s] the . . . statute of limitations for such members," *WorldCom*, 496 F.3d at 252, -- applies to statutes of repose as well. Both the limitations and repose periods under 28 U.S.C. § 1658(b) are satisfied if the lawsuit is "brought" within the specified time period (two years for the limitations period and 5 years for the repose period). 28 U.S.C. § 1658(b). If unnamed class members are considered plaintiffs in the action for the purpose of tolling the statute of limitations, then they logically ought to be considered plaintiffs for the purpose of tolling the statute of repose.

Second, just as allowing statutes of limitations to run while class actions are pending on behalf of unnamed class members would undermine the goals of efficiency and economy of litigation underlying the class action devices, allowing statutes of repose to run would similarly undermine those goals. Class members would have an incentive to intervene or file individual suits to protect their claims, creating the "multiplicity of activity" that class actions and the *American Pipe* tolling rule are meant to avoid. *American Pipe*, 414 U.S. at 551.

While there are differences between statutes of repose and statutes of limitations, none of these differences affect the principles and policies underlying *American Pipe*. Indeed, the most fundamental difference between statutes of limitations and statutes of repose is in the way in

which the limitations or repose period begins to run.[3]  While statutes of limitation periods

typically commence upon accrual of a claim or the plaintiff's discovery of the claim, *see* Calvin

W. Corman, *Limitation of Actions* § 11.1.1, at 134 (1991); *Merck & Co. v. Reynolds*, 130 S. Ct.

1784, 1798 (2010), statutes of repose periods commence upon an event easily ascertained by the

defendant, such as a fraudulent act.  *See* 28 U.S.C. § 1658(b)(2) ("[A] private right of action that

involves a claim of fraud, deceit, manipulation, or contrivance . . . may be brought not later than

. . . 5 years after such violation;[.]" *see also* Corman § 7.4.4, at 557 & n.114 (describing different

triggering mechanisms for medical malpractice statutes of repose).  As a consequence, statutes of

repose generally provide "greater certainty and predictability" than statutes of limitations.

*Hinkle by Hinkle v. Henderson*, 85 F.3d 298, 303 (7th Cir. 1996); *accord P. Stolz Family P'ship

L.P. v. Daum*, 355 F.3d 92, 104 (2d Cir. 2004); *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th

Cir. 1987).

     Importantly, these differences do not affect the applicability of *American Pipe* because

*American Pipe* does not impact when a limitations or repose period *commences*.  Instead,

because *American Pipe* treats unnamed class members as plaintiffs in class actions and a statute

of limitations is satisfied when a claim is asserted on a plaintiff's behalf in a class action,

*WorldCom*, 496 F.3d at 252, *American Pipe* affects when a limitations or repose period *ends*.

     Given the way the *American Pipe* doctrine was conceived in theory and operates in

practice, there is no legal justification for treating statutes of repose differently from statutes of

limitations when the doctrine is applied.  It is self-evident that a statute of repose stops running

against a plaintiff when that plaintiff files a complaint and commences a lawsuit.  In the class

---

[3] *See* Adolph J. Levy, *Solving Statute of Limitations Problems* § 301, at 76 (1987) ("There is
usually at least one vital difference between the two:  a statute of limitations begins to run from
the time a cause of action accrues, while a statute of repose may commence and may run before
the cause of action accrues--even before the plaintiff was injured.").

litigation context, *American Pipe* teaches that filing a class action complaint, as a matter of law, commences suit for all members of the putative class, just as if each class member were named as a plaintiff in the caption of the class complaint.  So long as the class action itself was filed before the expiration of the applicable statutes of limitations and repose (such as is the case here), then the unnamed class members' claims were also timely filed -- meaning that the statute of repose stopped running against the entire putative class when the class action was commenced.

### C.   The Supreme Court's Decision In *Lampf* Does Not Preclude Tolling of Statutes of Repose Under *American Pipe*

Defendants argue that *American Pipe* tolling of statutes of repose is precluded by the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991).  In making this argument, however, Defendants mischaracterize *American Pipe* tolling as equitable tolling and read too much into the *Lampf* decision.

In *Lampf*, the Supreme Court considered whether the statutes of limitations and repose governing section 10(b) claims under the Exchange Act were subject to the general principle that statutes of limitations do not begin to run on fraud claims until the fraud is discovered.  501 U.S. at 363.  The Supreme Court held this equitable tolling doctrine inapplicable.  *Id.*  Such tolling, the Court reasoned, is "fundamentally inconsistent with the 1-and-3-year structure" in Section 13 because the one-year limitations period begins running upon discovery, making the tolling unnecessary, and the three-year repose period is intended "to serve as a cutoff," which is inconsistent with delaying the start of the limitations period until discovery.  *Id.*[4]

---

[4] *Lampf* also held that the statute of limitations to be applied to a claim under § 10(b) of the Securities Exchange Act is the analogous one-and-three-year limitations and repose structure provided for other causes of action under the Securities Exchange Act and Securities Act.  501 U.S. at 359.  That ruling has since been superseded by 28 U.S.C. § 1658(b), which provides for a two-and-five year limitations and repose structure.

