**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | 05 Civ. 7583 (WHP) |
| SMITH BARNEY TRANSFER AGENT LITIGATION | ECF case |
| This document relates to:  all actions | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York  10022
(212) 230-8800

*Counsel for Defendants Smith Barney Fund*
*Management LLC and Citigroup Global*
*Markets Inc.*

SCHULTE ROTH & ZABEL LLP
1152 Fifteenth Street, NW, Suite 850
Washington, DC  20005
(202) 729-7470

*Counsel for Defendant*
*Lewis E. Daidone*

## **Table Of Contents**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................1

     I.      SECTION 1658(B)(2) IS A STATUTE OF REPOSE THAT AFFECTS
            SUBSTANTIVE RIGHTS AND UNAMBIGUOUSLY FORBIDS TOLLING.....1

     II.     THE STATUTE OF LIMITATIONS UNDER SECTION 1658(B)(1) SHOULD
            NOT BE TOLLED BECAUSE *AMERICAN PIP*E TOLLING DOES NOT
            APPLY TO PRESERVE ACTIONS BROUGHT ON BEHALF OF A CLASS ....5

     III.    THE CLAIMS THAT ORIGINAL NAMED PLAINTIFFS HAD NO
            STANDING TO ASSERT DO NOT TRIGGER *AMERICAN PIPE* TOLLING
            OF SECTION 1658(B)(1) ....................................................................8

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................3

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ............................................................... *passim*

*Arctic Slope Native Association Ltd. v. Sebelius*,
583 F.3d 785 (Fed. Cir. 2009)........................................................................3

*Arivella v. Lucent Technologies, Inc.*,
623 F. Supp. 2d 164 (D. Mass. 2009) ........................................................3

*California Public Employees' Retirement System v. Chubb Corp.*,
No. 00 Civ. 4285, 2002 WL 33934282 (D.N.J. June 26, 2002) ................9

*Catholic Social Services, Inc. v. Immigration & Naturalization Service*,
232 F.3d 1139 (9th Cir. 2000) .................................................................7, 8

*Crown Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983)................................................................................5, 6, 7

*Footbridge Ltd. Trust v. Countrywide Financial Corp.*,
770 F. Supp. 2d 618 (S.D.N.Y 2011).....................................................3, 4, 5

*Griffin v. Singletary*,
17 F.3d 356 (11th Cir. 1994) ...............................................................7

*Haas v. Pittsburgh National Bank*,
526 F.2d 1083 (3d Cir. 1975).............................................................9

*In re Crazy Eddie Securities Litigation*,
747 F. Supp. 850 (E.D.N.Y. 1990) ....................................................7, 9

*In re Elscint, Ltd. Securities Litigation*,
674 F. Supp. 374 (D. Mass. 1987) ....................................................8, 9

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005)...............................................9

*In re IndyMac Mortgage-Backed Securities Litigation*,
No. 09 Civ. 4583 (LAK), 2011 WL 2508254 (S.D.N.Y. June 21, 2011)................5

*In re Initial Public Offering Securities Litigation,*
  No. 21 MC 92SAS, 2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004)........................................9

*In re Lehman Brothers Securities & ERISA Litigation,*
  No. 09 md 02017 (LAK), 2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011)............................3, 5

*In re Wachovia Equity Sec. Litigation,*
  753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................................9

*Joseph v. Wiles,*
  223 F.3d 1155 (10th Cir. 2000) ................................................................................................3

*Korwek v. Hunt,*
  827 F.2d 874 (2d Cir. 1987)........................................................................................5, 6, 7, 9

*Kruse v. Wells Fargo Home Mortg., Inc.,*
  No. 02 Civ. 3089, 2006 WL 1212512 (E.D.N.Y. May 3, 2006)................................................7

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
  501 U.S. 350 (1991)...................................................................................................................4

*McKowan Lowe & Co. v. Jasmine,*
  295 F.3d 380(3d Cir. 2002).......................................................................................................7

*Merck & Co. v. Reynolds,*
  130 S. Ct. 1784 (2010)...............................................................................................................5

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.,*
  No. 08 Civ. 5653, 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010)..............................................8

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999)...................................................................................................................4

*P. Stolz Family Partnership L.P. v. Daum,*
  355 F.3d 92 (2d Cir. 2004)....................................................................................................2, 5

*Popoola v. MD-Individual Practice Association, Inc.,*
  230 F.R.D. 424 (D. Md. 2005)...................................................................................................9

