UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
IN RE: SMITH BARNEY TRANSFER         :     05 Civ. 7583 (WHP)
AGENT LITIGATION                     :
                                     :     MEMORANDUM & ORDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
THIS DOCUMENT RELATES TO:            :
                                     :
ALL ACTIONS                          :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/11

      The epic failures described in this Memorandum & Order offer a cautionary lesson for securities litigators. They are recounted here to highlight the need for diligence at all stages of litigation. In short, after six years of litigation, including extensive motion practice, an appeal to the Second Circuit, remand, more motion practice, and discovery, Lead Counsel learned that the Lead Plaintiff never purchased any of the securities at issue in this action. That remarkable revelation occurred six years to the day after the filing of the lawsuit. And, in retrospect, it was something so obvious that every lawyer in the case should have recognized the problem and reacted immediately. But no one did.

      To better understand what occurred, a brief recapitulation of the tortured history of this action is appropriate.[1] This class action began with the filing of <u>Chilton v. Smith Barney Fund Management, LLC</u>, No. 05 Civ. 7583 (WHP). <u>Chilton</u> was filed on August 26, 2005, three

---

[1] Familiarity with the prior decisions in this action is presumed. See <u>In re Smith Barney Transfer Agent Litig.</u>, 765 F. Supp. 2d 391 (S.D.N.Y. 2011); <u>Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgm't LLC</u>, 595 F.3d 86 (2d Cir. 2010); <u>In re Smith Barney Fund Transfer Agent Litig.</u>, No. 05 Civ. 7583 (WHP), 2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007); <u>In re Smith Barney Fund Transfer Agent Litig.</u>, No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2007); <u>Smith Barney Fund Transfer Agent Litig.</u>, No. 05 Civ. 7583 (WHP), 2006 WL 991003 (S.D.N.Y. Apr. 17, 2006).

1

months after Citigroup (which had acquired Smith Barney) agreed to pay approximately $208 million, including $128 million in disgorgement and interest and $80 million in penalties, to settle an SEC claim concerning the same operative facts at issue in this litigation.[2] Thereafter, this Court consolidated several related actions and permitted motions for the appointment of a lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 ("PSLRA"). In its motion, Operating Local 649 Annuity Trust Fund ("Local 649") included a certification representing that it had purchased over 75,000 shares of the Smith Barney Capital Preservation Fund and had an "average dollar holding" of $8,395,128 during the class period (the "Certification"). (Decl. of Joseph Seidman, Jr. in Support of the Mot. of [Local 649] and Jeffrey Weber for Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection as Lead Counsel Ex. 1, In re Smith Barney Transfer Agent Litig., 05 Civ. 7583 (S.D.N.Y. Jan. 20, 2006), ECF No. 49); Smith Barney, 2006 WL 991003, at *3. This Court relied on the Certification in appointing Local 649 as Lead Plaintiff and Bernstein Leibhard LLP as Lead Counsel.

On June 2, 2006, Local 649 filed a consolidated amended complaint alleging securities fraud in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and breach of fiduciary duty in violation of § 36(b) of the Investment Advisers Act of 1940, 15 U. S. C. § 80b-1 et seq., against Defendants Smith Barney Fund Management LLC ("Smith Barney"), Citigroup Global Markets, Inc., Lewis Daidone, and Thomas Jones.[3] In anticipation of a motion to dismiss, Local 649 moved to lift the PSLRA's mandatory discovery

---

[2] Press Release, U.S. Securities and Exchange Commission, Citigroup to Pay $208 Million to Settle Charges Arising from Creation of Affiliated Transfer Agent to Serve Its Proprietary Mutual Funds (May 31, 2005) (*available at* http://www.sec.gov/news/press/2005-80.htm).

[3] This Court subsequently dismissed all claims against Thomas Jones. See Smith Barney, 765 F. Supp. 2d at 401.

2

stay, which this Court denied. Smith Barney, 2006 WL 1738078, at *3. On September 26, 2007, this Court dismissed the Complaint in its entirety. In re Smith Barney Fund Transfer Agent Litig., 2007 WL 2809600, at *5.

