UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SMITH BARNEY FUND TRANSFER AGENT LITIGATION | 05 Civ. 7583 (WHP) |

DECLARATION OF JOSEPH R. SEIDMAN, JR. IN SUPPORT
OF MOTION OF JEFFREY WEBER AND ROBERT AND ANN YIAMBELLIS
TO BE SUBSTITUTED AS LEAD PLAINTIFFS, AND FOR APPROVAL OF
BERNSTEIN LIEBHARD LLP AS THEIR CHOICE OF LEAD COUNSEL

I, JOSEPH R. SEIDMAN, JR., declare as follows:

1. I am a senior associate with the law firm of Bernstein Liebhard LLP, Lead Counsel for the former Lead Plaintiff Operating Engineers Local 649 Annuity Trust Fund ("Local 649"). I am licensed to practice law before the Courts of the State of New York. I submit this declaration upon personal knowledge and in support of the Motion of Jeffrey Weber and Robert and Ann Yiambellis to be Substituted as Lead Plaintiffs, and for Approval of Bernstein Liebhard LLP as their Choice of Lead Counsel. I have been involved with this case since inception in August 2005. This declaration is to provide an overview of Lead Counsel's efforts in the case, the discovery and briefing completed, and the matters remaining in the litigation.

**The Initial Complaints**

2. Five complaints concerning the subject matter of this litigation were filed in August and September, 2005, four of which alleged violations of Section 36(b) of the Investment Company Act of 1940 ("ICA"), and one of which alleged violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

3. After notice was published on the internet pursuant to the Private Securities Litigation Reform Act ("PSLRA"), two motions for lead plaintiff were filed on December 12, 2005: (1) by Local 649 and Jeffrey Weber ("Weber"); and (2) by Charles Chiumento, Vivaine Benoudiz, Walter Walkiewicz, and David Zagunis (the "Chiumento Group"). After briefing and oral argument, the Court appointed Local 649 and Weber as lead plaintiffs on April 15, 2006.

**The First Amended Complaint**

4. Plaintiffs filed their First Amended Complaint on June 1, 2006, alleging that Defendants violated Section 10(b) of the Exchange Act and Section 36(b) of the ICA. Plaintiffs also alleged that Defendants Lewis Daidone and Thomas Jones were liable as "controlling persons" under Section 20(a) of the Exchange Act. Defendants moved to dismiss the First Amended Complaint on a number of grounds, including materiality, standing, scienter, loss causation, failure to plead 10(b) claims derivatively, failure to plead 36(b) claims derivatively, and damages.

**The Court's Decision Dismissing The Case and the Subsequent Appeal**

5. After full briefing and oral argument, on September 26, 2007, the District Court granted Defendants' motion to dismiss the First Amended Complaint, holding that (1) Plaintiffs had not identified any material false statements under the Exchange Act, and (2) Plaintiffs' claims under the ICA should have been pled derivatively. The Court granted Plaintiffs leave to replead the ICA claims by October 19, 2007. Plaintiffs chose not to replead and, accordingly, final judgment was entered on November 6, 2007. Plaintiffs timely appealed on November 16, 2007.

6. On February 16, 2010, the United States Court of Appeals for the Second Circuit issued an opinion vacating and remanding this Court's judgment with respect to Plaintiffs'

claims under Section 10(b) and Rule 10b-5, holding that Plaintiffs adequately alleged material omissions and loss causation.[1]

**Defendants' Second Motion To Dismiss and the Court's Second Decision**

7. On April 28, 2010, Defendants filed their second motion to dismiss. This was intended to address the arguments not covered by the Court in its decision on Defendants' first motion to dismiss, including scienter, standing, and whether Plaintiffs' 10(b) claims should have been plead derivatively.

8. After full briefing and oral argument, on January 25, 2011, the Court upheld Plaintiffs' Section 10(b) claims; held that Plaintiffs required standing in each of the Smith Barney funds at issue in order to assert claims on behalf of investors in each fund; dismissed Defendant Jones from the case because he did not sign any misleading statements; and dismissed all claims by holders, as opposed to purchasers and sellers of Smith Barney funds.

9. On February 15, 2011, the Court held a status conference. At that conference, the Court ordered that Plaintiffs had until May 5, 2011 to file their second amended complaint, which complaint could include named plaintiffs to cure the standing deficiencies discussed in the Court's January 2011 order.

