UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SMITH BARNEY<br>FUND TRANSFER AGENT LITIGATION | 05 Civ. 7583 (WHP) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF ARTHUR LAUFER'S
MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD
PLAINTIFF'S SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO
<u>COMPETING LEAD PLAINTIFF AND LEAD COUNSEL MOTIONS</u>**

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
Kira German
501 Fifth Avenue, Suite 1408
New York, New York 10017
Tel: 212-905-0509
Fax: 212-905-0508

560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7337
Fax: 201-567-7377

*Counsel for Movant Arthur Laufer*

Movant Arthur Laufer[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff in the above-referenced action and approval of his selection of Gardy & Notis, LLP as Lead Counsel for the Class; and in opposition to the competing lead plaintiff motions filed by the "Yiambellis Group" of Jeffery Weber ("Weber") and Ann and Robert Yiambellis ("Yiambellis") with Bernstein Liebhard LLP ("Bernstein Liebhard") as proposed lead counsel, and David Zagunis ("Zagunis") with Stull, Stull & Brody and Weiss & Lurie as proposed co-lead counsel.

## INTRODUCTION

Laufer, who purchased 4,385.965 shares valued at $50,000 in the Smith Barney Capital Preservation Fund (the "Capital Preservation Fund") is the only movant to have purchased shares in the very fund in which the previous lead plaintiff, Local 649, erroneously asserted it had invested. *See* Exh. 1 to the Declaration of Kira German ("German Decl.") Laufer is also the only movant who does not come to the case saddled with baggage of a prior plaintiff whose holdings were misrepresented or who otherwise failed to demonstrate proper stewardship of the Class' interests.

The competing movants have not demonstrated that they will adequately protect the interests of the Class. Indeed, discovery has revealed that their claims are not typical of the rest of the Class, and that they are subject to unique defenses. Weber, for example, only purchased 104 shares valued $1,172 in two of the Funds prior to the start of the Class Period, and his transactions during the Class Period were automatic reinvestments of dividends and capital gains in *de minimus* amounts. Weber also testified that he did not rely on any misleading statements

---

[1]   All capitalized terms in this brief have the same meaning as terms defined in Laufer's opening brief. In his opening brief, Laufer inadvertently referred to the Second Consolidated and Amended Class Action Complaint. In fact, Laufer adopts the Third Consolidated and Amended Class Action Complaint (hereinafter, the "Complaint").

and did not read written documents provided to him by Defendants.[2]   While Yiambellis purchased 44,433 shares valued at $738,814 and sold 15,437 shares valued at $222,187 in the Funds during the Class Period, these movants likewise admitted during depositions that they did not review written materials provided to them by the Defendants and did not rely on any written misstatements.  The Yiambellis Group is also proffering as lead counsel the very firm that has put this entire litigation in jeopardy, Bernstein Liebhard,[3] thus, casting doubt whether this group will be able to adequately lead the Class.

Zagunis is similarly subject to unique defenses.  Like Weber, Zagunis invested in the funds prior to the Class Period, purchasing 855.215 shares valued $12,150.68 and selling 10,239.795 shares valued at $116,972.11 during the Class Period.  Most of his subsequent transactions in the Funds during the Class Period were automatic reinvestments on the underlying equities.  Zagunis also testified that he did not rely on any Defendants' misstatements in the prospectus.  Additionally, Zagunis demonstrated that he will not serve as an adequate representative for the Class because he was not aware of his status in the litigation, was not aware that an appeal was taken on his behalf, and apparently made no effort to control his counsel as expected of a lead plaintiff under the PSLRA.

Given the testimony of Weber, Yiambellis and Zagunis, as well as Weber's and Zagunis' Class Period transaction history, it is not surprising that Defendants have already vigorously objected to Weber, Yiambellis, and Zagunis serving even as named plaintiffs (let alone lead plaintiffs) on behalf of the Class.  *See* Defendants' Opposition to Lead Plaintiff's Motion for

---

[2]   As provided in the Complaint, the remaining defendants are Smith Barney Fund Management LLC, Citigroup Global Markets Inc. and Lewis E. Daidone.

[3]   Movant Laufer does not question Bernstein Liebhard's qualifications generally; however, in this instance, Bernstein Liebhard's error is of such magnitude as to endanger the entire action on behalf of the Class, and the firm should not be appointed lead counsel.

Class Certification ("Class Certification Opposition"), Dkt. 162.  Laufer does not suffer from these infirmities, does not come with the baggage of the other movants for lead plaintiff, and should be appointed Lead Plaintiff because that is in the best interest of the Class.

