UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SMITH BARNEY<br>FUND TRANSFER AGENT LITIGATION | Electronically Filed<br><br>Case No. 05-CV-7583 (WHP) |

**RESPONSIVE MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION OF PLAINTIFF DAVID ZAGUNIS FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD
COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

**STULL, STULL & BRODY**
Jules Brody (JB 9151)
jbrody@ssbny.com
Mark Levine (ML 0180)
mlevine@ssbny.com
6 East 45th Street
New York, New York 10017
Tel.: (212) 687-7230
Fax: (212) 490-2022

**WEISS & LURIE**
Joseph H. Weiss
jweiss@weisslurie.com
Richard Acocelli
racocelli@weisslurie.com
Times Square Plaza
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Proposed Co-Lead Counsel and Attorneys for Plaintiff and
Proposed Lead Plaintiff David Zagunis and Plaintiffs
Renee Miller, Bharat Shah, Steven Hall and Richard Rees*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………..…1

INTRODUCTION……………………………………………………………………………...1

BACKGROUND………………………………………………………………………………..2

ARGUMENT……………………………………………………………………………….......4

    1.  The Yiambellises Did Not Timely Move for Appointment as Lead Plaintiff…............4

    2.  Arthur Laufer Did Not Timely Move for Appointment as Lead Plaintiff and
Laufer's Financial Interest is Significantly Less Than the Financial
Interest of Movant Zagunis……………………………………………………………8

    3.  Weber's Financial Interest is Significantly Less
Than the Financial Interest of Movant Zagunis……………………………………….9

    4.  Zagunis' Choice of Counsel Should be Appointed Co-Lead Counsel………………..9

    5.  Even if the Court is Inclined to Appoint Weber and/or the Yiambellises
Their Choice of Counsel Should Not Be Approved……………………………….10

CONCLUSION………………………………………………….…………………………13

## TABLE OF CASES

*In re Bank of Am. Corp Auction Rate Sec. (ARS) Marketing Litigation*,
MDL No. 09-02014, 2009 U.S. Dist. LEXIS 63433 (N.D. Cal. July 9, 2009)……………………...6

*In re Imax Securities Litigation*,
No. 06-CV-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009)……………..………6

*In re Initial Public Offering Securities Litigation,*
214 F.R.D. 117 (S.D.N.Y. 2002)……………………………………………….…4, 5, 6, 7, 9

*In Re Neopharm, Inc. Securities Litigation,*
No. 02-CV-2976, 2004 U.S. Dist. LEXIS 5814 (N.D. Ill. Apr. 7, 2004)………………….6, 7, 10

*In re NYSE Specialists Securities Litigation*,
240 F.R.D. 128 (S.D.N.Y. 2007)……………………………………………………….………6

*In re: SLM Corporation Securities Litigation,*
258 F.R.D. 112 (S.D.N.Y. 2009)………………………………………………...……5, 7, 8

**PRELIMINARY STATEMENT**

Plaintiff David Zagunis ("Movant"), by his counsel, respectfully submits this Memorandum of Law pursuant to the Court's Scheduling Order of September 22, 2011 (Dkt. No. 178), in response to two competing motions for appointment as lead plaintiff and approval of selection of lead counsel, and in further support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel, filed on October 6, 2011 in this consolidated action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.

**INTRODUCTION**

On October 6, 2011, Movant Zagunis filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel ("Motion") (Dkt. No. 182) and a Declaration of Mark Levine ("Levine Declaration") (Dkt. No. 185) and a supporting Memorandum of Law "Memo") (Dkt. No. 183) arguing that the Court's selection of Lead Plaintiff should be guided by jurisprudence from this District and others holding that substitute Lead Plaintiffs should be selected, where possible, from available movants who previously filed a motion for appointment as Lead Plaintiff pursuant to an initial notice to the class disseminated pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i).  Dkt. No. 183, Memo, at 2, 8, 10.  Movant Zagunis asserted that his motion represents the largest financial interest in the litigation among all movants who previously filed an initial motion for appointment as Lead Plaintiff in 2005 following dissemination of the notice mandated by the PSLRA.  Dkt No. 183, Memo, at 2.  Movant Zagunis submitted on October 6, 2011 a Plaintiff Certification demonstrating Movant's financial interest in the litigation of $129,122.76, consisting of $12,150.68 in Class Period purchases and $116,972.11 in Class Period sales.  Levine Decl., Ex. A.  Based on jurisprudence holding that

