UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
IN RE: SMITH BARNEY TRANSFER  :   05 Civ. 7583 (WHP)
AGENT LITIGATION              :
                              :   MEMORANDUM & ORDER
------------------------------X
                              :
THIS DOCUMENT RELATES TO:     :
                              :
ALL ACTIONS                   :
                              :
------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/11

WILLIAM H. PAULEY III, District Judge:

   Several plaintiffs in this putative class action and their attorneys move for appointment as new lead plaintiff and new lead counsel. Plaintiffs assert claims against Defendants Smith Barney Management Limited, Citigroup Global Markets, Inc., and Lewis Daidone under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

   Class members Jeffrey Weber ("Weber") and Robert and Ann Yiambellis (together, "the Yiambellises") move for selection as lead plaintiff and for designation of their attorneys, Bernstein Liebhard LLP ("Bernstein Liebhard"), as lead counsel. Class member David F. Zagunis ("Zagunis") also moves for selection as lead plaintiff and for designation of his attorneys, Stull, Stull & Brody and Weiss & Lurie, as co-lead counsel. Finally, class member Arthur Laufer ("Laufer") moves for selection as lead plaintiff and for designation of his attorneys, Gardy & Notis, LLP ("Gardy & Notis"), as lead counsel. For the following reasons, this Court appoints Zagunis as lead plaintiff and approves his selection of Stull, Stull & Brody and Weiss & Lurie as co-lead counsel.

## BACKGROUND

I.  Procedural History

The tortured history of this action is detailed in this Court's Memorandum & Order dated September 22, 2011. See In re Smith Barney Transfer Agent Litig., ---F. Supp. 2d ----, 2011 WL 4430857, at *1 (S.D.N.Y. Sept. 29, 2011). Only those facts bearing on the appointment of new lead plaintiff and lead counsel are recounted here.

In 2005, this Court consolidated several related actions and permitted motions for the appointment of a lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, Pub.L. 104-67, 109 Stat. 737 ("PSLRA"). In its motion, Operating Local 649 Annuity Trust Fund ("Local 649") certified that it had purchased over 75,000 shares of the Smith Barney Capital Preservation Fund and had an "average dollar holding" of $8,395,128 during the class period. This Court relied on that certification in appointing Local 649, together with Weber, as lead plaintiff and Bernstein Liebhard as lead counsel in 2006. See In re Smith Barney Transfer Agent Litig., 2006 WL 991003, at *3 (S.D.N.Y. Apr. 17, 2006).

At that time, Zagunis also moved for appointment as lead plaintiff as a member of a group of fund investors called the Chiumento Group. See In re Smith Barney, 2006 WL 991003, at *1. Zagunis's counsel, Stull, Stull & Brody and Weiss & Lurie, moved for appointment as co-lead counsel. But Local 649 claimed to have a larger financial stake than the Chiumento Group, and this Court named Local 649, with Weber, as lead plaintiff. See In re Smith Barney, 2006 WL 991003, at *6.

On August 31, 2011, Bernstein Liebhard informed the Court that Local 649 never owned any of the funds at issue in this litigation and would withdraw as lead plaintiff. See In re Smith Barney, 2011 WL 4430857, at *2. On September 22, 2011, this Court denied Bernstein

2

Liebhard's request to amend the complaint to add a new lead plaintiff. See In re Smith Barney, 2011 WL 4430857, at *4. Rather than permit Weber and Bernstein Liebhard to continue as lead plaintiff and lead counsel, this Court determined that renewed lead plaintiff motions were appropriate. See In re Smith Barney, 2011 WL 4430857, at *4.

II. Applicants for Lead Plaintiff and Lead Counsel

Several individuals and law firms have come forward to fill the void left by Local 649's withdrawal.

First, the Yiambellises, together with Weber, move for their appointment as lead plaintiffs and the re-designation of Bernstein Liebhard as lead counsel. While Weber has been a lead plaintiff since the early days of this litigation, the Yiambellises have never previously moved for appointment as lead plaintiffs. See In re Smith Barney, 2006 WL 991003, at *1.

Second, Zagunis renews his motion for appointment as lead plaintiff and the designation of Stull, Stull & Brody and Weiss & Lurie as co-lead counsel. In 2005, Zagunis timely applied for the lead plaintiff position as part of The Chiumento Group. See In re Smith Barney, 2006 WL 991003, at *1.

Finally, Laufer moves for appointment as lead plaintiff and the designation of Gardy & Notis as lead counsel. Laufer did not move for appointment as lead plaintiff within sixty days of the original notice in 2005.

DISCUSSION

I. Legal Standard

The PSLRA does not provide a procedure for appointment of a lead plaintiff following the withdrawal of an initial lead plaintiff appointee. But courts in this District have adopted a three-part standard in this situation that tracks the basic requirements for lead plaintiff

3

selection under the PSLRA. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Specifically, courts evaluate (1) whether the substitute lead plaintiff made a timely request for appointment; (2) whether the substitute lead plaintiff has the largest financial interest in the action; and (3) whether the substitute lead plaintiff otherwise satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23. See In re SLM Corp. Sec. Litig., 258 F.R.D. 112, 116 (S.D.N.Y. 2009); see also In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 214 F.R.D. 117, 120 (S.D.N.Y. 2002).

