**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | 05 Civ. 7583 (WHP) |
| SMITH BARNEY FUND TRANSFER AGENT LITIGATION | ECF case |
| This document relates to:  all actions | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST THOMAS JONES IN THE FOURTH CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

Alex Bourelly (*Pro hac* pending)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 639-7700
Fax:  (202) 639-7890
alex.bourelly@bakerbotts.com

Jessica B. Pulliam (Admitted *pro hac vice*)
John B. Lawrence (*Pro hac* pending)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Tel:  (214) 953-6500
Fax:   (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

*Counsel for Defendant Thomas W. Jones*

# **TABLE OF CONTENTS**

**Page**

BACKGROUND ................................................................................................. 3

ARGUMENT ..................................................................................................... 5

I.  Plaintiffs' Section 20(a) Claims Against Mr. Jones Are Barred By The Statute Of Repose (And The Statute Of Limitations). ...................................................................... 5

II.  By Failing Twice To Amend Claims As To Mr. Jones, Plaintiffs Waived Any Claim Against Him; Allowing The Amendment As To Him Would, As A Result, Be Prejudicial. ................................................................................................................. 8

III.  Claims By Plaintiffs Who Filed Suit After The Running Of The Statute Of Repose Are Barred As A Matter Of Law. ................................................................................. 9

IV.  Plaintiffs Have Failed To Plead With Particularity The Section 20(a) Claims Against Mr. Jones .......................................................................................................... 9

    A.  Plaintiffs Fail To State A Claim For Control Of Alleged Misstatements Under Rule 10b-5(b). .......................................................................................... 11

    B.  Plaintiffs Fail To State A Claim For Control Of The Smith Barney Defendants' Alleged "Scheme" To Defraud Under Rule 10b-5(a) and (c). ........................... 14

V.  Plaintiffs Have Not Pleaded A Rule 10b-5 Claim For Primary Violation Against Mr. Jones .......................................................................................................... 17

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)....................................................................................9

*Chill v. General Elec. Co.*,
  101 F. 3d 263 (2d Cir. 1996).................................................................................11

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
  No. 09 Civ. 2255, 2010 WL 4177103 (S.D.N.Y. Oct. 10, 2010) ............................10

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)...............................................................................................8

*H&H Acquisition Co. v. Fin. Intranet Holdings*,
  669 F. Supp. 2d 351 (S.D.N.Y. 2009)....................................................10, 13, 15

*Harris v. OSI Fin. Svcs., Inc.*,
  595 F.Supp. 2d 885 (N.D. Ill. 2009) .........................................................................7

*In re Centerline Holding Co. Sec. Litig.*,
  380 Fed. App'x 91 (2d Cir. 2010)............................................................10, 12, 15

*In re Citigroup Sec. Litig.*,
  753 F. Supp. 2d 206 (S.D.N.Y. 2010)....................................................................10

*In re Global Crossing, Ltd. Sec. Litig.*,
  No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .........................10, 13

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011).................................................................7, 9

*In re Lehman Bros. Sec. & ERISA Litig.*,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011).......................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
  800 F. Supp. 2d 477 (S.D.N.Y. 2011)..............................................................6, 7, 9

*In re Livent, Inc. Sec. Litig.*,
  78 F. Supp. 2d 194 (S.D.N.Y. 1999)..................................................................13, 15

*In re Sanofi-Aventis Sec. Litig.*,
  774 F. Supp. 2d 549 (S.D.N.Y. 2011)................................................................10, 14, 15

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011) ................................................................................ 1, 4, 12, 15

*Krupski v. Costa Crociere S.p.A.*,
  130 S. Ct. 2485 (2010) ................................................................................................ 7

*Ma v. Merrill Lynch, Pierce, Fenner & Smith*,
  597 F.3d 84 (2d Cir. 2010) .......................................................................................... 6

*Merck & Co., Inc. v. Reynolds*,
  130 S. Ct. 1784 (2010) ................................................................................................ 5

*Miguel v. Country Funding Corp.*,
  309 F.3d 1161 (9th Cir. 2002) .................................................................................... 7

*Nulman v. Money Warehouse Inc.*,
  No. 09-1503, 2011 WL 830288 (E.D. Pa. Mar. 10, 2011) ........................................ 7

*P. Stolz Fam. P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) .......................................................................................... 6

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*
  741 F. Supp. 2d 474 (S.D.N.Y. 2010) ................................................................ 10, 16

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
  Commerce*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) ...................................................................... 12

*Romback v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ...................................................................................... 12

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ........................................................................................ 8

