**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SMITH BARNEY
TRANSFER AGENT LITIGATION

This document applies to all actions

05 Civ. 7583 (WHP)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
COUNTS I AND II OF THE FOURTH CONSOLIDATED AND AMENDED
COMPLAINT BY DEFENDANTS SMITH BARNEY FUND MANAGEMENT LLC,
CITIGROUP GLOBAL MARKETS INC. AND LEWIS E. DAIDONE**

SCHULTE ROTH & ZABEL LLP
1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
(202) 729-7470

*Counsel for Defendants Smith Barney Fund
Management LLC, Citigroup Global Markets Inc.
and Lewis E. Daidone*

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

*Counsel for Defendants Smith Barney Fund
Management LLC and Citigroup Global Markets
Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

I. *JANUS* BARS THE PRIMARY LIABILITY CLAIMS IN COUNTS I and II. .........................3

    A.   Only Defendants With "Ultimate Authority" For An Alleged Misstatement May be Liable Under Rule 10b-5. .............................................................3

    B.   Plaintiffs Cannot Circumvent *Janus* By Asserting "Scheme Liability". ...................5

    C.   Count I Should Also Be Dismissed for Failure to Plead Reliance.............................8

    D.   *Janus* Also Requires Dismissal of Count II's Claims Against Daidone..................10

II. DAIDONE IS NOT LIABLE FOR STATEMENTS IN PROSPECTUSES HE DID NOT SIGN. ........................................................................................................14

III. BECAUSE LEAD PLAINTIFF ZAGUNIS AND OTHER NAMED PLAINTIFFS DID NOT RELY ON THE ALLEGEDLY MISLEADING STATEMENTS, THEY CANNOT STATE A CLAIM. ................................................................................15

IV. EVEN IF NOT BARRED BY *JANUS*, NEW PLAINTIFF AND MONEY FUNDS CLAIMS ARE TIME-BARRED. ........................................................................16

    A.   New Plaintiffs' Claims Are Barred by 28 U.S.C. § 1658(b)(2)................................16

        1.   Tolling is Not Available For Claims Dismissed for Lack of Standing..............16

        2.   As a Statute of Repose, § 1658(b)(2) Is Not Subject to Equitable Tolling. .........................................................................................................18

    B.   Equitable Tolling Principles Will Not Resurrect the New Plaintiff Claims. ............22

    C.   Newly-Asserted Money Funds Cash Portfolio Claims Are Time-Barred. ...............24

CONCLUSION. ........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Page

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................................................20

*Am. Pipe & Constr. Co. v.* Utah,
    414 U.S. 538 (1974) ................................................................................................17, 20

*Arivella v. Lucent Techs., Inc.,*
    623 F. Supp. 2d 164 (D. Mass. 2009) .......................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................................13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007) .........................................................................................15

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates,*
    *Series AR1*, 748 F. Supp. 2d 1246 (W.D. Wash. 2010) ............................................17

*Bridges v. Dep't of Md. State Police,*
    441 F.3d 197 (4th Cir. 2006) ......................................................................................21

*Cal. Pub. Emps.' Ret. Sys., v. Chubb Corp.,*
    No. Civ. 00-4285 (GEB), 2002 WL 33934282 (D.N.J. June 26, 2002) ....................23

*Central. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ..................................................................................................3, 9

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.,*
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) .......................................................................13

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) .........................................................................................14

*Credit Suisse Sec. (USA) LLC v. Simmonds,*
    ---S. Ct. ---, 2012 WL 986812 (Mar. 26, 2012) ........................................................22

*Dirks v. SEC,*
    463 U.S. 646 (1983) ......................................................................................................8

*Field v. Trump,*
    850 F.2d 938 (2d Cir. 1988) .........................................................................................8

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
  770 F. Supp. 2d 618 (S.D.N.Y. 2011)...................................................19, 20, 21, 22

*Griffin v. Singletary*,
  17 F.3d 356 (11th Cir. 1994)...................................................................................17

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975)..................................................................................23

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
  No. 3:10CV371, 2011 WL 3862206 (N.D. Ohio Sept. 7, 2011) ............................10

*In re Alstom SA Sec. Litig.*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006).....................................................................15

*In re Coinstar Inc. Sec. Litig.*,
  No. C11-133 MJP, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ........................10

*In re Colonial Ltd. P'ship Litig.*,
  854 F. Supp. 64 (D. Conn. 1994) ............................................................................18

*In re Crazy Eddie Sec. Litig.*,
  747 F. Supp. 850 (E.D.N.Y. 1990) ........................................................................23

*In re Deutsche Bank AG Sec. Litig*,
  No. 09 Civ. 1714(DAB), 2011 WL 3664407 (S.D.N.Y. Aug. 19, 2011) ...............23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005).....................................................................21

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011)......................................................19, 20, 21, 22

*In re Initial Pub. Offering Sec. Litig.*,
  No. 21 MC 92SAS, 2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004) ........................23

*In re Lehman Bros. Sec. & ERISA Litig.*,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011).....................................................................20

*In re Lehman Bros. Sec. & ERISA Litig.*,
  800 F. Supp. 2d 477 (S.D.N.Y. 2011).........................................................20, 21, 22

*In re Maxim Integrated Prods., Inc., Derivative Litig.*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) ..................................................................16

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
810 F. Supp. 2d 650 (S.D.N.Y. 2011)..............................................................................21, 22

*In re Optimal U.S. Litig.*,
No. 10 Civ. 4095(SAS), 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) .......................... *passim*

*In re Parmalat Sec. Litig.*,
376 F. Supp.2d 472 (S.D.N.Y. 2005)...........................................................................................6

*In re Refco, Inc. Sec. Litig.*,
609 F. Supp.2d 304 (S.D.N.Y. 2009)...........................................................................................8

*In re Salomon Analyst Level 3 Litig.*,
350 F. Supp. 2d 477 (S.D.N.Y. 2004)........................................................................................22

*In re Smith Barney Transfer Agent Litig.*,
765 F. Supp. 2d 391 (S.D.N.Y. 2011)........................................................................................16

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
No. 09-CV-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ...................................17

*In re WorldCom Sec. Litig.*,
496 F.3d 245 (2d Cir. 2007)........................................................................................................17

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
---F. Supp. 2d ---, 2011 WL 4529640 (S.D.N.Y. Sept. 30, 2011) ............................................21

*Irwin v. Dep't of Veterans Affairs*,
498 U.S. 89 (1990)......................................................................................................................21

*Janus Capital Grp., Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) ......................................................................................................*passim*

*Kruse v. Wells Fargo Home Mortg., Inc.*,
No. 02-CV-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3, 2006) ......................................18

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)....................................................................................................................19

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)..........................................................................................................6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
722 F. Supp. 2d 1157 (C.D. Cal. 2010) .....................................................................................17

*Merck & Co. v. Reynolds*,
    130 S. Ct. 1784 (2010) ..................................................................................19, 22, 24

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 Civ. 5653(PAC), 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ...........................17, 23

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
    595 F.3d 86 (2d Cir. 2010)................................................................................7

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................................21

*P. Stolz Family P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)...................................................................19, 20, 22

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)...............................................................................9

*Perez-Rubio v. Wyckoff*,
    718 F. Supp. 2d 217 (S.D.N.Y. 1989)................................................................15

