**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **IN RE SMITH BARNEY**<br>**FUND TRANSFER AGENT LITIGATION** |

**05 Civ. 7583 (WHP)**

**PLAINTIFFS' CORRECTED MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS**
**SMITH BARNEY FUND MANAGEMENT LLC, CITIGROUP**
**GLOBAL MARKETS, INC., LEWIS E. DAIDONE and THOMAS JONES**

STULL, STULL & BRODY
Jules Brody
Mark Levine
Patrick Slyne
6 East 45th Street
New York, NY  10016
(212) 687-7230

WEISS & LURIE
Joseph H. Weiss
Richard A. Acocelli
Michael A. Rogovin
1500 Broadway
New York, NY 10036
(212) 682-3025

Co-Lead Counsel for Plaintiffs

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ......................................................................................................... 6

I.  STANDARD ON A MOTION TO DISMISS ................................................. 6

II.  THE COMPLAINT STATES ACTIONABLE RULE 10b-5 CLAIMS ...................... 7

A. A Defendant Need Not Make A Materially False Public  Statement To
Be Primarily Liable Under Rule 10b-5(a) and (c) ........................................ 7

B. Count I States A Claim For Scheme Liability Under Rule 10b-5(a) and
(c) Against All Defendants and Should Be Sustained ................................... 9

1.  Defendants Each Committed a Deceptive or Manipulative Act ...................... 9

2.  Defendants Acted with *Scienter* ............................................... 11

3.  Defendants' Acts Affected the Market Prices of Funds Shares ...................... 12

4.  Defendants' Actions Injured  Plaintiffs and the Other Class
Members ................................................................................ 13

5.  Reliance/Causation is Adequately Pled Under Rule 10b-5(a)
and (c) ................................................................................... 13

C. Defendant Daidone is Primarily Liable Under Rule 10b-5(b) For
Signing Documents Filed with the SEC He Knew Contained Material
Omissions ................................................................................... 16

III.  THE COMPLAINT STATES SECTION 20(a) CLAIMS AGAINST
JONES ......................................................................................... 19

A. Defendant Jones Controlled the Smith Barney  Defendants' Violations
of Rule 10b-5 (a) and (c) .............................................................. 19

B. Defendant Jones Controlled Primary Violators of Rule 10b-5(b) ............................. 20

IV.  NEW PLAINTIFFS' AND WEBER'S CLAIMS ARE NOT TIME-
BARRED ...................................................................................... 21

A. Relevant Procedural History ............................................................ 21

B. *American Pipe* Tolls Claims of All Class Members .................................... 24

i

C.  Statutes of Repose are Subject to Tolling ...................................................................25

    1.  Defendants' Reliance on *Lampf* is Misplaced ..................................................27

D.  The Rules Enabling Act Does Not Proscribe *American Pipe* Tolling .........................30

E.  Even if Plaintiffs Required to Show Diligence Their Claims Are Timely ....................................................................................................................31

F.  *American Pipe* Tolling Applies Even if the Original  Plaintiffs Lack Standing as to Some Claims ...............................................................................33

G.  Claims in the Complaint Relate Back to the First AC ...................................................35

    1.  Defendants Were on Notice of the Claims ......................................................35

    2.  The Claims Arise From the Same Conduct, Transaction or Occurrence ........................................................................................................37

    3.  There Is No Prejudice to Jones .......................................................................39

    4.  The Statute of Repose Does Not Bar Claims under Rule 15(c)......................40

H.  Weber's Money Fund Claims are Not Time-Barred....................................................41

V.  PLAINTIFFS ADEQUATELY PLED RELIANCE UNDER RULE 10b-5(b)....................................................................................................................43

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABN AMRO, Inc. v. Capital International, Ltd.*,
  595 F. Supp. 2d 805 (N.D. Ill. 2008) .................................................................44

*Advanced Magnetics Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997) ..............................................................................36

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...................................................... 8, 15-16

*American Pipe and Construction Co. v. Utah*,
  414 U.S. 538 (1974)............................................................................... *passim*

*Andujar v. Rogowski*,
  113 F.R.D. 151 (S.D.N.Y 1986) .......................................................................36

*Arivella v. Lucent Tech. Inc.*,
  623 F. Supp. 2d 164 (D. Mass. 2009) .............................................. 25, 28, 29-30

*BRS Associates, L.P. v. Dansker*,
  246 B.R. 755 (S.D.N.Y. 2000) ........................................................................41

*In re Bear Stearns Mortgage Pass-Through Certificates Litig.*,
  2012 U.S. Dist. LEXIS 45679 (S.D.N.Y. March 30, 2012) ...................................27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................6

*Bernhard v. Central Parking System of New York, Inc.*,
  2012 U.S. Dist. LEXIS 54832 (E.D.N.Y. Apr. 18, 2012) ...................................40

*In re Boesky Sec. Litig.*,
  882 F. Supp. 1371 (S.D.N.Y. 1995) ..................................................................41

*Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through
  Certificates, Series AR1*,
  748 F. Supp. 2d 1246 (W.D. Wash. 2010) .........................................................34

*In re Chase Manhattan Corp. Sec. Litig.*,
  1992 U.S. Dist. LEXIS 6896 (S.D.N.Y. May 12, 1992) ......................................44

*Chiarella v. United States*,
    445 U.S. 222 (1980)...................................................................................7

*City of Roseville Employees' Retirement System, v. Energy Solutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................................18

*In re Coinstar Inc. Sec. Litig.*,
    2011 U.S. Dist. LEXIS 115794 (W.D. Wash. Oct. 6, 2011) ............15, 18

*In re Colonial Ltd. Partnership Litig.*,
    854 F. Supp. 64 (D. Conn. 1994).............................................................35

*Crown, Cork & Seal Co. Inc. v. Parker*,
    462 U.S. 345 (1983).................................................................................31

*Deutschman v. Ben. Corp.*,
    761 F. Supp. 1080 (D. Del. 1991)...................................................... 43-44

*In re Dreyfus Aggressive Growth Mutual Fund Litig.*,
    2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000).....................32

*Enron Corp. et al. v. Granite Construction Co.*,
    2006 Bank LEXIS 4650 (Bankr. S.D.N.Y. May 11, 2006).....................39

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) ..............................................26, 35

*Footbridge v. Ltd Trust v. Countrywide Finance Corp.*,
    770 F. Supp. 2d 618 (S.D.N.Y. 2011) ........................................25, 26, 28

*In re Franklin Mutual Funds Fee Litig.*,
    388 F. Supp. 2d 451 (D. N.J. 2005).........................................................32

*Freundenberg v. ETrade Financial Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) .....................................................17

*Genesee County Employees' Ret. Sys. v. Thornburg Mortgage Sec. Trust 2006-3*,
    2011 U.S. Dist. LEXIS 133462 (D.N.M. Nov. 12, 2011) .................27, 41

*In re Gilat Satellite Networks, Ltd.*,
    2005 U.S. Dist. LEXIS 41996 (E.D.N.Y. Sept. 19, 2005) .....................36

*In re Global Crossing, Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y 2004) ..........................................8, 11, 16

*Griffin v. Singletary*,
  17 F.3d 356 (llth Cir. 1994) ...................................................................35

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
  2011 U.S. Dist. LEXIS 98760 (N.D. Ohio Sept. 1, 2011)....................................18

*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ................................................................17

*Hrdina v. World Savings Bank*
  2012 U.S. Dist. LEXIS 12252 (N.D. Cal., January 31, 2012).................................27

*In Pac. Investment Management Co. LLC v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010) ..................................................................14

*In re Ind. Energy Holdings PLC Sec. Litig.*,
  154 F. Supp. 2d 741 (S.D.N.Y. 2001) .........................................................17

*In re Indymac Mortgage-Backed Sec. Litig.*,
  793 F. Supp. 2d 637 (S.D.N.Y. 2011) ................................................... *passim*

*Innocent v. Hotels, LLC*,
  2006 U.S. Dist. LEXIS 55237 (S.D.N.Y. Aug. 9, 2006)........................................40

*International Fund Management S.A. v. Citigroup Inc.*,
  2011 U.S. Dist. LEXIS 113660 (S.D.N.Y. Sept. 30, 2011)......................26, 27, 28

*Irwin v Department Veterans Affairs*,
  *498* U.S. 89 (1990)............................................................................29, 30

*JPMorgan Chase Bank, N.A. v. The IDW Group, LLC*,
  2009 U.S. Dist. LEXIS 39858 (S.D.N.Y. May 12, 2009) ......................................40

*Janus Capital Grp. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011)................................................................. *passim*

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) .........................................................26, 28, 34

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ..................................................................11

*Korwek v. Hunt*,
  827 F.2d 874 (2d Cir. 1987) ..................................................................35

*Krupski v. Costa Crociere S.pA.*,
   130 S. Ct. 2485 (2010)...................................................................................35

*Lambrinos v. Exxon Mobil Corp.*,
   349 Fed. Appx. 613 (2d Cir. 2009)..............................................................37

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991)...............................................................................27, 28

*In re Lehman Brothers Sec. & ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011) ...............................................25, 26, 28, 31

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) .................................................................13, 14

*In re Lilco Securities Litig.*,
   111 F.R.D. 663 (E.D.N.Y. 1986)...................................................................44

*Lopes v. Viera*,
   2012 U.S. Dist. LEXIS 27990 (E.D. Cal. Mar. 2, 2012) .................................8

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   597 F.3d 84 (2d Cir. 2010) ...........................................................................28

*In Re Merck & Co., Inc. Securities, Derivative & "ERISA" Litig.*,
   2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) ......................................17

*Morel v. DaimlerChrysler AG*,
   565 F.3d 20 (1st Cir. 2009)...........................................................................31

*In Re Morgan Stanley Mortgage Pass-Through Certificates Litig.*,
   810 F. Supp. 2d 650 (S.D.N.Y. 2011*) ..........................................*...... passim*

*In re Mutual Funds Investment Litig.*,
   519 F. Supp. 2d 580 (D. Md. 2007)..............................................................33

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
   720 F. Supp. 2d 254 (S.D.N.Y. 2010) .........................................................37

*New Orleans Emples. Retirement System v. Celestica, Inc.*,
   2011 U.S. App. LEXIS 25921 (2d Cir. Dec. 29, 2011)................................11-12

*Official Commission of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
   277 B.R. 20 (S.D.N.Y. 2002) .................................................................24, 28

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*,
    595 F.3d 86 (2d Cir. 2010) ........................................................................13

*In re Optimal U.S. Litig.*,
    2011 U.S. Dist. LEXIS 119141 (S.D.N.Y. Oct. 14, 2011)......................18

*P. Stolz Family Partnership L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004) ..............................................................28, 29, 31

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005) ......................................9, 11, 13, 16

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
    2012 U.S. Dist. LEXIS 3358 (S.D.N.Y. Jan. 11, 2012) .........................40

*Perkins v. Southern New England Telegraph Co.*,
    2009 U.S. Dist. LEXIS 103833 (D. Conn. Nov. 4, 2009) ......................36

*In re Pfizer Inc. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 39454 (S.D.N.Y. March 22, 2012) ....................18

*Plubell v. Merk & Co. Inc.*,
    434 F.3d 1070 (8th Cir. 2006) .................................................................37

*Plumbers' and Pipefitters' Local #562 v. J.P. Morgan Acceptance Corp. I*,
    2011 U.S. Dist. LEXIS 152695 (E.D.N.Y. December 13, 2011) ..............27, 28, 34

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681, fn. 8 (9th Cir. 2011) .........................................................18

*Rosenberg v. Martin*,
    478 F.2d 520 (2d Cir. 1973) ....................................................................37

*SEC v. Boock*,
    2011 U.S. Dist. LEXIS 95363 (S.D.N.Y. Aug. 25, 2011)................11, 16

*SEC v. Brown*,
    740 F. Supp. 2d 148 (D.D.C. 2010).........................................................8

*SEC v. Carter*,
    2011 U.S. Dist. LEXIS 136599 (N.D. Ill. Nov. 28, 2011) ....................18

*SEC v. Das*,
    2011 U.S. Dist. LEXIS 106982 (D. Neb. Sept. 20, 2011) ......................18

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) ..........................11, 19

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) ...................................................................14

*SEC v. Landberg*,
   2011 U.S. Dist. LEXIS 127827 (S.D.N.Y. Oct. 26, 2011)........................................8

*SEC v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010) ...........................................................11, 16

*SEC v. Lucent Tech., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009)......................................................................15

