UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>SMITH BARNEY FUND TRANSFER AGENT LITIGATION<br><br>This document relates to:  all actions | 05 Civ. 7583 (WHP)<br>ECF case |

**REPLY IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST THOMAS JONES IN THE FOURTH CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

Alex Bourelly (Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 639-7700
Fax:  (202) 639-7890
alex.bourelly@bakerbotts.com

Jessica B. Pulliam (Admitted *pro hac vice*)
John B. Lawrence (Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Tel:  (214) 953-6500
Fax:  (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

*Counsel for Defendant Thomas W. Jones*

**Table of Contents**

I.   Plaintiffs Make No Effort to Address the Multiple Deficiencies Mr. Jones Raised With Respect To Their Section 20(a) Claims. ................................................................................. 1

II.  Plaintiffs' Section 20(a) Claims Against Mr. Jones Are New, And Barred By Repose. .......... 3

    A.  No Law Supports Any Argument That Plaintiffs' New Claims Were Tolled. ............... 4

    B.  Rule 15(c) Relation Back Does Not Apply to Statutes of Repose. ................................ 5

III. The Prejudice Is Real, And Supports Rejecting Plaintiffs' Re-Pleading. ............................... 7

IV.  The FAC Does Not Plead A Section 10(b) Claim Against Mr. Jones. ................................... 7

## Table of Authorities

Page(s)

**CASES**

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)..................................................................................................4, 5

*Brenner v. Phillips, Appel & Walden, Inc.*,
   93 Civ. 7838, 1997 WL 33471053 (S.D.N.Y. July 22, 1997) ...................................................8

*BRS Assocs., L.P. v. Dansker*,
   246 B.R. 755 (S.D.N.Y. 2000)...................................................................................................6

*Genesee Co. Employees' Retirement System v. Thornburg Mortg. Sec. Tr.*,
   No. CIV 09-0300, 2011 WL 5840482 (D. N.M. Nov. 12, 2011) .........................................6, 7

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005).......................................................................................8

*In re Boesky Sec. Litig.*,
   882 F. Supp. 1371 (S.D.N.Y. 1995)..........................................................................................6

*In re Lehman Bros. Sec. Litig and ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011)...................................................................................5, 7

*In re Livent, Inc. Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999).........................................................................................1

*In re Refco, Inc. Sec. Litig.*,
   609 F. Supp. 2d 304 (S.D.N.Y. 2009).....................................................................................10

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
   822 F. Supp. 2d 368 (S.D.N.Y. 2011).......................................................................................5

*Joseph v. Wiles*,
   223 F.3d 1155, 1168 (10th Cir. 2000) ...................................................................................4–5

*Merck & Co., Inc. v. Reynolds*,
   130 S. Ct. 1784 (2010)...............................................................................................................5

*P. Stolz Fam. P'ship v. Daum*,
   355 F.3d 92 (2d Cir. 2004).........................................................................................................6

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010).....................................................................................................10

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ..................................................................................8

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) ................................................................................8, 9

*SEC v. PIMCO Adv. Fund Mgmt. LLC*,
    341 F. Supp. 2d 454 (S.D.N.Y. 2004) ..................................................................................9

*Sperber Adams Assoc. v. JEM Mgmt. Assocs. Corp.*,
    No. 90 Civ. 7405, 1992 WL 28444 (S.D.N.Y. Feb. 7, 1992) ..............................................5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................................3

*Utah v. American Pipe & Constr. Co.*,
    473 F.2d 580 (9th Cir. 1973) ................................................................................................4

**STATUTES**

15 U.S.C. § 80a-35(a) (Investment Company Act § 36) ..............................................................10

28 U.S.C. § 1658(b) .......................................................................................................................6