*Lampf* does not affect the applicability of *American Pipe* to statutes of repose.  Tolling for non-discovery would postpone the *commencement* of the statute of repose until the facts underlying a claim are or should have been discovered.  Because this period is fact-specific and impossible to anticipate, the discovery rule would permit actions to be brought for an unpredictable period of more than five years from the triggering event, depriving defendants of the certainty that statutes of repose are supposed to provide.  Applying *American Pipe*, however, would not.  *American Pipe* tolling does not delay when the statute of repose commences, and it applies only when a class action asserting an unnamed class member's claim is itself timely brought.  *See e.g., Belcher v. Eli Lilly & Co.*, 394 Fed. App'x 821, 823 (2d Cir. 2010).  Therefore, under *American Pipe*, when the repose period starts to run and when notice must be received is clear, providing the certainty promised by statutes of repose.  Contrary to the discovery rule considered in *Lampf*, *American Pipe* is consistent with the policies underlying statutes of repose.

### 1.   Tolling Pursuant to *American Pipe* is Not Equitable Tolling

Although *American Pipe* tolling has on occasion been mislabeled a form of "equitable tolling," it is in fact well-recognized that *American Pipe* tolling is distinct from equitable tolling, at least in the sense contemplated by *Lampf*.  *American Pipe* is "'not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23.'"  *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 791 (Fed. Cir. 2009) (quoting *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000)); *see also* 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:15, at 460 (7th ed. 2011) (noting that *American Pipe*'s holding was "not based on judge-made equitable tolling, but rather on the Court's conclusion that the policy of efficiency and economy of litigation underlying class action procedures would be frustrated if the commencement of a putative class action did not toll the statute of limitations for putative class

members").  Accordingly, the majority of courts considering whether *Lampf* affects *American Pipe* have concluded that *American Pipe* class action tolling is "legal rather than equitable in nature."  *Joseph v. Wiles*, 223 F.3d 1155, 1166 (10th Cir. 2000); *accord Arctic Slope*, 583 F.3d at 792; *Bright v. United States*, 603 F.3d 1273, 1286-87 (Fed. Cir. 2010); *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 177 (D. Mass. 2009) (noting that, as of June 2009, "[c]opious research ha[d] not unearthed a single case in which a court recognized the distinction between legal and equitable tolling and still concluded that *Lampf* precluded the application of *American Pipe* to statutes of repose").

  *American Pipe* tolling is also very different from what is generally referred to as equitable tolling.  Equitable tolling traditionally is allowed only if the plaintiff was unaware of its claim.  *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003). *American Pipe* tolling, by contrast, applies regardless of whether unnamed class members were aware of the class action.  414 U.S. at 551.  Similarly, while a party invoking equitable tolling generally must act diligently, *see Zerilli-Edelglass*, 333 F.3d at 80, under *American Pipe* unnamed class members are "passive beneficiaries" of class actions and do not have "any duty to take note of the suit or to exercise any responsibility with respect to it" until certification.  414 U.S. at 552.  Finally, describing *American Pipe* as tolling is somewhat of a misnomer:  in a sense, *American Pipe* "does not involve 'tolling' at all" because "[t]he class action mechanism's inherent representativeness means that each putative class members has effectively been a party to an action against the defendant since a class action covering him was filed."  *State Farm*, 540 F.3d at 1232-33 (citation and quotation marks omitted).  As the Tenth Circuit, interpreting the Second Circuit's decision in *WorldCom*, explained:

> [T]he filing of a class action, in a classic legal fiction, causes the courts to treat
> "members of the asserted class" as if they "hav[e] instituted their own actions, at

> least so long as they continue to be members of the class . . ." and they have "the
> benefit of tolling . . . for as long as the class action purports to assert their claims."