*Rose v. Arkansas Valley Environmental & Utility Authority,*
  562 F. Supp. 1180 (W.D. Mo. 1983) .........................................................................................9

*Smith v. Bayer Corp.,*
  131 S. Ct. 2368 (2011)...............................................................................................................4

*State Farm Mutual Automobile Insurance Co. v. Boellstorff*,
    540 F.3d 1223 (10th Cir. 2008) ........................................................................4

*Stuart v. American Cyanamid Co.*,
    158 F.3d 622 (2d Cir. 1998)............................................................................2

*Wells Fargo Mortgage-Backed Certificates Litigation*,
    No. 09 Civ. 01376, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010).........................................10

## STATUTES & RULES

28 U.S.C. § 1658(b) ........................................................................ *passim*

28 U.S.C. § 2072(b) ........................................................................1, 3

Fed. R. Civ. P. 23 ........................................................................1, 2, 4

## PRELIMINARY STATEMENT

The original named plaintiffs in this action have never had, nor claimed to have, any ownership interest in the funds in which the proposed new plaintiffs invested. This basic deficiency was made explicit and apparent to the entire putative class years ago. Despite ample opportunity to intervene or file their own claims, new plaintiffs slept on those rights for more than five years, until after Section 1658(b)'s statute of repose and statute of limitations expired. On these facts, there is no compelling justification, either at law or in equity, to toll Section 1658(b)'s statutory periods, and Plaintiffs' Opposition ("Opp") offers none. Specifically, as Section 1658(b)(2) is a statute of repose, through which Congress restricted plaintiffs' substantive rights, it may not be amended or altered by Fed. R. Civ. P. 23, a procedural rule promulgated by the Supreme Court under the Rules Enabling Act (28 U.S.C. § 2072(b)). *See infra* at Point I. Furthermore, the relevant policy considerations do not support extending the statute of limitations under Section 1658(b)(1) either for successive class claims or for claims that original named plaintiffs lacked standing to pursue. Extending tolling principles to these circumstances is particularly susceptible to abuse and inimical to policies of judicial efficiency and economy. As applied here, no unfairness would result from applying the limitations period as written and barring these new claims as untimely, and none of the relevant, equitable concerns raised by plaintiffs' Opposition mandate a contrary result. *See infra* at Points II & III.

## ARGUMENT

### I.   SECTION 1658(B)(2) IS A STATUTE OF REPOSE THAT AFFECTS SUBSTANTIVE RIGHTS AND UNAMBIGUOUSLY FORBIDS TOLLING

Plaintiffs do not dispute that Section 1658(b)(2) is a statute of repose. *See* Opp. at 10 n.4. Nor do they dispute that, absent application of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*") and its progeny, the repose period under Section 1658(b)(2)

expired, at the latest, in February 2010, approximately one year before the new plaintiffs' claims were filed.  The only contested issue regarding Section 1658(b)(2) is whether its unambiguous and categorical statutory cut-off may be extended by operation of the tolling principles articulated in *American Pipe*.

Plaintiffs offer two related, but distinct, justifications for why it should be extended: first, that *American Pipe* and its progeny is a species of legal tolling that may extend statutes of repose as well as statutes of limitations (Opp. at 10-14); and second, that new plaintiffs' claims were, in fact, timely asserted within the repose period when this class action was initially filed in 2006 because, under *American Pipe*, putative class members are treated as parties (Opp. at 8-9, 12, 14-15).  Both justifications founder because each depends on the flawed premise that Fed. R. Civ. P. 23 can serve to alter or amend the statute of repose embodied in Section 1658(b)(2).

Statutes of repose differ qualitatively from statutes of limitations.  *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).  Whereas statutes of limitations affect only the availability of a remedy, statutes of repose implicate plaintiffs' substantive rights.  *See id.* ("Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right in terms of the time allowed to bring suit"); *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) ("Generally speaking, a statute of limitations ... is an affirmative defense, affecting the remedy, but not the existence of the underlying right ... In contrast, a statute of repose extinguishes the cause of action, the right, after a fixed period of time....").

Because Section 1658(b)(2) is a statute of repose, its expiration in 2010 extinguished the substantive right of the new plaintiffs to assert Section 10(b) claims in 2011.  Under the Rules Enabling Act, the extinguishment of that right – defined by Congress – cannot be resuscitated

- 2 -

either by Fed. R. Civ. P. 23 or by judicial constructions of that Rule.  *See* 28 U.S.C. § 2072(b)

(the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23, may "not abridge, enlarge or

modify any substantive right"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13

(1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and

with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or

modify any substantive right,'"); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 md 02017

(LAK), 2011 WL 1453790, at *3 (S.D.N.Y. Apr. 13, 2011).[1]

      For this reason, plaintiffs' assertion that tolling pursuant to *American Pipe* is "legal,"

rather than "equitable," is beside the point.  Unlike equitable tolling, legal tolling is grounded in

a statutory source.  *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 176 (D. Mass. 2009).