Local 649 appealed. On February 16, 2010, the Court of Appeals vacated and remanded this Court's dismissal of the § 10(b) claim for failure to state a claim and affirmed dismissal of the § 36(b) claim for failure to plead derivatively. Thereafter, Defendants renewed their motion to dismiss the § 10(b) claim on grounds not reached in this Court's earlier decision. Extensive briefing again ensued.

On January 25, 2011, this Court granted in part and denied in part Defendants' renewed motion. Among other things, this Court dismissed the claims related to Smith Barney funds in which no named plaintiff had invested (the "Dismissed Funds") on the grounds that Plaintiffs lacked standing to pursue those claims. Smith Barney, 765 F. Supp. 2d at 399-400, 403.

In February 2011, discovery commenced and this Court rejected a request by counsel—Stull, Stull & Brody—to intervene on behalf of purchasers of the Dismissed Funds. Instead, this Court granted Lead Counsel's request for additional time to locate purchasers of the Dismissed Funds and file an amended complaint adding them as named plaintiffs. Following the filing of that complaint—the fourth in this action—Defendants moved in July 2011 for judgment on the pleadings, arguing that claims by newly added Plaintiffs were barred by the statute of repose. This was Defendants' third motion addressing the sufficiency of the pleadings. Again, the parties submitted extensive briefing and this Court scheduled argument for September. In the meantime, the parties conducted discovery and briefing on Local 649's motion for class certification.

3

Notwithstanding six years of hard-fought and costly litigation—including the appointment of Lead Plaintiff and Lead Counsel, three motions under Fed. R. Civ. P. 12, a lengthy appeal, and the denial of a request to intervene—Lead Counsel nonchalantly nestled a startling revelation in an August 31, 2011, letter to the Court:

> On August 26, 2011, it was brought to our attention that there was a possible mislabeling in Local 649's account statements and, in this regard, Local 649 had actually purchased shares of the remarkably similarly named Smith Barney Capital Preservation Collective Trust (which is not part of this litigation).
> . . .
> Upon further review, we have confirmed that, although Local 649's statements appear to report that it bought shares of the Smith Barney Capital Preservation mutual fund, it did not. Thus, Local 649 will be withdrawing as Lead Plaintiff.

(Letter from U. Seth Ottensoser to the Court dated Aug. 31, 2011 at 1-2) (ECF No. 173.)

Given the enormous effort expended by this Court and the Court of Appeals, not to mention counsel for the parties in this case, one would have expected an expression of contrition, including a detailed explanation concerning how this mistake occurred, why it remained undiscovered, and its effect on the current proceedings. Instead, Lead Counsel pretended that it was an innocuous development and presented it as a mere administrative matter.[4] But of course, its impact is seismic. This is especially true since the latest motion for judgment on the pleadings addressed the very issue of standing raised by Local 649's recent epiphany.

Lead Counsel's failure to confirm the most basic fact—that its client purchased the securities at issue in this action—has resulted in a considerable waste of time and resources. It will require, <u>inter alia,</u> (1) new motions for appointment of lead counsel; (2) the filing of yet

---

[4] To his credit, at a subsequent status conference on September 15, 2011, counsel for Local 649 apologized to the Court for the trouble caused by this significant factual error. Whether defense counsel appreciate their role in this debacle remains an open question. (Hr'g Tr. dated Sept. 15, 2011 at 4, 16-17) (ECF No. 171.)

4

another amended complaint; (3) a new motion to dismiss concerning the statute of repose; (4) additional class certification discovery; and (5) new briefing on Plaintiffs' motion for class certification. At a conference on September 8, 2011, Lead Counsel offered no persuasive explanation for the factual error and reflexively claimed reliance on an account statement the funds' custodian had prepared to support the Certification. Lead Counsel did not, however, endeavor to independently verify Local 649's holdings, despite the presence of more than 100 funds in this action and the proclivity of investment firms to give their funds remarkably similar names. Moreover, Lead Counsel failed to recognize a red flag in the custodial account statement: the account statement lists Local 649 as investing in the "Capital Preservation Fund," but it provides no CUSIP number or corresponding Smith Barney account number.