**Discovery Begins**

10. In its February 17, 2011 order, the Court set a discovery cutoff of January 31, 2012.

11. On March 7, 2011, Plaintiffs issued their first request for production of documents to Defendants. That document request sought documents concerning the matters at issue in the case, including documents relating to the transfer and sub-transfer agents, Defendants' internal

---

[1] *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.*, 595 F.3d 86, 98-99 (2d Cir. 2010).

3

investigations concerning the scheme at issue, the SEC action, as well as the net asset value, investment returns, cost data, customer information and turnover rates concerning the affected funds.

12. Defendants answered the First Amended Complaint on March 10, 2011.

13. Beginning on May 4, 2011 and continuing on a rolling basis, Defendants Smith Barney Fund Management, LLC ("Smith Barney") and Citigroup Global Markets, Inc. ("Global Markets") have produced approximately 34,944 documents, totaling 341,151 pages. Lead Counsel has reviewed this production, analyzed the documents, and prepared for depositions of relevant witnesses.

14. Defendant Lewis Daidone has also made available to Plaintiffs 60 boxes of documents, which Lead Counsel has partially reviewed. In particular, among those documents, Plaintiffs focused on the important transcripts and exhibits from the SEC action.

15. Documents reviewed include: internal and external studies and reports regarding the transfer agent function and the options for internalizing the transfer agent process; correspondence between Defendants and First Data Corporation (the sub-transfer agent) regarding the negotiation of the sub-transfer agent agreement; agreements between the Defendants and First Data (including drafts); transcripts of all depositions conducted in the SEC action (including over 350 exhibits utilized in the depositions); minutes of the various fund board of directors meetings concerning the internalization of the transfer agent function; communications between the Defendants regarding the transfer agent selection process; and a substantial number of financial charts and reports that tracked transfer agent income and profitability.

**Plaintiffs' Second Amended Complaint**

16. On May 5, 2011, Plaintiffs filed their second amended complaint (the "Second Complaint"), which included 12 named plaintiffs: Colette Luff, DVL 401(k) Pension Plan, Jeffrey Weber, Steven Hall, Robert and Ann Yiambellis, Bharat Shah, David Zagunis, Richard Rees, Linda Rotskoff, CTL Thompson, Inc., and Bradley Rephen, who collectively invested in 35 of the over 100 funds believed to be at issue in this action. Four of these named plaintiffs were provided by Stull Stull & Brody.

**Discovery Continues**

17. On May 17, 2011, Defendants issued their first set of interrogatories and requests for production of documents to Local 649, as well as to the 12 named plaintiffs included in the Second Complaint.

18. On May 27, 2011, Defendants noticed depositions of all named plaintiffs, as well as Local 649.

19. Plaintiffs responded to Defendants' requests for production of documents and interrogatories on a rolling basis. Responses to the document requests and interrogatories, as well as documents, were produced for all named plaintiffs (other than those who subsequently withdrew), as well as for Local 649. Lead Counsel also engaged in various disputes with Defendants over the amount of documents produced.

20. On May 23, 2011, Plaintiffs wrote to the Court requesting that they be allowed to add named plaintiff Renee Miller. Separately, Defendants had written a pre-motion conference letter to the Court requesting leave to file a motion to dismiss based on statute of limitations grounds. After a hearing before the Court on June 24, 2011, which concerned Ms. Miller as well

as Defendants' pre-motion conference request, the Court allowed Plaintiffs to add Ms. Miller, and permitted Defendants to file their statute of limitations motion.

21.     On June 27, 2011, Defendants served a second interrogatory on Plaintiffs, which requested that Plaintiffs identify every misleading statement and who made such statement. Plaintiffs responded to this interrogatory on July 27, 2011.

22.     Between June 28, 2011 and August 18, 2011, Local 649, as well as every named plaintiff (excluding those who had withdrawn) were deposed. Lead Counsel defended many of these depositions, and second-chaired the remainder. Those depositions were quite comprehensive and lasted most of the day. Local 649's investment consultant, Marquette Associates, was deposed on August 25, 2011.

23.     Following the deposition of Marquette Associates, Defendants sent a letter to Lead Counsel on August 26, 2011 advising that they believed that Local 649 did not purchase a fund at issue in the litigation. This was the first time Lead Counsel learned that Local 649 may have purchased the collective trust and not the mutual fund, as indicated on numerous account statements prepared by Local 649's custodian bank, South Side Trust and Savings Bank. *See, e.g.*, accompanying memorandum of law at 3 n.5. Lead counsel immediately conducted an investigation concerning Defendants' assertion and advised the Court on August 31, 2011 that Local 649 would be withdrawing from the action.