## LEGAL ARGUMENT

I.    LAUFER IS THE ONLY INVESTOR IN THE SMITH BARNEY CAPITAL PRESERVATION FUND TO MAKE A TIMELY MOTION AND SHOULD BE APPOINTED LEAD PLAINTIFF, OR ALTERNATIVELY, CO-LEAD PLAINTIFF FOR THE CLASS

In addition to meeting both PRLRA and Rule 23(a) requirements, Laufer currently stands as the only movant capable of representing Class members who invested in the Capital Preservation Fund.  Indeed, no other plaintiff named in the Complaint holds shares in the Capital Preservation Fund – a fund with millions of shares and perhaps thousands of affected investors. As the Court held in its January 25, 2011 Memorandum & Order, plaintiffs cannot represent members of a class of which they are not.  *See* Dkt. 121 at 11-12 ("'While plaintiffs are correct that lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit, the selection of lead plaintiffs does not remove the basic requirement that at least one named plaintiff must have standing to pursue each claim alleged'….Accordingly, Plaintiffs lack standing to pursue claims related to the Smith Barney Funds in which no named plaintiff invested.").  Here, Laufer, like other members of the Class, believed that he was represented by Local 649.  Since Local 649 belatedly withdrew as lead plaintiff after more than six years of litigation, Laufer's interest (as the interest of every other holder of shares in the Capital Preservation Fund) will not be protected.  As such, if the Court does not name Laufer as Lead Plaintiff, the Court should name Laufer as Co-Lead Plaintiff on behalf of the Class.

Laufer's motion is also timely.  Although Laufer did not move in response to the original notice, he made a timely motion to be appointed lead in response to the Order.  *See In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002); *In re Baan Co. Sec. Litig.*, 2002 WL 32307825, at *2 (D.D.C. July 19, 2002); *In re Neopharm, Inc. Sec. Litig.*, 02 C 2967, 2004 WL 742084, at *2–3 (N.D.Ill. Apr. 7, 2004).  Laufer should not have been required to move to be added as named plaintiff pursuant to the Court's February 17, 2011 order (Dkt. 123) because, at all relevant times, Local 649 represented that it owned shares in the Capital Preservation Fund and it was reasonable for all Class members to believe that they were already represented by the Court appointed lead plaintiff.

In addition, to the extent the Court considers the statute of limitations argument raised by the Defendants' October 17, 2011 letter to the Court at this juncture, Laufer has demonstrated that, among the other movants, he – and he alone – owned shares in the Capital Preservation Fund during the relevant Class Period and thereby his claims were tolled by Local 649's action even if that plaintiff did not own shares in the Capital Preservation Fund and did not have standing to bring claims on behalf of the Class.  *See In re National Australia Bank Securities Litig.*, No. 03 Civ. 6537, 2006 WL 3844463, at **2-5 (S.D.N.Y. Nov. 8, 2006) (statute of limitations tolled even if the lead plaintiff's claims were mooted "because in such cases there is nothing wrong with the *class claims*, just something inadequate about the *lead plaintiff* asserting them….To prejudice putative class action plaintiffs based solely on the class representative's inadequacy would frustrate the purposes of the class action statute….") (emphasis in original); *see also In re Initial Public Offering Sec. Litig.*, No. 01 Civ. 9741, 2004 WL 3015304, at **2-6 (S.D.N.Y. Dec. 27, 2004) ("nowhere in *American Pipe* did the Supreme Court explicitly state that tolling is unavailable in cases where, as in Antigenics, the original Court explicitly state that

4

tolling is unavailable in cases where, as in Antigenics, the original lead plaintiff appeared to have standing, and the lead plaintiff's lack of standing did not become obvious to absent class members until the assertion of new claims became time barred.").

## II.   THE COMPETING LEAD PLAINTIFF MOVANTS ARE NOT ADEQUATE REPRESENTATIVES OF THE CLASS' INTERESTS

### A.   Weber

Weber cannot serve as the lead plaintiff because he only purchased 104 shares valued $1,172 in two of the Funds prior to the start of the Class Period.  Moreover, Defendants have already argued in their opposition to class certification and in their October 17, 2011 letter that Weber is subject to unique defenses and his claims are not typical of the Class.  *See* Class Certification Opposition, Dkt. 162.  For example, Weber admitted that he did not rely on any allegedly misleading statements made by Defendants because he did not "read any literature" on the Funds in which he invested.  Weber Tr. 41:11-42:7; 55:10-56:7.[4]  Likewise, Weber's claims are not typical of the Class, because Weber's only investments during the Class Period were merely automatic investments of dividends or capital gains in small amounts that accrued on the underlying equities in the Funds.  *See* Exh. 3 to the German Decl.