1

substitute Lead Plaintiffs should be selected, where possible, from among prior Lead Plaintiff movants, on October 6, 2011 Movant Zagunis asserted that he has the largest financial interest and is the most adequate plaintiff among all eligible movants who previously filed a Lead Plaintiff motion in the action. The only movants who previously filed a Lead Plaintiff motion in the action were Movant Zagunis (together with additional members of the "Chiumento Group" Charles Chiumento, Maurice and Viviane Benoudiz, Charles Walkiewicz), and Operating Engineers Local 649 Annuity Trust Fund ("Local 649") together with Jeffrey Weber ("Weber"). And, since Local 649 has withdrawn from this action (*See* Memorandum & Order, September 22, 2011 (Dkt. No. 176)), and since Weber has a considerably lesser financial interest ($1,171.84 in purchases) (Dkt. No. 141, at 58 of 89) than Zagunis, it is clear that Movant Zagunis, even based on his purchases alone of $12,150.68, has the largest financial interest among the movants who previously filed an initial motion for appointment as Lead Plaintiff in the action. It is also clear, as described further herein, that Zagunis is also the presumptive most adequate plaintiff eligible to serve as Lead Plaintiff pursuant to the PSLRA who otherwise satisfies the requirements of Rule 23, and that Zagunis, therefore, should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved. Accordingly, and for the reasons set forth herein, each of the two competing motions should be denied.

## BACKGROUND

Movant Zagunis filed a previous motion for appointment as lead plaintiff in this action on December 12, 2005, following dissemination of the notice mandated by the PSLRA, as a member of a group referred to as the "Chiumento Group." Dkt. No. 22, filed December 12, 2005. Several years after denial of the Chiumento Group's motion, *i.e.,* Zagunis' previous motion, Movant Zagunis appeared in this action as a named plaintiff and proposed representative

party in the Second Consolidated Amended Class Action Complaint ("Second Amended Complaint") (Dkt. No. 129; *See* ¶22), and in the Third Consolidated and Amended Class Action Complaint ("Third Amended Complaint") ("Cplt."), filed June 30, 2011 (Dkt. No. 141; *See* ¶21), on behalf of investors in the Smith Barney Allocation Growth Fund, the Smith Barney Large Cap Fund, the Smith Barney Peachtree Growth Fund, the Smith Barney Growth Fund, and the Smith Barney Large Cap Growth Fund. Dkt. No. 129, ¶21; Dkt. No. 141, ¶21. Subsequently, Movant Zagunis moved for appointment as a class representative in the action (Dkt. No. 150, filed July 15, 2011; *See* pps. 1, 10, fn.23 - 24), on behalf of investors in the Smith Barney Allocation Growth Fund, the Smith Barney Peachtree Growth Fund, the Smith Barney Growth Fund, and the Smith Barney Large Cap Growth Fund, noting from his July 8, 2011 deposition testimony that he did not invest in the "Smith Barney Large Cap Fund," while also indicating his affirmation of the question "[i]t's possible that they were one fund and it's just simply a typo referring to the same individual fund, correct?" (Dkt. No. 149-15, at 13 of 14 (Tr. Page/Line 130:4-7)), and responding, "That's correct; yes." *Id.* Movant Zagunis also testified that the reference to the "Smith Barney Large Cap Fund" refers to the "Smith Barney Large Cap Growth Fund." Dkt. No. 149-15, at 5 of 14 (Tr. Page/Line 57:24 -58:8). Movant Zagunis testified, when he appeared for his July 8, 2011 deposition, that he reviewed the Third Amended Complaint in the action (Dkt. No. 149-15, at 3 of 14 (Tr. Page/Line 56:4-24)), and that he relied on the accuracy of the information contained in the prospectuses for the Smith Barney funds in which he transacted (Dkt. No. 149-15, at 13 - 14 of 14 (Tr. Page/Line 130:10 – 131:19)), and demonstrated his understanding of the theory of plaintiffs' case. *See* Dkt. No. 149-15, at 7 of 14 (Tr. Page/Line 83:12 – 84:9), and at 9 of 14 (Tr. Page/Line: 116:9 – 117:2).