II. Timeliness

Plaintiffs who moved for lead plaintiff appointment within sixty days of the original notice are entitled to priority over plaintiffs who only moved within sixty days of the order dismissing the prior lead plaintiff. See In re IPO, 214 F.R.D. at 120 n.5 ("If other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff—i.e., moved for appointment as lead plaintiff in response to the initial notice of pendency —then those lead plaintiffs would arguably be entitled to priority over other potential lead plaintiffs."). This rule furthers the PSLRA's policy favoring investor-driven rather than lawyer-driven securities litigation. See In re Cendant Corp., 260 F.3d 183, 196-97 (3d Cir. 2001) ("[T]he Act's purpose is . . . to empower investors so that they—not their lawyers—exercise primary control over private securities litigation[.]") (quoting S.Rep. No. 104-98, at 4 (1995)). Here, the Yiambellises and Laufer were not original lead plaintiff applicants, and they did not file their own lawsuits. As such, this Court will prioritize the applications of initial movants Weber and Zagunis.

This Court's decision to favor the initial movants is buttressed by the fact that the various lead plaintiff aspirants have mustered only one case in which a court considered new lead plaintiff applications when original applicants were also available. See In re Neopharm,

4

Inc. Sec. Litig., No. 02 Civ. 2976, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004). Indeed, in In re IPO, Judge Scheindlin considered plaintiffs who did not move within the initial sixty days only because none of the initial movants were then available. See 214 F.R.D. at 120 n.5. But that is not the case here.

III. Financial Interest

Looking first to the initial lead plaintiff movants, Zagunis's financial interest in the relief sought in this action is significantly greater than Weber's. While Zagunis demonstrates class period purchases and sales totaling approximately $129,123, Weber made purchases worth only $1,172. (Declaration of Mark Levine dated Oct. 6, 201 ("Levine Decl."), Ex A; Memorandum of Law in Support of the Motion of Jeffrey Weber and Robert and Ann Yiambellis to be Substituted as Lead Plaintiffs, and for Approval of Bernstein Liebhard LLP as Their Choice of Lead Counsel dated Oct. 6, 2011("Bernstein Liebhard Br."), Ex. D.) Of course, this Court recognizes that the Yiambellises, who made class period purchases and sales of $961,001, have a greater financial stake than Zagunis. (Bernstein Liebhard Br., Ex F.) And Laufer made class period purchases worth about $51,338. (Declaration of Kira German dated Oct. 6, 2011, Ex. A.) But neither the Yiambellises nor Laufer initially moved for appointment as lead plaintiff. See In re Smith Barney, 2006 WL 991003, at *1. Accordingly, Zagunis is presumptively the most adequate plaintiff unless he cannot satisfy the typicality and adequacy requirements of Rule 23.

IV. Typicality and Adequacy

A plaintiff satisfies the typicality requirement if he has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re SLM, 258 F.R.D. at 116. A plaintiff satisfies the adequacy requirement if he demonstrates that his attorney is qualified, experienced, and capable of

conducting the proposed litigation and that his interests are not antagonistic to the class. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Zagunis's claim is typical of the claims of other putative class members because he purchased and sold certain Smith Barney mutual funds during the class period for which the advisor received a payment. See In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992) ("Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). Further, Zagunis's interests are aligned with the other members of the putative class, and he has selected competent counsel to represent him. Accordingly, he will fairly and adequately represent the interests of the putative class as lead plaintiff. See In re Global Crossing, 225 F.R.D. at 453.

While Defendants contend that Zagunis may not be an adequate class representative because he purchased his shares through a dividend reinvestment program, they have objected to every available lead plaintiff. And this Court may appoint a new lead plaintiff if Zagunis ultimately proves atypical or inadequate. Therefore, this Court need not evaluate the merits of Defendants' argument at this juncture.

V.      Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The court should generally employ a deferential standard in reviewing the lead plaintiff's choices." In re Cendant Corp. Litig., 264 F.3d 201, 274 (3d Cir. 2001). Zagunis's proposed co-lead counsel, Stull, Stull & Brody and Weiss & Lurie, have experience serving as lead counsel in securities fraud actions governed by the PSLRA. (Levine Decl. Exs. B and C.) Accordingly, this Court appoints Stull,

Stull & Brody and Weiss & Lurie as co-lead counsel.

In appointing new lead counsel, this Court is mindful that Bernstein Liebhard served as lead counsel for over six years. But it is investors—and not their lawyers—who are the focus under the PSLRA. And the Court would not have been confronted with this situation if Local 649's counsel had investigated their client's holdings in 2005. In any event, this Court has every confidence that Bernstein Liebhard will provide ample assistance to new lead counsel consistent with their professional responsibilities to their clients and their obligations as officers of the Court.

## CONCLUSION

For the foregoing reasons, these consolidated actions shall proceed with David Zagunis as lead plaintiff and Stull, Stull & Brody and Weiss & Lurie as co-lead counsel. The Clerk of the Court is directed to terminate the motions pending at ECF Nos. 182, 184, and 188.

Dated: December 15, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

7