*SEC v. Kelly*,
  --- F. Supp. 2d ----, No. 08 Civ. 4612, 2011 WL 4431161 (S.D.N.Y. Sept. 22, 2011) ..... 15, 17

*SEC v. PIMCO Adv. Fund Mgmt LLC*,
  341 F. Supp. 2d 454 (S.D.N.Y. 2004) .................................................................. 15, 17

*Take-Two Interactive Software, Inc. v. Bryant*,
  No. 06 Civ. 05279, 2010 WL 1257351 (S.D.N.Y. Mar. 31, 2010) ........................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................... 11, 12, 14, 16

### STATUTES

15 U.S.C. § 78u-4(b)(2) ...................................................................................................12

28 U.S.C. § 1658(b) .........................................................................................................5

28 U.S.C. § 2072(b) .........................................................................................................7

### OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(b).............................................................2, 12, 16, 17

Federal Rule of Civil Procedure 15(c) .....................................................................6, 7

Rule 10b-5................................................................................................... *passim*

Defendant Thomas W. Jones files this Memorandum of Law in Support of his Motion to Dismiss claims asserted against him in Plaintiffs' Fourth Amended and Consolidated Class Action Complaint ("FAC").

## PRELIMINARY STATEMENT

On January 25, 2011, this Court dismissed the Section 10(b) and Section 20(a) claims against Mr. Jones. (Dkt. No. 121.) For the last fourteen months, this case has moved on without him. Unable to cure the defects necessitating this Court's dismissal, each of the current nine Plaintiffs amended the complaint (eight of them, twice) without asserting any claims against Mr. Jones. (Dkt Nos. 129, 141) (both complaints included current Lead Plaintiff Zagunis as a party, and both were signed by current Lead Counsel)).

On February 28, 2012—well over seven years after Mr. Jones left his post at Citi— Plaintiffs filed the FAC asserting an entirely new set of claims against Mr. Jones. The new Section 20(a) claims appear in Counts III and IV of the FAC. These claims differ from the previously dismissed Section 20(a) claim in that Plaintiffs now allege Mr. Jones controlled a different type of securities violation and/or a violation by a different person. As a result, Plaintiffs admit that these new claims were "not . . . previously brought." (Ex. A, Mar. 14, 2012 M. Levine Ltr. at 1.)

Plaintiffs' claims against Mr. Jones should be dismissed for the following reasons:

***First,*** the five-year statute of repose expired in October of 2009 and bars these new claims as a matter of law. Any argument that the new claims relate back to the previous claims against Mr. Jones is irrelevant because the statute of repose stands as an absolute bar to the filing of new claims.

**Second,** by twice failing to amend the complaint to assert any cause against Mr. Jones, Plaintiffs waived any claims against him, and prevented Mr. Jones from participating in any of the extensive discovery efforts that have been underway since this Court's January 2011 dismissal order. The prejudice to Mr. Jones caused by these new claims provides the Court sufficient grounds to dismiss the claims against him with no opportunity for repleading.

**Third,** as is briefed more extensively in the memorandum of law filed by Mr. Jones's co-defendants, the statute of repose bars claims by the new Plaintiffs who asserted claims for the first time in the FAC. The parties who asserted claims in the initial complaint against Mr. Jones had no standing to assert claims on behalf of the new Plaintiffs, and the statute of repose extinguished any such claims long before the filing of the FAC.

**Fourth,** to the extent the Court reaches the factual allegations, the FAC fails to plead any Section 20(a) claim against Mr. Jones with the particularity required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. Plaintiffs fail to allege facts demonstrating Mr. Jones's control of any alleged violator or giving rise to a strong inference that Mr. Jones culpably participated in any alleged violation. In addition, Plaintiffs fail to plead a primary violation, on which any claim against Mr. Jones necessarily depends, as the alleged primary violations are either not stated with particularity or fail as a matter of law.

**Finally,** though the FAC purports to assert a claim for primary violation under Rule 10b-5(a) and (c) against "All Defendants," Plaintiffs have notified the Court that they assert claims against Mr. Jones only under Section 20(a). (Ex. A, Mar. 14, 2012 M. Levine Ltr. at 1.) For this reason, Mr. Jones will not burden the Court with extensive briefing on any claim for primary violation under Section 10(b). Instead, out of abundance of caution—necessary because of the

vague language in the FAC—this Memorandum briefly states the reasons why no such claim for a primary violation could be stated against Mr. Jones.