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)................................................................18

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)............................................................................10

*Rose v. Ark. Valley Envtl. & Util. Auth.*,
    562 F. Supp. 1180 (W.D. Mo. 1983) .................................................................23

*SEC v. Kelly*,
    No. 08 –Civ. 4612(CM), 2011 WL 4431161 (S.D.N.Y. Sept. 22, 2011) .......................5, 6, 8

*SEC v. KPMG LLP*,
    412 F. Supp. 2d. 349 (S.D.N.Y. 2006)................................................................6

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)................................................................6

*SEC v. Lucent Techs., Inc.*,
    610 F. Supp. 2d 342 (D.N.J. 2009) ...................................................................6

*SEC v. PIMCO Advisors Fund Mgmt.*,
    341 F. Supp. 2d. 454 (S.D.N.Y. 2004)..............................................................7, 8

*SEC v. U.S. Envtl., Inc.,*
   155 F.3d 107 (2d Cir. 1998).................................................................................7

*SEC v. Wyly,*
   788 F. Supp. 2d 92 (S.D.N.Y. 2011).................................................................19

*Smith v. Bayer Corp.,*
   131 S. Ct. 2368 (2011).....................................................................................18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
   552 U.S. 148 (2008).................................................................................5, 8, 9

*Stuart v. Am. Cyanamid Co.,*
   158 F.3d 622 (2d Cir. 1998).............................................................................19

*Take-Two Interactive Software, Inc. v. Brant,*
   No. 06 Civ. 05279(LTS), 2010 WL 1257351 (S.D.N.Y. Mar. 31, 2010)..........16, 19

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,*
   612 F. Supp. 2d 267 (S.D.N.Y. 2009)..................................................................9

*Veltri v. Bldg. Serv. 32B-J Pension Fund,*
   393 F.3d 318 (2d Cir. 2004).............................................................................21

*Walters v. Edgar,*
   163 F.3d 430 (7th Cir. 1998).......................................................................17, 18

*Young v. United States,*
   535 U.S. 43 (2002)...........................................................................................21

*Youngblood v. Dalzell,*
   925 F.2d 954 (6th Cir. 1991)............................................................................21

## STATUTES AND RULES

28 U.S.C. § 1658(b)(2) (2002)........................................................................ *passim*

28 U.S.C. § 2072(b) (1990) ....................................................................................20

17 C.F.R. § 240.10b-5(a) (2011)...............................................................................5

Fed. R. Civ. P. 23 ...............................................................................................18, 20

## OTHER AUTHORITIES

S. REP. No. 107-146, at 26, 2002 WL 863249, at 20 (May 6, 2002) ...........................19

Defendants Smith Barney Fund Management LLC, Citigroup Global Markets Inc. (together, the "Citi Defendants") and Lewis E. Daidone ("Daidone") (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss Counts I and II of the Fourth Amended and Consolidated Complaint ("FAC").[1]

## PRELIMINARY STATEMENT

The gravamen of the FAC, like its predecessors, is that Defendants made false and misleading disclosures to mutual fund investors regarding transfer agency fees charged by Smith Barney mutual funds (the "Funds"). FAC ¶¶ 2-9. The FAC asserts that, while Defendants negotiated "substantial" reductions in transfer agency fees, the Funds' disclosures about those fees were not only affirmatively false but also failed to note that the Citi Defendants "captured" the "economic opportunity" of these savings instead of passing them along to Fund investors. FAC ¶ 2. According to the FAC, the misleading and omissive nature of these disclosures caused various statements made by the *Funds themselves*—collected in a 175-paragraph "Appendix" to the FAC—to be materially misleading under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. FAC ¶ 9.

The FAC differs from prior complaints in its attempt to plead around the Supreme Court's holding in *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), that only defendants who have "ultimately authority" for, and thus "make," allegedly misleading statements can be liable under Rule 10b-5(b). To circumvent this ruling, Plaintiffs attempt to recast their allegations in Count I as a "scheme" liability claim under Rules 10b-5(a) and (c),

---

[1] To the extent Count I purports to state a claim against defendant Thomas W. Jones ("Jones") (notwithstanding Plaintiffs' letter to the Court indicating otherwise), Jones joins Defendants' motion to dismiss that claim. Likewise, to the extent Counts III and IV purport to assert "control person" claims against Daidone (though he is not named in those counts), Daidone joins in Jones's separate motion to dismiss those claims.

which prohibit deceptive conduct. Merely relabeling these allegations, though, does not salvage this claim. Indeed, relying on *Janus*, this Court has rejected identical "scheme" liability claims for conduct that, as here, is not inherently deceptive but allegedly becomes deceptive due to accompanying misstatements. Count I of the FAC should be dismissed as to the Citi Defendants because the Funds themselves, not the Citi Defendants, made the alleged misstatements.

Though Plaintiffs concede that the Funds issued the allegedly misleading statements, they attempt to impose Rule 10b-5 liability on Daidone for those statements because he signed some of the Fund prospectuses. That attempt fails under *Janus's* "clean line" holding that only those with "ultimate authority" are liable for the alleged misstatements. The FAC nowhere asserts that Daidone had such authority. Because Plaintiffs' claims against Daidone merely assert disguised but improper secondary liability claims, they too should be dismissed.

Counts I and II also suffer from other equally-fatal deficiencies. *First*, even if *Janus* did not absolve Daidone of liability, he cannot be liable for alleged misstatements that are not attributed to him, and such claims should be dismissed. *Second*, the "scheme" liability claim and all claims by lead plaintiff David Zagunis and plaintiffs DVL 401(k) Plan, Luff, Miller, Shah, and Weber should be dismissed for failing to plead reliance, a required element of a Rule 10b-5 claim. *Third*, even if *Janus* did not bar all of Counts I and II, two categories of claims should be dismissed as time-barred: (1) claims by new plaintiffs who were added through complaints filed in 2011[2]; and (2) claims plaintiff Jeffrey Weber belatedly asserted six years after he joined the case regarding the Money Funds Cash Portfolio. Both categories of claims were asserted *after* the applicable five-year statute of repose expired and, with it, any right to assert the claims.

---

[2] Such claims ("New Plaintiff Claims") were asserted in 2011 by lead plaintiff Zagunis and named plaintiffs Colette M. Luff, Robert and Ann Yiambellis, DVL 401(k) Plan, Bharat U. Shah, Steven W. Hall, Richard W. Rees, and Renee Miller (together, "New Plaintiffs") in the second and third amended complaints. Dkt. Nos. 129, 141.

Moreover, the statute of repose is not subject to equitable tolling. This is especially true here, as these claims were previously dismissed because no named plaintiff had standing to assert them. Since there can be no tolling under these circumstances, these claims should be dismissed with prejudice.