*SEC v. Mercury Interactive LLC*,
   2011 U.S. Dist. LEXIS 134580 (N.D. Cal. Nov. 22, 2011) ..................................18

*SEC v. Pentagon Capital Mgmt. PLC*,
   2012 U.S. Dist. LEXIS 18504 (S.D.N.Y. Feb. 14, 2012)........................................8

*SEC v. Stanard*,
   2009 U.S. Dist. LEXIS 6068 (S.D.N.Y. Jan. 27, 2009) .......................................17

*SEC v. Zandford*,
   535 U.S. 813 (2002)....................................................................................7, 11

*Santee v. United States of America*,
   2009 U.S. Dist. LEXIS 88850 (M.D. Pa. March 24, 2009)...............................38-39

*Sawyer v. Atlas Heating*,
   642 F.3d 560 (7th Cir. 2011) ..............................................................................34

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)...............................................................................................7

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   130 S. Ct. 1431 (2010)........................................................................................31

*In re Smith Barney Transfer Agent Litig.*,
   765 F. Supp. 2d 391 (S.D.N.Y. 2011) ..............................................22, 32, 41-42

*In re Smith Barney Transfer Agent Litig.*,
   2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. Apr. 17, 2006) ....................................32

*Sperber Adams Associates v. Jem Management Associates Corp.*,
 1992 U.S. Dist. LEXIS 96834 (S.D.N.Y. Feb. 7, 1992)........................................................41

*State Teachers Retirement Board v. Manufacturers Hanover Trust Company*,
 654 F.2d 843 (2d Cir. 1981) .............................................................................40

*Steamfitters Local 449 Pension Fund v. Alter*,
 2011 U.S. Dist. LEXIS 112499 (E.D. Pa. Sept. 30, 2011) .......................................18

*Stevelman v. Alias Research Inc.*,
 174 F.3d 79 (2d Cir. 1999) ..............................................................35, 36, 37, 38

*In re Stillwater Capital Partners Inc. Litig.*,
 2012 U.S. Dist. LEXIS 57515 (S.D.N.Y. April 23, 2012) ................................. 17-18

*Stoneridge Investment Partners, LLC v. Scientific Atlanta Inc.*,
 552 U.S. 148 (2008)........................................................................................7, 14

*Superintendent of Insurance v. Bankers Life & Casualty Co.*,
 404 U.S. 6 (1971)................................................................................................7

*Swierkiewicz v. Sorema, N.A.*,
 534 U.S. 506 (2002)............................................................................................6

*Sysco Food Service of Metropolitan New York LLC, v. Jekyll & Hyde, Inc.*,
 2011 U.S. Dist. LEXIS 89176 (S.D.N.Y. Aug. 9, 2011).........................................39

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)..........................................................................................11

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
 612 F. Supp. 2d 267 (S.D.N.Y. 2009) ...............................................................14

*Take-Two Interactive Software, Inc. v. Brant*,
 2010 U.S. Dist. LEXIS 32120 (S.D.N.Y. March 31, 2010) .....................................28

*United States v. Gomez-Gutierrez*,
 140 F.3d 1287 (9th Cir.), *cert. denied*, 525 U.S. 889 (1998)...........................17, 19

*In re VMS Securities Litig.*,
 136 F.R.D. 466 (N.D. Ill. 1991)..........................................................................44

*Van Cook v. SEC*,
 653 F.3d 130 (2d Cir. 2011) ...............................................................................8

*Veltri v. Building Serv. 32b-J Pension Fund,*
  393 F.3d 318 (2d. Cir. 2004) ....................................................................29

*In re Wachovia Equity Sec. Litig.,*
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ................................................ 33-34

*In re Wells Fargo Mortgage-Backed Certificates Litig.,*
  2010 U.S. Dist. LEXIS 124498 (N.D. Cal. Oct. 19, 2010) ...................34

*In re WorldCom Sec. Litig.,*
  *496* F.3d 245 (2d Cir. 2007) ....................................................................33

*Young v. United States,*
  535 U.S. 43 (2002)....................................................................................29

## FEDERAL STATUTES

15 U.S.C. § 78t(a) .........................................................................................19

17 C.F.R. § 240.10b-5....................................................................................9

Fed. R. Civ. P. 12(b)(6)..................................................................................6

Fed. R. Civ. P. 15(c) ............................................................................. *passim*

## MISCELLANEOUS

6A c. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* §1497 ..........................39

## PRELIMINARY STATEMENT

With a double barrel approach of deception in their conduct and in the SEC filings for which they had responsibility, Defendants Citigroup Global Markets, Inc. ("Global Markets"), Smith Barney Fund Management LLC ("Smith Barney"),[1] Lewis E. Daidone ("Daidone") and Thomas W. Jones ("Jones") were almost able to get away with deceiving the purchasers and sellers of 105 mutual funds in the Smith Barney Family of Mutual Funds ("Funds"), over the course of a five year period. Through deceptive conduct and the omissive statements filed with the SEC, Defendants were able to kickback tens of millions of dollars per year to which they were not entitled to corporate parent Citigroup.  Instead of standing up and acknowledging their shameful conduct, the Defendants in moving to dismiss the Fourth Consolidated Amended Complaint (the "Complaint"), have twisted and turned the law every which way to try to convince the Court that, among other things, a ruling last year from the Supreme Court *Janus Capital Grp. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) ("*Janus*") absolved them from responsibility, and that even if they would have otherwise been liable, that the claims are too late.  They are wrong on both counts.  Moreover, Daidone, who signed many of the SEC filings at issue, does not get absolved of liability by asserting that he did not have authority for the statements that he signed and knew would be filed with the SEC.

Defendants assert that Plaintiffs are just trying to plead around the holding of *Janus* (Def. Br. at 1).  But as explained below, it is not a matter of pleading around the ruling in *Janus,* but rather that the facts of this case squarely lead to the conclusion that Plaintiffs plead an adequate claim of "scheme liability" against each of the Defendants, a theory unaffected by *Janus*.  While

---

[1] Smith Barney and Global Markets are referred to collectively as the Smith Barney Defendants.

the Smith Barney Defendants may not be liable for statements made, as set forth before, *Janus* does nothing to protect Daidone from liability.  Daidone signed many of the prospectuses issued by the Funds during the relevant period.  Nor does *Janus* protect any of the Defendants when,, as is the case here, the Complaint alleges deceptive conduct in addition to any omissive statements.  Thus, the Exchange Act provides two independent theories of liability which have long been provided to defrauded investors by the securities laws and both of these are adequately plead against one or more of the Defendants.

Defendants also urge the Court to dismiss, as untimely, claims by the "New Plaintiffs" and claims by Jeffrey Weber ("Weber"), a plaintiff since the filing of the Consolidated and Amended Class Action Complaint ("First AC"), related to his purchase of the Smith Barney Money Fund, one of the many funds for which relief had been sought since early in the lawsuit.  As set forth below, the claims of the "New Plaintiffs" are timely based on both the theories of legal tolling and relating back.  And whether or not there were at the time of the filing of the First AC named plaintiffs who had bought or sold particular Funds, their formal entry into this action after what otherwise would have been the expiration of the statute of limitations and statute of repose does not affect the result.  As described in more detail, the Defendants should not be heard to assert that statutes of limitation or repose are a bar to finding all claims timely by mis-labeling the applicable tolling as equitable, which would not be permitted, rather than legal tolling, consistent with the ruling of the most recent cases on this issue.

Plaintiffs will also demonstrate with respect to Jones that they did not wait too long to rename him in a complaint and that any delay in renaming him did not cause him any legally recognized prejudice.  Plaintiffs will also demonstrate that Jones, who led the charge with respect

to the transfer agency kickback scheme, had the power to and did exert control over others who were committing primary violations of the Exchange Act.

Finally, any suggestion by defendants that those Plaintiffs who purchased Funds during the Class Period by way of dividend reinvestment have failed to meet any necessary reliance requirement, is unavailing.  Courts have long recognized that dividend reinvestment purchases are no different from any other purchases.

## STATEMENT OF FACTS

This case includes an illegal kickback scheme in violation of Exchange Act Section 10(b) and Rule 10b-5(a) and (c) perpetrated by Defendants Smith Barney, Global Markets[2,] Jones and Daidone (¶¶ 1-131) [3], to the detriment of the Plaintiffs  (¶¶ 11-19) and the other members of the Class who purchased or sold shares of the Funds.  ¶ 29.

The scheme was hatched when an opportunity arose for the Funds and Funds' shareholders to benefit from anticipated substantial reductions in transfer agency fees upon renegotiation of a then soon-to-expire contract with the Funds' transfer agent, First Data Investor Services Group ("First Data").  ¶¶ 1-5, 30, 33, 45-47.   The opportunity to the transfer agency fee reductions belonged to the Class Members.  ¶ 2.  Defendants, as registered investment advisors and fiduciaries (¶ 2), negotiated the stock transfer agent contract on behalf of the Funds.  ¶¶ 20-21.  First Data ultimately agreed to reduce fees to the Funds by more than $100 million dollars over five years.  ¶¶ 2, 56-58, 64, 72.  However, notwithstanding Defendants' fiduciary duties to the Funds and their shareholders (¶¶ 2, 7, 118), Defendants knowingly engaged in deceptive and

---

[2] Smith Barney and Global Markets are referred to collectively as the Smith Barney Defendants.

[3] "¶" or "¶¶" refer to paragraphs of the Complaint (Dkt. No. 214).

3

illegal self-dealing to improperly siphon the First Data transfer agency fee reductions away from the Funds, and kicked back those fee reductions through Citicorp Trust Bank, fsb. ("CTB"), a newly created transfer agent, and affiliate to the Smith Barney Defendants, and ultimately on to corporate parent Citigroup, Inc. ("Citigroup").  ¶¶ 1-5, 7-8, 31.

To carry out their scheme, Defendants replaced First Data with CTB as the Funds' stock transfer agent.  ¶¶ 3, 70.  CTB charged the Funds approximately the same amount for transfer agency services as First Data did under the old contract.  ¶¶ 3, 76.  CTB, however, provided only a small fraction of the transfer agency services required by the Funds.  CTB merely staffed a fifteen employee customer call center (only about half worked full time), at a cost of $1 million dollars per year.  ¶¶ 3, 73.  For the bulk of the transfer agency services, CTB subcontracted with First Data, as sub-transfer agent, *at sharply reduced rates*, to provide the balance of the Funds' transfer agency services not provided by CTB.  ¶¶ 3, 5, 56-58, 64, 72.  Defendants then fraudulently kicked back the First Data fee reductions through CTB to Citigroup.  ¶¶ 3, 5, 112.

Defendants' participation in the kickback scheme was motivated by, among other things, massive projected profits.  ¶¶ 61, 63, 107, 110-111.  Defendants projected their scheme to reap $258 million of "profit" over five years.  ¶¶ 4, 75.  The $258 million, however, reflected the First Data transfer agency fee reductions that should have been passed on to the Funds' shareholders.  ¶¶ 59, 65-69, 71, 74-75, 112.  Instead, Defendants improperly kicked back the fee reductions to Citigroup.  ¶¶ 8-9, 112, 119.

Defendants also deceptively kicked back millions of dollars of potential transfer agency fee reduction opportunities by entering into a secret Side Letter agreement with First Data that guaranteed Citigroup at least $22.5 million in investment banking fee revenue, and $14 million of "pre-tax bottom line" (the "Side Letter Agreement").  ¶¶ 5, 17, 80-83.  Indeed, while the Side

Letter Agreement provided millions of dollars of consideration to Citigroup, in lieu of deeper fee reductions to the Funds, it provided no benefit to the Funds or its shareholders.  ¶¶ 5, 84.

Material information about the First Data/CTB arrangement was not provided to the Funds' boards.  ¶¶ 85-99, 114.  Daidone presented the Funds' boards with materially misleading information so that they would ratify the First Data/CTB transfer agency arrangement.  ¶¶ 100-101, 104-106, 108.

Defendants' wrongful conduct caused moneys to be drained from the Funds which reduced the Funds' daily Net Asset Values ("NAVs"), and damaged Plaintiffs and the Class by distorting the Funds' NAVs whose shares they purchased or sold.  ¶¶ 8, 11-19, 112-113, 126, 131.