Plaintiffs fail to substantively address any of Mr. Jones's arguments concerning the deficiencies in their Section 20(a) claims against him, and cite only to off-point authority in arguing that those claims can proceed following the expiration of the statute of repose. Recognizing that the Section 20(a) battle is lost, Plaintiffs seek to open up a new front by professing that they intended in the FAC to re-assert their previously dismissed Rule 10b-5(a) and (c) claims. They do so despite affirming to the Court days before Mr. Jones filed his Motion that "the claims against Mr. Jones are not claims that were previously brought." Their letter, on which Mr. Jones relied in filing his motion, listed only two claims that "the [FAC] . . . asserts against Mr. Jones," for "secondary liability as a control person (Section 20(a))." (Ex. A to Mot.) For the reasons discussed in Mr. Jones's Motion and herein, Plaintiffs' claims cannot survive.

## I. Plaintiffs Make No Effort to Address the Multiple Deficiencies Mr. Jones Raised With Respect To Their Section 20(a) Claims.

*Plaintiffs fail to plead primary violations.* (Mot. at 10, 11–12, 15.) Plaintiffs' rote and conclusory allegations simply do not meet their burden to plead with particularity the alleged primary violations by Gerken and Peteka. Rather than address this deficiency with any explanation, Plaintiffs simply state, without comment, that "[t]he Complaint alleges that . . . Messrs. Gerken and Peteka, though not named as defendants, also committed primary violations of Section 10(b) and Rule 10b-5(b). ¶¶ 27-28." (Opp. at 20.)

*Plaintiffs fail to plead the requisite control.* (Mot. at 10, 12–14, 15.) "Officer or director status alone does not constitute control" for the purposes of a Section 20(a) claim. *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999). Yet that is all Plaintiffs offer. In response to Mr. Jones's Motion, Plaintiffs assert that he controlled Smith Barney and Global Markets because "they were within the CAM business unit of which Jones was chief executive officer"; that he controlled Daidone because "Daidone was a senior vice president and director of

-1-

Smith Barney and managing director of Global Markets"; and that he controlled Gerken and Peteka because "both held positions subordinate to, and in entities within CAM, and Jones was CAM's chief executive officer and highest ranking officer." (Opp. at 20–21.)

Plaintiffs' assertion that Mr. Jones controlled the alleged violations also relies solely on his position at CAM. With respect to the Rule 10b-5(b) primary violations, Plaintiffs claim that because "the [allegedly misleading] statements were signed by Jones's subordinates, Jones possessed the power to cause Daidone, Peteka and Gerken to either not make any statements or to make statements that contained no material omissions." (*Id*. at 21.) This is not only legally insufficient, but it also misconstrues the allegations in the FAC—there is no allegation that Mr. Jones had any position at the entities at which Gerken, Peteka, and Daidone worked. (FAC ¶¶ 23, 27, 28.) With respect to Mr. Jones's control over the alleged scheme primary violations, Plaintiffs explain only that "Yellin . . . reported to Jones [and] supervised the transfer agency project." (Opp. at 20.) Yet Yellin is not alleged to have committed any primary violation, and his responsibilities ended before the transfer agency arrangement was presented to any Fund. (FAC ¶ 26.)

***Plaintiffs fail to plead scienter, i.e., that Mr. Jones was in any meaningful sense a culpable participant.*** (Mot. at 10–11, 14, 16.) With respect to control over the alleged scheme, Plaintiffs do not address their own allegations that before approving the July 1998 recommendation (the last action they allege Mr. Jones took, and the last point in time he is alleged to have any knowledge of the arrangement), Mr. Jones was specifically told that the proposal was consistent with CAM's fiduciary obligations to the Funds, and that the Funds' Chairman was comfortable with that proposal and expected the Boards would also be supportive. (FAC ¶¶ 76, 78; Mot. at 16.)

With respect to control over the alleged misrepresentations, Plaintiffs merely assert conclusions that Mr. Jones "failed to provide the Fund boards with material information" and that he "*must have known* that the statements listed in Appendix A to the Complaint were materially misleading when issued." (Opp. at 21 (emph. added).) But there is no allegation indicating that Mr. Jones had any role in or responsibility for any representation made to the Boards or to the Funds (the first of which was made eight months *after* his approval of the July 1998 proposal). (Mot. at 14.)