*Id.* at 1229 (quoting *WorldCom*, 496 F.3d at 255). Thus, under *American Pipe*, absent class

members do not need to be excused from commencing suit on their claims within the prescribed

limitations period by some equitable tolling principle, because by operation of law they already

commenced suit on those claims when the class action was filed. *WorldCom*, 496 F.3d at 252

("Thus, just as the filing of the class action satisfied the State of Utah's [the lead class plaintiff in

*American Pipe*] statute-of-limitations obligations, it also did so for class members, including the

intervenors."); *Joseph*, 223 F.3d at 1168 (holding that *American Pipe* tolling doctrine really

"does not involve 'tolling' at all" because the plaintiff "has effectively been a party to an action

against these defendants since a class action covering him was requested but never denied");

*State Farm*, 540 F.3d at 1232-33 (same).

    In *Joseph*, the Tenth Circuit considered the issue with respect to claims under the

Securities Act of 1933 and held that *American Pipe* tolling does apply to statutes of repose.  223

F.3d 1155.  The court recognized a distinction between "equitable tolling" and "legal tolling."

"Equitable tolling," the court reasoned, was called for when a "claimant has filed a defective

pleading during the statutory period . . . or was tricked into filing after deadline due to an

adversary's misconduct," whereas "legal tolling," as articulated in *American Pipe*, should apply

when a putative class action has been "commenced and class certification is pending."  223 F.3d

at 116-1168.  In the *Joseph* court's view, *Lampf* only required that securities litigation

"commence" within the statutory period, which the court believed was satisfied by the timely

filing of a putative class action asserting the same claims as an alleged class member.  Even for

purposes of the Securities Act's statute of repose.  Thus, the *Joseph* court found that tolling a

statute of repose appropriately serves the purposes of Rule 23, as recognized in *American Pipe*,

13

by eliminating the incentive for putative class members to file their own complaints prior to a ruling on a motion for class certification.

### 2.      Recent Decisions Cited by Defendants Misinterpret *American Pipe*

Defendants rely on two recent decisions from this district which held that *American Pipe* tolling does not extend the statute of repose set forth in Section 13 of the Securities Act of 1933: *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y. 2011) and, soon thereafter and largely based on the same reasoning, *In re Lehman Brothers Sec. and ERISA Litig.*, No. 09 MD 02017 (LAK), 2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011).  Both courts, however, made the conceptual mistake of treating the *American Pipe* doctrine as a species of "equitable tolling."   And both courts held that *American Pipe* cannot extend the Section 13 repose period because the statute provides that "in no event" shall an action under Sections 11 or 12 of that Act "be brought" more than three years after the sale or bona fide public offer of the relevant securities.  *See Footbridge*, 770 F. Supp. 2d at 624.  In so reasoning, the courts overlooked the principle that unnamed plaintiffs, who are members of a putative class that timely asserted Section 11 and 12 claims, are considered by operation of law to have also "brought" their Section 11 and 12 claims within the repose period.  That time limitations are met for all putative members, named or unnamed, is what *American Pipe* means, and that is why the esoteric debate engaged in by the *Footbridge* court, over whether *American Pipe* tolling is legal or equitable in nature, simply misses the point.

The same reasoning, that unnamed class members' claims are "brought" when the class action of which they are members is filed, explains why the Rules Enabling Act does not support *Footbridge's* rationale.  770 F. Supp. 2d at 626 (citing 28 U.S.C. § 2072(b)).  The *Footbridge* court may well be correct that, as a theoretical matter, Rule 23 cannot "trump" a statutory enactment like Section 13 of the Securities Act.  *See Id.*  But this is also beside the point.

*American Pipe* did not hold that Rule 23 "trumps" a properly-enacted statute of limitations, let alone a statute of repose.  Rather, *American Pipe* held that Rule 23 provides a mechanism to determine when a suit has been commenced on an unnamed class member's claim for purposes of applying such statutory time limitations.  In the specific context of Section 13, a plaintiff's claim is "brought" when a putative class, of which that plaintiff is a member, asserts the same a claim.  And, since the class action would have raised those claims before the defendant has legitimately become entitled to the applicable statute of repose, the defendant is not deprived of any substantive right that would trigger application of the Rules Enabling Act.  *American Pipe*, 414 U.S. at 556-58 (rejecting the argument that tolling the intervenors' claims deprived defendants of substantive rights under the antitrust laws).

### D.    *American Pipe* Tolling Applies Until a Definitive Ruling on Class Certification, Even as to Class Claims and Even if Named Plaintiffs Lack Standing

By arguing that *American Pipe* tolling does not apply to class claims, Defendants misapply and misread the Second Circuit's decision in *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987).  The district court in *Korwek* "denied class certification mainly because of overwhelming manageability difficulties."  *Id.* at 879.  Five intervenors subsequently sought appointment as class representative, but the class definitions they proffered were either identical to or expanded upon the rejected class definition and failed to eliminate the identified manageability problems. *Id.* at 876.  The Second Circuit held that *American Pipe* tolling "does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification."  *Id.* at 879.