Courts that have concluded that *American Pipe* tolling is "legal" rest their conclusions on the

theory that that Rule 23 is the statutory source.  *See, e.g. Joseph v. Wiles*, 223 F.3d 1155, 1166

(10th Cir. 2000); *Arctic Slope Native Ass'n Ltd. v. Sebelius*, 583 F.3d 785, 691 (Fed. Cir. 2009);

*Arivella*, 623 F. Supp. 2d at 176 ("*American Pipe* tolling is a species of legal tolling in that it is

derived from a statutory source, in this case Rule 23") (internal citations and quotations omitted).

Because this statutory source is promulgated under, and constrained by, the Rules Enabling Act,

even if *American Pipe* tolling is cast as a "legal" in nature, Rule 23 may not impact the

availability of the substantive right Congress circumscribed when it enacted Section 1658(b)(2)'s

statute of repose.  *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 626

(S.D.N.Y 2011); *Lehman Bros.*, 2011 WL 1453790, at *3.[2]

---

[1] It is no answer for the plaintiffs to argue that "defendant is not deprived of any substantive right that would trigger application of the Rules Enabling Act." Opp. at 15.  It is the substantive right of the plaintiffs, not defendants, that would be impermissibly enlarged by the application of *American Pipe* to Section 1658(b)(2)'s statute of repose.

[2] None of the cases that have held that *American Pipe* tolling may extend a statute of repose considered or addressed the Rules Enabling Act's constraints over Rule 23.  *See* Opp. at 10-15 and cases cited therein.

In any event, there is, in fact, no statutory source in the Exchange Act, in Rule 23, or anywhere else, that would be the basis for tolling under *American Pipe*. *See Footbridge*, 770 F. Supp. 2d at 626 ("nowhere in *American Pipe* does the Court read the test of Rule 23 as having embedded within it language that creates a class action tolling rule"). Rather, "*American Pipe* tolling is a judicially-created rule premised on traditional equitable considerations of fairness, judicial economy and needless multiplicity of lawsuits." *Id*. (citations and quotations omitted). Accordingly, it is a form of equitable tolling to which a statute of repose is not subject. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

Plaintiffs' alternative argument that new plaintiffs effectively commenced suit within the repose period when the initial class action was filed because unnamed class members become "parties" for purposes of *American Pipe* is similarly untenable. It is manifest that the new plaintiffs, as putative class members, were not parties to the litigation, and had not initiated any claim until their proposed addition to the suit in 2011. Rule 23, by its terms, does not convert putative class members into "parties" before class certification. Indeed, its text expressly distinguishes "representative parties" and "class members." Fed. R. Civ. P. 23(a-c); *see also Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (describing as "novel and surely erroneous" the argument that "a nonnamed class member is a party to the class-action litigation before the class is certified"). The treatment of putative class members under Rule 23 as "parties" is the fiction that courts indulge under *American Pipe* to toll statutes of limitation to promote judicial economy and efficiency. *See* Opp. at 12-13 (citing *State Farm Mut. Auto Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008). But courts may not employ that judicially-created fiction to "enlarge" plaintiffs' rights under a statute of repose, such as Section 1658(b)(2). *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("no reading of [Rule 23] can ignore the [Enabling]

Act's mandate that rules of procedure shall not abridge, enlarge or modify any substantive right") (citations omitted).

Plaintiffs' invocations of the policies and principles underlying *American Pipe* (Opp. at 8, 19-20) cannot serve to extend the five-year period of repose in Section 1658(b)(2).  The relative weight equitable considerations of economy, efficiency or fairness merit are for Congress, not the Courts, to determine.  As Judge Kaplan explained in *Lehman Bros*:

> This ruling is in tension with the policies animating the *American Pipe* decision.  That decision, however, spoke only of tolling statutes of limitations – something courts may do in appropriate circumstances.  When it comes to statutes of repose, however, the relevant policies are those of Congress rather than any that courts might think preferable.