While it is tempting to attribute this mistake to a mere scrivener's error (as Lead Counsel suggests), that explanation is wholly inadequate. This is a large class action lawsuit against multiple defendants involving voluminous discovery and extensive motion and appellate practice. The $208 million settlement with the SEC in 2005 demonstrates that real money is at stake. Lead Counsel is well aware of the costs associated with such litigation and should have conducted sufficient due diligence before embarking on this six-year detour and frolic. Standing to bring claims on behalf of a class is a threshold question that must be evaluated before a complaint is filed. And this responsibility continues throughout the litigation. With a little diligence, Lead Counsel should have unearthed this important fact during motions for appointment of a lead plaintiff and motions challenging standing.

But Smith Barney and its attorneys share responsibility for such a fundamental oversight. Astonishingly, defense counsel failed to ask their clients whether Local 649 had invested in any of the Smith Barney funds and, if so, specifically which ones. And Smith Barney

5

was in a perfect position to know. As counsel for Defendants conceded, Smith Barney maintained its own records concerning the identity of investors in the Smith Barney Capital Preservation mutual fund. (Hr'g Tr. dated Sept. 8, 2011 at 8) (ECF No. 166.) Nevertheless, counsel for Defendants failed to review those records until discovery on class certification had nearly concluded. Id. at 5. And even then, defense counsel did not detect the problem. Their explanation that they have no obligation to review their own clients' transaction records prior to the resolution of a motion directed at the sufficiency of the pleadings is a sad apologia.

Defense counsels' excuse also overlooks the importance of the adversarial process in uncovering facts and aiding judicial decision-making. One of the foundational grounds for a motion testing the pleadings is lack of standing, which, in this case, encompasses the issue of whether Plaintiff purchased any of the Smith Barney funds at issue. Something as effortless and inexpensive as a telephone call or email to a Smith Barney representative would have provided additional support for such a motion. The CUSIP system, which assigns an alphanumeric code to most securities, was invented for the purpose of keeping track of securities transactions.[5] To wait until <u>after</u> such a motion to investigate these facts is, at best, counterintuitive.

Motion practice is not akin to urban warfare, where combatants clear buildings (or, in this case, critical factual allegations) one at a time. The benefit of diligent initial inquiry concerning the facts supporting a party's status should be obvious to securities litigators. Moreover, the contest for lead plaintiff designation is not a spectator sport for defendants. Had Smith Barney simply checked its records, it would have avoided six years of sparring with a phantom opponent.

Ultimately, this Court acknowledges that cautious clients and the ever-increasing costs of litigation preclude counsel from attending meticulously to every fact and detail of a case,

---

[5] http://www.sec.gov/answers/cusip.htm

especially at the outset. But this was not a blue-booking error or a formatting glitch. And it was not without consequence to the Court, not to mention the parties. Substantial judicial and client resources have been diverted to adjudicate a claim that the Lead Plaintiff never had. Now, this litigation has assumed Sisyphean dimensions. And the quest to find a lead plaintiff begins anew.

Local 649's request to withdraw as Lead Plaintiff must be granted because it never was a proper plaintiff at all. However, for the foregoing reasons, the request to amend the complaint to add a new lead plaintiff is denied at this time. Renewed lead plaintiff motions are appropriate to ensure the appointment of suitable class representatives and lead counsel. The withdrawal of Local 649 calls into question the propriety of permitting Jeffrey Weber to act as the only lead plaintiff. Moreover, it would be imprudent to permit Lead Counsel to add a lead plaintiff of their choosing.

Accordingly, by separate order, this Court will fix a briefing schedule for appointment of lead plaintiff and lead counsel. And discovery is once again stayed pending resolution of that motion.

Dated: September 22, 2011
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*