**Plaintiffs' Third Amended Complaint**

24.     On June 30, 2011, Plaintiffs filed their Third Amended Complaint, adding Ms. Miller and withdrawing one named plaintiff from the action. Lead Counsel subsequently informed Defendants that two other named plaintiffs would be withdrawing from the action.

**Discovery Overview**

25. During the course of discovery, Lead Counsel issued the following document and deposition subpoenas:

    a. George Betzios, a director of mutual fund operations for Citigroup Asset Management ("CAM"), which is comprised of, in part, Smith Barney and the management operations of Global Markets;

    b. BNY Mellon Investment Services, successor in interest to First Data, the sub-transfer agent;

    c. Citicorp Trust Bank, the Smith Barney-related transfer agent;

    d. Deloitte & Touche, advisor to Defendants in connection with changing the transfer agent structure;

    e. Donald Foley, who served on various Smith Barney mutual fund boards;

    f. Thomas W. Jones, who was dismissed from the case as a defendant, was Chief Executive Officer of CAM;

    g. Michael McCarthy, Senior Vice President of First Data Corporation; and

    h. Michael Yellin, Chief Accounting Officer for CAM.

26. Lead Counsel served two 30(b)(6) subpoenas on Defendants Smith Barney and Global Markets. Defendants served their objections to these 30(b)(6) notices and Lead Counsel had been negotiating with Defendants in an effort to resolve the matter and not involve the Court.

27. Lead Counsel was planning on taking most of these depositions in September and October 2011, then moving on to the most important depositions, for example, that of Defendant Lewis Daidone, afterward. As described below, Lead Counsel had also done extensive work

with its damages expert and, together with its extensive document review and deposition preparation, was well-poised to complete discovery by the cutoff of January 31, 2012. Lead Counsel was also planning on marking documents and obtaining testimony at the depositions for the inevitable summary judgment motions, as well as trial.

28. All subpoenas are currently on hold pending the outcome of the motion to substitute lead plaintiffs.

**Defendants' Statute of Limitations Motion**

29. On July 8, 2011, Defendants moved for judgment on the pleadings on the grounds that the named plaintiffs lacked standing to allege their claims based on arguments concerning the applicable statute of limitations and statute of repose. Plaintiffs opposed this motion, which dealt with complex procedural issues, on August 8, 2011. Defendants filed their reply on August 15, 2011.

**Plaintiffs' Motion For Class Certification**

30. On July 15, 2011, Plaintiffs filed their motion for class certification. In that motion, Plaintiffs utilized documents gleaned during discovery. On the class certification motion, Plaintiffs argued that Local 649, as well as nine named plaintiffs, some of whom had been deposed and most of whom had produced documents, each satisfied the relevant elements of Rule 23 of the Federal Rules of Civil Procedure. Defendants opposed the motion on August 31, 2011. Plaintiffs had drafted a reply brief which was never filed because the Court struck the class certification briefing.

**Plaintiffs' Work With Damages Expert**

31. Lead Counsel has worked extensively with a damages expert. Lead Counsel's work on damages has included:

  a. determining the amount of money wrongfully removed from the affected Smith Barney funds through the transfer agent scheme;

  b. determining the turnover of investors in the funds, namely, how many investors who bought or sold funds shares during the class period still held their shares in April, 2010 when money from the SEC settlement went back to the funds; and

  c. determining the extent of lost opportunity damages, i.e., the amount by which class members' investments in the funds would have grown, at the rate of each particular fund from which the money was removed, if the monies had not been removed.

  32. Lead Counsel has also engaged in numerous discovery disputes with Defendants over their production of documents, including those documents relating to damages, particularly with reference to the funds' net asset value, rate of return, and investor turnover. After much correspondence, on August 22, 2011, Defendants began producing documents concerning the net asset value and rate of return in the affected funds.

  33. Part of the dispute on damages documents remains ongoing, namely, relating to post-class period data. This data is crucial because the net asset values and rate of return in the affected funds is necessary to compute (i) Plaintiffs' lost opportunity damages; and (ii) how

many, if any, shareholders were made whole in the SEC settlement, through which money was returned to the funds in April 2010.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of October 2011 at New York, New York.

_____
JOSEPH R. SEIDMAN, JR.