### B.   Yiambellis

Although Yiambellis appear to have held the most shares in the Funds during the Class Period, having purchased 44,433 shares valued at $738,814 and sold 15,437 shares valued at $222,187, the Court's inquiry under the PSLRA does not end there.  Instead, the Court must also inquire whether their claims are typical and whether they may be subject to any unique defenses.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Yiambellis admitted that they did not rely on misleading

---

[4]   Exh. 2 to the German Decl.

statements.   *See* A. Yiambellis Tr. 26:3-15[5] ["Q. Did you receive any written materials describing the Salmon Smith Barney funds?  A. We did after we purchased the first set, yes….Q. Did you review any of those?  A. Not that I recall], 67:5-69:23; *see also* R. Yiambellis Tr.[6] 72:7-73:2 ["Q. So would it be fair to say that for all the purchases and sales of this particular mutual fund, you did not rely on any written documentation?   A. That's correct."], Tr. 100:2-15. Defendants have already exploited this weak testimony in their Class Certification Opposition and this issue will likely become a major focal point of the litigation.  *See, e.g., Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005).

In addition, although Yiambellis and Weber moved together as a group for appointment as lead plaintiffs, such artificial groups have been rejected by the courts in this district.  *See In re Pfizer Inc. Securities Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (rejecting unrelated group of institutional investors as lead plaintiffs); *In re Doral Fin. Corp. Sec. Litig.*, 414 F.Supp.2d 398, 401 (S.D.N.Y. 2006) (rejecting plaintiffs aggregating themselves into a "group" because doing so is "inconsistent with the intention of the PSLRA"); *Goldberger v. PXRE Group, LTD.*, No. 06-CV-3410, 2007 WL 980417 at *5 (S.D.N.Y. Mar. 30, 2007) (noting conflicting rulings in the district, agreeing that the assessment of a lead plaintiff group is contextual, and declining to appoint an unrelated group that "shares only this lawsuit in common.").  Although Yiambellis report significant investments in the Funds, Weber's Class Period investment is insignificant. Yet, there is no explanation as to which individual will lead the Yiambellis Group and whether Weber's *de minimis* financial stake gives him equal vote to Yiambellis.  Given that Weber and Yiambellis have come together only in this litigation and have moved to be appointed lead together for the first time after six years of litigation, there is no evidence supporting this

---

[5]   Exh. 4 to the German Decl.

[6]   Exh. 5 to the German Decl.

artificial group's cohesiveness, like-mindedness or ability to function as a unified group.  To enjoy the rebuttable presumption of the PSLRA, there must be some evidence that the members of the group will act collectively and separately from their lawyers.  *See In re Tarragon Corp. Sec. Litig.*, No. 07 Civ 7972 (PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 12, 2007) (declining to appoint a group where "[t]here has been no showing that the members of either 'group' have, in fact, functioned as a group.").

### C.   Yiambellis Group's Counsel

Weber and Yiambellis have collectively demonstrated that they will not adequately represent the Class by hiring counsel whose six year error was described by the Court as an "epic failure."  *See* Dkt. No. 176 at 1.  Weber, for instance, has at all times been associated with the now withdrawn Local 649 and with Bernstein Liebhard, and is therefore tainted by their shortcomings that resulted in the epic failure.  Similarly, when they were added as named plaintiffs in 2011, both Ann and Robert Yiambellis were apparently represented by Bernstein Liebhard.  *See* Exh. 4 to German Decl.  Nevertheless, now that Bernstein Liebhard has been heavily criticized by the Court and removed as lead counsel, Yiambellis have added Zamansky & Associates, LLC ("Zamansky") in order to give the Court and impression that they have retained counsel who was not tainted by the failures of their prior counsel.  However, it appears that Zamansky – which may have always represented the Yiambellis, but did not make an appearance until September 23, 2011 – is only now being added to somehow insulate Bernstein Liebhard and Yiambellis from criticism.  Thus, both Weber and Yiambellis have not chosen their counsel with particular care as would be required by a lead plaintiff.[7]

---

[7]   Although Defendants raise various concerns regarding these movants in their October 17, 2011 letter, their silence with respect to these movants' selection of lead counsel is not surprising given that Defendants also failed to detect Local 649's standing issue for some years.