On October 6, 2011, pursuant to the Court's Scheduling Order of September 22, 2011 (Dkt. No. 178), Movant Zagunis filed his second Lead Plaintiff motion in this action and sought approval once again of his selection of counsel in this action, and included a signed Plaintiff Certification demonstrating a financial interest in the action of $129,122.76, consisting of $12,150.68 in purchases and $116,972.11 in sales.  Levine Decl., Ex. A.  Two additional Lead Plaintiff motions were also filed on October 6, 2011, by Jeffrey Weber and Robert and Ann Yiambellis (collectively "Weber/Yiambellis"), represented by Bernstein Liebhard, LLP, and Arthur Laufer ("Laufer"), represented by Gardy & Notis, LLP.  Nothing in the separate competing motions of Weber/Yiambellis and Laufer militates against approval of the Motion of Movant Zagunis.

## ARGUMENT

### 1. The Yiambellises Did Not Timely Move for Appointment as Lead Plaintiff

The Second Circuit has not established a procedure for selecting a Lead Plaintiff where the original Lead Plaintiff has withdrawn due to lack of standing, and the PSLRA provides no clear guidance.  As a result, courts have exercised their discretion in determining the appropriate procedure to follow when it becomes necessary to substitute a Lead Plaintiff.  *See, e.g., In re: Initial Public Offering Securities Litigation,* 214 F.R.D. 117, 120 (S.D.N.Y. 2002) ("*In re: IPO*").  The court in *In re: IPO* observed that the PSLRA governs the appointment of lead plaintiffs and provides that the "most adequate" plaintiff is presumptively the plaintiff who: (1) filed an initial complaint or timely moved for appointment as lead plaintiff following dissemination of a notice of pendency of the action; (2) has the largest financial interest in the case; and (3) otherwise satisfies the requirements of Rule 34.  Since "[t]he PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified

one withdraws," the *In re: IPO* Court determined that "[i]t only stands to reason that the appropriate lead plaintiff would be the next 'most adequate' plaintiff in accordance with that criteria." *In re: IPO*, 214 F.R.D. at 120.  In applying these criteria, the first item the court in *In re: IPO* considered was whether there was any potential substitute Lead Plaintiff available who had previously "filed [a motion] within 60 days of the initial notice of pendency." *In re: IPO,* 214 F.R.D. at 120.  Yet, in that case, "none of [the substitute applicants] filed [a previous motion] within 60 days of the initial notice of pendency."  Thus, only after determining that none of the original Lead Plaintiff movants were available did the Court look beyond the initial movants to find a substitute Lead Plaintiff.  *See In re: IPO,* 214 F.R.D. at 120.

Accordingly, since here neither the Yiambellises nor Laufer moved for appointment as Lead Plaintiff in the 2005 proceedings in this case, and since Movant Zagunis did so move and is in all respects entirely adequate pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), neither the Yiambellises nor Laufer are eligible for appointment as Lead Plaintiff in this action.  *See In re: IPO,* at 120.

In another case from this District, decided by this Court and cited in Movant's opening brief (Memo at 2, 8), *In re: SLM Corporation Securities Litigation,* 258 F.R.D. 112 (S.D.N.Y. 2009), the substitute Lead Plaintiff was selected from among the "parties [that] moved for appointment within the sixty day period." *In re: SLM Corp. Sec. Litig.,* 258 F.R.D. at 116.  Concerning a Lead Plaintiff movant who turned out not to have standing, the Court observed that "under the PSLRA the Court can only consider those class members that filed a motion sixty days after the publication of notice as candidates for appointment as lead plaintiff." *In re: SLM Corp. Sec. Litig.,* 258 F.R.D. at 117.  Thus, the Court here should deny the Weber/Yiambellis motion.

5

As the Court observed in *In re: IPO,* "[i]f other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff – i.e. moved for appointment as lead plaintiff in response to the initial notice of pendency – then those plaintiffs would arguably be entitled to priority over any other potential lead plaintiffs." *In re: IPO,* 214 F.R.D. at 120 fn.5. *See In re Bank of Am. Corp Auction Rate Sec. (ARS) Mktg. Litig.*, 2009 U.S. Dist. LEXIS 63433, *7 (N.D. Cal. July 9, 2009) (refusing to substitute as Lead Plaintiff a group that had not initially filed a previous motion; noting, also, that there, like here, there is no explanation of what connection, if any, exists between the members of the proposed group).