## BACKGROUND

Mr. Jones was the CEO of Citigroup Asset Management ("CAM") and Chairman and CEO of Citigroup's Global Investment Management and Private Banking Group.  (FAC ¶ 22.) CAM, a nonparty, was an umbrella organization within Citigroup.   Among CAM's many divisions were the two entity defendants—Smith Barney Fund Management LLC, the investment advisor to the Funds at issue; and Citigroup Global Markets, Inc., which also provided the Funds with investment advisory and management services.  (*Id.* ¶¶ 20-21.)  Plaintiffs contend that Smith Barney and Citigroup Global Markets breached fiduciary duties they allegedly owed as advisers to the Funds by diverting potential savings in transfer-agent-service fees away from the Funds and to a Citigroup affiliate.  (*Id.* ¶ 114.)  Plaintiffs likewise contend that the Funds, defendant Louis E. Daidone, and non-party individuals R. J. Gerken and Richard L. Peteka—as officers of certain Funds—made false and misleading statements in various Fund prospectuses and other communications in violation of Rule 10b-5.  (*Id*. ¶¶ 27-28, 133.)

Mr. Jones, however, was not investment adviser, an officer or director of any investment adviser to the Funds, or an officer or director of any of the Funds.   Likewise, Plaintiffs do not contend that Mr. Jones made, drafted, reviewed, was consulted on, or was responsible for any statement to the Funds.

As a result, in this Court's January 2011 dismissal order, the Court held that Plaintiff's Rule 10b-5 claim could not survive because the dismissed complaint "d[id] not establish Jones's responsibility for" any misstatement.  (Dkt. No. 121 at 15.)  Months later, the Supreme Court reached a similar decision that "for the purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and

how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).

In the January 2011 order, this Court also dismissed claims on behalf of investors in Funds in which no Plaintiff named in that complaint had invested. (Dkt. No. 121 at 15.)

Following the January 2011 order, in May 2011, Plaintiffs amended the complaint to assert claims by the current Lead Plaintiff and seven of the eight current Named Plaintiffs. (Dkt. No. 129.) In June 2011, Plaintiffs filed another amended complaint, which asserted claims by all of the current Plaintiffs. (Dkt. No. 141.) In the second and third amended complaints, however, Plaintiffs asserted no claim against Mr. Jones. (Dkt. Nos. 129, 141.)

In February 2012, the current Lead and Named Plaintiffs filed the FAC asserting new 20(a) claims against Mr. Jones. Plaintiffs claim that Mr. Jones is secondarily liable under Section 20(a) for (1) alleged primary violations of Rule 10b-5(a) and (c) by Defendants Smith Barney Fund Management, Citigroup Global Markets, and Daidone; and (2) alleged primary violations of Rule 10b-5(b) by Defendant Daidone, and non-parties Gerken and Peteka.

The scant facts alleged concerning Mr. Jones merely repeat those in the previously dismissed complaint. They allege that in July 1998—nearly two years before the start of the putative class period in September 2000—Mr. Jones, as the CAM CEO, approved a proposal in a memorandum concerning a transfer-agency arrangement. According to the FAC, the memorandum informed Mr. Jones that the arrangement would reduce fees charged to the Funds, would provide them with better services, and thus would comply with duties owed to them. (FAC ¶¶ 76, 78.) There are no facts alleged indicating that Mr. Jones had any further involvement, or any role in the alleged misstatements during the putative class period.

## ARGUMENT

**I.    Plaintiffs' Section 20(a) Claims Against Mr. Jones Are Barred By The Statute Of Repose (And The Statute Of Limitations).**

The five-year statute of repose bars Plaintiffs' Section 20(a) claims against Mr. Jones.  A private action for securities fraud must be brought "not later than the earlier of 2 years after discovery of the facts constituting the violation or 5 years after such violation."    28 U.S.C. § 1658(b).   This "unqualified bar on actions instituted '5 years after such violation' giv[es] defendants total repose after 5 years."   *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010).

Given that Mr. Jones left his position at Citi in October 2004 (FAC ¶ 22), the repose period ended in October 2009—years before Plaintiffs asserted their new Section 20(a) claims against him in February 2012.  Even if the five-year period were calculated from the May 31, 2005 end of the putative class period, the repose period would have ended in May 2010.

There is no dispute that the Section 20(a) claims in the FAC are entirely new.  Plaintiffs admit that the FAC "does not seek to reassert the claims that were previously dismissed."  (Ex. A, Mar. 14, 2012 M. Levine Ltr. at 1.)   Instead, Plaintiffs concede **"the claims against Mr. Jones are not claims that were previously brought or for which the Court previously ruled in his favor."**  *Id.* (emphasis added).