**ARGUMENT**

I.     *JANUS* **BARS THE PRIMARY LIABILITY CLAIMS IN COUNTS I AND II**

      A.     **Only Defendants With "Ultimate Authority" For An Alleged Misstatement May Be Liable Under Rule 10b-5.**

Like the instant case, *Janus* involved an attempt to hold an investment adviser to mutual funds liable under Rule 10b-5 for alleged misstatements in mutual fund prospectuses. In *Janus*, the Supreme Court adopted a "clean line" test limiting Rule 10b-5 liability to those who "make" the statements at issue. 131 S. Ct. at 2301 and n.6. *Janus* held: "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id*. at 2302; *see also id*. at 2303. Although acknowledging that "investment advisers exercise significant influence over their client funds" and the "well-recognized and uniquely close relationship" between mutual funds and their investment advisers, *Janus* refused to impose liability on the investment adviser for statements in fund prospectuses. *Id*. at 2304. The Court recognized that the fund, not its adviser, "bears the statutory obligation to file the prospectuses with the SEC." *Id*. at 2304. By adopting the analogy of a speechwriter and speaker and concluding that only the speaker has "ultimate authority" for the speech, *Janus* drew a sharp distinction between primary and secondary liability and reinforced its holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994), that persons who "contribute 'substantial assistance'" are not subject to primary liability. 131 S. Ct. at 2302 n.6 ("[f]or *Central Bank* to have any meaning,

*there must be some distinction between those who are primarily liable … and those who are secondarily liable*" (emphasis added)).  The Court reached its decision "mindful" of the "narrow dimensions … to a right of action Congress did not authorize when it first enacted [Section 10(b)] and did not expand when it revisited the law."  *Id*. at 2302 (citations omitted).

Since *Janus*, courts have dismissed claims in similar mutual fund contexts where defendants lacked "ultimate authority" over alleged misstatements.  For example, Judge Scheindlin recently granted defendants' renewed motions to dismiss and reversed her pre-*Janus* ruling that attributed the alleged misstatements to the fund's adviser.  *See In re Optimal U.S. Litig.*, No. 10 Civ. 4095 (SAS), 2011 WL 4908745, *5-6 (S.D.N.Y. Oct. 14, 2011).  Relying on *Janus*, *Optimal* rejected claims that the fund adviser had "ultimate authority" for statements in a fund's prospectus notwithstanding that the adviser owned 100% of the voting stock of the fund (among other "indicia of control").  *Id*. at *6.  *Optimal* concluded that the adviser did not "make" the fund's statements even though it was identified on the cover page of the fund's prospectus.  *Id*.

Here, as in *Janus*, the Funds, independent legal entities who are not defendants here, bore "the statutory obligation to file the prospectuses with the SEC."  131 S. Ct. at 2304.  In fact, the FAC explicitly asserts that the Funds made the statements at issue here.  *See, e.g.*, FAC ¶ 144 (alleging misstatements "disseminated by all of the 24 Funds"); ¶ 147 (alleging Funds' "issuance of materially false and misleading statements"); Appendix A at A-4 (same).  Plaintiffs do *not* assert that the Citi Defendants made *any* of the alleged misstatements.

**B.    Plaintiffs Cannot Circumvent *Janus* By Asserting "Scheme" Liability.**

In a transparent effort to skirt *Janus*, Plaintiffs attempt to recast their claims against the Defendants as "scheme" liability under subsections (a) and (c) of Rule 10b-5.[3]    This maneuvering cannot salvage their claims in Count I against the Citi Defendants or Daidone.

*First*, applying *Janus*, this Court recently rejected identical "scheme" liability claims.  In *SEC v. Kelly*, the SEC argued that while *Janus* foreclosed Rule 10b-5(b) claims, it did not foreclose "scheme" liability claims under Rules 10b-5(a) and (c).  No. 08 Civ. 4612(CM), 2011 WL 4431161, at *2 (S.D.N.Y. Sept. 22, 2011).  This Court disagreed, noting that courts have rejected "attempts to bypass" the required elements of Rule 10b-5 liability "by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'"  *Id.* at *3.  *Kelly* recognized that subsections (a) and (c) are "not a backdoor into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5."  *Id.* (citation omitted).

*Janus* also compels rejection of "scheme" liability claims here.  Relying on *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 161 (2008), *Janus* indicated it "[saw] no reason to treat *participating in the drafting of a false statement* differently from *engaging in deceptive transactions*, when each is merely an undisclosed act" leading to an alleged misstatement by another.  131 S. Ct. at 2304 (emphasis supplied).    Through its speechwriter/speaker example, *Janus* held that only the speaker can be primarily liable under Rule 10b-5, confirming the primary-secondary liability distinction in all subsections of Rule 10b-

---

[3] Count I purports to assert "scheme" liability claims against Defendants under subsections (a) and (c) of Rule 10b–5.  Those provisions make it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud, [or] ... (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b–5(a), (c) (2011).

5. Thus, *Janus* and other precedent prohibit Plaintiffs' "scheme" liability claim premised on alleged misstatements made by the Funds, not by the Defendants.  To allow "scheme" liability for alleged misstatements these Defendants did not "make" would erase *Janus's* "clean line."

*Second*, "scheme" liability claims under subsections (a) and (c) require allegations of "an inherently deceptive act that is distinct from an alleged misstatement."  *Kelly*, 2011 WL 4431161, at *3 ("Although conduct can itself be deceptive, … this case is not about conduct that is itself deceptive—it is about conduct that *became* deceptive only through … misstatements[.]"); *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005) (distinguishing loans disguised as equity investments from "sham" transactions that "were by nature deceptive," and finding that only the later support "scheme" liability since the former were only deceptive in how they were described).  This was true before *Janus,* as even then courts uniformly recognized that conduct that becomes deceptive by reason of an accompanying misstatement does not state a claim under 10b-5(a) or (c) simply by labeling it a "scheme."  *See, e.g., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (rejecting scheme liability where "the sole basis for such claims is alleged misrepresentations or omissions"); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006) ("Because the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability … by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"); *SEC v. Lucent Techs. Inc.*, 610 F. Supp. 2d 342, 361 (D. N.J. 2009) (rejecting scheme liability where "[t]he alleged deception … arose from the failure to disclose the real terms of the deal" (quotations marks omitted)).

In short, only conduct that is by its very nature deceptive *without* an accompanying misstatement can be "inherently deceptive."  *See, e.g., SEC v. Lee*, 720 F. Supp. 2d 305, 334

(S.D.N.Y. 2010) (upholding "scheme" liability claim based on "u-turning" by brokers of commodity prices: one broker would send his price to a second broker, who would then report that price back to the first as a purportedly "independent" quote); *SEC v. U.S. Envtl., Inc.*, 155 F.3d 107, 112 (2d Cir. 1998) (market-manipulating trades were inherently deceptive without accompanying misstatement).

Even if Plaintiffs' allegations are true, internalizing the transfer agency ("TA") function is not inherently deceptive conduct; it only allegedly became deceptive as a result of the Funds' misstatements concerning it.   Although Plaintiffs attempt to suggest otherwise,[4] those suggestions are belied by the FAC's assertions that the alleged deception resulted from the failure properly to disclose the TA arrangement.   *See, e.g.,* FAC ¶ 130 (asserting that had Plaintiffs known of the TA arrangement, they would not have purchased Funds).

*Third*, Plaintiffs cannot avoid dismissal by asserting that Defendants breached fiduciary duties they owed to Plaintiffs.  *See, e.g.,* FAC ¶¶ 2, 3, 7, 118, 125-27, 129.  As this Court held and the Second Circuit affirmed, Plaintiffs lack standing to assert derivative breach of fiduciary duty claims that belong to the Funds themselves.  *See Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 95-98 (2d Cir. 2010) (affirming dismissal of fiduciary duty claims).  Plaintiffs cannot construct a viable theory of liability on claims they that were already dismissed because Plaintiffs lacked standing.