Jones was chief executive officer of Citigroup Asset Management, ("CAM"), the business unit of Citigroup in which the Smith Barney Defendants operated.  ¶ 22.  Michael Yellin ("Yellin"), chief administrative officer of CAM, and executive vice president of Global Markets reported to Jones. ¶ 26.  Yellin supervised the transfer agency project and handled the contract negotiations with First Data.  ¶ 26.  Jones was involved in day-to-day issues related to the transfer agency project such that Yellin regularly briefed Jones on the status of that project. ¶ 26.  Jones directed Yellin to negotiate with First Data.  ¶ 63.  When the terms of the arrangement with First Data had been determined, Jones directed the Smith Barney Defendants to carry out the kickback scheme knowing the Smith Barney Defendants' fiduciary obligations and that CAM intended to kick back First Data's transfer agency fee reductions through CTB to Citigroup. ¶ 79.  Jones did not inform the Funds' boards of material information regarding the CTB/First Data transfer agency arrangement.  ¶¶ 104-105, 114.  Jones was also aware of the "profitability" of the transfer agency arrangement since CTB, like the Smith Barney Defendants, was within the CAM

business unit and Jones was credited for CTB's internally reported profits, for purposes of Jones' personal compensation.  ¶ 111.

Daidone (¶¶ 23), as well as Smith Barney's chief executive officer, R.J. Gerkin ("Gerkin"), and CAM's head of internal control, Richard L. Peteka ("Peteka") (¶¶ 27-28), violated Rule 10b-5(b) by signing documents filed with the SEC that omitted to disclose material facts with respect to the improper kickbacks and that the Smith Barney Defendants were lining their own pockets at the expense of Plaintiffs and the other members of the Class. ¶¶ 1-150, Appendix A to the Complaint.  Jones violated Section 20(a) of the Exchange Act as control person with regard to the primary Rule 10b-5(a) and (c) violations and Rule 10b-5(b) violations. ¶¶ 151-158.

On May 31, 2005, the SEC issued an order that found the Smith Barney Defendants, with their kickback scheme, "willfully violated" Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("IAA") which, inter alia, prohibits investment advisors from engaging in any "transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client."  ¶¶ 6, 116, 145.

## ARGUMENT

## I.   STANDARD ON A MOTION TO DISMISS

In order to defeat a motion to dismiss, detailed factual allegations are not required, just the "grounds of [] entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  Further, a court must "accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 n.1 (2002).  "[T]he allegations of

6

the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.    THE COMPLAINT STATES ACTIONABLE RULE 10b-5 CLAIMS

### A.    A Defendant Need Not Make A Materially False Public Statement To Be Primarily Liable Under Rule 10b-5(a) and (c)

To suggest, as Defendants do here, that there must be a specific statement attributed to a defendant to find primary liability under Rule 10b-5, is erroneous   Primary liability under Rule 10b-5(a) and (c) can be found without an "oral or written statement." *Stoneridge Investment Partners, LLC v. Scientific Atlanta Inc.*, 552 U.S. 148, 158 (2008)("*Stoneridge*"); and *SEC v. Zandford*, 535 U.S. 813, 820 (2002) ("Neither the SEC nor this Court has ever held that there must be a misrepresentation about the value of a particular security in order to run afoul of the Act.").  Indeed, anyone who uses a "device, scheme, or artifice to defraud," or engages in "any act, practice, or course of business which operates or would operate as a fraud or deceit," as set forth in Rule 10b-5(a) and 10b-5(c), can be held primarily liable by virtue of conduct alone. "Conduct itself can be deceptive."  *Stoneridge,* 552 U.S. at 158.  Courts often refer to primary liability arising under Rule 10b-5(a) or (c) as "scheme liability."  *Id.* at 159.

Indeed, "[s]ection 10(b) was designed as a catch-all clause to prevent fraudulent practices," *Chiarella v. United States*, 445 U.S. 222, 226 (1980) (citation omitted), including not just "garden type variet[ies] of fraud" but also "unique form[s] of deception" involving "[n]ovel or atypical methods," *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 11 n.7, (1971) (internal quotation marks omitted).

Defendants' reliance on *Janus*, to suggest that scheme liability is no longer valid (Def. Br. 3, 5-6), is misplaced.  In fact, since the claims in *Janus* were based solely on Rule 10b-5(b) and the Court did not address Rule 10b-5(a) or (c), *Janus* is ***simply inapplicable*** to cases

involving scheme liability.  *See SEC v. Pentagon Capital Mgmt. PLC*, 2012 U.S. Dist. LEXIS 18504, at \*117 (S.D.N.Y. Feb. 14, 2012) ("Defendants have put forth no persuasive reason why Janus should be read to reach . . . claims alleging scheme liability pursuant to Rule 10b-5(a) & (c), and the Court can identify none."); *See also SEC v. Landberg,* 2011 U.S. Dist. LEXIS 127827, at \*11-12, (S.D.N.Y. Oct. 26, 2011) (holding *Janus* does not compel dismissal of scheme liability claim).

Moreover, the Complaint alleges that Defendants engaged in a fraudulent scheme in violation of Rule 10b-5(a) and (c) *in addition to* a defendant or other senior officer making statements that omitted material information in violation of Rule 10b-5(b).  Although courts often consider these to be distinct claims with some distinct elements (*see In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y 2004) ("*Global Crossing*")), liability can arise under both Rule 10b-5(b) and 10b-5(a) & (c) out of the same set of facts and conduct.  *See Van Cook v. SEC*, 653 F.3d 130, 139 (2d Cir. 2011); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).

Further, the Complaint does not merely recast omission claims under Rule 10b-5(b) as deceptive conduct under Rule 10b-5(a) and (c) (Def. Br. at 6).  The Complaint alleges deceptive conduct *in addition* to omissive statements.   A defendant may "be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations."  *See Lopes v. Viera*, 2012 U.S. Dist. LEXIS 27990 (E.D. Cal. Mar. 2, 2012).  In *SEC v. Brown*, 740 F. Supp. 2d 148, 171-172 (D.D.C. 2010), the court rejected defendant's argument that scheme allegations merely reiterated omissions underlying a Rule 10b-5(b) claim and found defendant's failure to file documents showing ownership in a registrant's securities as required under Exchange Act §

16(a) was enough deceptive conduct apart from filing misleading annual reports and proxy statements to state a claim under Rule 10b-5(a) and (c).

**B.  Count I States A Claim For Scheme Liability Under Rule 10b-5(a) and (c) Against All Defendants and Should Be Sustained**

Rule 10b-5 makes it unlawful to "(a) to employ any device, scheme, or artifice to defraud; [] or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.  To state an actionable claim for primary liability based on conduct that violates Rule 10b-5(a) and (c), a complaint must allege that a defendant (1) committed a deceptive or manipulative act, (2) with *scienter*, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries.  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491-492 (S.D.N.Y. 2005) (collecting cases) ("*Parmalat*").  As set forth herein, the Complaint adequately alleges each of the elements of a Rule 10b-5(a) or (c) claim against all Defendants.[4]

**1.  Defendants Each Committed a Deceptive or Manipulative Act**

Defendants engaged in an inherently deceptive scheme intended to secretly kickback hundreds of millions of dollars of money that did not belong to them to Citigroup, and away

---

[4] Defendants appear to have taken the position that Mark Levine's March 14, 2012 letter to the Court withdrew Zagunis' Count I claim against Jones for primary liability under Rule 10b-5 (a) and (c) ("Levine Letter").  Jones. Br. 2-3; Def. Br. 1, note 1.  This is obviously not so.  The letter simply addresses what Zagunis believed to be the crux of Jessica B. Pulliam's letter of March 13, 2012 regarding Jones' need to respond to the Complaint ("Pulliam Letter"), and points out that claims in the Complaint were not those which the Court had "previously ruled in his favor."  *See* Pulliam Letter, attached hereto as Exhibit 1 to the Declaration of Mark Levine in Opposition to Defendants' Motions to Dismiss ("Levine Decl."); Levine Letter, Pulliam Decl. Ex. A.  Absent explicit intention to withdraw a claim contained therein, the plainly-stated content of the Complaint, as the operative pleading, controls.  Imputing an unstated withdrawal of Zagunis' 10b-5 (a) and (c) claim by implication is unwarranted.

from the Funds shareholders.  Internalizing the transfer agency function was part and parcel of

that deceptive scheme.  The scheme did not, as Defendants contend (Def. Br. at 7), become

deceptive merely because of public misrepresentations.  The Complaint alleges deceptive

conduct in addition to the misleading public statements.

Global Markets, through Yellin, supervised the transfer agency project and handled the

contract negotiations with First Data.  ¶ 26.  Yellin reported to Jones and briefed Jones on the

transfer agency project on a regular basis.  ¶¶ 1, 2, 26.  Knowing that First Data offered transfer

agency fee discounts of tens of millions of dollars per year (¶¶ 56, 58, 65-69, 72), and that

Deloitte, a Smith Barney consultant, warned that transfer agency fee discounts belonged to the

Funds shareholders (¶¶ 58, 70-71), Yellin recommended to Jones that Defendants capture the fee

discounts for themselves.  Yellin recommended that the Smith Barney Defendants setup an

affiliated transfer agency with eight full time and seven part time employees, CTB, to operate a

call center for the Funds and to contract with First Data to perform the bulk of the agency

services at deeply discounted rates, for the Funds as sub-transfer agent.  ¶¶ 3, 71-72, 111.

Defendants projected the kickback scheme to generate $258 million in profits.  ¶¶ 111-112, 124.

Despite knowing Defendants' fiduciary obligations to Funds shareholders and despite knowing

Defendants intended to kickback the transfer agency fee discounts, Jones directed the Smith

Barney Defendants to move forward with the kickback scheme.  ¶ 79.  Daidone then prepared

and presented materially misleading materials regarding the transfer agency project to the Funds'

boards so they would approve the CTB/First Data transfer agency arrangement but not discover

the kickback scheme.  ¶¶ 100-101, 104-106.  Ultimately, the SEC issued an order holding that

the Smith Barney Defendants, with their kickback scheme, "willfully violated" Sections 206(1)

and 206(2) of the Investment Advisors Act of 1940.

Many courts have held such deceptive conduct violates Rule 10b-5(a) and (c).  *See Zandford*, 535 U.S. at 825 (holding that broker's actions in establishing phony escrow accounts for client and using the proceeds for his own purposes was an unlawful scheme within the meaning of Section 10(b)); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1471-72  (2d Cir. 1996) (affirming district court's finding of liability where CEO "orchestrated" a scheme among branch offices to defraud customers into paying prices that included excessive markups); *SEC v. Boock*, 2011 U.S. Dist. LEXIS 95363 (S.D.N.Y. Aug. 25, 2011) (finding scheme liability for selling shares in defunct corporations);  *SEC v. Lee*, 720 F. Supp. 2d 305, 333-34 (S.D.N.Y. 2010), (finding scheme liability where a defendant colluded to cause a fraud victim to believe that price quotes were legitimate and independent when they were not); *Parmalat*, 376 F. Supp. 2d at 491-92 (finding scheme liability where Citibank securitized invoices known to be worthless); *Global Crossing*, 322 F. Supp. 2d at 336 (finding scheme liability for participation in sham swap transactions).

### 2.    Defendants Acted with *Scienter*

*Scienter* is "a mental state embracing intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).   Here, to plead a "strong inference" of *scienter*, Plaintiffs alleged facts to show that the defendant had both motive and opportunity to commit fraud and facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001).  In assessing whether a plaintiff has pled *scienter*, courts consider whether all the facts, taken together, give rise to an inference of scienter that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  *Scienter* for a corporate defendant can be pled by alleging *scienter* of individuals through which the corporate defendant operates. *See New Orleans Emples. Ret. Sys. v. Celestica, Inc.*, 2011 U.S. App. LEXIS 25921, at *10-11

(2d Cir. Dec. 29, 2011).

The Complaint alleges that each of the Defendants knowingly participated in and employed a deceptive scheme to improperly kickback the First Data transfer agency fee reductions to Citigroup.  ¶¶ 4, 125-128.  Knowing Defendants' fiduciary obligations, and knowing CAM intended to kickback fee discounts in violation of such fiduciary duties, Jones directed the Smith Barney Defendants to carry out the kickback scheme.  ¶ 79.  Defendants knew that the projected $258 million profit was, in fact, improper revenue sharing with First Data at the expense of Funds shareholders.  ¶ 112.  Deloitte, Smith Barney's consultant, warned Defendants that transfer agency fee reductions should be passed on to the Funds.  ¶ 61.  The Complaint further alleges that Daidone presented misleading information to the Funds' boards so those boards would ratify the transfer agency arrangement (¶¶ 100-101).  Neither Daidone nor Jones informed the Funds' boards about material facts regarding the transfer agency arrangement.  ¶¶ 107-110.  Further, the Complaint alleges that Defendants, through their scheme, kicked back tens of millions of dollars per year of money that did not belong to them, to Citigroup (¶¶ 8-9, 112, 119) and that ultimately the SEC issued an order finding Smith Barney Defendants "willfully violated" Sections 206(1) and 206(2) of the IAA.  ¶ 56.