The most compelling inferences to be drawn from Plaintiffs' own allegations are that Mr. Jones believed the transfer agency proposal he approved was consistent with fiduciary obligations, and that he had no responsibility for, participation in, or knowledge of any alleged misstatements. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## II. Plaintiffs' Section 20(a) Claims Against Mr. Jones Are New, And Barred By Repose.

Plaintiffs cite no authority for their illogical argument that their control liability claims—which they admit "concern [different] parties Jones controlled" (Opp. at 38)—are not new claims. A difference in *controlled parties* is of course a difference in the central element of a *control* liability claim, but as discussed in Mr. Jones's Motion (at 5–6) that is just one of several differences between the old and new claims.

The necessary elements of a Section 20(a) claim are: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." (Dkt. No. 121 at 17.) None of Plaintiffs' current Section 20(a) claims shares any of the elements with Plaintiffs' prior Section 20(a) claim. Each current claim alleges a new primary violation, and thus also new scienter and new control over those violations: in Count III, over the Smith Barney Defendants' scheme; and in Count IV, over Daidone's, Peteka's, and Gerken's

-3-

misrepresentations.

Plaintiffs conceded this when they represented that "the claims against Mr. Jones [in the Fourth Amended Complaint] are *not* claims that were previously brought." (Ex. A to Mot (emph. added).)

### A.     No Law Supports Any Argument That Plaintiffs' New Claims Were Tolled.

Plaintiffs incorrectly suggest that their quarrel concerning *American Pipe* is relevant to their Section 20(a) claims against Mr. Jones.  It is not.

In *American Pipe*, following the district court's denial of class certification multiple members of that putative class moved to intervene to assert the claim themselves.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 544 (1974).   They did not seek to bring *new* claims not brought by the former lead plaintiff, but rather "sought only to present to the court in the very form the court had indicated it preferred *the very claims already tendered to the court on their behalf* by [the former lead plaintiff]."  *Utah v. American Pipe & Constr. Co.*, 473 F.2d 580, 583–84 (9th Cir. 1973) (emph. added).  The Supreme Court affirmed the Ninth Circuit's ruling that intervention was proper, holding that the *original filing*, among other things, "notifie[d] the defendants . . . of *the substantive claims being brought against them*."  *American Pipe*, 414 U.S. at 555 (emph. added).

While Plaintiffs cite multiple opinions interpreting *American Pipe* to also allow tolling of statutes of repose, none hold that the statute of repose is tolled for *new* claims which were not asserted by any plaintiff prior to the expiration of the period.  In *Joseph v. Wiles*, the only appellate opinion Plaintiffs cite on this issue, the very quotation Plaintiffs include in their Opposition confirms that the holding does not apply to the new claims against Mr. Jones:

> Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished.  ***Here, the claim was brought within this period on behalf of a class of which Mr.***

> ***Joseph was a member.***  Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve "tolling" at all.  Rather, Mr. Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied.

223 F.3d 1155, 1168 (10th Cir. 2000), *quoted in* Opp. at 26 (emph. added).

Plaintiffs' argument that they have "effectively been a party" since the filing of this suit as a putative class action cannot save their new claims against Mr. Jones.  None of the opinions Plaintiffs cite hold that tolling applies to claims not brought by any plaintiff until after the expiration of the repose period.  (Opp. at 25–27; *see, e.g., Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 380 (S.D.N.Y. 2011) (plaintiffs had previously been members of putative class in separate action that "raised the same claims plaintiffs raise in connection with the same securities plaintiffs purchased—toll[ing] the period of repose pursuant to the doctrine of *American Pipe*").)