Defendants fail to acknowledge the Second Circuit's own limitation of its decision in *Korwek*.  The court expressly held that its ruling did not address situations where unnamed class members attempt to cure deficiencies that caused the denial of certification:  the "Court notes

15

that it leaves for another day the question of whether the filing of a potentially proper subclass would be entitled to tolling under *American Pipe*." *Id., see also Catholic Soc. Servs., Inc. v. Immigration and Naturalization Serv.*, 232 F.3d 1139, 1147 (9th Cir. 2000) (recognizing that the tolling rule analysis in *Korwek* does not apply to a case where the replacement class representative "does not disagree with the denial of class certification, but rather tries to cure the deficiency that led to the denial").

Moreover, the *Korwek* decision is entirely consistent with the Supreme Court's reasons for creating the *American Pipe* tolling doctrine. *Korwek* merely holds that unnamed class members may not continually re-litigate a court's rationale in rejecting class certification because it would in itself constitute an impermissible multiplicity of litigation. Here, class certification has not been argued, much less decided, and the newly-named plaintiffs are joining the litigation to cure the original plaintiff's standing deficiencies. Because the *Korwek* decision does not speak to situations where the later class member "tries to cure the deficiency that led to the denial," it is inapposite and does not bar applying the *American Pipe* doctrine to the new plaintiffs' claims. 232 F.3d at 1147.

### 1. *American Pipe* Applies Where Named Plaintiffs Lack Standing

Several courts have concluded that *American Pipe* tolling is permitted for class claims whenever the class device has not been definitively rejected. And, many of these cases presented a situation, such as that here, where the original class representative (i.e., the original named plaintiff) was found inadequate because it lacked standing.

In *McKowan Lowe & Co. v. Jasmine, Ltd.*, the Third Circuit ruled that under *American Pipe*, "the class claims of intervening class members are tolled if a district court declines to certify a class for reasons unrelated to the appropriateness of the substantive claims for certification." 295 F.3d 380, 389 (3d Cir. 2002) In *McKowan*, the district court denied

certification of a securities class action because the original proposed named plaintiff failed to meet Rule 23's typicality requirement, and then refused to toll the class claims of an intervenor who sought to represent the class.  The Third Circuit reversed, holding that under the Supreme Court's rationale in *American Pipe* and Rule 23, "'a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.'"  *Id.* (quoting *American Pipe* at 553-54).

The *McKowan* decision was based in part on two previous Third Circuit cases that addressed the issue of whether *American Pipe* tolling applied where the original named plaintiffs lacked standing:  *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 125 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987) and *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1097 (3d Cir. 1975).  In *Goodman*, the Third Circuit found that the named plaintiffs could not represent a class of Title VII plaintiffs.  777 F.2d at 124.  Despite the fact that the statute of limitations on the class members claims would have expired years before, the court advised the district court to "explore the possibility of intervention by qualified class representatives" to represent the putative class. *Id.*  The court based its conclusion on the fact that "[s]uch a suit would be timely since the commencement of the class action tolled the statute of limitations as to members of the class." *Id.* at 124 n.8.  (citing *Crown, Cork & Seal*, 462 U.S. 345 (1983)).  This rationale applies here.

Similarly, in *Haas*, the plaintiff filed a class action against three banks alleging that they had collected excessive finance charges against credit card holders.  The district court determined that the class representative had no personal standing to bring the claims against one defendant, Equibank, because she had never owned an Equibank credit card, and thus she could not represent class claims against Equibank.  526 F.2d at 1097.  A substitute class representative who did own an Equibank credit card, intervened to represent the class.  The district court held

17

that the new class representative's class claims were time-barred because he did not pursue them until after the limitations period had expired. *Id.* at 1096. The Third Circuit disagreed and reversed, stating that "the broad tolling principle [the Supreme Court] enunciated" in *American Pipe* applied to a case in which the initial class representative could not represent the class because he lacked standing to do so. *Id.* at 1097. Focusing on the absence of any surprise or prejudice to defendants, the court explained:

> Haas' timely action against all three banks provided Equibank with notice within the statutory period of the substantial nature of the claims against which they would be required to defend and also "the number and generic identities of the potential plaintiffs."

526 F.2d at 1097 (quoting *American Pipe*, 414 U.S. at 555). The court indicated that the effect of the tolling rule is to have the new class representative's class claim relate "back to the initial filing of the complaint." *Id.* at 1098.