2011 WL 1453790, at \*3.  Congress' enactment of Section 1658(b)(2) implemented an "unqualified bar" on actions, like those presented here, initiated more than five years after the violation alleged (*Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010)), and policies of judicial restraint and separation of powers command its enforcement as written, regardless of whatever countervailing equities exist.  *See Footbridge*, 770 F. Supp. 2d at 627; *Lehman Bros.*, 2011 WL 1453790, at \*3; *In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09 Civ. 4583 (LAK), 2011 WL 2508254 (S.D.N.Y. June 21, 2011).  Any enlargement of that statutory period must be enacted legislatively.  *See P. Stolz Family P'ship*, 335 F.3d at 102.

## II.   THE STATUTE OF LIMITATIONS UNDER SECTION 1658(B)(1) SHOULD NOT BE TOLLED BECAUSE *AMERICAN PIPE* TOLLING DOES NOT APPLY TO PRESERVE ACTIONS BROUGHT ON BEHALF OF A CLASS

The application of the tolling doctrine provided by *American Pipe* and its progeny to statute of limitations requires a "careful balancing of the interests of plaintiffs, defendants and the court system." *Korwek v. Hunt,* 827 F.2d 874, 879 (2d Cir. 1987).  The relevant policy considerations to be weighed were laid out expressly in *American Pipe* (414 U.S. at 553-54) and *Crown Cork & Seal Co. v. Parker* (462 U.S. 345, 351-52 (1983)).  Although, as plaintiffs

observe, the "efficiency and economy of litigation" is a chief concern in determining whether to toll the limitations period (Opp. at 6), those policies must be measured against "policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights'" and against the potential for abuse or exploitation of the tolling rule's leniency. *American Pipe*, 414 U.S. at 553-54 (citations omitted). In *Crown Cork & Seal*, Justice Powell's concurrence cautioned specifically against the excessive enlargement of *American Pipe*, noting that "the tolling rule of *American Pipe* is a generous one, inviting abuse," and warning that it "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." 462 U.S. at 354 (citations omitted). In the particular circumstances before the *American Pipe* and *Crown Cork* Courts – in which putative members of a proposed class whose certification was denied on numerosity grounds sought to assert individual claims on their own behalf (and not on behalf of a class) through intervention and the commencement of their own actions, respectively – the risks of abuse and unfairness to defendants were found not to outweigh the advantages of judicial economy.

That balance tilts the other way, however, when, as here, putative class members seek belatedly to assert class, as opposed to individual, claims. As the Second Circuit explained in *Korwek v. Hunt*, tolling the limitations period as to successive *class* claims runs the risk of "perpetual tolling of the statute of limitations by the filing of repeated class actions," a result that would be "inimical to the purposes behind statutes of limitation and the class action procedure." *Korwek*, 827, F.2d at 879 (citations omitted). In this context, tolling the statute of limitations exacerbates the risk of abuse, heightens the unfairness to defendants, and undermines, rather than furthers judicial economy. *See id.* As defendants observed in their Opening Brief, numerous

cases have adopted *Korwek*'s rationale and concluded that the policies animating *American Pipe*

and its progeny counsel against its application to toll the statute of limitations for subsequent

class (as opposed to individual) claims.[3]  Similar concerns predominate here because adopting

plaintiffs' proposed rule and "permitting plaintiffs to receive the benefit of tolling for subsequent

class actions would invite abuse."  *Kruse v. Wells Fargo Home Mortg., Inc.,* No. 02 Civ. 3089,

2006 WL 1212512, at *5 (E.D.N.Y. May 3, 2006) (citing *Korwek*, 827, F.2d at 879).

        In an effort to overcome *Korwek*, plaintiffs rely on *Catholic Soc. Services, Inc. v.*

*Immigration and Naturalization Services*, 232 F.3d 1139 (9th Cir. 2000) (*en banc*), to argue that

*Korwek* does not "speak to situations where the later class member tries to cure the deficiency

that led to the denial."  Opp. at 15-16.  In *Catholic*, a statutory enactment by Congress nullified

the original plaintiffs' capacity to represent a class that had already been certified.  232 F.3d at

1144.  The Ninth Circuit held, in that unusual and narrow circumstance, that *American Pipe*

tolling applied and permitted new plaintiffs, who satisfied the new statute's criteria, to assert

functionally identical class claims even though those claims would otherwise have been time-

barred.  *Id.* at 1149.  Contrary to plaintiffs' assertion, *Catholic* did not find that belated class

claims are broadly permissible whenever new parties seek merely to cure the original plaintiff's