Moreover, the Yiambellis Group alleges that the Court should appoint Weber as lead plaintiff because he is the only movant who would not be affected by an adverse decision on Defendants' motion for judgment on the pleadings on statute of limitations grounds (Dkt. 186 at 10-11), but this too is a self-inflicted wound.  This issue had been raised at all stages of the litigation, including the original lead plaintiff selection process.   Nevertheless, Bernstein Liebhard inexplicably failed to add additional named plaintiffs to represent the Class even though Local 649 and Weber collectively invested in only three of the 109 affected Funds and it appears other investors were willing to serve as named plaintiffs for the Class.

The adequacy of a party seeking to represent a class is related to the party's choice of class counsel.  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir 2001) ("The competence of counsel seeking to represent a class is also an appropriate consideration under Rule 23(a)(4).").   Lead counsel must be "qualified, experienced and able to vigorously conduct the proposed litigation" on behalf of the class. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985), *cert. denied*, 476 U.S. 1172 (1986); *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328, 2008 WL 2811358, at *4 (S.D.N.Y. Jul. 8, 2008) (noting that the determination of fair and adequate representation is a includes the determination that the party's attorney is qualified, experienced, and generally able to conduct the proposed litigation).

While courts generally abide by a lead plaintiff's selection of lead counsel, "[t]he decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the District Court.  Proposed lead counsel is simply that – proposed." *In re Lucent Tech., Inc. Sec. Litig.*, 221 F. Supp.2d 472, 488 (D.N.J. 2001) (internal citations omitted).  Thus, "[t]he judgment of a lead plaintiff is not dispositive in the appointment of lead counsel.  Approval of lead counsel

necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class." *Id.* at 489; *see also Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Sec., LLC*, 616 F.Supp.2d 461, 467 (S.D.N.Y. 2009) ("*Iron Workers*") (denying lead plaintiff's choice of co-lead counsel where proposed co-lead counsel did not have any securities litigation experience).

      **D.**     **<u>Zagunis</u>**

Like Weber, Zagunis – who purchased 855.215 shares valued $12,150.68 during the Class Period and sold 10,239.795 shares valued at $116,972.11 – also suffers from the defect of purchasing most of the shares in the Funds before the start of the Class Period. Zagunis could not have relied on any of the Defendants' misstatements and any subsequent transactions made during the Class Period were automatic reinvestments of dividends or capital gains that accrued on the underlying equities in the funds. *See* Zagunis Tr.[8] 21:24-22:4, 35:17053:15, Exh. 7 to the German Decl. Zagunis also testified that he did not rely on any Defendants' misstatements in the prospectus. Instead, he made "a half-hearted attempt" to read through prospectuses, "but [that] it was such foreign language" that he "gave up after a while trying to understand what it was about" and, with "subsequent mailings of prospectuses usually just after a quick look…would toss them." Zagunis Tr.17:8-20.

Zagunis' deposition testimony also shows that he misapprehends his role in the litigation, has made no effort to familiarize himself with the management of this action, has no understanding concerning the progression of this action, has failed to communicate with his counsel in the past six years concerning his role in the action, and has failed to make any effort to control the litigation. *See* Zagunis Tr. 17:8-19:4, 61:24-64:8, 76:9-77:10, 81:4-82:7, 114:25-116.8). For example, although Zagunis appeared as a plaintiff for the first time in 2011, he

---

[8]   Exh. 6 to the German Decl.

believed that he had been a plaintiff since 2005 and was not aware that his lead plaintiff motion was denied or that his attorneys appealed that denial to the Second Circuit.  Tr. 77:3-10.

As a lead plaintiff, Zagunis will be required to monitor counsel and make key decisions for the Class.  *See Iron Workers*, 661 F.Supp.2d at 463-64 ("It is axiomatic…that the lead plaintiff provisions of the PSLRA were intended to curtail the vice of 'lawyer-driven' litigation….'The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff…would be motivated to act like a 'real client', carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.").  Indeed, in *Iron Workers*, the Court – upon finding that a movant relied entirely on his counsel to monitor his investments to suggest possible causes of action, did not appear sophisticated, and had only a rough idea what the lawsuit was about – concluded that the movant would not be an adequate class representative. *Id.* at 466.

## CONCLUSION

Movant Laufer respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of Gardy & Notis, LLP as Lead Counsel, and deny in all respects the competing motions for lead plaintiff.

Dated: October 17, 2011                         **GARDY & NOTIS, LLP**

                                                By: *s/ Kira German*
                                                Mark C. Gardy
                                                James S. Notis
                                                Kira German
                                                501 Fifth Avenue, Suite 1408
                                                New York, New York 10017
                                                Tel: 212-905-0509
                                                Fax: 212-905-0508

560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7337
Fax: 201-567-7377

*Counsel for Movant Arthur Laufer*