While courts have on occasion appointed substitute Lead Plaintiffs who did not file a motion within 60 days of the notice, typically, the courts have done so simply due to a lack of any appropriate original movant. Decisions cited by Weber/Yiambellis in support of their motion are illustrative of that point. For example, as mentioned above, in *In re IPO Securities Litigation*, while the court did consider movants who had not initially filed a complaint or moved within the 60 day time period, the court did so only after noting that "none of the applicants filed within the 60 days of the initial notice of pendency." *Id*. And, therefore, the only way for the court to prevent prejudice to the proposed class was to consider new movants. In another case, *In re Imax Securities Litigation*, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009), all of the candidates for substitute Lead Plaintiff had previously either filed the original complaint or had satisfied the timeliness requirement in moving originally. In *In re NYSE Specialists Securities Litigation*, 240 F.R.D. 128, 141-143 (S.D.N.Y. 2007), the court found an application to substitute a Lead Plaintiff untimely because it was filed outside the original 60 day period.

In *In Re Neopharm, Inc. Securities Litigation,* 2004 U.S. Dist. LEXIS 5814 (N.D. Ill. Apr. 7, 2004), the sole Lead Plaintiff in the case sought to withdraw from the action and lead

counsel sought to modify the order appointing Lead Plaintiff so as to substitute as Lead Plaintiff a class member who had not originally filed a timely motion. *In re Neopharm,* 2004 U.S. Dist. LEXIS 5814, at *5-6. Faced with a lack of any other court-appointed Lead Plaintiff in the case, the court declined to modify its previous order appointing Lead Plaintiff pending an opportunity for other new motions to be filed. Only because there were no other previously appointed Lead Plaintiffs did the court deem to consider subsequent applicants, which is distinguishable from the procedure utilized in *In re: IPO*, whereby the court merely "deem[ed] any movant timely" and so, under the circumstances, expanded the definition of timely filers to include movants who "moved to be appointed lead plaintiff within 60 days of the withdrawal of the previous lead plaintiff." *See In re Neopharm,* 2004 U.S. Dist. LEXIS 5814, at *6-7, quoting, *In re IPO,* 214 F.R.D. at 120. However, in *In re Neopharm,* the court seemed to look at whether there were any remaining Lead Plaintiffs in the case, whereas in *In re: IPO* the court considered whether there were any other movants who filed a timely motion following dissemination of the notice mandated by the PSLRA. While the *In re: Neopharm* opinion cites the *In re: IPO* opinion, it may represent a unique variation from the procedure followed in *In re: IPO* and may be an anomaly. Here, unlike in *In re: IPO,* it is not necessary to expand the definition of timely filers because Movant Zagunis filed an original timely motion seeking to be appointed Lead Plaintiff.

Here, the Weber/Yiambellis movants have created a mixed group of one original movant, Weber, together with the untimely Yiambellises, who first appeared in this action in connection with the filing of the Second Amended Complaint on May 5, 2011 (Dkt. No. 129), which was more than five years after the deadline for the original motion of December 12, 2005 had passed. This set of facts is similar to the circumstances that the Court addressed in the *In re SLM*

decision, where the Court rejected an untimely movant (*In re: SLM,* 258 F.R.D. at 117), although here Movant Zagunis timely filed an initial motion.

While the Weber/Yiambellis movants assert that it would make "eminent sense" to include as prospective substitute Lead Plaintiffs those plaintiffs recently added as proposed class representatives based upon the advanced stage of the litigation (Weber/Yiambellis memo at 8-9), they offer no legal support for that assertion. As discussed herein, the cases relied upon by the Weber/Yiambellis movants support expanding the field beyond original movants only in situations where there are no eligible original movants seeking substitution. That is not the case here.

Because the Yiamellises are ineligible, the Court should apply the rest of the criteria to select between Weber and Zagunis, the only two current applicants who previously filed a Lead Plaintiff motion in the 2005 proceedings, and the Court should do so based on which of them best satisfies the requirements of the PSLRA.