The new Section 20(a) claims assert either that Mr. Jones controlled a new primary violation or a new primary violator.  (FAC ¶¶ 151–58.)  The complaint dismissed in January 2011 contained only one control person claim against Mr. Jones, for his alleged control of Smith Barney's and Citigroup Global Markets' "dissemination of the various statements that Plaintiff contends are false and misleading."  (Am. Compl. ¶ 149.)

Unlike that complaint, Count III of the FAC expressly disclaims any reliance on allegations that other Defendants made misrepresentations in violation of Rule 10b-5(b). (FAC ¶ 151.)  Instead, Count III asserts a new claim that Mr. Jones allegedly controlled Smith Barney's, Citigroup Global Markets', and Daidone's alleged "scheme" violating Rule 10b-5(a) and (c).  (*Id.*)  No prior complaint made such a claim.

Count IV of the FAC asserts new claims that Mr. Jones controlled Rule 10b-5(b) violations for alleged misrepresentations by people whom Mr. Jones was never before alleged to have controlled—Daidone, Gerken, and Peteka.  Indeed, Gerken and Peteka were never before mentioned in any previous complaint.

Plaintiffs asserted these new claims long after the expiration of the five-year statute of repose, and they are thus barred as a matter of law.  Any argument that these claims "relate back" to a prior complaint under Federal Rule of Civil Procedure 15(c) is irrelevant—and in any event inaccurate, given that Plaintiffs have alleged entirely new primary violations.[1]

"[T]he Rule 15(c) relation back doctrine does not apply to statutes of repose."  *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011).  "[A] statute of repose *extinguishes* a plaintiff's cause of action after the passage of a fixed period of time."  *Ma v. Merrill  Lynch, Pierce, Fenner & Smith*, 597 F.3d 84, 88 n. 4 (2d Cir. 2010) (affirming order dismissing claims as barred by the applicable statute of repose); *see also P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of

---

[1]  For example, the claim that Mr. Jones controlled alleged violations by two individuals not mentioned in any prior complaint—Gerken and Peteka—does not relate back under Rule 15(c).  For this reason, Rule 15(c) does not prevent the running of the statute of limitations on that claim, which ran at the latest two years following the SEC's May 31, 2005 order. (FAC ¶ 145.)

time").

The relation-back doctrine, on the other hand, applies to statutes of *limitation*, which do not stand as an absolute bar to the cause of action upon the specified period. *See, e.g., Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2494 (2010) (applying Rule 15(c) to statute of limitation). Statutes of repose, by contrast, are absolute. *Merck*, 130 S. Ct. at 1797 (holding that 5-year period for bringing private securities claims is an "unqualified bar on actions . . . , giving defendants total repose after 5 years"). Plaintiffs "cannot avoid the statute of repose on a 'relation back' theory under [Rule] 15(c) because the statute of repose by its terms allows no exceptions." *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 643 (S.D.N.Y. 2011). This principle is widely recognized. *See, e.g., Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002); *In re Lehman Bros. Sec. & ERISA Litig.* ("*Lehman I*"), 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011); *Nulman v. Money Warehouse Inc.*, No. 09-1503, 2011 WL 830288, at *2 (E.D. Pa. Mar. 10, 2011); *Harris v. OSI Fin. Svcs., Inc.*, 595 F. Supp. 2d 885, 897 (N.D. Ill. 2009).

Any interpretation of Rule 15(c) that would allow it to trump the five-year statute of repose would be contrary to the Rules Enabling Act, which prohibits the Rules from enlarging any substantive right, such as a federal securities law claim. 28 U.S.C. § 2072(b); *In re Lehman*, 800 F. Supp. 2d at 483.

The statute of repose is absolute. A private action for securities fraud "must be brought . . . in no event more than five years after the date of the violation." *Take-Two Interactive Software, Inc. v. Bryant*, No. 06 Civ. 05279, 2010 WL 1257351, at *5 (S.D.N.Y. Mar. 31, 2010). The pending claims against Mr. Jones were not brought until almost seven years after Mr. Jones departed from Citi, and as a matter of law require dismissal.

II.   **By Failing Twice To Amend Claims As To Mr. Jones, Plaintiffs Waived Any Claim Against Him; Allowing The Amendment As To Him Would, As A Result, Be Prejudicial.**

In January 2011, this Court dismissed all claims against Mr. Jones. Thereafter, Plaintiffs filed two complaints, signed by current lead counsel, which asserted no claims against Mr. Jones. During the intervening time between the Court's January 2011 dismissal order and Plaintiffs' filing of the February 2012 FAC, the parties engaged in extensive discovery, including the depositions of each of the current nine Plaintiffs and the exchange of hundreds of thousands of pages of documents. (Sept. 15, 2011 Hearing Tr. 4:24–5:2; 6:1–6.) Plaintiffs' failure to assert claims against Mr. Jones following this Court's dismissal order—and their filing of two intervening complaints asserting no claims against him whatsoever—waived any claim against Mr. Jones. Plaintiffs' conduct extinguished Mr. Jones's right to participate in critical discovery, and their assertion of new claims against Mr. Jones in the FAC causes him prejudice that cannot be cured without extensive delay.