Moreover, *SEC v. PIMCO Advisors Fund Mgmt.* held that an alleged fiduciary breach by an investment adviser is not  a "scheme" liability claim. 341 F. Supp. 2d. 454, 467-69 (S.D.N.Y. 2004).  While acknowledging that permitting market timing trades contrary to fund disclosures might breach fiduciary duties that investment adviser executives owed investors,  *PIMCO* held

---

[4] *See* FAC ¶¶ 8-9 (asserting "deceptive kickback scheme" and "deceptive course of conduct").

that a fiduciary breach did not state a "scheme" liability claim.  *Id*. at 468-69.  Just as the SEC

could not assert in *PIMCO* that market timing was *per se* fraudulent, Plaintiffs here cannot assert

that a profitable internal transfer agency is *per se* fraudulent.  Permitting a fiduciary breach claim

to state a "scheme" liability claim would transform every fiduciary duty breach into a securities

law violation, a result the courts have rejected.  *See, e.g., Dirks v. SEC*, 463 U.S. 646, 654 (1983)

("Not 'all breaches of fiduciary duty in connection with a securities transaction,' however, come

within the ambit of Rule 10b-5") (citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472

(1977)); *Field v. Trump*, 850 F.2d 938, 947-48 (2d Cir. 1988) (fiduciary duty breach allegations

do not themselves give rise to a 10b-5 claim).

Nor can Plaintiffs prevail through generic allegations that Defendants "hatched" or

"perpetrated" a "plan" involving the TA arrangement.  FAC ¶¶ 1-2; *see Kelly*, 2011 WL

4431161, at *3) (no "scheme" liability where defendants allegedly "engineered, oversaw, and

executed a scheme to artificially and materially inflate the Company's reported online

advertising revenue"); *see also In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 314 (S.D.N.Y.

2009) (dismissing "scheme" claim alleging defendants "design[ed] and implement[ed] sham

transactions").  The mere use of active verbs in a complaint cannot convert a disclosure case into

a viable "scheme" case.  Therefore, the Court, following *Janus* and its progeny, should dismiss

Count I against the Citi Defendants and Daidone.

## C.    Count I Should Also Be Dismissed for Failure to Plead Reliance.

*Stoneridge*, like this case, involved "scheme" liability claims against defendants who

made no misstatements but allegedly engaged in "deceptive" conduct.  *Stoneridge* makes clear

that reliance on allegedly deceptive acts is required for a claim under subsections (a) and (c) of

Rule 10b-5 and, moreover, that "deceptive acts, which were not disclosed to the investing public

are too remote to satisfy the requirement of reliance."  *Stoneridge*, 552 U.S. at 161.  Precisely

because "scheme" liability claims must satisfactorily plead each element of a 10b-5 violation, simply asserting "'scheme liability' … does not answer the objection that [Plaintiffs] did not in fact rely upon [Defendants'] own deceptive conduct." *Id.* at 160; *see also Central Bank*, 511 U.S. at 180 ("Allowing plaintiffs to circumvent the reliance requirement would disregard the careful limits on 10b-5 recovery mandated by our earlier cases.").

A decision by this Court underscores the reliance requirement in the "scheme" liability context. *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP* involved a "scheme" liability claim under subsections 10b-5(a) and (c) against a law firm that allegedly helped effectuate improper round-trip loans. 612 F. Supp. 2d 267, 271 (S.D.N.Y. 2009). *Lee Equity* dismissed the "scheme" liability claim because plaintiffs neither knew of nor relied on the alleged round-trip loan scheme, "just as the plaintiffs in *Stoneridge* did not know of, and thus could not have relied on, the transactions in that case." *Id.* at 279 (citing *Stoneridge*, 552 U.S. at 158-60). Although plaintiffs argued the law firm's conduct was egregious, *Lee Equity* held they could not "substitute [the firm's] deceitful conduct for their *reliance* on that conduct … [because] only reliance matters." *Id.* at 279-80 (emphasis in original); *see also Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010) (affirming dismissal of "scheme" liability claim alleged in *Lee Equity*).

The same rationale supports dismissal of the "scheme" liability claim here. Plaintiffs allege that the "scheme"—the undisclosed TA arrangement—was misrepresented and that had they known of it, they would not have engaged in the securities transactions they claim injured them. FAC ¶ 130. They do *not* allege reliance on a deceptive act. *Id.* at ¶ 145 (asserting "scheme" remained undisclosed until June 2, 2005). Even if Plaintiffs could recharacterize their disclosure-based claim as a "scheme," their failure to plead reliance on a deceptive act dooms

that claim.  For this additional reason, Plaintiffs' "scheme" liability claim (Count I) should be dismissed.

### D.  *Janus* Also Requires Dismissal of Count II's Claims Against Daidone.

In Count II, Plaintiffs allege that Daidone is liable under Rule 10b-5(b) for the Funds' statements primarily because Daidone, along with others, signed prospectuses and other Fund documents filed with the SEC.  *See, e.g.,* FAC ¶ 134 (alleging Daidone signed prospectuses); Smith Barney Money Funds, Inc. Form N-1A and Form 485BPOS prospectus dated April 24, 2003) (signed by Daidone and nine non-defendant directors).[5]  Despite *Janus's* holding that only those with "ultimate authority" for a statement can be liable, Plaintiffs do not allege that Daidone had such authority.  Even if Daidone's signature might have sufficed to establish liability before *Janus*, it does not do so now for a number of reasons.[6]

*First*, as *Janus* noted, the Funds had the "statutory obligation" to file prospectuses with the SEC.  131 S. Ct. at 2304-05.  This obligation, coupled with Plaintiffs' concession that the Funds "caused" the allegedly misleading prospectuses to be filed (*see, e.g.*, FAC ¶¶ 134, 144, 147), is fatal to Plaintiffs' attempt to hold Daidone liable for statements in Fund documents.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 694, n.8 (9th Cir. 2011) (that defendant was authorized to make and was responsible for another legal entity's SEC filings "does not demonstrate [the defendant] had 'ultimate authority over the statement'").

---

[5]   Exhibit EEE to the accompanying March 30, 2012 Declaration of Jeffrey F. Robertson ("Decl.").

[6] Courts recognize that *Janus's* requirement of "ultimate authority" for alleged misstatements applies to individual defendants.  *See, e.g., Hawaii Ironworkers Annuity Trust Fund v. Cole*, No. 3:10CV371, 2011 WL 3862206 at *3 (N.D. Ohio Sept. 7, 2011) (rejecting plaintiffs' argument that *Janus* did not require an allegation of "ultimate authority" by corporate insiders for alleged misstatements) (citing *Janus* dissent); *In re Coinstar Inc. Sec. Litig.*, No. C11-133 MJP, 2011 WL 4712206, at *10 (W.D. Wash. Oct. 6, 2011) (confirming *Janus's* requirement that individual defendants have "ultimate authority" for alleged misstatements and dismissing claims against individual defendants).