### 3.    Defendants' Acts Affected the Market Prices of Funds Shares

The Complaint alleges that Defendants kicked back tens of millions of dollars per year of transfer agency fee reductions that should have benefitted the Funds' shareholders.  ¶¶ 8-9, 112, 119.  Defendants' illegal kickback scheme resulted in the regular deduction of identifiable amounts that would not have been deducted had Defendants conformed their conduct to what the law required.  Money wrongfully drained from the Funds reduced the Funds' NAVs and distorted the prices at which Plaintiffs and the members of the Class purchased and/or sold Funds shares, and as a result, negatively and predictably impacted returns.  ¶¶ 2, 5, 84, 112, 120.

### 4.     Defendants' Actions Injured
### Plaintiffs and the Other Class Members

Where, as in the instant case, Defendants' deceptive acts are alleged as part of a scheme in violation of Rule 10b-5(a) and (c) that causes foreseeable losses in the securities markets, such defendants are subject to liability under Rule 10b-5.  Loss causation is established when, as here there is a link between the alleged misconduct and the ultimate economic harm suffered by the plaintiff, and when the loss was foreseeable and caused by the materialization of the concealed risk.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  The Complaint alleges that the reduced NAVs distorted prices of Funds shares purchased and/or sold during the Class Period and, as a result, negatively and predictably impacted returns causing damage to Plaintiffs and the Class.  ¶¶ 8, 10, 119, 131.  Here, as in *Parmalat*, the loss causation requirement is satisfied by alleging Defendants' conduct had the effect of concealing the circumstances that bore on the ultimate loss.  *Parmalat*, 376 F. Supp. 2d at 509-510.

### 5.     Reliance/Causation is Adequately Pled Under Rule 10b-5(a) and (c)

Plaintiffs reasonably expected, and relied upon the expectation, that in connection with purchases and sales of Funds' shares, Defendants would act in accordance with their fiduciary obligations of "uncompromising fidelity" and "undivided loyalty" to the Funds' shareholders and not willfully and secretly violate the law by lining their own pockets at the expense of Plaintiffs whose interests Defendants were obligated to protect. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 93 (2d Cir. 2010). ¶¶ 7, 118, 129.  Plaintiffs relied upon the expectation that for every dollar of fees they paid for transfer agency services, they would receive one dollar's worth of transfer agency services.  Contrary to Defendants' mischaracterization (Def. Br. at 7, 9), the Complaint at ¶ 130 alleges that had Plaintiffs been aware of Defendants' improper conduct and known Defendants' were engaging in an illegal

kickback scheme to line their pockets at Plaintiffs' expense, Plaintiffs would not have transacted in Funds shares.  Here, Defendants' *conduct* deceived the Plaintiffs.

In sum, the Complaint states an actionable claim for primary liability under Rule 10b-5(a) and (c) against all Defendants that is plausible on its face, and therefore should be sustained.

The cases relied on by Defendants in support of their Motion to Dismiss are easily distinguished from the instant action.  For example, in *Stoneridge*, 552 U.S. 148 (2008), the Supreme Court dismissed a scheme liability claim because the Rule 10b-5(a) and (c) defendants were customers who did nothing to cause the registrant to improperly account for the customer transactions or to issue misleading financial statements.  Thus, the Supreme Court held that in those circumstances, the causal link between respondents' conduct and plaintiffs' loss had been broken, and plaintiff investors could not have relied upon respondents' conduct in connection with a purchase or sale of the registrant's securities.  *Id.*, 552 U.S. at 161.

In *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 271 (S.D.N.Y. 2009) (affirmed by *In Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010)) (*"PIMCO"*), the registrant, not registrant's legal counsel, decided to, and did, publicly report sham transactions in a way that would mislead investors.  Nothing about counsels' actions made it necessary or inevitable that registrant would mislead investors.  Def. Br. at 8-9.  In *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), the SEC alleged scheme liability against registrant's executives who did not make any false statements but conceded that the alleged "fraudulent scheme . . . [was] to generate artificial advertising revenue" in registrant's public filings.  There was nothing deceptive about the advertising transactions themselves, only the manner in which registrant accounted for and reported those transactions in registrant's subsequent misleading public filings.  *See also*, *Lentell, Inc.*, 396 F.3d at 177 (rejecting scheme

liability claims where "the sole basis for such claims is alleged misrepresentations or omissions"); *In re Coinstar Inc. Secs. Litig.*, 2011 U.S. Dist. LEXIS 115794 (W.D. Wash. Oct. 6, 2011) (Rule 10b-5(a) or (c) claims dismissed where defendants were alleged to have "engaged in the preparation, creation, development, and dissemination of the false financial guidance and suppressed the revised internal forecast" and because the sole basis for those claims were allegations underpinning a Rule 10b-5(b) violation); *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 361 (D.N.J. 2009)(same).

Conversely, in the instant action, there is no break in the causal link, thus Defendants' kickback scheme directly caused Plaintiffs' damages. Defendants misled the Funds' boards with deceptive board presentations to capture for themselves the $258 million in anticipated profit. This conduct caused the illegal kickback scheme to reach the market through reduced NAVs that distorted Fund share prices. Unlike cases relied on by Defendants, here the purpose of Defendants' conduct was to mislead the Funds boards, rather than enable the Funds to deceive the Plaintiffs. Defendants, not the Funds, intended to benefit from the illegal kickback scheme. Further, Defendants' deceptive acts were ultimately disclosed to the market and had a direct and foreseeable impact on the price of Smith Barney Funds shares.

Defendants' application of *Janus's* "clean line" is equally flawed. Def. Br. at 6. In essence, Defendants contend that those who devise and carry out a deceptive scheme through their conduct are immune from liability so long as there is a misstatement in a public filing related to the deceptive scheme attributed to others. Primary liability may arise out of the same set of facts under all three subsections of Rule 10b-5 "where the plaintiffs allege both that the defendants made misrepresentations in violations of Rule 10b-5(b), as well as that defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations." *In*

15

*re Alstom,* 406 F. Supp. 2d at 475.  In *SEC v. Boock,* 2011 U.S. Dist. LEXIS 95363 at \*71-72,

summary judgment was granted against a defendant on a scheme liability claim was sustained

where other defendants made misleading statements and the complaint alleged Rule 10b-5 (a)

and (c) defendant participated in a deceptive conduct in addition to the false public statements.

*See also Global Crossing*, 322 F. Supp. 2d at 337 n.17 (holding that a defendant who did not

make fraudulent statements may be held liable for the fraudulent scheme behind the

misstatements); *Parmalat*, 376 F. Supp. 2d at 504 (upholding a scheme liability claim against

Citibank for its part in securitizing worthless invoices despite the fact that Citibank made no

false statements).  Indeed, any person who participates in a deceptive scheme may be held liable

under Rule 10b-5(a) and (c) even if a material misstatement by another person creates the nexus

between the scheme and the securities market.  *SEC v. Lee*, 720 F. Supp. 2d at 334.  Defendants'

contention that only deceptive conduct without an accompanying misstatement can be inherently

deceptive (Def. Br. at 6), is just plain wrong.

### C.    Defendant Daidone is Primarily Liable Under Rule 10b-5(b) For Signing Documents Filed with the SEC He Knew Contained Material Omissions

In *Janus*, limiting liability to those who "make" statements, the Supreme Court held that

a mutual fund advisor who neither signed nor is otherwise attributed as a maker of false

statements in prospectuses is not liable for such statements under Rule 10b-5(b).  *Janus*, 131 S.

Ct. at 2299.  *Janus* recognized "in the ordinary case, attribution within a statement or implicit

from surrounding circumstances is strong evidence that a statement was made by –and only by—

the party to whom it is attributed*." Id.* at 2302.

Thus, the test for primary liability is whether a defendant "made" a statement.  As the

Court noted, "we do not find the meaning of 'make' in Rule 10b-5 to be ambiguous."  *Id.* at

2304.  Both before and after *Janus*, courts consider he signer of a statement to be its "maker."

For example, in *Howard v. Everex Systems, Inc.*, 228 F. 3d 1057, 1061 (9th Cir. 2000), the court rejected an officer's contention that signing an SEC filing was not "making" a statement because he had not participated in its drafting.  The Ninth Circuit found that signing the document alone was sufficient.  Courts regularly reject Daidone's arguments.  Def. Br. at 2, 10-14.  According to the Ninth Circuit, "the affixing of a signature is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy."  *United States v. Gomez-Gutierrez*, 140 F. 3d 1287, 1288-89 (9th Cir.), *cert. denied*, 525 U.S. 889 (1998).  *See also, Freundenberg v. E*Trade Financial Corporation*, 712 F. Supp. 2d 171, 194 fn. 6 (S.D.N.Y. 2010) (signing alone sufficient); *In re Ind. Energy Holdings PLC Secs. Litig.*, 154 F. Supp. 2d 741, 767 (S.D.N.Y. 2001) (same); *SEC v. Stanard*, 2009 U.S. Dist. LEXIS 6068, at *72-73 (S.D.N.Y. Jan. 27, 2009) (same).

Post *Janus*, the act of signing is still all that is required.  Arguments strikingly similar to those made by Daidone were rejected in *In Re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, 2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) *("Merck")*, where defendant, a senior officer, asserted that he could not be liable under Rule 10b-5(b) for statements attributed to him "because the Complaint does not allege that he had 'ultimate authority over the statement.'"  *Id.*, at *100, *quoting*, *Janus*, 131 S. Ct. at 2302.

Rejecting Defendant's argument, the *Merck* court distinguished *Janus* based upon the defendant having signed SEC filings:

> [Defendant]…signed SEC forms…in his capacity as a [Merck executive]. He made the statements pursuant to his responsibility and authority to act as an agent of Merck, not as in Janus, on behalf of some separate and independent entity. Janus does not alter the well-established rule that "a corporation can act only through its employees and agents." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 101 (2d Cir. 2001). (emphasis added).

*Id.*, at *101-103.  *See also, In re Stillwater Capital Partners Inc. Litig.*, 2012 U.S. Dist.

LEXIS 57515, at *25 (S.D.N.Y. April 23, 2012) (*Janus* cannot "shield" defendant who, by

signing SEC filings, "made the alleged misstatements."); *In re Pfizer Inc. Secs. Litig.*, 2012 U.S.

Dist. LEXIS 39454, at *20-21 (S.D.N.Y. March 22, 2012) (applying *Janus* and finding that

signing alone was sufficient to bestow Exchange Act liability); *City of Roseville Employees' Ret.*

*Sys., v. Energy Solutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011) ("There is no dispute

that ES and each of the Individual Defendants who signed the Registration Statements 'made'

the statements under *Janus"*); *SEC v. Mercury Interactive LLC*, 2011 U.S. Dist. LEXIS 134580

(N.D. Cal. Nov. 22, 2011) (signing cover sheet of a proxy statement, liable as maker); *SEC v.*

*Carter*, 2011 U.S. Dist. LEXIS 136599,  at *8 (N.D. Ill. Nov. 28, 2011) (Defendant "made"

statement by electronically signing 8-K); *SEC v. Das*, 2011 U.S. Dist. LEXIS 106982, at *18 (D.

Neb. Sept. 20, 2011) (CFO is "maker" of statements by signing SEC documents.); *Steamfitters*

*Local 449 Pension Fund v. Alter*, 2011 U.S. Dist. LEXIS 112499 at *32-33 (E.D. Pa. Sept. 30,

2011), ("Courts assume that corporate officers have read the SEC filings they sign, and in

signing attest to their accuracy and accept responsibility for the contents.").

     Defendants rely on a multitude of cases that are all distinguishable because of a single

important fact: ***none of the cases involved defendants who actually signed public documents***.

*See In re Optimal U.S. Litig.*, 2011 U.S. Dist. LEXIS 119141, at *22 (S.D.N.Y. Oct. 14, 2011)

(court did not address whether signing constituted the making of a statement); *Reese v. BP*

*Exploration (Alaska) Inc.*, 643 F. 3d 681, 694 fn. 8 (9th Cir. 2011) (defendant did not sign the

document and without that fact, there was not enough to attribute the conduct of one entity to

another related entity); *Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 U.S. Dist. LEXIS

98760, at *11 (N.D. Ohio Sept. 1, 2011) (no suggestion that a defendant had signed any

documents); *In re Coinstar Inc. Securities Litigation*, 2011 U.S. Dist. 115794, at *34-35 (W. D.