## B.     Rule 15(c) Relation Back Does <u>Not</u> Apply to Statutes of Repose.

The law is clear: "the Rule 15(c) relation back doctrine does not apply to statutes of repose."  *In re Lehman Bros. Sec. Litig and ERISA Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011).  This is consistent with the purposes of the rule, the Rules Enabling Act, this Circuit's law on repose, and the Supreme Court's plain edict that the "unqualified bar on actions instituted '5 years after such violation' giv[es] defendants total repose after five years."  *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010).  With no law to support tolling of the new claims against Mr. Jones, Plaintiffs cling to those claims through relation back.  The opinions they cite have been rejected, or are not applicable to these facts.

In the first, *Sperber*, the word "repose" appears nowhere in the opinion.  *Sperber Adams Assoc. v. JEM Mgmt. Assocs. Corp.*, No. 90 Civ. 7405, 1992 WL 28444 (S.D.N.Y. Feb. 7, 1992).  The court identified the period it was analyzing as a "statute of limitations," and thus never

decided the issue of relation back for statutes of repose.  *Id.* at *2.

The next is *In re Boesky Sec. Litig.*, 882 F. Supp. 1371 (S.D.N.Y. 1995), whose reasoning has since been rejected by the Second Circuit.  There, plaintiffs sought to add a Section 10(b) claim after the repose period had expired.  The court held that they could do so under relation back, basing its holding on an understanding that the expiration of the period "only eliminates a remedy; it does not extinguish the right to recover."  *Id*. at 1381.  The Second Circuit has since made clear that while "[s]tatutes of limitations bear on the availability of remedies . . . , statutes of repose affect the availability of the underlying right:  That right is no longer available on the [period's] expiration."  *P. Stolz Fam. P'ship v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).

Moreover, the *Boesky* holding was guided by an underlying constitutional dispute not at issue here.  In response to the Supreme Court's 1991 *Lampf* opinion, Congress added a section to the Exchange Act stating that the periods of limitation and repose set in *Lampf* did not apply to any action commenced pre-*Lampf*.  The *Boesky* court believed that if it read the *Lampf* statute of repose it was applying to extinguish the substantive claim, and not just the remedy, "§ 27A's revival of § 10(b) claims that had been extinguished by *Lampf*'s three-year repose period might violate due process."  *Id*. at 1381.  Such concerns are no longer applicable; the 2002 Sarbanes-Oxley Act replaced the former statute with the one applicable to this action: 28 U.S.C. § 1658(b).

For the same reasons, Plaintiffs' reliance on *BRS*—which relies on the incorrectly decided *Boesky* opinion with no discussion or analysis of its own—is unpersuasive.  *BRS Assocs., L.P. v. Dansker*, 246 B.R. 755, 767 (S.D.N.Y. 2000).

Plaintiffs' citation to *Thornburg* also provides no support.  *Genesee Co. Employees' Retirement System v. Thornburg Mortg. Sec. Tr.*, No. CIV 09-0300, 2011 WL 5840482 (D. N.M. Nov. 12, 2011).  This recent unpublished District of New Mexico opinion stated—in dicta

only—that the expiration of repose did not prohibit "relation back for new plaintiffs" asserting old claims. *Compare id*. at \*64, \*52, \*60 with *Lehman*, 800 F. Supp. 2d at 483.

### III. The Prejudice Is Real, And Supports Rejecting Plaintiffs' Re-Pleading.

Giving Mr. Jones's repose argument short-shrift, Plaintiffs focus on Mr. Jones's claims of prejudice. But their argument that "there have been only a few months of document discovery" misses the point. (Opp. at 40.) All discovery from Plaintiffs on class certification "is already finished." (Sept. 15, 2011 Hearing Tr. 4:24–5:2; *see* Jan. 13, 2012 Hearing Tr. 9:21–10:1, 11:13–15.) At this point, all that remains "is just finishing up the briefing." (Jan. 13, 2012 Hearing Tr. 9:21–24.) Plaintiffs' delay in asserting new claims against Mr. Jones thus left him with no opportunity to participate in any class certification discovery, including the depositions of the nine Lead Plaintiffs. If Plaintiffs' claims against Mr. Jones survive, he will be irreparably prejudiced by this inability to meaningfully participate in this critical stage of the proceedings.