Indeed, the vast majority of courts to directly consider this issue have held that class actions asserting unnamed class members' claims suspend the statute of limitations even though the named plaintiff lacks standing to assert the claim. *See Griffin v. Singletary*, 17 F.3d 356, 359-61 (11th Cir. 1994); *In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09 Civ. 4583, 2011 WL 2508254, *5-6 (S.D.N.Y. June 21, 2011); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372 (S.D.N.Y. 2011); *Popoola v. MD-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 430 (D. Md. 2005); *In re Flag Telecom Holdings, Ltd Sec. Litig.*, 352 F. Supp. 2d 429, 455-56 & n.20 (S.D.N.Y. 2005); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92SAS No. 09 Civ. 4583, 2004 WL 3015304, at *5 (S.D.N.Y. Dec. 27, 2004); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. Civ. 00-4285, 2002 WL 33934282, at *29-30 (D.N.J. June 26, 2002); *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180, 1192-93 (W.D. Mo. 1983). As these courts recognize, "it can hardly be said that a suit commenced by one who lacks standing is in any

literal sense a 'non-existent' suit." *Rose*, 562 F. Supp. at 1193.  Thus, the filing of a class action acts to toll class claims, even if the court lacked subject matter jurisdiction over the claim.  *See, e.g., Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) (tolled statute of limitation where state court lacked subject matter jurisdiction over untimely Title VII claims); *Fox v. Eaton*, 615 F.2d 716, 720-21 (6th Cir. 1980) (same); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 614 F.2d 1051, 1054 (5th Cir. 1980) (tolled statute of limitations despite district court lacking *in rem* jurisdiction).

Defendants cite to *In re Elscint Ltd. Sec. Litig.*, where a Massachusetts district court declined to apply the *American Pipe* tolling because the named plaintiff lacked standing.  674 F. Supp. 374 (D. Mass. 1987).  The *Elscint* court, however, acknowledged that "lack of standing may not *per se* mandate an exemption from the application of the tolling rule," but was concerned that "in certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule."  The *Elscint* court implicitly recognized, as other courts have expressly stated, that a district court's discretion to control the intervention process adequately safeguards against such abuse.  *See McKowan Lowe*, 295 F.3d at 388 ("[W]e are confident of the capacity of district courts to control abuse or ineptitude on the part of class counsel and to institute administrative procedures that would set deadlines for prospective class representatives while protecting the interests of unnamed plaintiffs.").

    **E.**    **Public Policy Support Suspending Statutes of Limitations and Statutes of Repose for Unnamed Class Members**

Class actions are intended to promote "economies of time, effort and expense." Fed. R. Civ. P. 23(b)(3), Adv. Comm. Note.  For class actions to work as intended, unnamed class

members must be able to rely upon the named plaintiff action "until the existence and limits of the class have been established and a notice of membership has been sent." *American Pipe*, 414 U.S. at 552. Refusing to toll statutes of limitations and repose when the named plaintiff is found to lack standing, and thereby extinguish unnamed class members' claims, would unfairly "punish class members for relying on the very thing Rule 23 is intended to provide: an efficient method for resolving claims common to the class." *In re Initial Pub. Offering Sec. Litig.*, 2004 WL 3015304, at *5.

Moreover, unnamed class members have little way of determining whether the named plaintiffs actually have standing, or how a court might rule if standing is challenged (particularly where standing is a fact specific-inquiry such as in a securities fraud action). If tolling is disallowed, unnamed class members would be forced to either investigate the standing of every named plaintiff -- a difficult and costly task -- or file prophylactic actions to insulate themselves against statutes of limitations or repose, spawning the very "multiplicity of activity" that class action treatment is intended to avoid. *American Pipe*, 414 U.S. at 551 (citation omitted); *see also Griffin*, 17 F.3d at 360 (noting that where named plaintiffs lacks standing, absent tolling each unnamed class member "would have every incentive to file a separate action prior to the expiration of his own period of limitations").

**III.     CONCLUSION**

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court deny

Defendants' motion for judgment on the pleadings.

Dated:  August 8, 2011
        New York, New York


                                        **BERNSTEIN LIEBHARD LLP**


                                        /s/_____
                                        Sandy A. Liebhard (liebhard@bernlieb.com)
                                        U. Seth Ottensoser (ottensoser@bernlieb.com)
                                        Christian Siebott  (siebott@bernlieb.com)
                                        Stephanie M. Beige (beige@bernlieb.com)
                                        Joseph R. Seidman, Jr. (seidman@bernlieb.com)
                                        10 East 40th Street
                                        New York, New York  10016
                                        Tel:  (212) 779-1414
                                        Fax:  (212) 779-3218

                                        *Lead Counsel for Lead Plaintiff and the Class*