_____

        [3] *See, e.g. Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (denying motion to amend to add a plaintiff to correct the named plaintiff's standing deficiency because "plaintiffs may not piggyback one class action onto another, and thereby engage in endless rounds of litigation in the district court and in this Court over the adequacy of successive named plaintiffs to serve as class representatives.") (internal citations omitted); *Catholic Soc. Servs., Inc. v. Immigration & Naturalization Serv.*, 232 F.3d 1139, 1153-54 (9th Cir. 2000) (*en banc*) (Kozinski, J., dissenting) (observing that "[a] subsequent class action does not merely preserve the rights of class members, it also engages for a second (or third or further) time the rationale of *Crown, Cork*," and that, on that basis, "[e]very circuit to have considered the issue (including our own) has held that the rationale of *Crown, Cork* does not permit the filing of a second or subsequent class action once the original statute of limitations has run") (citing cases); *In re Crazy Eddie Sec. Litig.,* 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (citing *Korwek*, and holding that the pendency of class action may toll putative members' individual claims, but not class claims). *McKowan Lowe & Co. v. Jasmine, Ltd.* (295 F.3d 380 (3d Cir. 2002)) appears to have reached the opposite conclusion, and determined that the relative weight of the relevant policy considerations favor the application of *American Pipe* tolling to successive class claims.  To the extent *McKowan Lowe* is inconsistent with *Korwek*, it is not the law of this Circuit. Furthermore, the initial denial of class certification in *McKowan Lowe* was prompted by adequacy and typicality concerns, not by original lead plaintiff's lack of standing.  *Id.* at 383.  Where, as here, the original class action was dismissed for lack of standing, the potential for abuse is substantially more pronounced.  *See infra* Point III.

deficiency that compelled a certification's denial. *Id*. Rather, *Catholic* was dictated by the

unusual circumstances in which it arose, and was plainly driven by equitable concerns

surrounding the unforeseeable change in law that abrogated the class' initial certification.  *See id.*

No similar inequity would result from denial of the availability of *American Pipe* tolling

to Plaintiffs' class claims here, and there was nothing unique or unanticipated about the

circumstances surrounding these claims.  Local 649's deficiencies as named plaintiff – its lack of

any ownership interest whatsoever in the funds in which the proposed new plaintiffs invested –

were foreseeable and foretold as early as 2005.  *See* Opening Brief at 18.[4]

### III.   THE CLAIMS THAT ORIGINAL NAMED PLAINTIFFS HAD NO STANDING TO ASSERT DO NOT TRIGGER *AMERICAN PIPE* TOLLING OF SECTION 1658(B)(1)

Substantially similar policy considerations compel the conclusion that *American Pipe* and

its progeny cannot serve to toll the statute of limitations for claims that the original plaintiffs in

this action lacked standing to assert.  In particular, as courts have routinely expressed, the

potential for the type of abuse identified by Justice Powell in *Crown Court* – exploitation of

*American Pipe* to circumvent the applicable statute of limitations – is particularly acute in the

standing context.  *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ.

5653, 2010 WL 6508190, at *2 n.1 (S.D.N.Y. Dec. 15, 2010) ("[i]f American Pipe tolling

applied in situations where the dismissed plaintiff was found by the court to lack standing, this

would clearly 'encourage attempts to circumvent the statute of limitation by filing a lawsuit

without an appropriate plaintiff and then searching for one who can later intervene with the

benefit of the tolling rule.'") (citations omitted); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374,

---

[4] Thus, plaintiffs' argument that, as an abstract matter, "unnamed class members have little way of determining whether the named plaintiffs actually have standing" (Opp. at 20) is not germane to this case. *These* unnamed members had ample means to determine whether Local 649's had standing to assert claims as to the funds they owned, and, in fact, several of them affirmatively argued before this Court that it did not.  Opening Br. at 18 (citing Dkt. No. 32 at 3).

378 (D. Mass. 1987); *In re Crazy Eddie*, 747 F. Supp. at 856; *cf. California Pub. Emps .' Ret. Sys. v. Chubb Corp.*, No. 00 Civ. 4285, 2002 WL 33934282, at *28 (D.N.J. June 26, 2002) ("Nowhere is the possibility of abuse as acute as in the standing context").