### 2. Arthur Laufer Did Not Timely Move for Appointment as Lead Plaintiff and Laufer's Financial Interest is Significantly Less Than the Financial Interest of Movant Zagunis

Unlike Movant Zagunis, movant Laufer did not file a previous motion in the action following publication of the PSLRA mandated notice. And, unlike Movant Zagunis, who endeavored to pursue his claims and the Class' claims on December 12, 2005, movant Laufer did not appear in this action until October 6, 2011, nearly six years after Movant Zagunis initially appeared. While, the Laufer motion asserts a financial interest of $50,000.00 based on the transaction value reflected in the Laufer Certification annexed as Exhibit A to the Declaration of Kira German (Dkt. No. 190, filed October 6, 2011), that figure is far less than the demonstrated financial interest of Movant Zagunis in this action when his sales are included. Levine Decl., Ex.

A. *See In re: IPO,* 214 F.R.D. at 121 ("[T]he PSLRA requires that the lead plaintiff have the largest financial interest in the relief sought.")

Accordingly, movant Laufer should not be appointed as Lead Plaintiff and the Court should deny his motion in its entirety.

### 3. Weber's Financial Interest is Significantly Less Than the Financial Interest of Movant Zagunis

The Weber/Yiambellis motion asserts a total financial interest in the action of $962,173, however, all but $1,172 (Weber's portion) of that total is ineligible to be considered here because $961,001 of that total represents the Yiambellis' financial interest, and the Yiambellises did not make an initial motion in the action following publication of the PSLRA mandated notice and did not appear in this action until the filing of the Second Complaint on May 5, 2011 (Dkt. No. 129), and that portion of the financial interest attributable to the Yiambellises, for the reasons described above, should not be considered by the Court.

Therefore, Weber's financial interest in the action of $1,172 is significantly less than Zagunis' total financial interest of $129,122.79, comprised of $12,150.68 in purchases and $116,972.11 in sales, and the Court should deny Weber's motion. *See In re: IPO,* 214 F.R.D. at 121.

The suggestion that appointment of Weber as Lead Plaintiff is appropriate based on statute of limitations considerations lacks merit because the statute of limitations has already been tolled, and appointment of Weber as Lead Plaintiff will not produce any change in that regard.

### 4. Zagunis' Choice of Counsel Should be Appointed Co-Lead Counsel

Based on the foregoing, the Court should appoint Movant David Zagunis as Lead

Plaintiff, and accordingly, the Court should approve Movant's selection of co-lead counsel. The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to court approval. Securities Exchange Act of 1934, § 21 D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb a Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(v)(aa).

Here, Movant David Zagunis has selected Stull, Stull & Brody and Weiss & Lurie as co-lead counsel on behalf of the Class. As demonstrated by the firm resumes submitted as Exhibits to the Levine Declaration of October 6, 2011 (Dkt. No. 185), Stull, Stull & Brody and Weiss & Lurie are firms with extensive experience and expertise in securities litigation, and have successfully prosecuted numerous securities fraud class actions on behalf of defrauded investors. Levine Decl., Ex. B – C. Thus, the Court can be assured that, by approving Movant's selection of lead counsel, the Class will receive the highest caliber of legal representation available.

### 5. Even if the Court is Inclined to Appoint Weber and/or the Yiambellises Their Choice of Counsel Should Not Be Approved

When a Lead Plaintiff is to be substituted, lead counsel for a withdrawn Lead Plaintiff cannot simply appoint another class member to serve as a substitute Lead Plaintiff who then selects that counsel as lead counsel. *In re Neopharm,* 2004 U.S. Dist. LEXIS 5814, at *3-4. Rather, after the court selects the most adequate plaintiff based on the factors prescribed by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), that plaintiff "shall subject to court approval, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Only after a most adequate plaintiff is selected by the court is a plaintiff's choice for lead counsel considered." *In re Neopharm,* 2004 U.S. Dist. LEXIS 5814, at *5.

Accordingly, given that Movant Zagunis, for the reasons set forth herein, should be appointed Lead Plaintiff, the Weber/Yiambellis movants' choice of counsel is irrelevant. Even

10

if the Court were to appoint Weber/Yiambellis motion, their selection of Bernstein Liebhard, LLP as lead counsel should not be approved by the Court.  *See* Memorandum & Order, Sept. 22, 2011 (Dkt. No. 176) (Docket text: "Renewed lead plaintiff motions are appropriate to ensure the appointment of suitable class representatives and lead counsel.  The withdrawal of Local 649 calls into question the propriety of permitting Jeffrey Weber to act as the only Lead Plaintiff.  Moreover it would be imprudent to permit Lead Counsel to add a lead plaintiff of their choosing.").