In this Circuit, it is well recognized that a Court need not and should not allow an amendment where such amendment would cause delay or prejudice. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "'Prejudice to the opposing party' is in fact "'the most important factor' and 'the most frequent reason' for denying leave to amend.'" *Id.* (quoting 6 Wright, Miller & Kane*, Fed. Prac. & Proc.* 2d, § 1487, at 613 (1990 & 2007 Supp.)). A proposed amendment is particularly likely to "unduly burden and prejudice defendants in . . . circumstances" where it is sought on the eve of a pivotal stage in the proceedings. *See id.* at 192 (holding that prejudice arises where amendment is sought on the eve of trial and results in new issues of proof). Here, following extensive discovery in which Mr. Jones played no part, Plaintiffs and the other Defendants are drawing towards determination of whether the class can be certified—an "issue of critical importance" in a securities fraud suit. *Coopers & Lybrand v.*

*Livesay*, 437 U.S. 463, 476 (1978).

Because the new claims in the FAC against Mr. Jones will cause extraordinary prejudice and delay, it is fully within this Court's sound discretion to dismiss the claims against Mr. Jones with no opportunity to Plaintiffs for repleading.

**III.     Claims By Plaintiffs Who Filed Suit After The Running Of The Statute Of Repose Are Barred As A Matter Of Law.**

As set forth more fully in the Memorandum of Law filed by the Smith Barney Defendants and Daidone, the five-year statute of repose bars claims by new Plaintiffs, who never before asserted claims against Mr. Jones until the filing of the FAC.  The five-year statute of repose on claims against Mr. Jones expired at the latest in October 2009 (five years following his departure from Citi).  The new Plaintiffs did not file any claims against Mr. Jones until February 2012.  Because the individuals named as plaintiffs in the previous complaints had no standing to assert claims on behalf of the new Plaintiffs, who owned an interest in different Funds, the new Plaintiffs' claims were extinguished with the running of the statute of repose.  *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 643 (S.D.N.Y. 2011); *In re Lehman*, 800 F. Supp. 2d at 483.  The new Plaintiffs' claims are barred as a matter of law and must be dismissed.

**IV.     Plaintiffs Have Failed To Plead With Particularity The Section 20(a) Claims Against Mr. Jones.**

After access to extensive discovery, Plaintiffs fail to plead with the requisite particularity facts supporting the necessary elements of their 20(a) claims against Mr. Jones.  To state a claim for control person liability under Section 20(a), Plaintiffs must allege: (1) a primary violation by a controlled person; (2) control by Mr. Jones; and (3) that Mr. Jones was "in some meaningful sense a culpable participant" in that primary violation.  Dkt. No. 121 at 17; *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

A Section 20(a) claim hinges on a primary violation.  If the claim for a primary violation

fails as a matter of law or is not pleaded with particularity, that necessitates the dismissal of the Section 20(a) claim. *In re Centerline Holding Co. Sec. Litig.*, 380 Fed. App'x 91, 92 (2d Cir. 2010) (upholding dismissal of Section 20(a) claim due to plaintiffs' failure to adequately plead scienter with respect to the alleged primary violators).

In addition, to allege the necessary element of control, a defendant "must not only have actual control over the primary violator, but have control over the transaction [or statement] in question." *H&H Acquisition Co. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 572 (S.D.N.Y. 2011). The defendant "must actually possess [this control] in fact, rather than in theory." *H&H Acquisition Co.*, 669 F. Supp. 2d at 361. To meet their burden, Plaintiffs must allege "particularized facts" of such control. *Sanofi-Aventis*, 774 F. Supp. 2d at 572. "Conclusory allegations of control are insufficient as a matter of law." *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005).

Finally, Section 20(a)'s "culpable participation" element is equivalent to Section 10(b)'s scienter element, requiring a plaintiff to "allege some level of culpable participation at least approximating recklessness in the section 10(b) context." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.* 741 F. Supp. 2d 474, 492 (S.D.N.Y. 2010). Because the "PSLRA requires a strong inference of culpable participation," a complaint that "fail[s] to plead particularized facts" giving rise to such an inference must be dismissed. *In re Citigroup Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010) (internal citations omitted); *see CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255, 2010 WL 4177103, at *9 (S.D.N.Y. Oct. 10, 2010) ("To withstand a motion to dismiss, a § 20(a) claim must allege particularized facts of the controlling person's conscious misbehavior or recklessness.").