As in *Janus*, Plaintiffs here do not and cannot assert that Daidone had "ultimate authority" over the Funds or over the "content [of any prospectus] and whether and how to communicate it."  131 S. Ct. at 2302; *see also Optimal*, 2011 WL 4908745, at *5 ("ultimate authority" stems from the ability to manage the fund business, to alter fund offering materials, and to change investment adviser or other fees paid by the fund).  As the prospectuses confirm, the Funds' boards—not Daidone—had the "ultimate authority" over the Funds' affairs.  *See, e.g.,* Decl. Exh. EEE (Money Funds, Inc. Statement of Additional Information, April 30, 2003, at 4) ("The business affairs of each fund are managed by or under the direction of the Board of Directors."); *see also* FAC ¶¶ 85-110 (alleging board control of Funds).  Daidone was not a director of any Fund.  *See, e.g.*, Decl. Exh. B-EEE (prospectuses listing directors).  Moreover, the FAC, for the first time, alleges that R.J. Gerken and Richard L. Peteka were officers or directors of most of the Funds and signed many of the prospectuses at issue though they knew or should have known them to be false.  FAC ¶¶ 26-27.  These new allegations further undercut any claim that Daidone possessed "ultimate authority" over the Funds or their prospectuses.

*Second*, Plaintiffs' allegations that Daidone had a role in the TA project do not support a claim for primary liability under Rule 10b-5(b).  The FAC alleges that Daidone was employed by the Citi Defendants, was the principal accounting officer for many Funds, and was involved in different aspects of the TA project.  *See* FAC ¶¶ 23, 29, 47.  It also alleges broadly that Daidone had and exercised the power to control conduct that operated as a fraud and to "cause" the issuance of the misleading disclosures.  *Id*. at ¶ 23.  These assertions, when examined against the more specific allegations made elsewhere in the FAC, do not address the critical issue of who had "ultimate authority" over the Funds' allegedly misleading statements, but rather are generalized assertions that Daidone was involved in events preceding the Funds' statements.

*See, e.g., id.* at ¶¶ 60, 85, 86, 100-108 (asserting Daidone made recommendations to the Citi Defendants and Fund boards regarding the TA arrangement).  In fact, the FAC does *not* allege that Daidone helped prepare, oversaw, approved or so much as reviewed the Fund prospectuses.

Even had the FAC claimed that Daidone played such a role, generalized assertions of that ilk would not suffice for primary liability under Rule 10b-5(b).  Under *Janus*, allegations that a defendant actively assisted others who made alleged misstatements does not state a claim for primary liability.  131 S. Ct. at 2302 n.6 ("[F]or *Central Bank* to have any meaning, there must be some distinction between those who are primarily liable (and thus may be pursued in private suits) and those who are secondarily liable (and thus may not be pursued in private suits).").  Indeed, the *Janus* dissent recognizes that, under the majority's decision, where "guilty management writes a prospectus (for the board) containing materially false statements and fools both board and public into believing they are true," there is no Rule 10b-5 liability.  *Id*. at 2310.  Because the FAC does not allege that Daidone had *any* role in the creation or filing of Fund documents, let alone that he supposedly wielded "ultimate authority" over them, this claim should be dismissed.

*Third*, that Daidone, among others, signed Fund prospectuses does not subject him to liability under Rule 10b-5(b).  *Janus* makes clear that while "attribution is necessary," at least in the context of mutual fund prospectuses, attribution alone, without an allegation of "ultimate authority," will not support a Rule 10b-5 claim.  *Id*. at 2303 n.11; *compare id*. at 2302 (recognizing that in *other* contexts, *i.e.*, in the "ordinary case, attribution within a statement or implicit from surrounding circumstances" attribution ordinarily means the statement "was made by—and only by—the party to whom it is attributed").  Here, where there is no allegation that Daidone had "ultimate authority," *Janus* teaches that attribution of the allegedly misleading

statements to him is inappropriate.  In *Optimal*, for example, the court refused to impose liability on a fund advisor who, like Daidone, was identified on the prospectus—reversing its pre-*Janus* ruling that being listed on a prospectus was sufficient "attribution" and warranted liability. *Optimal*, 2011 WL 4908745 at *5 ("[T]he rationale in the May 10 bench ruling for attributing the statements in the [prospectuses] to [the fund advisor] cannot justify Rule 10b-5 liability following *Janus*").  The conclusory allegation that Daidone somehow "caused" the alleged misstatements, FAC ¶ 23, is exactly the sort of "labels and conclusions" pleading that courts have found inadequate to state this sort of claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Though broadly claiming that Daidone "caused" the allegedly inaccurate filings—which is no proxy for "ultimate authority—the FAC fails to specify how.  In any event, causing another to make a misstatement cannot state a § 10(b) claim.  Relying on vague allegations that a defendant (Daidone) "caused" alleged misstatements by the "speaker" (the Funds) is exactly what *Janus* rejected: imposing primary liability on someone other than the maker of the statement.

*Finally*, in rejecting § 10(b) liability, *Optimal* criticized and distinguished the ruling against a fund advisor in *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395 (S.D.N.Y. 2011), for two primary reasons.  First, in *Roseville*, "ultimate authority" was alleged based on a claim that the "defendants 'had control over the content of the message, the underlying subject matter of the message, and the ultimate decision of whether to communicate the message.'"  *Optimal*, 2011 WL 4908745, at *6, n.50.  The FAC here makes no such allegations; rather, it speaks more broadly of "controlling" and "causing" pre-disclosure activities.  Second, *Roseville* "does not address the discussion in *Janus* that imposing liability on an entity that influenced or controlled the 'maker' of the statement would improperly broaden the

scope of Rule 10b-5 liability, where Congress has already enacted a provision for such a scenario—section 20(a)." *Id.* (citations omitted). Absent allegations establishing Daidone's "ultimate authority" for the Funds' alleged misstatements, Count II is nothing more than an attempt to assert secondary liability and should be dismissed under *Janus*.

## II. DAIDONE IS NOT LIABLE FOR STATEMENTS IN PROSPECTUSES HE DID NOT SIGN.

Even if *Janus* did not preclude Daidone's liability for the Funds' statements, Daidone cannot be liable for Fund prospectuses he did not sign. Both the FAC and relevant Fund filings confirm Daidone signed no prospectuses for the Smith Barney Large Cap Growth and Value Fund. *See* Decl. Exh. QQ; FAC Appendix at ¶ 129. In addition, though Daidone did sign prospectuses for other Funds, public filings confirm that he ceased signing prospectuses long before the end of the putative class period.[7]

As discussed above, the FAC does not support the contention that Daidone "made" or had "ultimate authority" over alleged misstatements in Fund documents he *did* sign. This failure is even more glaring as to the prospectuses that Daidone did *not* sign. Accordingly, the Court should dismiss claims against Daidone (1) for alleged misstatements in the Smith Barney Large Cap Growth and Value Fund and (2) for each Fund other than for the circumscribed periods listed on Exhibit A.

---

[7] *See* Decl. Exhs. B to EEE. Exhibit A, submitted with this brief, provides details concerning prospectuses signed by Daidone. The Court may take judicial notice of these filings. *Cortec Indus., Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (court deciding a motion to dismiss a complaint alleging securities fraud may consider public disclosure documents filed with the SEC). As Exhibit A shows regarding the Smith Barney Aggressive Growth Fund, Inc., for instance, the last prospectus that Plaintiffs allege Daidone signed was issued on December 13, 2001. FAC Appendix ¶ 4. SEC filings show that this was, in fact, the last prospectus Daidone signed. A new prospectus without Daidone's signature was issued on December 27, 2002. Therefore, as to Daidone, the purported class period regarding this fund should start September 11, 2000 and end December 26, 2002.