Wash. Oct. 6, 2011) (Same).

As Defendants' cases demonstrate, the question of "ultimate authority" is mooted where a defendant **has signed** public statements, because the act of signing is strong evidence of "ultimate authority" to make the statement in question.  Thus, if a defendant has in fact signed a public statement, he is liable for its content and the issue of "ultimate authority" is subsumed by the signing.

In short, Daidone cannot escape that "the affixing of a signature is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy." *See United States v. Gomez-Gutierrez*, 140 F.3d at 1288-89.

## III.   THE COMPLAINT STATES SECTION 20(a) CLAIMS AGAINST JONES

### A.   Defendant Jones Controlled the Smith Barney Defendants' Violations of Rule 10b-5 (a) and (c)

In order to establish a prima facie case of liability under § 20(a)[5], a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation.  *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997) (internal quotation marks and citations omitted).

The Complaint alleges that the Smith Barney Defendants and Daidone each committed a primary violation of Section 10(b) and Rule 10b-5(a) and (c) through their employment of the

---

[5] Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

illegal kickback scheme.  *See* § II.B *supra.*

The Complaint further alleges that Jones possessed control of the Smith Barney Defendants and Daidone.  ¶¶ 22.  Both Smith Barney and Global Markets were within the CAM business unit of which Jones was chief executive officer.  Daidone was a senior vice president and director of Smith Barney and managing director of Global Markets.  ¶¶ 23.  Yellin, also an officer of Global Markets, reported to Jones, and supervised the transfer agency project and handled the contract negotiations with First Data.  ¶ 26.  Jones was involved in day-to-day issues related to the transfer agency project to the extent that Yellin regularly briefed Jones on the status of that project. ¶ 26.

The Complaint also alleges that Jones was a culpable participant in the primary violation. Jones directed Yellin to negotiate with First Data. ¶ 63.  When the terms of the arrangement with First Data had been determined, Jones directed the Smith Barney and Global Markets to carry out the kickback scheme knowing the Smith Barney Defendants' fiduciary obligations and that CAM intended to kick back First Data's transfer agency fee reductions through CTB to Citigroup. ¶ 79.  Further, Jones did not inform the Funds boards of material information regarding the CTB/First Data transfer agency arrangement.  ¶¶ 104-105, 114.

**B.      Defendant Jones Controlled Primary Violators of Rule 10b-5(b)**

The Complaint alleges that Daidone committed primary violations of Section 10(b) and Rule 10b-5(b), *See* § II.C *supra,* and that Messrs. Gerkin and Peteka, though not named as defendants,  also committed primary violations of Section 10(b) and Rule 10b-5(b).  ¶¶ 27-28.

The Complaint alleges that, like Daidone, both Gerkin, managing director of Global Markets and chief executive officer of Smith Barney and Peteka, and director and head of internal control for CAM U.S. Mutual Fund Administration, both held positions subordinate to, and in entities within CAM (*Id.*), and Jones was CAM's chief executive officer and highest

ranking officer. ¶ 22.  The Complaint alleges that Jones, as chief executive officer of CAM, had the power to control, and exercised that power to control the issuance during the Class Period of the alleged materially misleading statements. ¶¶ 22, 27-28

Further, the Complaint alleges that Defendant Jones was a culpable participant in the primary violations of Rule 10b-5(b).  Among other things, Jones failed to provide the Fund boards with material information related to the transfer agency arrangement so that the boards would not discover the kickback scheme. ¶¶ 104-105, 114.  Jones directed the Funds to carry out the kickback scheme (¶ 79) and knew or but for recklessness, must have known that the statements listed in Appendix A to the Complaint were materially misleading when issued. Given that the statements were signed by Jones' subordinates, Jones possessed the power to cause Daidone, Peteka and Gerkin to either not make any statements or to make statements that contained no material omissions.

## IV.   NEW PLAINTIFFS' AND WEBER'S CLAIMS ARE NOT TIME-BARRED

### A.     Relevant Procedural History

Following the May 31, 2005 SEC settlement, a number of putative class actions were filed against the Defendants, which were consolidated on December 30, 2005.  On April 17, 2006, the Court appointed the International Union of Operating Engineers Local 649 Annuity Fund ("Local 649") and Weber as Lead Plaintiffs ("Original Lead Plaintiffs").  *See*  Dkt. Nos. 34, 51.

On June 1, 2006, Plaintiffs filed their First AC, wherein Weber and Local 649 brought claims on behalf all persons who purchased, held and/or sold shares of the Smith Barney Funds, defined as "more than 105 open-ended management investment companies registered with the SEC, and include equity, money market, fixed income, municipal, and various specialty funds (the 'Funds') from September 11, 2000 through May 31, 2005, inclusive (the 'Class Period'). *See*

21

Dkt. No. 55, ¶¶ 1, 30.  The First AC alleged that Jones, Daidone, Smith Barney, and Global Markets violated Section 10(b) of the Exchange Act by devising, executing and concealing  a fraudulent sub-transfer agent scheme (described herein on pages 3-5, 10, 20-21), and subsequently issuing prospectuses and other statements during the Class Period that omitted to disclose material facts concerning the sub-transfer agent arrangement.  First AC, ¶¶ 1-147. Plaintiffs further alleged that Daidone and Jones, were liable as "controlling persons" of Smith Barney and Global Markets under Section 20(a) of the Exchange Act in connection with the scheme.

Following the Second Circuit's February 16, 2010 reversal and remand of the Court's September 26, 2007 dismissal of the First AC, Defendants second motion to dismiss was granted in part and denied in part on January 25, 2011, but granted in its entirety as to Jones.  *See In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391 (S.D.N.Y. 2011).  This Court held, *inter alia*, that the Original Lead Plaintiffs did not have standing to assert claims relating to Funds in which it did not invest, *Id.* at 400, and as a result dismissed "claims related to Smith Barney Funds in which no named plaintiff invested."  *Id.*, at 403.

On February 4, 2011, the parties entered into a stipulation pursuant to which Defendants agreed to allow Plaintiffs to "address the dismissal of its claims relating to funds in which ***no named plaintiff invested*** by filing an amended pleading that, during the alleged class period, purchased or sold shares of one or more Smith Barney funds that used [CTB] as a transfer agent." (emphasis added) ("New Plaintiff Stipulation").  Levine Decl. Ex.2, at 2.  The Court subsequently granted Plaintiffs the right to add named plaintiffs with appropriate standing.

On May 5, 2011, and June 30, 2011, Plaintiffs filed the Second Consolidated and Amended Class Action Complaint (the "SAC") and the Third Consolidated and Amended Class

Action Complaint (the "TAC"), respectively, which contained fifteen named plaintiffs who purchased shares in 36 of the Funds. *See* Dkt. Nos. 129 and 141.  Allegations of violations of Section 10(b) of the Exchange Act by Daidone and the remaining Defendants, and the sub-transfer agent scheme that formed the basis of the violations, were virtually identical to those plead in the First AC.  *See* SAC, ¶¶ 1-152, TAC, ¶¶ 1-152, ¶ First AC ¶¶ 1-147.

On August 31, 2011, Local 649 withdrew as Lead Plaintiff, and by Order dated December 15, 2011, the Court appointed David Zagunis ("Zagunis") as Lead Plaintiff and Stull, Stull & Brody and Weiss & Lurie as Lead Counsel ("New Lead Plaintiff" and "New Lead Counsel").  At the January 13, 2012 status conference, Zagunis was permitted to amend the complaint in any way that [he] deemed appropriate because it is a new counsel and a new Lead Plaintiff.  *See* January 13, 2012.  Levine. Decl. Ex. 3, Tr. at 5:15-19.

On March 7, 2012, Zagunis filed the Operative Complaint, which includes nine named plaintiffs who purchased or sold shares in a total of 24 of the Funds during the Class Period.[6] *See* Dkt. 214.  All of the New Plaintiffs had been named plaintiffs as of filing of the SAC/TAC, having joined as soon as practicable following the January 11, 2011 ruling on standing when it first became clear that their rights were no longer protected by the June 2006 filing of the First AC.  The First AC and the Operative Complaint: (1) involve the same core set of facts, conduct and occurrences (i.e., the formulation and execution of the sub-transfer agent scheme); (2) allege violations of section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (3) involve the identical set of Defendants.  *See* First AC ¶¶ 6-7; FAC ¶¶ 7-8.

---

[6] David Zagunis, DVL 401(k) Plan, Steven W. Hall, Colette Luff, Renee Miller,  Richard W. Rees, Bahrat U. Shah, Jeffrey Webber,  Ann and Robert Yiambellis, (with the exception of Weber, the "New Plaintiffs").

**B.**   ***American Pipe* Tolls Claims of All Class Members**

"[T]he commencement of a class action suspends the applicable statute of limitations as to ***all asserted members of the class*** who would have been parties had the suit been permitted to continue as a class action."  *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (emphasis added)(*"American Pipe"*).  In creating this rule, the Supreme Court was guided by two fundamental principles: (i): the "litigative efficiency and economy" promoted by the class action device; and (ii) the "essential fairness" underlying statutory limitations periods. *See Id*. at 553-56.  A contrary rule would encourage potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable." *Id*. at 553.

Here, the filing of the of the First AC on June 1, 2006 provided Defendants with explicit notice of the "essential information necessary to determine both the subject matter and size of the New Plaintiffs' claims thus tolled the Exchange Act's two year statute of limitations and five year statute of repose applicable to all New Plaintiffs' claims.  *Id.* at 554-555.  As in *American Pipe*, the New Plaintiffs were part of the "asserted members of the class" plead in the First AC, because the First AC alleged Class Period violations of Section 10(b) and Rule 10b-5 on behalf *all* Class Period investors in all of the Funds, and the new Plaintiffs' Funds are a subset of that group. *Id.* at 553.  ¶¶ 1, 30.

Accordingly, because their rights were protected by the filing of the First AC, New Plaintiffs, along with all other putative Class members were "encouraged to remain passive during the early stages of the action and to 'rely on the named plaintiffs to press their claims.'" *Official Comm'n of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 277 B.R. 20, 29 (S.D.N.Y. 2002) *("Asbestos Claimants")*.  *See also In re Indymac Mortgage-Backed Secs. Litig.*, 793 F. Supp. 2d 637, 646-647 (S.D.N.Y. 2011) ("*IndyMac")* ("It should be noted, moreover, that *American Pipe* tolling does not merely *allow* putative class members 'to wait on the sidelines'.

As the Second Circuit has recognized, such parties 'are *expected and encouraged* to remain passive during the early stages of a class action.'")(emphasis in original)(quoting *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1992) and *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987)).

### C.      Statutes of Repose are Subject to Tolling

Defendants do not dispute that under *American Pipe* the First AC tolled the two year statute of limitations applicable to Exchange Act claims, but mistakenly claim that *American Pipe* tolling does not apply to the Exchange Act's five-year statute of repose. Def. Br. at 19-25, Jones Br. at 9.  The majority of courts that have considered the issue, however, have determined that *American Pipe* also tolls statutes of repose. [7]

In arguing otherwise, Defendants rely heavily on *Footbridge, IndyMac,* and *Lehman*, and which maintain that *American Pipe* tolling is a form of equitable tolling and is therefore inapplicable to statutes of repose.  However, "*American Pipe* tolling 'is a species of legal tolling, in that it is derived from a statutory source, in this case *Rule 23*,' and that consequently, it applies to statutes of repose." *In Re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 667 (S.D.N.Y. 2011) ("*Morgan Stanley*") (quoting *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 176 (D. Mass. 2009)), reconsideration denied, 2012 U.S. Dist. LEXIS 58880 (S.D.N.Y. Apr. 27, 1012).

The majority view, and all of the most recent cases in this Circuit, acknowledges what *Footbridge, IndyMac* and *Lehman* ignore: that *American Pipe* tolling is a "legal device for

---

[7]  *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) ("*Lehman*") ("most courts…have concluded that *American Pipe* does apply to toll the statue of repose." (footnote excluded)); *Footbridge v. Ltd Trust v. Countrywide Fin. Corp.* 770 F. Supp. 2d 618, 625 (S.D.N.Y. 2011) ("*Footbridge*"); *IndyMac*, 793 F. Supp. 2d at 642.

maintaining class litigation", and its rationale (whether applied to statutes of limitations or repose) is predicated on fulfilling the purposes of Rule 23:

> The same reasoning [found in *American Pipe*] applies to the statute of repose… Without tolling, class members content to remain in the class action would nevertheless need to bring their own suits within the three-year repose period to guard against the possible eventual denial of class certification. 'The result would be a needless multiplicity of actions-- precisely the situation that *[Rule]23* and the tolling rule of *American Pipe* were designed to avoid.' Tolling the statute of repose clearly serves the purposes of *Rule 23* and the *American Pipe* doctrine. (citation omitted).