Plaintiffs claim that Mr. Jones "has remained cognizant of the possibility that he might become part of the action again," by virtue of a February 4, 2011 stipulation, but Mr. Jones was not a party to that stipulation. (Ex. 2 to Opp. at 3.) In any event, counsel told this Court after the filing of that stipulation that "we don't intend to replead against Mr. Jones at this point." (Feb. 16, 2011 Hearing Tr. 8:15–16.) True to their word, the Amended Complaint did not assert any claim against Mr. Jones—nor did the Second or Third Amended Complaints.

### IV. The FAC Does Not Plead A Section 10(b) Claim Against Mr. Jones.

Plaintiffs' contention that they intended to assert a primary claim against Mr. Jones is belied by their allegations and actions. Though Count I speaks vaguely of "Defendants," in discussing Mr. Jones specifically Plaintiffs indicate that they assert only control-person claims against him. (FAC ¶¶ 123–131, 22.) Plaintiffs confirmed in their March 14 letter that the FAC's "claims against Mr. Jones are not claims that were previously brought." (Ex. A to Mot.)

Plaintiffs concede in their Opposition that their scheme liability claims, unlike the new control person claims, are "claims that were previously brought."  "The operative Complaint, like the First AC, alleges . . . Jones' knowing participation in th[e] scheme," and "pleads the elements of both Rule 10b-5(b) and Rule 10b-5b(a) and (c) 'scheme.'"  (Opp. at 38; *see* Am. Compl. ¶ 142.)  Plaintiffs recognize that a claim may be withdrawn where there is "explicit intention" to do so.  (Opp. at 9 n. 4.)  To the extent the FAC included a Section 10(b) claim against Mr. Jones to begin with, Plaintiffs' letter expressed an explicit intention to withdraw it.  *See also Brenner v. Phillips, Appel & Walden, Inc.*, 93 Civ. 7838, 1997 WL 33471053, at *4 (S.D.N.Y. July 22, 1997) (recognizing that a claim may be "*implicitly* . . . abandoned" (emph. added)).

That Plaintiffs never intended to assert any primary scheme liability claim against Mr. Jones is also evident from the dearth of allegations supporting such a claim.  To state such a claim, Plaintiffs had to allege (1) that Mr. Jones committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005).  The claim "hinges on the performance of an inherently deceptive act that is distinct from the alleged misstatement[s]."  *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).  Rule 10b-5(a) and (c) "impose liability on any person who *substantially participates* in a manipulative or deceptive scheme."  *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (emph. in original).

There is no allegation Mr. Jones committed *any* deceptive act in furtherance of the alleged scheme.  The factual allegations with respect to Mr. Jones are not new.  Their sum total is that he allegedly: (1) received Yellin's April 1998 recommendation (FAC ¶ 60); (2) instructed Yellin to continue negotiations with First Data (*id.* ¶ 63), and (3) upon receiving a revised recommendation in July 1998—which informed him that the proposal would result in reduced

fees and improved service for the Funds, that it complied with CAM's fiduciary obligations to the Funds, and that the Funds' chairman was comfortable with the proposal—he approved moving forward (*id*. ¶¶ 73–79). These allegations are a far cry from Plaintiffs' assertion that Mr. Jones "led the charge with respect to the transfer agency kickback scheme." (Opp. at 2–3.) There is no particularized allegation that Mr. Jones took any action to deceive investors, let alone sufficient allegations of Mr. Jones's "substantial participation" in the fraudulent scheme. *See Lee*, 720 F. Supp. 2d at 334.