Although, as plaintiffs note, the law is far from settled (Opp. at 18), courts that permit a statute of limitations to be tolled where the original plaintiff lacked standing tend to do so only where the facts of the case give rise to additional and particularized equitable considerations that justify *American Pipe*'s application – most typically in the form of external indicia of reliability provided to putative class members that named plaintiffs are adequately serving their interests. For instance, in *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975) and in *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F. Supp. 1180 (W.D. Mo. 1983), on which Plaintiffs rely, the courts certified a class and later determined, upon reconsideration, that certification was erroneous.  "The initial certification may be considered significant because it served to give . . . unnamed class members assurance that they had no need to attempt to intervene."  *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. at 378-79.  Likewise, in *In re Initial Public Offering Securities Litigation*, the original named plaintiff affirmatively represented that he had purchased the securities at issue in both his complaint and his PSLRA certification, when, in fact, he had not, a misapprehension that was buttressed by the original Plaintiff's own trading records.  No. 21 MC 92SAS, 2004 WL 3015304, at *5 n.46 (S.D.N.Y. Dec. 27, 2004).[5]

Here, by contrast, the new plaintiffs had notice of the standing deficiencies at an early enough stage to have moved to intervene or file their own actions prior to dismissal and before

---

[5] The few cases that permit *American Pipe* tolling where the original plaintiff has been determined to lack standing generally fail to address or consider the potential for abuse identified by Justice Powell in *Crown, Cork* and the cases described above.  *See, e.g. In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372 (S.D.N.Y. 2011) (considering only policies of judicial economy and efficiency); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 455 (S.D.N.Y. 2005) (same); *Popoola v. MD-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 430 (D. Md. 2005) (focusing exclusively on defendant's notice of the later asserted claims).[5]  In so doing, they engage in no "careful balancing of the interests of plaintiffs, defendants and the court system" that *American Pipe* itself undertook and that *Korwek* requires.  *See Korwek*, 827 F.2d at 879.

the limitations period expired.  *See* Opening Br. at 18.  In fact, in 2005, a number of the proposed, additional plaintiffs argued specifically that Local 649 lacked standing to serve as lead plaintiff on behalf of investors in funds in which they did not invest, and the order appointing Local 649 as lead plaintiff specifically counseled lead plaintiff to include additional named plaintiffs to represent each fund..  See Dkt. No. 32 at 3; Dkt. No. 51 (Memorandum and Order dated Apr. 17, 2006), at 7-8.  Moreover, although the Court need not consider external evidence to reach its conclusion, deposition discovery has been confirmatory of new plaintiffs' lack of reliance on Local 649's assertion of their rights: new plaintiffs have conceded their ignorance of the pending lawsuit until after the expiration of the limitations period.  *See, e.g.* Rees Tr. 22:20-24 ("Q. When did you first learn of the lawsuit? A: May. Q: May of 2011? A: Yes."); R. Yiambellis Tr. 133:12-22 ("Q: When did you learn that you were defrauded? A: A couple of weeks ago.").[6]  On these facts, the relevant equities do not support tolling, and barring these claims as untimely is in no way unfair.  *See Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09 Civ. 01376, 2010 WL 4117477, at *5 (N.D. Cal. Oct. 19, 2010).  Furthermore, new plaintiffs had the opportunity to seek restitution through the Fair Fund, but slept on those rights. Opening Br. at 18-19; *see, e.g.,* Casnoff Tr. 132:15-22 ("Q: Did DVL 401(k) Plan . . . to your knowledge, make a claim to the amount that was disgorged to the funds? … A: No. Q: Why not? A: 'Cause we didn't know about it.").

## CONCLUSION

For the reasons stated above, and in Defendants' opening Brief, the Court should grant Defendants' motion for judgment on the pleadings and dismiss the claims brought by new plaintiffs with prejudice.

---

[6] The deposition testimony excerpts cited herein, by witness last name, page and line, are attached to the accompanying Declaration of Peter K. Vigeland.

Dated:  August 15, 2011

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: _____ /s/Peter K. Vigeland _____
Lori A. Martin (lori.martin@wilmerhale.com)
Peter K. Vigeland (peter.vigeland@wilmerhale.com)
David Burkoff (david.burkoff@wilmerhale.com)
Brian Sutherland (brian.sutherland@wilmerhale.com)
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

*Counsel for Defendants Smith Barney
Fund Management LLC and Citigroup
Global Markets Inc.*

SCHULTE ROTH & ZABEL LLP

By: _____ /s/Peter H. White _____
Richard J. Morvillo (richard.morvillo@srz.com)
Peter H. White (pete.white@srz.com)
1152 Fifteenth Street, NW. Suite 850
Washington, DC 20005
(212) 729-7470

*Counsel for Defendant Lewis E. Daidone*