If Weber and/or the Yiamellises are appointed Lead Plaintiff(s), approval of selection of Bernstein Liebhard as lead counsel will serve to reward that firm for submitting an application for a Lead Plaintiff who never had standing.  While there is no dispute that Bernstein Liebhard are otherwise capable and that they performed all of the tasks that they claim to have performed, if they had submitted a proper Lead Plaintiff application, Movant Zagunis would likely have been appointed one of the Lead Plaintiffs at that time because his interests alone and with the rest of the Chiumento Group was greater than that of Weber, the only potential Lead Plaintiff who selected Bernstein Liebhard as his choice of counsel.  Moreover, the Yiambellises testified at their deposition that the Zamansky firm was their only counsel (*See, e.g.,* Tr., June 30, 2011, R. Yiambellis, at 144:19-21; 202:8-13), so appointing Bernstein Liebhard as lead counsel could promote the concept of lawyer-driven litigation that the PSLRA is supposed to prevent.  If the Court is willing to consider appointing recently added named plaintiffs or movants with no prior involvement in the action, and the Yiambellises are found to be the presumptive most adequate plaintiffs, it is respectfully submitted that the Court should reject the Yiambellis' choice of counsel.  Neither of the Yiambellises believes that Bernstein Liebhard is their counsel in this litigation.  As their June 30, 2011 depositions reflect, they admittedly have a February 2011

retainer agreement only with the Zamansky firm, and on several occasions the Yiambellises affirmatively denied that any lawyers other than the Zamansky firm were representing them. *See* Tr., R. Yiambellis, 144:19-21 (Q: "Do you believe you are represented by anyone other than the Zamansky firm?" A: "No, sir."); Tr., A. Yiambellis, 10:2-6 (Q: And do you know [which] law firm he [Edward Glenn] works for?" A: "Zamansky and Associates." Q: Do you have any other attorneys?" A: "No."). In fact, when specifically asked about Bernstein Liebhard at her deposition, Ann Yiambellis responded that the lawyer in attendance was representing her for purposes of the deposition only. *See* Tr., A. Yiambellis, 10:7-10.

The Court has cautioned that it would be "imprudent to permit [Bernstein Liebhard] to add a lead plaintiff of their choosing." Order, September 22, 2011, at 7. Yet that is precisely what will happen if the Weber/Yiambellis motion is granted in its entirety. If not for the original six-year-long mistake by Bernstein Liebhard and Local 649, the Yiambellises would have remained absent Class members and Bernstein Liebhard would not be in a position to be making the motion on their behalf. Bernstein Liebhard is only in a position to move on behalf of the Yiambellises because of the mistake that was made concerning Local 649, and the Yiambellises do not even believe that Bernstein Liebhard represents them.

As to movant Laufer's choice of counsel, although Movant Zagunis asserts that he and not Laufer should be appointed Lead Plaintiff, should the Court appoint Laufer as Lead Plaintiff it would be appropriate to appoint Gardy & Notis, LLP, his choice of counsel, as Lead Counsel.

## CONCLUSION

For all the foregoing reasons, Movant David Zagunis respectfully requests that the Court: (i) appoint Movant as Lead Plaintiff; (ii) approve Movant's selection of Stull, Stull & Brody and Weiss & Lurie as Co-Lead Counsel; and (iii) grant such other relief as the Court may deem just and proper.

Dated: October 17, 2011

>Respectfully submitted,
>
>**STULL, STULL & BRODY**
>
>By: <u>Mark Levine</u>
>Jules Brody (JB 9151)
>jbrody@ssbny.com
>Mark Levine (ML 0180)
>mlevine@ssbny.com
>6 East 45th Street
>New York, New York 10017
>Tel.: (212) 687-7230
>Fax: (212) 490-2022
>
>**WEISS & LURIE**
>Joseph H. Weiss
>jweiss@weisslurie.com
>Richard Acocelli
>racocelli@weisslurie.com
>Times Square Plaza
>1500 Broadway Suite 1600
>New York, New York 10036
>Tel: (212) 682-3025
>Fax: (212) 682-3010
>
>*Proposed Co-Lead Counsel and Attorneys for Plaintiff and Proposed Lead Plaintiff David Zagunis and Plaintiffs Renee Miller, Bharat Shah, Steven Hall and Richard Rees*