To qualify as a *strong* inference, the inference must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The Second Circuit describes the "reckless disregard for the truth" required to establish Section 10(b) scienter as:

> conscious recklessness—*i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*. In elaborating as to what may constitute recklessness in the context of a private securities fraud action, we have referred to conduct that at the least is highly unreasonable and which represents an extreme departure from the ordinary standards of care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it*; or to evidence that the defendants failed to review or check *information that they had a duty to monitor*, or ignored *obvious* signs of fraud, and hence should have known they were misrepresenting material facts. An *egregious* refusal to see the *obvious*, or to *investigate the doubtful*, may in some cases give rise to an inference of recklessness.

*South Cherry*, 573 F.3d at 109 (emphasis in original) (internal citations omitted). The requisite state of mind "cannot be inferred simply because [a defendant] might have been more curious or concerned about the activity." *Chill v. General Elec. Co.*, 101 F. 3d 263, 270 (2d Cir. 1996).

### A.   Plaintiffs Fail To State A Claim For Control Of Alleged Misstatements Under Rule 10b-5(b).

No facts in the complaint support Plaintiffs' bare allegations that Mr. Jones controlled the alleged misstatements. The last alleged facts concerning Mr. Jones relate to a memorandum sent to him in July 1998 (FAC ¶ 73)—long before any alleged misstatement (*see* App. to FAC) and nearly two years before the start of the putative class period. Plaintiffs' claim for Section 20(a) secondary liability for the alleged misstatements must be dismissed.

***First,*** Plaintiffs fail to state particularized facts demonstrating a primary violation by Gerken or Peteka. The entirety of Plaintiffs' allegations with respect to Gerken and Peteka are contained in two nearly identical paragraphs of superficial and conclusory allegations.

(FAC ¶¶ 27, 28.)  These paragraphs do not meet Plaintiffs' burden to plead the underlying 10(b) violation with particularity under Rule 9(b), much less their burden under the PSLRA to "state with particularity facts giving rise to a strong inference" that Gerken and Peteka acted with "intent to deceive, manipulate, or defraud."  15 U.S.C. § 78u-4(b)(2); *Tellabs*, 551 U.S. at 319.

The "pleading technique [of] coupl[ing] a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that [Gergen and Peteka] acted recklessly or with fraudulent intent."  *Romback v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (internal citations omitted).  Plaintiffs merely allege that Gerken and Peteka "knew or in the absence of recklessness should have known" various facts without ever pleading additional facts giving rise to their alleged knowledge.  (FAC ¶¶ 27-28.)  Because Plaintiffs "do not allege facts and circumstances that would support an inference that [Gerken and Peteka] knew of specific facts that are contrary to their public statements," they do not state a violation against Mr. Jones, either.  *Romback*, 355 F.3d at 176.  Likewise, the vague allegation that Gerken and Peteka were both "CAM insider[s]" (FAC ¶¶ 27-28) is insufficient to give rise to a strong inference of their scienter.  *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp.2d 287, 300 (S.D.N.Y. 2010) (Pauley, J.).  As a result, the associated Section 20(a) claim against Mr. Jones must be dismissed.  *In re Centerline*, 380 Fed. App'x at 92 (upholding dismissal of Section 20(a) claim due to plaintiffs' failure to adequately plead scienter with respect to the alleged primary violators).

***Second,*** absent from the FAC is any allegation supporting the claim that Mr. Jones controlled Gerken, Peteka, Daidone, or their alleged Rule 10b-5(b) violations.  *H&H Acquisition Co.*, 669 F. Supp. 2d at 361 (stating that allegations of control over both the violator and the violation are necessary).

With respect to Gerken and Peteka, there is no allegation Mr. Jones ever had any contact with or knowledge of either.  Plaintiffs merely conclude that "Gerken's [and Peteka's] statements . . . were controlled by Defendant Jones, CEO of CAM."  (FAC ¶¶ 27, 28.)

Concerning Daidone, Mr. Jones's only alleged contact was in April 1998—more than two years before the start of the putative class period.  (FAC ¶ 60.)  Plaintiffs neglect even to assert that Mr. Jones controlled Daidone's alleged misstatements.