III.     **BECAUSE LEAD PLAINTIFF ZAGUNIS AND OTHER NAMED PLAINTIFFS DID NOT RELY ON THE ALLEGEDLY MISLEADING STATEMENTS, THEY CANNOT STATE A CLAIM.**

In resolving this motion, the Court may consider the FAC as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing suit." *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 193 n. 2 (S.D.N.Y. 2006) (considering depositions taken between filing of amended complaints on motion to dismiss where plaintiffs relied upon depositions to craft allegations in later complaint). As Plaintiffs relied on documents and deposition testimony to prepare the FAC, s*ee* FAC at ¶ 1, the Court may consider that information in determining whether the FAC satisfies all of § 10(b)'s elements.

The discovery on which the FAC is based shows that lead plaintiff Zagunis and plaintiffs DVL 401(k) Plan, Luff, Miller, Shah, and Weber have not pled and cannot establish reliance because they made their investment decisions *before* the putative class period and *before* any alleged misstatements. *See* Decl. Exhs. NNN-AAAA (relevant transaction histories); *Perez-Rubio v. Wyckoff*, 718 F. Supp. 2d. 217, 236 (S.D.N.Y. 1989) ("It is apparent that an alleged fraud cannot be in connection with the purchase or sale of a security if the transaction occurs prior to the fraud."). The only class period purchases by these plaintiffs were made through *automatic* reinvestments of dividends or capital gains from the Funds they purchased before the class period commenced. *See, e.g.*, Decl. Exh. YYY (Weber statements showing no class period purchases other than a "Capital Gain Reinvestment" and "Dividend Reinvestments").[8] Thus, these plaintiffs cannot state a plausible claim that they relied on any alleged misstatement or inherently deceptive act in making their investment decisions. Indeed, this Court previously

---

[8] *See also* Decl. Exhs. NNN-PPP; UUU; VVV-WWW; AAAA (account statements of Plaintiffs DVL 401(k), Luff, Miller, Shah, and Zagunis); FFF-MMM (deposition excerpts).

dismissed "holders" who, like these plaintiffs, made no actionable purchases during the putative

class period.  *See In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 400 (S.D.N.Y.

2011).  It likewise should dismiss the § 10(b) claims by all Plaintiffs who have not pled reliance.

## IV.   EVEN IF NOT BARRED BY *JANUS*, NEW PLAINTIFF AND MONEY FUND CLAIMS ARE TIME-BARRED.

### A.   New Plaintiffs Claims Are Barred by 28 U.S.C. § 1658(b)(2).

Following this Court's dismissal of claims for which no named plaintiff had standing, in

2011, Plaintiffs added the New Plaintiff Claims through the second and third amended

complaints, bringing the total number of Funds involved in the case to 24.  *See* Dkt. Nos. 129,

141.  The latest alleged misstatement in that and subsequent complaints was in a Fund prospectus

dated February 25, 2005.  Dkt. No. 129 at ¶ 138.

The limitations period applicable here is contained in 28 U.S.C. §1658(b)(2), which

states that claims "concerning the securities laws, … may be brought not later than … 5 years

after such violation."  Thus, the limitations period expired for all claims no later than February

25, 2010, five years after the last alleged violation.  *See Take-Two Interactive Software, Inc. v.*

*Brant*, No. 06 Civ. 05279 (LTS), 2010 WL 1257351, at *5 (S.D.N.Y. Mar. 31, 2010) ("The

statute of repose for claims based upon misrepresentation begin[s] to run on the date of the

alleged misrepresentation." (citations omitted)); *In re Maxim Integrated Prods., Inc., Derivative*

*Litig.*, 574 F. Supp. 2d 1046 (N.D. Cal. 2008) (statute of repose barred § 10(b) claims based on

statements made more than five years before complaint filed).

The New Plaintiff Claims were filed after the statute expired, and the Court should

dismiss them, eliminating time-barred claims and streamlining this case to its proper contours.

1.      **Tolling is Not Available For Claims Dismissed for Lack of Standing.**

New Plaintiffs' only argument to avoid dismissal of time-barred claims is based on tolling pursuant to *Am. Pipe & Constr. Co. v. Utah,* which held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class."  414 U.S. 538, 554 (1974).  *American Pipe* reasoned that the class members "stood as parties to the suit" unless and until they opted out of the class.  *Id.* at 551; *see also In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action ….").

But the New Plaintiff Claims were not tolled because neither *American Pipe* nor its rationale permits extending the limitations period for claims no named plaintiff in a prior proceeding had standing to pursue.  Tolling is not appropriate for claims this Court already dismissed because Plaintiffs lacked standing to bring them in the first place.  "[T]he *American Pipe* rule should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing. … In short, where a Plaintiff lacks standing—there is no case. … And *if there is no case, there can be no tolling*."  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653(PAC), 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) (citations omitted; emphasis added).[9]  In other words, where prior named plaintiffs lacked standing they

---

[9] Many courts have dismissed claims as untimely because there is no tolling where named plaintiffs in class actions lack standing to advance claims.  *See, e.g.*, *Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir. 1998) ("[T]he present suit was properly dismissed for want of standing, dooming the class action because [plaintiffs] lacked standing when they filed the suit rather than losing standing after the class was certified."); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (tolling not applicable to new class claims that named plaintiffs in prior putative class action lacked standing to pursue); *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1259 (W.D. Wash. 2010) (recognizing courts do not employ tolling where plaintiff lacked standing in the first place); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166-67 (C.D. Cal. 2010) (tolling "only

never "stood as parties to the suit," and the Court's jurisdiction never attached to their claims. Now that the limitations period has elapsed, New Plaintiffs cannot revive the claims that were dismissed for lack of standing.  *See Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) (denying leave to add additional plaintiffs because "this addition would at this point be futile, since plaintiffs themselves concede that the one-year limitations period [has run] … and so the claims of any such new plaintiffs would be time-barred"); *Walters*, 163 F.3d at 437 (refusing to replace named plaintiffs who lacked standing to assert class claims because the court never acquired jurisdiction).

Any putative argument under *American Pipe* that New Plaintiffs effectively commenced their suit because they were unnamed class members when the initial class action complaint was filed is without merit.  Rule 23, by its terms, does not convert putative class members into "parties" before class certification.  Indeed, it expressly distinguishes "representative parties" and "class members." Fed. R. Civ. P. 23(a)-(c); *see also Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (describing as "novel and surely erroneous" the argument that "a nonnamed class member is a party to the class-action litigation *before the class is certified*").  Put simply, the New Plaintiff Claims are time-barred and no tolling is available to salvage them.

---

as to claims where the named plaintiffs had standing"); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-1376-LHK, 2010 WL 4117477, at *5 (N.D. Cal. Oct. 19, 2010) (no tolling where "original complaints did not allege that the named plaintiffs had *any* ownership interest in the 37 dismissed Offerings"); *Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-CV-3089 (ILG), 2006 WL 1212512, at *6 (E.D.N.Y. May 3, 2006) ("Here, plaintiffs attempt to do through intervention what they would be strictly prohibited from doing via subsequent filings— continue the tolling benefits for the class action.  To the extent they cannot do this through subsequent class action filings, they should not be permitted to do so now."); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class.").