*Int'l Fund Mgmt. S.A. v. Citigroup Inc*., 2011 U.S. Dist. LEXIS 113660, at *21 (S.D.N.Y. Sept. 30, 2011) (*"Int'l Fund Mgmt."*); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F. Supp. 2d 429, 455 n. 19 (S.D.N.Y. 2005) *("Flag")* (finding *American Pipe* tolls the statute of repose).

*Joseph v. Wiles,* 223 F.3d 1155 (10th Cir. 2000) (cited in *Footbridge,* 770 F. Supp. 2d at 625), articulated the import of reconciling the class action mechanism with the purpose served by statutes of repose:

> Tolling the limitations period while class certification is pending ***does not compromise the purposes of statutes of limitation and repose***. . . . In this case, because a class action complaint was filed, defendants were on notice of the substantive claim as well as the number and generic identities of potential plaintiffs....
>
> Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished.  Here, the claim was brought within this period on behalf of a class of which Mr. Joseph was a member. Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve "tolling" at all.  Rather, Mr. Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied.

*Id.* at 1167-68 (citations omitted) (emphasis added).

*Footbridge, IndyMac and Lehman* cannot be squared with the weight of authority that *American Pipe* tolling applies equally to both statutes of limitations and repose.   In fact, *every* court to have considered the issue since *Footbridge, IndyMac and Lehman* have followed this

approach. *See In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 2012 U.S. Dist. LEXIS 45679, at *51(S.D.N.Y. March 30, 2012); *Plumbers' and Pipefitters' Local #562 v. J.P. Morgan Acceptance Corp. I*, 2011 U.S. Dist. LEXIS 152695, at *15-16 (E.D.N.Y. December 13, 2011) (*"J.P. Morgan I"*); *Int'l Fund Mgmt.,* 2011 U.S. Dist. LEXIS 113660, at *25; *Morgan Stanley,* 810 F. Supp. 2d at 670; *Hrdina v. World Savings Bank,* 2012 U.S. Dist. LEXIS 12252, at *9-11 (N.D. Cal. January 31, 2012); *Genesee County Employees' Ret. Sys.* v. *Thornburg Mortgage Sec. Trust 2006-3*, 2011 U.S. Dist. LEXIS 133462, at *102 (D.N.M. Nov. 12, 2011) *("Thornburg").*

### 1.    Defendants' Reliance on *Lampf* is Misplaced

Defendants' reliance on *Lampf, Pleva, Lipkind, Prupis* & *Petigrow v. Gilbertson,* 501 U.S. 350 (1991) *("Lampf")* as the cornerstone of their argument, is misplaced. *Lampf* addressed questions of "equitable" tolling, not *American Pipe* "legal" tolling. *Lampf*, 501 U.S. at 363.[8] *See also Int'l Fund Mgmt.,* 2011 U.S. Dist. LEXIS 113660, at *23. It is important to distinguish between equitable tolling and legal tolling, because *Lampf* seemingly rejects the "equitable" tolling statutes of repose (but is silent as to "legal" tolling). Legal tolling applies only to circumstances-like here-where a timely-filed class action lawsuit (such as the First AC) have provided Defendants with adequate notice of plaintiffs' prospective claims. As another court in this Circuit has explained:

> Equitable tolling is appropriate where, for example, the claimant has filed a defective pleading during the statutory period or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. By contrast, [legal tolling is]the tolling of any putative class action member [and]is the tolling that occurs any time an action is commenced and class certification is pending.

---

[8] The justices in *Lampf* considered merely whether an assertion of fraudulent concealment would toll the three-year statute of repose when plaintiffs attempted to file the *initial* lawsuit after the expiration of the statute of repose, and concluded it did not. *Id.* at 363.

*Asbestos Claimants,* 277 B.R. at 31-32 (citations omitted).  *See also Arivella*, 623 F. Supp. 2d at 177-178 ("[t]he differences between the forms of tolling is crucial because the animating principles of legal tolling are compatible with tolling a statute or repose, while the reasoning behind equitable tolling is not.").

The *American Pipe* doctrine ensures that the underlying purpose of the statute of repose-"to demarcate a period which a plaintiff must place a defendant on notice of his or her injury, regardless of whether the plaintiff himself is aware that he has suffered an injury," is satisfied. *Joseph,* 223 F.3d at 1168.  Thus, "despite the broad language in *Lampf* rejecting the tolling of statutes of repose, all lower federal courts to examine the issue have found *Lampf* limited exclusively to the concept of equitable tolling and have held that *American Pipe* requires the tolling of statutes or repose."[9]  *Arivella*, 623 F. Supp. 2d at 177-178 (collecting cases).  The most recent cases in this Circuit unanimously agree. *See Morgan Stanley, J.P. Morgan I; Int'l Fund Mgmt.*  As such, the determination of the *Footbridge, Lehman and IndyMac* courts (and hence Defendants) that *American Pipe* tolling is "equitable" tolling is incorrect, and *Lampf* is of no assistance.

Other cases cited by Defendants for the proposition that statutes of repose are "absolute" (Jones Br. at 6, Def. Br. at 19-20), or that American Pipe Tolling is "equitable" (Def. Br. at 21, note 11), are equally inapplicable.  *P. Stolz,* does not hold that repose is absolute, rather it reinforces why the policy concerns underpinning the statute of repose are *not* violated under the

---

[9] Defendants other cases similarly involve matters of "equitable tolling", not *American Pipe* tolling. Def. Br. at 19-21 (relying on, e.g., *P. Stolz Family P'ship L.P. v. Daum,* 355 F.3d 92, 102 (2d Cir. 2004) ("P. Stolz"); *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 597 F.3d 84, 88 (2d Cir. 2010); *Take-Two Interactive Software, Inc. v. Brant*, 2010 U.S. Dist. LEXIS 32120 (S.D.N.Y. March 31, 2010).

circumstances of this case.  As the Court in *P. Stolz* explained:

> In general, a statute of repose acts to define temporally *the right to initiate suit* against a defendant after a legislatively determined time period. Unlike a statute of limitations, a statute of repose is not a limit of a plaintiff's remedy, but rather defines the right involved in terms of the *time allowed to bring suit.*

355 F.3d at 102 (emphasis added). Here, unlike in *P. Stolz,* the exact claims that New Plaintiffs seeks to pursue were "initiated" within the five-year repose period.

Moreover, Supreme Court and Second Circuit cases relied on by Defendants *do not* hold that *American Pipe* tolling is "equitable," nor do they appear to indicate that the courts even considered the issue.[10]  For example, in *Young v. United States,* 535 U.S. 43 (2002), the issue before the Supreme Court was whether a "three year look back period is tolled during the pendency of a prior bankruptcy petition." 535 U.S. at 44.  Nowhere in *Young* does the Supreme Court even remotely consider whether *American Pipe* tolling is equitable or legal. Indeed, *Young* does not even involve Rule 23, which is where this Court and other courts have determined legal tolling is established.

Likewise, Defendants' reliance on *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318 (2d. Cir. 2004), to argue that the Second Circuit has concluded that *American Pipe* tolling is equitable in nature and does not apply to the statute of repose also misses the mark.  Again, *Veltri* is not a class case, thus the Second Circuit could not have made conclusions concerning *American Pipe* tolling and whether legal tolling could be derived from Rule 23.  Instead, the Second Circuit in *Veltri* simply cites to *American Pipe* as an example of courts permitting statutes of limitations to toll.  The *Arivella* court addressed the same *Veltri* decision Defendants

_____

[10] At most these cases mention in *dicta*, often in a footnote, that *American Pipe* is an example of courts permitting a statute of limitations to be tolled. *See, e.g., Irwin* v *Dept. Veterans Affairs, 498* U.S. 89, 96 n.3 (1990). None of the cases provide an analysis of *American Pipe* tolling applied to a statute of repose.

rely on here and determined that *Veltri's "*characterization of *American Pipe*" was "of limited use to the case at bar." *Arivella,* 623 F. Supp. 2d at 176 n.7.  Finally, *Irwin,* 498 U.S. at 96 n.3, simply mentions in *dicta*, in a footnote, that *American Pipe* is an example of courts permitting a statute of limitations to be tolled.  Ultimately, none of the cases provide an analysis of *American Pipe* tolling applied to a statute of repose.

### D.    The Rules Enabling Act Does Not Proscribe *American Pipe* Tolling

According to Defendants, the Rules Enabling Act prevents the application of Rule 23 to alter the Exchange Act's statute of repose because the statute of repose is a "substantive right." Def. Br. at 20.  The same argument, however, applies equally to statutes of limitations, and the Supreme Court addressed and rejected it in *American Pipe.  American Pipe,* 414 U.S. at 556.

Petitioners in *American Pipe* made the same argument Defendants make here, "that irrespective of the policies inherent in Rule 23 and in statutes of limitations, the federal courts are powerless to extend the limitation period beyond the period set by Congress because that period is a "substantive 'element of the right conferred on antitrust plaintiffs and cannot be extended or restricted by judicial decision or by court rule." *Id.* (citing the Rules Enabling Act). According to the *American Pipe* petitioners, "[t]he inclusion of the limitation and the tolling period ... makes the 'substantive' statute immune from extension by 'procedural' rules." *Id.*  The Supreme Court expressly rejected this argument, holding that "[t]he proper test is not whether a time limitation is 'substantive' or 'procedural,' but whether tolling the limitation in a given context is consonant with the legislative scheme." *Id.* at 557-58.  The same reasoning applies here and Defendants argument should be rejected.  *See also Morgan Stanley*, 810 F. Supp. 2d at 666 (rejecting Rules Enabling Act argument).

Jones's contention that relation back under Rule 15(c) "would be contrary to the Rules Enabling Act" similarly fails.  Jones Br. at 7.  Jones ignores case law holding that the application

of Rule 15(c) does not violate the Rules Enabling Act. *Morel* v. *DaimlerChrysler AG,* 565 F.3d 20 (1st Cir. 2009).

First, *Morel* held that Rule 15(c) "'is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court. ... '" 565 F.3d at 24 (citation omitted). As a rule of procedure, Rule 15(c) neither affects Defendants' rights nor "abridge[s], enlarge[s] or modif[ies]" any substantive rights. *Id.* Jones, in simply declaring otherwise, disregards the Supreme Court's recognition that while procedural rules may have some substantive impact, that alone does not invoke the Rules Enabling Act's prohibition. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1442-43 (2010).

Second, *Morel* recognized here that "[u]nder Rule 15(c), the original complaint still must be filed within that ... limitations period." 565 F.3d at 25. Here, the First AC, which originally set out New Plaintiffs' claims, was filed well within the three-year statute of repose. Thus, the application of Rule 15(c) has *no* effect on Defendants' substantive rights, let alone "abridge, enlarge or modify" them. Neither Jones' reliance upon *Lehman*, nor Defendants' reliance on *P. Stolz* or *IndyMac* (which "define" a statute of repose as a "substantive right") addresses the question whether Rule 15(c) - a procedural rule - violates those rights. *Morel* explains why it does not.

### E.      Even if Plaintiffs Required to Show Diligence Their Claims Are Timely

Defendants disparage the "efficiency and economy" promoted by the existence of *American Pipe* tolling as a "judicially-created fiction." Def. Br. at 21-22. Of course the risks of floods of prophylactic lawsuits is real. *American Pipe*, 414 U.S at 550; *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345, 350-351(1983). Defendants have recently admitted as much at the February 15, 2011 status conference with the Court:

> I think your order contemplated there would be a substitution of new plaintiffs for

standing purposes. ***Our only concern is that we not have …competing complaints and we be litigating one case with all of the relevant parties***. (Emphasis added).

Levine Decl. Ex. 4, Tr. 3:10-14.

Moreover, Defendants' contention that the New Plaintiffs have failed to "diligently pursue' their rights" and are performing  an "end run around the statute of repose" is not only improperly based on the incorrect assumption that tolling the statute of repose turns on equitable considerations, it is factually inaccurate.  Def. Br. at 22-23.