The allegations in the FAC also do not establish that there was any "scheme to defraud." Plaintiffs ignore entirely the only case addressing whether alleged breaches of fiduciary duties to mutual fund investors can constitute such a scheme. *See SEC v. PIMCO Adv. Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 469 (S.D.N.Y. 2004). In *PIMCO*, the CEO of an investment advisor arranged for a firm to engage in market-timing activities, which were inconsistent with representations that the funds would avoid such activities. While the court noted that this conduct "[a]rguably . . . violated . . . fiduciary duties," the market-timing scheme was not "*per se* illegal" and "such potential [fiduciary] violations do not by themselves result in violations of Rule 10b-5." *Id*. at 469. Mr. Jones, who was not an officer of any investment advisor, is even further removed from the alleged scheme than the CEO in *PIMCO*.

Plaintiffs' allegations of scienter with respect to Mr. Jones are identical to their allegations of his "culpable participation" in the Section 20(a) claim discussed above, and fail for the same reasons. The only such allegation Plaintiffs raise in their Opposition to argue Mr. Jones possessed scienter is their conclusory assertion Mr. Jones supposedly acted in "[k]nowing" violation of "the Smith Barney Defendants' fiduciary obligations." (FAC ¶ 79; *see* Opp. at 12.) Again, Plaintiffs provide no facts supporting this conclusion or any explanation as to how their

assertions of scienter accord with their own clear allegations indicating Mr. Jones approved the July 1998 recommendation believing it complied with fiduciary obligations. (FAC ¶¶ 76, 78.)

Plaintiffs also fail to allege particularized facts supporting the requisite element of reliance. *See In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304 (S.D.N.Y. 2009). The *Refco* court dismissed the scheme liability claim against Refco's outside counsel, holding that though both the firm and the supervising attorney were intimately involved in the scheme—and the plaintiffs "clearly alleged . . . facts that give rise to a strong inference of scienter"—the allegations did not indicate that the plaintiffs relied on the firm's or the attorney's conduct. *Id*. at 306–09, 314–316. In so holding, the court noted that "[t]he issue is not the distance between the issuer and the defendant, but rather the distance between the defendant's conduct and the investor." *Id*. at 315. The Second Circuit upheld this dismissal, agreeing that because "plaintiffs did not rely on any of Mayer Brown's work on the fraudulent load transactions, . . . they failed to state a claim" under Rule 10b-5(a) and (c). *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010).

Likewise, with no allegation they knew of Mr. Jones's minimal connection to the transfer agency project, Plaintiffs cannot contend they relied on those actions. Nor do they. Instead, Plaintiffs claim only that they "relied upon the expectation, that in connection with purchases and sales of Funds' shares, Defendants would act in accordance with their fiduciary obligations." (Opp. at 13.)  But there is no allegation that Mr. Jones specifically—who was neither an investment advisor nor an officer of any Fund's investment advisor—owed any fiduciary duty. (*See* FAC ¶¶ 7, 118; Investment Company Act § 36, (15 U.S.C. § 80a-35(a)).) Thus while Plaintiffs claim generally that reliance is pleaded because "Defendants' *conduct* deceived the Plaintiffs," (Opp. at 14 (emph. in original)), there is no such allegation with respect to Mr. Jones.

-10-

Dated: May 11, 2012

By: /s/ Alex Bourelly
Alex Bourelly (Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7700
Fax: (202) 639-7890
alex.bourelly@bakerbotts.com

Jessica B. Pulliam (Admitted *pro hac vice*)
John B. Lawrence (Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Tel: (214) 953-6500
Fax: (214) 953-6503
jessica.pulliam@bakerbotts.com
john.lawrence@bakerbotts.com

*Counsel for Defendant Thomas W. Jones*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2012, I served the foregoing on all parties by filing this document with the Clerk of Court using the CM/ECF system, pursuant to Local Civil Rule 5.2.

/s/ Alex Bourelly
Alex Bourelly