Instead, Plaintiffs allege insufficiently that Mr. Jones controlled these three individuals (as opposed to their alleged violations) "[b]y virtue of his high-level positions, and participation in *and/or* awareness of the Smith Barney Defendants' operations *and/or* intimate knowledge of the statements filed by the Smith Barney Funds and/or the Smith Barney Defendants with the SEC and disseminated to the investing public" and because he "was provided with *or* had access to" the documents containing the misstatements.  (FAC ¶ 156 (emphasis added).)  These allegations, which are the only allegations of Mr. Jones's control, fall far short of Plaintiffs' burden.

No inference may be drawn from Mr. Jones's "high-level position."  (*Id.*)  As a matter of law "[o]fficer or director status alone does not constitute control."  *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999); *Global Crossing*, 2005 WL 1907005, at *12. Moreover, he is not alleged to have held any position at the entities at which Gerken, Peteka, and Daidone worked.  (FAC ¶¶ 23, 27, 28.)

The FAC is devoid of any factual support for the conclusion that Mr. Jones supposedly had "intimate knowledge of the statements filed by Smith Barney Funds and/or the Smith Barney Defendants" or intimate knowledge of their operations.  Mr. Jones is not alleged to have signed, read, drafted, reviewed, approved, or confirmed the allegedly misleading statements.  (FAC ¶¶

86–106; App. to FAC.)

The allegation that Mr. Jones was either provided with or "had unlimited access to copies of the Smith Barney Funds' public filings" does not meet the pleading standard. "Merely generally alleging that [defendants] were decision-making officials or had access to material information is inadequate" to establish control liability. *Sanofi-Aventis*, 774 F. Supp. 2d at 572.

With no particularized allegation of control over any of the three individuals, let alone over their alleged misstatements, Plaintiffs' Rule 10b-5(b) secondary liability claim must be dismissed.

***Third,*** the necessary strong inference that Mr. Jones "culpably participated" in the alleged misstatements is also missing. Nothing in the FAC indicates that Mr. Jones was in *any* sense a participant in any communications to the Funds. One cannot draw an inference that Mr. Jones was consciously reckless with respect to statements he is never alleged to have read, reviewed, or approved. Plaintiffs have fallen far short of pleading particularized facts giving rise to a strong inference of conscious recklessness that is more compelling than any other competing inference, such as an inference that Mr. Jones had no responsibility for or participation in the alleged misstatements. *Tellabs*, 551 U.S. at 314. Accordingly, Count IV must be dismissed.

      **B.**      **Plaintiffs Fail To State A Claim For Control Of The Smith Barney Defendants' Alleged "Scheme" To Defraud Under Rule 10b-5(a) and (c).**

Plaintiffs likewise fail to allege control-person liability for Smith Barney Fund Management, Citigroup Global Markets, and Daidone's alleged "scheme to defraud." Even after access to discovery, Plaintiffs premise their claim for secondary liability in Count III on conclusory assumptions about Mr. Jones for which they plead no supporting facts. The allegations do not state a claim under 20(a) and must be dismissed.

-14-

*First,* Plaintiffs have not asserted a primary violation, as addressed in detail in the brief filed by Mr. Jones's co-defendants.  Plaintiffs' cannot escape the Supreme Court's *Janus* ruling by repackaging failed misrepresentation and/or fiduciary-duty claims as claims for "scheme liability" under Rule 10b-5(a) and (c).  *SEC v. PIMCO Adv. Fund Mgmt LLC*, 341 F. Supp. 2d 454, 469 (S.D.N.Y. 2004); *SEC v. Kelly*, --- F. Supp. 2d ----, No. 08 Civ. 4612, 2011 WL 4431161, at *3 (S.D.N.Y. Sept. 22, 2011).   Because the claims for a primary violation of Rule 10b-5(a) and (c) by the other three Defendants cannot survive a motion to dismiss, neither does the claim for secondary liability against Mr. Jones.  *See, e.g., In re Centerline*, 380 Fed. App'x at 92.

*Second,* Plaintiffs' conclusory allegations that Mr. Jones controlled the "scheme liability" violations of the other three Defendants are virtually identical to the insufficient allegations of control described above.  (Compare FAC ¶ 156 with ¶¶ 152–53.)  Assumptions drawn from Mr. Jones's corporate position and "unlimited access to documents" are insufficient to allege control over an alleged violator or the violation itself.  *Livent*, 78 F. Supp. 2d at 221; *Sanofi-Aventis*, 774 F. Supp. 2d at 572.   There are no particularized allegations that Mr. Jones controlled any deceptive act against Fund investors or any effort to defraud them.  As is plain from the FAC itself, Mr. Jones played no role whatsoever in any communication to the Funds or the Funds' boards, much less asserted control over an effort to deceive them.  *H&H Acquisition Co.* 669 F. Supp. 2d at 361; *see also PIMCO*, 341 F. Supp. 2d at 466.