## 2.    As a Statute of Repose, § 1658(b)(2) Is Not Subject to Equitable Tolling.

As the Supreme Court has observed, § 1658(b)(2) reflects Congress' determination to enact a statute of repose that extinguishes a plaintiff's legal right to bring a claim once the statutory period elapses.[10]  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson* states that a two-tiered statute consisting of a shorter limitations period and a longer period for the assertion of claims "can have no significance in this context other than to impose an outside limit."  501 U.S. 350, 363  (1991); *see also SEC v. Wyly*, 788 F. Supp. 2d 92, 113 n.140 (S.D.N.Y. 2011).  Moreover, § 1658(b)(2) is "an unqualified bar on actions instituted '5 years after [the] violation,' … giving defendants *total repose* after five years."  *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010) (emphasis added) (quoting 28 U.S.C. § 1658(b)(2)); *see also*, *e.g.*, *Take-Two Interactive Software*, 2010 WL 1257351, at *4 (holding § 1658(b) is a statute of repose).

"[A] federal statute of repose is not subject to equitable tolling."  *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624 (S.D.N.Y. 2011) (citing *Lampf,* 501 U.S. at 363 (1991)); *see also In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011) (no equitable tolling for statute of repose); *Take-Two Interactive Software, Inc.*, 2010 WL 1257351, at *5 ("[W]here the relevant securities statute provides both a short, discovery-based limitations period and a longer statute of repose, the repose period is a cutoff that is not subject to tolling principles.").  Unlike statutes of limitation that address the availability of remedies, "statutes of repose affect the availability of the underlying right [which] is no longer available on the expiration of the specified period of time."  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (citation and quotation marks omitted)

---

[10] Section 1658(b)(2)'s legislative history confirms Congress' intent to provide a five-year period of repose.  *See* S. Rep. No. 107-146, at 26, 2002 WL 863249, at *20 (May 6, 2002) ("[B]ecause of the two-year limitation provided in § 1658(b)(2) … , the five-year outer limit is not subject to equitable tolling.").

(recognizing that statutes of repose reflect a bar that is "absolute, subject to legislatively created exceptions"); *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) ("Generally speaking, a statute of limitations … is an affirmative defense, affecting the remedy, but not the existence of the underlying right … In contrast, a statute of repose extinguishes the cause of action, the right, after a fixed period of time…."). Therefore, "a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *P. Stolz*, 355 F.3d at 102-03.

Because § 1658(b)(2) is a statute of repose, when it expired so did any substantive right of the New Plaintiffs to assert claims. Under the Rules Enabling Act, the extinguishment of that right, as defined by Congress, cannot be resuscitated by Fed. R. Civ. P. 23 or by judicial construction of that Rule. *See* 28 U.S.C. § 2072(b) (Federal Rules of Civil Procedure may "not abridge, enlarge or modify any substantive right"); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'"); *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011); *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d at 642-43.

*American Pipe* equitable tolling does not apply here. *American Pipe* expressly states that "the commencement of a class action suspends the applicable *statute of limitations,*" *not* the statute of repose. 414 U.S. at 554 (emphasis added); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 309-10 (S.D.N.Y. 2011) (permitting *American Pipe* tolling for statute of limitations but not statute of repose). As *Footbridge* notes, "*American Pipe* tolling is a

judicially-created rule premised on traditional equitable considerations of fairness, judicial economy and needless multiplicity of lawsuits." 770 F. Supp. 2d at 626 (citation and quotation marks omitted). Moreover, numerous courts, including the Supreme Court, have cited *American Pipe* as an example of equitable, not legal, tolling.[11]

Legal tolling must be grounded in a statutory source. *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 176 (D. Mass. 2009). Courts that have concluded that *American Pipe* tolling is "legal" rely on the erroneous theory that Rule 23 is a statutory source. *See, e.g.*, *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 668 (S.D.N.Y. 2011); *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, ---F. Supp. 2d---, 2011 WL 4529640, at *7-8 (S.D.N.Y. Sept. 30, 2011) (certifying appeal on March 15, 2012 due to substantial difference of opinion regarding whether statute of repose is subject to tolling in case involving affiliates of Citi Defendants); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 455 n.19 & 456 (S.D.N.Y. 2005); *cf. Footbridge*, 770 F. Supp. 2d at 626 ("[N]owhere in *American Pipe* does the Court read the text of Rule 23 as having embedded within it language that creates a class action tolling rule."). Rule 23 was promulgated under, and is constrained by, the Rules Enabling Act. As a judicially-created rule, Rule 23 simply cannot alter the availability of the substantive right Congress circumscribed when it enacted § 1658(b)(2)'s statute of repose. *Footbridge*, 770 F. Supp. 2d at 626; *Lehman Bros.*, 800 F. Supp. 2d at 482.

Though some courts have indulged a judicially-created fiction to toll statutes of limitation to promote judicial economy and efficiency, it is not appropriate to apply that approach here to

---

[11] *See, e.g.*, *Young v. United States*, 535 U.S. 43, 49 (2002); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n. 3 (1990); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 210-11 (4th Cir. 2006); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991); *Footbridge*, 770 F. Supp. 2d at 626; *In re Lehman Bros.*, 800 F. Supp. 2d at 481; *In re IndyMac*, 793 F. Supp. 2d at 642-43.

enlarge plaintiffs' rights under a statute of *repose*. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("[N]o reading of [Rule 23] can ignore the [Enabling] Act's mandate that rules of procedure shall not abridge, enlarge or modify any substantive right") (citations omitted). Congress' enactment of § 1658(b)(2) implemented an "unqualified bar" on actions, like here, initiated more than five years after the violation alleged. *Merck,* 130 S. Ct. at 1797. Moreover, judicial restraint and separation of powers policies command that § 1658(b)(2) be enforced as written, regardless of any countervailing equities. *See Footbridge*, 770 F. Supp. 2d at 627; *Lehman Bros.*, 800 F. Supp. 2d at 483; *In re IndyMac*, 793 F. Supp. 2d at 642-43. Any enlargement of that statutory period must be enacted legislatively. *See P. Stolz*, 335 F.3d at 102.

### B.    Equitable Tolling Principles Will Not Resurrect the New Plaintiff Claims.

Even if equitable tolling were available, to benefit from it Plaintiffs must show that they have been "pursuing [their] rights diligently" but "extraordinary circumstances" stood in their way. *Credit Suisse Sec. (USA) LLC v. Simmonds*, ---S. Ct.---, 2012 WL 986812, at *4 (Mar. 26, 2012) (citations omitted). Plaintiffs cannot make that showing here, where "the representative[s] so clearly lack[ed] standing that no reasonable class member would have relied" on them. *In re Morgan Stanley*, 810 F. Supp. 2d at 670 (recognizing "potential for abuse" if *American Pipe* tolling is applied to cases where representatives lack standing). Precedent from this Court at the time of the initial complaints made clear that at least one named plaintiff must have purchased from an offering at issue to have standing to pursue that claim. *See In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004). Still, rather than "diligently pursuing" their rights, New Plaintiffs slept on them until after this Court made its inevitable determination that claims involving Funds in which no named plaintiff had invested had to be jettisoned.