First, the Court ruled over seven years ago that Original Lead Plaintiffs could represent the class until the appropriate legal determination.  *In re Smith Barney Transfer Agent Litig.*, 2006 U.S. Dist. LEXIS 19728, at *12 (S.D.N.Y. Apr. 17, 2006) ("*If*, in fact, every fund requires representation in the class leadership, the lead plaintiff may include additional named plaintiffs in this consolidated action").  That is exactly what has occurred.  Once the Court determined that "[p]laintiffs lack standing to pursue claims related to the Smith Barney Funds in which no named plaintiff invested, " *In re Smith Barney,* 765 F. Supp. 2d at 400 (S.D.N.Y. 2011), New Plaintiffs were included in the SAC and TAC as soon as was practicable.

Second, even though this Court had left the question open, Defendants argue it was known "by 2005 that the original named plaintiffs lacked standing to assert claims on their behalf."  Def. Br. at 23.  Given the existing and subsequent authority, the uniformity of the Defendants' scheme and the omissions from the Class Period prospectuses being virtually identical as to all Funds, it was decidedly not "clear" at the time of the filing of the First AC that each fund required representation.  *See In re Dreyfus Aggressive Growth Mut. Fund Litig.,* 2000 U.S. Dist. LEXIS 13469, at *3-5 (S.D.N.Y. Sept. 20, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.") (citing cases); *In re Franklin Mut. Funds Fee Litig.,* 388 F. Supp. 2d 451, 461-62 (D. N.J. 2005).  *See*

*also, In re Mutual Funds Investment Litigation,* 519 F. Supp. 2d 580, 586-587 (D. Md. 2007).

F.   *American Pipe* **Tolling Applies Even if the Original**
     **Plaintiffs Lack Standing as to Some Claims**

Defendants' argument that *American Pipe* tolling is inapplicable to either statutes of

limitations or repose where no plaintiff had standing to assert all of the claims originally plead

Def. Br. 17-18, 23), has been repeatedly rejected by numerous courts in this Circuit.  Indeed, in

the past year alone, no fewer than four district courts in this circuit have expressly rejected

Defendants' arguments.

In *Morgan Stanley,* new plaintiffs (who purchased in offerings not purchased by the

initial plaintiffs) were added after the expiration of the Securities Act's statutes of limitations and

repose.  810 F. Supp. 2d at 653-654.   In holding that the newly-added plaintiffs' claims were

tolled, the court stated:

> [U]nder American Pipe, 'members of the asserted class are treated for limitations
> purposes as having instituted their own actions.' *In re WorldCom, 496 F.3d at 255*. Thus,
> as far as the statute of repose is concerned, the New Plaintiffs - whose standing is not
> questioned here -- are deemed by virtue of the invocation of *Rule 23* to have commenced
> this action on the date the original complaint was filed.

*Id.* at 669.

Similarly, in *In re Wachovia Equity Sec. Litig.,* 753 F. Supp. 2d 326, 371-72 (S.D.N.Y.

2011) *("Wachovia")*, the court stated that, "as long as the class action purports to assert their

claims"[11]… "the failure to apply *American Pipe* tolling to this case" and permit new plaintiffs to

file claims after the original plaintiffs were found to lack standing to pursue some claims "would

undermine the policies of 'efficiency and economy of litigation' that underlie Rule 23." *Id.* at 372

(footnote and citation omitted).  Accordingly, after considering similar authority advanced by

---

[11] *quoting In re WorldCom Sec. Litig.,* 496 F.3d 245, 255 (2d Cir. 2007).

Defendants here, the court applied *American Pipe* stating "the additional Plaintiffs should not be punished for their failure to anticipate or timely remedy the standing deficiencies of the original Bond/Notes Complaint." *Id.* (emphasis added).  *See also*, *J.P. Morgan I*, 2011 U.S. Dist. LEXIS 152695, at *10-13 (E.D.N.Y. December 13, 2011) (*American Pipe* tolls statutes of limitation and repose when original plaintiff lacks standing)); *Joseph v. Wiles*, 223 F.3d at1168 ([Original plaintiff] had effectively been a party to an action against these defendants since the class action covering him was requested but never denied.").

The Seventh Circuit recently addressed this issue persuasively in *Sawyer v. Atlas Heating*, 642 F. 3d 560 (7th Cir. 2011) (*"Sawyer"),* concluding that **unless** a court has denied class certification for "reasons that would be applicable to *any later suit*," *American Pipe* tolling applies **regardless of why certification was denied**.  *Sawyer,* 642 F. 3d at 564.   As Chief Judge Easterbrook articulated:

> The Supreme Court decided *American Pipe* as it did in order to eliminate any need for members of the putative class to intervene in order to guard against an adverse outcome in the original case. *414 U.S. at 553-54*. **The Court's goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends**--denial of class certification by the judge, abandonment by the plaintiff, or any other fashion--is ***irrelevant***. (citation omitted).

*Id.* at 562.  This, of course, includes situations in which the original plaintiff lacked standing. *Id.* Defendants' authority is inapposite, as they cite to cases that hold that where the named plaintiff (unlike here) had *no* standing to assert *any* claim, (Def. Br. at 17-18, fn. 9). Those cases do not compel dismissal of New Plaintiffs' claims.[12]

---

[12] Defendants cite to *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series AR1,* 748 F. Supp. 2d 1246 (W.D. Wash. 2010) and *In re Wells Fargo Mortgage-Backed Certificates Litig.,* 2010 U.S. Dist. LEXIS  124498 (N.D. Cal. Oct. 19, 2010), as support for a wide-reaching rejection of tolling. However, those decisions are in direct conflict with the majority of recent authority from this Circuit.

Defendants further rely on other cases that are inapplicable or which have been rejected in later cases.  In *Griffin v. Singletary,* 17 F.3d 356 (l1th Cir. 1994), the court rejected attempted piggybacking of a new class action in a case where the parties had litigated the class issues for 15 years.  *In re Colonial Ltd. P'ship Litig,* 854 F. Supp. 64 (D. Conn. 1994), has fallen into disrepute because of its misapplication of *Korwek v. Hunt,* 827 F.2d 874 (2d Cir. 1987).  *See Flag,* 352 F. Supp. 2d at 455 n. 20.

### G.    Claims in the Complaint Relate Back to the First AC

Even without the benefit of tolling, the amendment of the First AC (and both subsequent amendments) to add the New Plaintiffs as named plaintiffs relates back to the filing of the First AC for statute of limitations and repose purposes pursuant to Rule 15(c). That Rule provides that "[a]n amendment to a pleading relates back to the date of the original pleading when -- the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When an amendment changes a party, Rule 15(c)(1 )(C) requires that the defendant have "received such notice of the action that it will not be prejudiced in defending on the merits .... " Fed. R. Civ. P. 15(c)(1)(C)(i).  As the Supreme Court recently held, "Rule [15] **mandates** relation back once the Rule's requirements are satisfied."  It is not discretionary *Krupski* v. *Costa Crociere S.pA.,* 130 S. Ct. 2485, 2496 (2010) (emphasis added).

### 1.    Defendants Were on Notice of the Claims

The Second Circuit has held that an amended pleading will relate back if "adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations . . ." *Stevelman* v. *Alias Research Inc.,* 174 F.3d 79, 86 (2d Cir. 1999) (citation omitted).  Similarly, "[r]elation back to add plaintiffs is appropriate where 'the status of the original plaintiff and a liberal reading of the complaint apprise defendant of the existence of

35

the additional plaintiffs existence and claims, or . . . if the defendant has had actual notice that additional parties might assert claims arising out of the transaction or occurrence at issue.'" *Perkins v. Southern New England Tel.* Co., 2009 U.S. Dist. LEXIS 103833, at *5 (D. Conn. Nov. 4, 2009) *(quoting Andujar* v. *Rogowski,* 113 F.R.D., 151, 154 (S.D.N.Y 1986)).[13]

The New Plaintiffs easily satisfy the notice prong of relation back, as the First AC unequivocally asserts claims on behalf of investors in all Funds.  qualify for relation back.  In *Advanced Magnetics Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997), an Exchange Act case in which the initially-named plaintiffs lacked standing, the Second Circuit permitted plaintiffs with standing to be substituted into the case and held their claims related back to the original complaint.   The court found "no unfairness to defendants in allowing substitution of the selling shareholders as plaintiffs on their respective claims" because the claims of the selling shareholders, conduct of the defendants and recovery sought by the plaintiffs had been sufficiently asserted, and the "[original] complaints only pertinent flaw was the identity of the party pursuing those claims…"  *Id*. at 20-21.   The court explained that "[t]he goal of relation-back principles is 'to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.'"  *Id.* at 19 (quoting Fed. R. Civ. P. 15 Advisory Committee Notes (1991)).  S*ee also Lambrinos v. Exxon Mobil Corp.*, 349 Fed. Appx. 613, 614 (2d Cir. 2009) (class representative's standing defect

---

[13] Although the Rule also states that relation back shall not be permitted in the case of a change in party unless the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(ii), district courts within the Second Circuit have found that this provision is not applicable to adding plaintiffs.  *See Perkins,* 2009 U.S. Dist. LEXIS 103833, at *12-13 (D. Conn., Nov. 4, 2009) (collecting cases).  S*ee also In re Gilat Satellite Networks, Ltd.,* 2005 U.S. Dist. LEXIS 41996, at *78 (E.D.N.Y. September 19, 2005)("Courts in this district have generally rejected the requirement that plaintiffs seeking to add new plaintiffs satisfy Rule 15(c)(3)'s 'mistake' requirement.").

should be corrected "by granting leave to amend, rather than to dismiss the affected claims");

*Plubell v. Merk & Co. Inc.*, 434 F.3d 1070, 1073 (8th Cir. 2006) (Amendment replacing plaintiff

who lacked standing related back because "[b]oth the original and the amended pleadings set

forth exactly the same conduct by Merck; the only difference is the class representative"… thus

" Merck … knew or should have known that it must defend against Plubell's claims."); *New*

*Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC,* 720 F. Supp. 2d 254,

266-267 (S.D.N.Y. 2010) (amendment adding plaintiffs who purchased new issuances of

securities related back when amendment shared "the same core factual allegations" and dealt

with "same central issues.")

### 2.    The Claims Arise From the Same Conduct, Transaction or Occurrence

In order for an amendment to relate back, the claims asserted in it must also arise "out of

the conduct, transaction, or occurrence set out-or attempted to be set out-in the original

pleading." Fed. R. Civ. P. 15(c)(l)(B).  Rule 15(c) relation back will be granted if the opposing

party is put on notice by "the general fact allegations alleged in the original pleading."

*Stevelman,* 174 F.3d at 86- 87(citing *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973)).

Here, the operative Complaint asserts violations of 10b-5 of the Exchange Act against all

Defendants based upon the same course of conduct and occurrences alleged in the First AC:

devising, executing and concealing the sub-transfer agency scheme from both the Fund's boards

and ultimately the Funds' investors.  *See* First AC ¶¶ 1-147; FAC ¶¶ 1-131.  As such, "the facts

alleged in the original complaint clearly put [Defendants] on notice of the conduct and

transactions at issue in the action" within the statutes of limitations and repose.  *Id*. at 87.

Jones is the only defendant to preemptively challenge relation back of the Operative

complaint under Rule 15(c) , but the argument that Plaintiffs have plead "entirely new" claims

against him is of no moment.  Jones Br. at 1-2, 5.  The operative Complaint, like the First AC,

alleges: (i) violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5,

against Jones; (ii) the same sub-transfer agent scheme perpetrated by all Defendants, and (iii)

Jones' knowing participation in that scheme.  *See* First AC ¶¶ 1-151; FAC ¶¶ 1-131.  Indeed, the

First AC pleads the elements of both Rule 10b-5(b) and 10b-5(a) and(c) "scheme." [14]   Moreover,

the only difference in the Section 20(a) allegations in the operative Complaint concern the parties

Jones controlled.  As with all of the other Defendants, Jones has had "adequate notice of matters

raised in the amended pleading" because the "[f]acts alleged in the [First AC] clearly put [Jones]

on notice as to the conduct and transactions at issue in this action."  *Stevelman*, 174 F.3d at 87.

In fact, since his dismissal from the action on January 11, 2011, Jones has remained cognizant of

the possibility that he might become part of the action again, as paragraph 3 of the New Plaintiff

Stipulation permits Jones to "assert his right" should Plaintiffs "amend against him." *See* Levine

Decl. Ex.4, Feb. 15, 2011, Tr. at 4:13-16, New Plaintiff Stipulation, ¶ 3, Levine Decl. Ex. 2.