*Third,* Plaintiffs fall far short of alleging particularized facts giving rise to a strong inference that Mr. Jones "culpably participated" in the alleged fraudulent scheme, or that any such inference is more compelling than another competing inference.  *Tellabs*, 551 U.S. at 314; *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund*, 741 F. Supp. 2d at 492.

The FAC is far more notable for what it does *not* say about Mr. Jones than for the scant allegations concerning him. For example, there is no allegation that Mr. Jones participated in the details of the negotiations leading up to the transfer agent proposal (FAC ¶¶ 47–58, 64–72), was aware of Deloitte & Touche Consulting's presentations expressing concerns over various aspects of the First Data proposal (*id.* ¶¶ 59–69), or attended or directed work in preparation for the meetings in March–June 1999, when a revised First Data proposal was presented to the Funds' boards (*id.* ¶¶ 85–102).

Instead, the FAC alleges that Mr. Jones approved a July 1998 recommendation concerning the transfer agent proposal. (*Id.* ¶ 73.) As Plaintiffs concede, however, this memorandum indicated to Mr. Jones that the proposal would benefit the Funds through reduced transfer agent fees and improved service. (*Id.* ¶¶ 76, 78.) In addition, the memorandum specifically stated that the proposal was consistent with fiduciary obligations to the Funds, and that the Funds' Chairman was aware of and comfortable with the proposal and expected that the Funds' Boards would also be supportive. (*Id.*) There is no allegation Mr. Jones had any involvement in or knowledge of the process after approving the July 1998 recommendation.

These allegations are not sufficient to create the strong inference of "culpable participation" necessary under Rule 9(b) and the PSLRA. An inference that Mr. Jones's participation amounted to "conscious recklessness"—i.e., "a state of mind approximating actual intent" to deceive the Funds—is not compelling. *South Cherry*, 573 F.3d at 109; *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund*, 741 F. Supp. 2d at 492. Mr. Jones had no role with respect to the Funds, and certainly no role in communicating with them. Such an inference of "culpable intent" is certainly not as compelling as any competing inference, including an inference of negligence or that Mr. Jones, who was neither an investment adviser or

a lawyer, relied on others to ensure that appropriate disclosures to the Funds were made. Accordingly, Count III of the FAC must be dismissed.

## V.  Plaintiffs Have Not Pleaded A Rule 10b-5 Claim For Primary Violation Against Mr. Jones.

Plaintiffs notified the Court that they assert only claims under Section 20(a) against Mr. Jones, (Ex. A, Mar. 14, 2012 M. Levine Ltr. at 1), and accordingly assert no claim for primary violation under Section 10(b).  Because Count I of the FAC vaguely refers to "All Defendants," Mr. Jones briefly states the reasons why no such claim could be asserted against him.  First, there is no allegation or any factual particularity supporting the necessary element of an "inherently deceptive act that is distinct from the alleged misstatement[s]," for which Mr. Jones cannot be held liable.  *See Kelly*, --- F. Supp. 2d ----, 2011 WL 4431161, at *3; *see also PIMCO*, 341 F. Supp. 2d at 469.  Second, Plaintiffs failed to (and apparently did not intend to) plead that they relied on any inherently deceptive act by Mr. Jones.  Third, Plaintiffs pleaded no facts giving rise to a strong inference of scienter necessary to state a claim for a primary violation by Mr. Jones.

## CONCLUSION

Plaintiffs' claims against Mr. Jones should be dismissed, and the Court should give Plaintiffs no opportunity to replead.  Plaintiffs assert only claims under Section 20(a) for secondary liability—claims which Plaintiffs admit have never before been charged against Mr. Jones.  The statute of repose bars these claims as a matter of law, and in any event Plaintiffs' pleading falls far short of the particularized allegations required by Rule 9(b) and the PSLRA. For these and the other reasons set forth above, Mr. Jones respectfully requests that the Court grant his motion to dismiss all claims against him with prejudice.

Dated: March 30, 2012

By: /s/  *Jessica B. Pulliam*
Alex Bourelly (*Pro hac* pending)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 639-7700
Fax:  (202) 639-7890
alex.bourelly@bakerbotts.com

Jessica B. Pulliam (Admitted *pro hac vice*)
John B. Lawrence (*Pro hac* pending)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Tel:  (214) 953-6500
Fax:   (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

*Counsel for Defendant Thomas W. Jones*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I served the foregoing on all parties by filing this

document with the Clerk of Court using the CM/ECF system, pursuant to Local Civil Rule 5.2.

/s/  *Jessica B. Pulliam*
Jessica B. Pulliam

-18-