Equity should not be used in aid of those who should have expected that result. To the contrary, where courts often express concern for the potential for abuse of tolling in the standing

context, allowing Plaintiffs to end run the statute of repose would set a dangerous precedent that would serve only to encourage abuse.[12]

While some courts have nevertheless permitted tolling where the plaintiff lacked standing, those cases involve equitable considerations not present here.  For example, *Morgan Stanley*, *supra*, and *In re Deutsche Bank AG Sec. Litig*, No. 09 Civ. 1714(DAB), 2011 WL 3664407, at *6 (S.D.N.Y. Aug. 19, 2011), applied tolling where the subject of the original and later complaints was the same and there was "at least some authority" indicating that reasonable class members could have believed the original plaintiff had standing to assert claims on their behalf.  Other courts have permitted tolling where an erroneous certification or plaintiff's own affirmative representations assured class members that they need not intervene.  *See, e.g.*, *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975); *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F. Supp. 1180 (W.D. Mo. 1983); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92SAS, 2004 WL 3015304, at *5 n. 46 (S.D.N.Y. Dec. 27, 2004).

Here, New Plaintiffs knew by 2005 that the original named plaintiffs lacked standing to assert claims on their behalf.  Indeed, several Plaintiffs—including Lead Plaintiff Zagunis— opposed Local 649's appointment as lead plaintiff by arguing it lacked standing to sue on behalf of investors in funds in which it did not invest.  *See* Dkt. No. 32 at 3.[13]  Original named plaintiffs

---

[12] *See, e.g., N.J. Carpenters Health Fund*, 2010 WL 6508190, at *2 n.1 ("[I]f *American Pipe* tolling applied in situations where the dismissed plaintiff was found by the court to lack standing, this would clearly 'encourage attempts to circumvent the statute of limitations by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule.'"); *Cal. Pub. Emps.' Ret. Sys., v. Chubb Corp.*, No. Civ. 00-4285 (GEB), 2002 WL 33934282, at *28 (D.N.J. June 26, 2002) ("Nowhere is the possibility of abuse as acute as in the standing context."); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) ("[T]he concern is perhaps more acute where the dismissal of the first action is for lack of standing.").

[13] Although the Court need not consider external evidence to reach its conclusion, deposition discovery confirms New Plaintiffs did not rely on Local 649's assertion of their rights. New

even acknowledged their own possible standing issue, offering to later add additional class representatives "if the court deems it necessary."  Dkt. No. 55 at 6 n.5.

### C.    Newly-Asserted Money Funds Cash Portfolio Claims Are Time-Barred.

Plaintiff Jeffrey Weber goes one step further—he attempts to assert a new claim regarding a new Fund, the Money Funds Cash Portfolio ("Money Funds").  Despite having been a named plaintiff for nearly *six years*, Weber waited until February 28, 2012 to assert that he made transactions in Money Funds shares.[14]  Weber's Money Funds claim is untimely because it comes only after the time period specified in § 1658(b)(2) expired.  That statute bars Weber's Money Funds claim as it is "an unqualified bar on actions instituted '5 years after [the] violation,' … giving defendants *total repose* after five years."  *Merck,* 130 S. Ct. at 1797 (emphasis added).  Simply put, Plaintiffs cannot continue changing the scope of the case before this Court by freely adding new claims years after this case was filed and years after the limitations periods lapsed; Defendants were entitled to know the Funds involved in Plaintiffs' claims within five years of the alleged misconduct.  Weber's Money Funds claim—coming six

---

Plaintiffs have conceded their ignorance of this suit until after the expiration of the limitations period.  *See, e.g.* Rees Tr. 22:20-24 ("Q. When did you first learn of the lawsuit? A: May. Q: May of 2011? A: Yes.") (Decl. Exh. III); R. Yiambellis Tr. 133:12-22 ("Q: When did you learn that you were defrauded? A: A couple of weeks ago.") (Decl. Exh. LLL).  Accordingly, the relevant equities do not support tolling, and barring these claims as untimely is not unfair—particularly where New Plaintiffs had the opportunity to seek restitution through the SEC settlement, but slept on those rights.  *See, e.g.,* Casnoff Tr. 132:15-22 ("Q: Did DVL 401(k) Plan . . . to your knowledge, make a claim to the amount that was disgorged to the funds? … A: No.). (Decl. Exh. FFF).

[14] *See* Dkt. No. 214 ¶ 6; *compare* Dkt. No. 55 ¶ 16 (first amended complaint filed June 6, 2006 alleging Weber "held shares of one of the Funds, the Smith Barney Large Cap Growth and Value Fund, during the Class Period.").  In the second amended complaint Weber claims he "bought and/or redeemed shares in the Smith Barney All Cap Growth and Value Fund and the Smith Barney Large Cap Growth and Value Fund during the Class Period."  Dkt. No. 129 ¶ 16.  Weber recanted this assertion in the third amended complaint, only claiming to have purchased shares of the Large Cap Growth and Value Fund.  Dkt. No. 141 ¶ 14.

years after he signed on as a plaintiff—falls well outside that five-year period and, like the New

Plaintiffs' Claims, should be dismissed as time-barred.

Even were equitable tolling permissible, there is no ground to do so for claims involving

the Money Funds.  Money Funds investors, including Weber and New Plaintiff DVL 401(k),

were on actual or constructive notice since this action began in 2005 that no named plaintiff had

standing to assert Money Funds claims.  Nevertheless, despite the filing of several amended

complaints since 2005, they let the statute of repose expire before anyone asserted a claim

relating to the Money Funds.   Dilatory conduct such as this undermines any equitable basis for

tolling for the Money Funds claims.

**CONCLUSION**

For the foregoing reasons, Counts I and II do not assert a valid claim under

Section 10(b) or Rule 10b-5 and should be dismissed with prejudice.

Respectfully submitted,

Dated: March 30, 2012

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By: Lori A. Martin   by TRAC
    Lori A. Martin
    (lori.martin@wilmerhale.com)
    Peter K. Vigeland
    (peter.vigeland@wilmerhale.com)

399 Park Avenue
New York, NY  10022
Tel:  (212) 230-8800
Fax: (212) 230-8888

*Counsel for Defendants Smith Barney
Fund Management LLC and Citigroup
Global Markets Inc.*

SCHULTE ROTH & ZABEL LLP

By:
    Richard J. Morvillo
    (richard.morvillo@srz.com)
    Peter White
    (peter.white@srz.cm)
    Jeffrey F. Robertson
    (jeffrey.robertson@srz.com)
    Katherine Schuerman
    (katherine.schuerman@srz.com)

1152 Fifteenth Street, NW, Suite 850
Washington, DC  20005
Tel:  (202) 729-7470
Fax: (202) 730-4520

*Counsel for Defendants Smith Barney
Fund Management LLC, Citigroup Global
Markets Inc. and Lewis E. Daidone*

DOC ID-18377296.4                     -25-

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I served the foregoing on all parties by filing this

document with the Clerk of Court using the CM/ECF system, pursuant to Local Rule 5.2.

_____
Jeffrey F. Robertson