    Jones cites no authority to support his argument that for 15(c) purposes (or for that

matter, *American Pipe* tolling purposes) an amended pleading involving the same facts and

conduct brought under the same provisions of the Exchange Act constitute "new claims."  Even

if he had such authority it would be of no benefit, because "[a] plaintiff can change his legal

basis for liability as long as the operative facts remain the same" *Santee v. United States of*

*America,* 2009  U.S. Dist. LEXIS 88850, at * 30 (M.D. Pa. March 24, 2009). "The fact that an

amendment changes legal theory on which the action was initially brought is of no consequence

if the factual situation upon which the action depends remains the same and has been brought to

---

[14] *See* First AC ¶¶ 140-142.  Although the language of all three subsets of Rule 10b-5 is
plead, the neither this Court nor the Second Circuit ever specifically addressed these allegations.

the defendant's attention by the original pleading." Id., at *29 (citing 6A c. Wright, A. Miller, &

M. Kane, *Federal Practice and Procedure* §1497, pp. 94-95 (2d ed. 1990 & Supp.

2008)(collecting cases). *See also Enron Corp. et. al. v. Granite Construction Co*., 2006 Bank.

LEXIS 4650, at *30 (Bankr. S.D.N.Y. May 11, 2006) (original complaint not required to "put

defendant on notice of new or additional theories that plaintiff seeks to assert against defendants,

but it must inform the defendants of the facts that support the new claim.")

### 3.      There Is No Prejudice to Jones

Jones raises the bar by additionally arguing that he should be dismissed from the

operative Complaint because Zagunis has "waived" his right to include Jones in an amendment,

and due to the "extraordinary prejudice" he has suffered and the "delay" his presence would

cause.  Jones Br. 8-9.  The facts and the law are directly against Jones, however.

First, the operative Complaint demonstrates that Jones not only participated in but

controlled the sub-transfer agent kickback scheme and controlled Daidone, and thus he is a

proper and indeed ***important*** party to this litigation.

Second, Zagunis has not "waived" any right to include Jones in an amended pleading,

and Jones presents no authority that states otherwise.  The Court explicitly authorized Zagunis, to

"amend the complaint in any way that the plaintiff deems appropriate since it is new counsel and

a new lead plaintiff" after reviewing case materials and considering the existing pleading.

Levine Decl. Ex. 3, January 13, 2012, Tr. 5:15-19.  Zagunis has complied.  Even if Zagunis were

not explicitly authorized, a new party can be added to an action "at any time, on just terms".

*Sysco Food Service of Metro New York LLC, v. Jekyll & Hyde, Inc.*, 2011 U.S. Dist. LEXIS

89176, at * 10 (S.D.N.Y. Aug. 9, 2011).  Moreover, whether considered pursuant to Rule 15

(amendment of complaint) or Rule 21 (addition of a party) the Court is "guided by the same

standard of liberality."  *JPMorgan Chase Bank, N.A. v. The IDW Group, LLC*, 2009 LEXIS

39858, at* 5 (S.D.N.Y. May 12, 2009).

Finally, Jones has not come close to meeting the standard of "prejudice and delay" required for this Court to dismiss him from the operative Complaint.  He argues that because the Plaintiffs may be filing their motion for class certification at some point soon, and because some discovery has taken place the prejudice against him "cannot be cured."  In reality there have been only a few months of document discovery, copies of which can be easily produced to Jones and Plaintiffs' have conducted no depositions.  Further, the case has procedurally "started over" with the operative Complaint and present motion to dismiss.  Courts regularly reject Jones' "prejudice and delay" argument in cases much further along.  *See Bernhard v. Central Parking System of New York, Inc.*, 2012 U.S. Dist. LEXIS 54832, at *20-21, (E.D.N.Y. Apr. 18, 2012) (amendment permitted after completion of discovery and the case marked ready for trial); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 2012 U.S. Dist. LEXIS 3358, at *17 (S.D.N.Y. Jan. 11, 2012), (granting amendment and rejecting identical arguments); *State Teachers Retirement Board v. Manufacturers Hanover Trust Company*, 654 F. 2d 843, 856 (2d Cir. 1981) (amendment appropriate in part because no summary judgment motion had been made and  no trial date set); *JPMorgan Chase Bank*, 2009 U.S. Dist. LEXIS 39858, at *12-13 (Permitting amendment in part because trial date had not yet been set); *Innocent v. Hotels, LLC*, 2006 U.S. Dist. LEXIS 55237, at *11-12,(S.D.N.Y. Aug. 9, 2006)(permitting amendment).

### 4.       The Statute of Repose Does Not Bar Claims under Rule 15(c)

There is no dispute that the First AC included the New Plaintiffs' claims. Had this Court ruled that Original Lead Plaintiffs possessed standing to pursue them, those claims would have proceeded without the necessity of adding in the New Plaintiffs.  That the Court ultimately ruled Original Lead Plaintiffs lacked standing to pursue those claims does not alter the fact that the claims were "brought" within the statute of repose.

40

The SAC and subsequent amendments that added New Plaintiffs claims are the types of amendments contemplated by Rule 15(c), and courts regularly find that the statute of repose does not bar Rule 15(c)'s application.  *See BRS Assocs., L.P.* v. *Dansker,* 246 B.R. 755, 766-67 (S.D.N.Y. 2000); *In re Boesky Sec. Litig.,* 882 F. Supp. 1371, 1380-82 (S.D.N.Y. 1995*); Sperber Adams Assocs.* v. *Jem Mgmt. Assocs. Corp.,*1992 U.S. Dist. LEXIS 96834, at *5-8 (S.D.N.Y. Feb. 7, 1992). Thus, Jones' contention that "[t]he Rule 15(c) relation back doctrine does not apply to statutes of repose" is without merit.  Jones Br. at 6.

Indeed, the court in *Thornburg* found that Rule 15(c) is applicable to the Securities Act's statute of repose in an analogous securities context.  *Thornburg,* U.S. Dist. LEXIS 133462 at *18.  As mentioned *supra*, the *Thornburg* court found that *American Pipe* tolled the statute of repose with respect to new plaintiffs' claims. *Id.* at *101.   Also, even were they not tolled, their claims related back to the initial complaint because the requirements of Rule 15(c) were satisfied when the initial complaint included those claims, and the new plaintiffs were members of the of the original asserted class, and included the same basic conduct. *Id.* at *207-209[15].

### H.    Weber's Money Fund Claims are Not Time-Barred

In the First AC, Weber, one of the Original Lead Plaintiffs, asserted claims on behalf of all the purchasers and sellers of the Funds.  *See* First AC ¶¶ 1, 8, 30.  On January 11, 2011, this Court dismissed claims in the First AC that "related to Smith Barney Funds in which no named plaintiff invested."  *In re Smith Barney Transfer Agent Litig.*, 765 F. Sup. 2d 391, 403 (S.D.N.Y. 2011).  Defendants do not dispute that Weber made Class Period investments in Smith Barney Large Cap Growth and Value Fund and the Money Fund during the Class Period.  ¶ 12; Def. Br.

---

[15]    The court also noted lack of prejudice against defendants because "if anything the Amended Complaint asserts fewer claims relating to a fewer number of offerings than the Original Complaint."  *Id.*  The same reasoning applies here.

at 23-24.  As such, although Weber's claims on behalf of all other investors in the Funds in which he *did not* invest were dismissed on Rule 10b-5(b) grounds, the claims on behalf of those Funds in which he did invest, *i.e.*, Smith Barney Large Cap Growth and Value Fund and the Money Fund, were *never dismissed*.  Therefore, Weber's Money Fund claims are not "new" any more than his Large Cap Growth and Value Fund claims are "new."

At best, Weber's Money Funds Claims are existing claims that were never dismissed, for which he has had continuous standing but which were not specifically asserted in the SAC and TAC.  But the claims of the New Plaintiffs are only considered "new" because they were dismissed and required repleading by plaintiffs who had standing.  Weber plead a claim on behalf of the Money Funds in the First AC and continues to so plead in the operative Complaint. Even if the Money Fund claims are considered "new" they unquestionably stand on equal footing with the New Plaintiffs' claims, and Defendants do not even attempt to cite authority (or even any relevant facts) that form the basis of distinguishing  them.  Weber's Money Fund Claims, even if considered new, would therefore enjoy both *American Pipe* tolling and application of relation back under Rule 15(c).

Defendants cry prejudice with regard to Weber's claim based upon the gap between the May 2011 filing of the SAC and the February 2012 service of the operative Complaint.  (Def. Br. at 24-25).  Accusations that Weber is impermissibly "changing the scope" of the litigation, or that Defendants were somehow unaware  of the "the Funds involved in Plaintiffs' claims within five years of the alleged misconduct" (*Id*.) are disingenuous for a number of reasons: (1) the Money Fund has been the subject of this litigation from the start, as it is obviously among the "Smith Barney Family of Funds" for which claims were plead in the First AC; (2) one of the "New Plaintiffs"  DVL 401k  specifically asserted claims on behalf of the Money Fund in the

May, 2011 SAC and June 2011 TAC, so it is uncontroverted that at all times, Defendants'
understanding of the scope of the litigation included the Money Funds; (3) following the filing of
the May 2011 filing of the SAC, Weber produced, among other things, records of all of his Class
Period Smith Barney Fund Transactions, including those of the Money Funds, and (4) his
investments in the Money Funds were a subject of extended deposition testimony on June 29,
2011.

In light of the facts set out above, Defendants have suffered no prejudice or surprise.
Weber's Money Fund Claim does not change the "scope" of the case, nor does it change the fact
that Defendants have, at all times, been on notice of the scope and the core facts, conduct,
occurrences from which the claims emanate.

## V.  PLAINTIFFS ADEQUATELY PLED RELIANCE UNDER RULE 10b-5(b)

Plaintiffs have pleaded, and Defendants do not dispute, that all named plaintiffs
purchased Smith Barney Fund shares during the Class Period.  ¶ 11-19.  Defendants' reliance
argument is based on the false premise that as a matter of law, dividend reinvestments are not
actionable purchases for Section 10(b)  purposes and somehow render such investors who
continue to purchase additional shares in lieu of cash dividends as "holders."  Def. Br. at 15-16.

Dividend reinvestments are actionable purchases in the context of Exchange Act
allegations.  Courts that have considered the issue do not indulge in the fiction that purchases of
securities made *during* the class period pursuant to dividend reinvestment have been "purchased
*before* the class period commenced."  Def. Br. at 15.  *See Deutschman v. Ben. Corp.*, 761 F.
Supp. 1080, 1087-1088 (D. Del. 1991) (Rejecting defendants argument that plaintiff's dividend
reinvestment stock purchases  were not purchases within the meaning of section 10(b), and
stating "it would be illogical to hold that a monthly exchange of value in terms of dollars for

Beneficial shares at market price could be anything other than purchases of securities."[16]

Courts regularly grant class certification and certify class representatives on  stock purchases through dividend reinvestment.  *See In re Chase Manhattan Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 6896, *5-6 (S.D.N.Y. May 12, 1992); *In re VMS Securities Litig.*, 136 F.R.D. 466, 475-77 (N.D. Ill. 1991) ; *In re Lilco Securities Litig.*, 111 F.R.D. 663, 673 (E.D.N.Y. 1986).

Similarly, Defendants cite no authority to support the contention that as a matter of law dividend reinvestment purchasers cannot satisfy the reliance prong of a Section 10(b) action. Under the facts plead in the Complaint, whether named Plaintiffs enjoy the *Affiliated Ute* presumption of reliance in connection with Daidone's material omissions, or justifiably relied on the integrity of Defendants in connection with the fraudulent kickback scheme, is inappropriate for determination at this stage of the litigation. *See ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805, 840 (N.D. Ill. 2008) ("whether Plaintiff's reliance was justifiable is a question of fact not properly determined on a motion to dismiss.").

Dated: April 30, 2012

Respectfully submitted,

STULL, STULL & BRODY
Jules Brody
Mark Levine
Patrick Slyne
6 East 45th Street
New York, New York  10016
(212) 687-7230

---

[16] The court in *Deutschman* further noted that defendants were unable to point to any cases in which an automatic purchasing arrangement that involved additional dollars for additional securities was held to constitute something other than the purchase of securities. Similarly here, Defendants, who cite no case law to the contrary. *Id.*

44

WEISS & LURIE

 /s/ Richard A. Acocelli
Joseph H. Weiss
Richard A. Acocelli
Michael A. Rogovin
1500 Broadway
New York, New York  10036
(212) 682-3025

*Co-Lead Counsel for Plaintiffs*

45