UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE SMITH BARNEY
TRANSFER AGENT LITIGATION

This document applies to all actions

---

05 Civ. 7583 (WHP)

ECF Case

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS COUNTS I AND II OF THE FOURTH CONSOLIDATED AND AMENDED COMPLAINT BY DEFENDANTS SMITH BARNEY FUND MANAGEMENT LLC, CITIGROUP GLOBAL MARKETS INC. AND LEWIS E. DAIDONE

MORVILLO LLP
1101 Seventeenth Street NW, Suite 1006
Washington, DC 20004
(301) 807-9300

SCHULTE ROTH & ZABEL LLP
1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
(202) 729-7470

*Counsel for Defendants Smith Barney Fund Management LLC, Citigroup Global Markets Inc. and Lewis E. Daidone*

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

*Counsel for Defendants Smith Barney Fund Management LLC and Citigroup Global Markets Inc.*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................... ii

I. Plaintiffs' "Scheme" Liability Claims Fail as a Matter of Law ............................................. 1

   A. Absent Inherently Deceptive Conduct, There is No "Scheme" Liability ........................ 1

   B. Unable to Assert Reliance, Plaintiffs' "Scheme" Liability Claims Fail ......................... 2

II. *Janus* Requires Dismissal of Claims against Daidone for Failing to Assert His "Ultimate Authority" Over Alleged Misstatements in Fund Documents .................................................. 4

III. Lead Plaintiff Zagunis and Other Named Plaintiffs Cannot Show Reliance ........................... 5

IV. New Plaintiff and Money Funds Claims are Time-Barred ....................................................... 5

   A. *American Pipe* Tolling Does Not Apply When Plaintiffs Lack Standing ........................ 5

   B. Plaintiffs' Cases Claiming That *American Pipe* Tolls Claims for Plaintiffs Who Lack Standing are Inapposite ................................................................................................... 6

   C. The Statute of Repose May Not Be Tolled ..................................................................... 7

   D. Even if Otherwise Permitted, Equitable Tolling is Not Appropriate Here ..................... 9

   E. New Plaintiff Claims Do Not Relate Back to the Original Complaint ........................... 9

   F. Weber's Money Funds Cash Portfolio Claims are Time-Barred .................................. 10

V. Conclusion .............................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Advanced Magentics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) .......................... 9

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ................................................................ passim

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y. 2011) ............. 8, 10

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) .................................................. 3

*In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) .......................... 8, 9

*In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011) .......................... 8, 9

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650 (S.D.N.Y. 2011) ............................................................................................................................................. 6, 8

*In re Optimal U.S. Litig.*, No. 10 Civ. 4095(SAS), 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ... 4

*In re Smith Barney Transfer Agent Litigation*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. Apr. 17, 2006) ....................................................................................................... 7

*In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ........................................ 7

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, No. 09 Civ. 8755 (SHS) (S.D.N.Y. Mar. 15, 2011) .......... 8

*Janus Capital Grp. v. First Derivative Traders*, 131. S. Ct. 2296 (2011) ....................................... 4

*Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010) ........................................................................... 7

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653(PAC), 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ............................................................................................... 6, 9

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86 (2d Cir. 2010) ................................................................................................................................................. 2

*Perez-Rubio v. Wyckoff*, 718 F. Supp. 217 (S.D.N.Y. 1989) ........................................................... 5

*Plumbers & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08 CV 1713 (ERK)(WDW), 2011 U.S. Dist. LEXIS 152695 (S.D.N.Y. Dec. 13, 2011) ................................................................................................................................................. 7

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011) ...................... 7

*SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ........................................................................ 2

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) ............................................................. 2

*SEC v. PIMCO Adv. Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 469 (S.D.N.Y. 2004) .......................2

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) ..............................3

## STATUTES AND RULES

28 U.S.C.A. § 1658(b)(2) (2002).......................................................................................................7

Fed. R. Civ. P. 15(c) .........................................................................................................................9

Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss Counts I and II of the FAC.

## ARGUMENT

### I. Plaintiffs' "Scheme" Liability Claims Fail as a Matter of Law

#### A. Absent Inherently Deceptive Conduct, There is No "Scheme" Liability

A viable "scheme" liability claim under Rule 10b-5(a) and (c) must allege conduct that is inherently deceptive even without an accompanying misstatement. Merely relabeling disclosure claims as a "scheme" is insufficient. *See* Def. Mem. 5-6. Facing this obstacle, Plaintiffs now argue for the first time that the FAC's claims are not disclosure driven, but are based on an inherently deceptive transfer agency arrangement. Opp. 9-11. But neither the FAC nor Plaintiffs' Opposition plausibly asserts that the conduct at issue—internalizing the transfer agency function, *id.* at 10—is *per se* fraudulent or inherently deceptive. Nor could they, as there are many legitimate business reasons to internalize transfer agency functions. In contrast, conduct that courts recognize as inherently deceptive—*e.g.*, "sham" transactions, market manipulation, and misappropriating funds—is *never* legitimate or proper. Def. Mem. 6-7.

Each of Plaintiffs' three prior complaints considered the purported misstatements and "scheme" so intertwined that they alleged them as a single count. *See* Dkt. No. 55 (¶¶ 140-147); Dkt. No. 129 (¶¶ 145-152); Dkt. No. 141 (¶¶ 145-152). The Second Circuit also recognized that the core allegations in Plaintiffs' prior complaint—to which Plaintiffs now claim the FAC "relates back," Opp. 41—stem from allegedly improper disclosures, not inherently deceptive

---

[1] Smith Barney Fund Management LLC, Citigroup Global Markets, Inc. and Lewis E. Daidone ("Daidone") (collectively, "Defendants"). Undefined terms used herein adopt the meanings ascribed to them in Defendants' opening memorandum of law. Dkt. No. 221 ("Def. Mem.").

DOC ID-18565762.1

conduct. *See Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 93-95 (2d Cir. 2010).

Plaintiffs' repeated references to a purported "kickback scheme" do not alter the fundamental nature of their claims. The FAC, like its predecessors, "defines the nature of the purported scheme by explicit reference to the alleged public misrepresentations." *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) (dismissing "scheme" liability claim that failed to assert inherently deceptive conduct). The bulk of the FAC, ¶¶ 44-116, describes the transfer agent arrangement and related fees—exactly what Plaintiffs allege was omitted or obscured in public filings. Indeed, throughout the FAC and its Appendix, Plaintiffs allege numerous misstatements. *See id.* ¶¶ 134-145 and Appendix. These allegations belie Plaintiffs' attempt to recast their claims as based upon inherently deceptive conduct. *See SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006) (rejecting "scheme" liability where "core misconduct" was misstatement).

Plaintiffs' Opposition and the FAC are no more than an attempt to revive previously-dismissed fiduciary duty claims. *See* FAC ¶¶ 2, 3, 7, 118, 125-27, 129 (asserting fiduciary breach claims); Opp. 10, 12-13 (asserting violations of "fiduciary obligations"). But as both this Court and the Second Circuit have held, Plaintiffs lack standing to pursue derivative fiduciary duty claims, which cannot support "scheme" liability. Def. Mem. 7-8. And even if Plaintiffs could assert them, fiduciary breach claims would not support "scheme" liability. *See SEC v. PIMCO Adv. Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 469 (S.D.N.Y. 2004) (dismissing scheme liability claims based on alleged fiduciary breach by investment advisor).

**B.    Unable to Assert Reliance, Plaintiffs' "Scheme" Liability Claims Fail**

To assert "scheme" liability, the FAC must plead all required elements under Rules 10b-5(a) and (c), including reliance. Def. Mem. 8-9. As the Supreme Court stated in dismissing

similar claims, simply labeling conduct a "scheme" "does not answer the objection that [Plaintiffs] did not in fact rely upon [Defendants'] own deceptive conduct." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 160 (2008). Even cases Plaintiffs cite recognize they "may not cast claims of misrepresentations as claims under Rule 10b-5(a) and (c) and thus evade the pleading requirements imposed in misrepresentation cases." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005). Here, Plaintiffs assert that the purported "scheme"—improper internalization of the transfer agency function—was not disclosed. FAC ¶ 145 ("scheme remained undisclosed until June 2005"), ¶ 146 (alleging "undisclosed scheme"). Unable to assert reliance on undisclosed conduct, Plaintiffs try to confuse the issue by claiming they were not the intended target of the alleged "scheme." Opp. 15 ("the purpose of Defendants' conduct was to mislead the Funds' boards.") Yet Plaintiffs never explain how they could have "relied" on conduct they did not know about, much less identify such an allegation in the FAC.[2]

Instead, Plaintiffs assert a form of negative assurance. That is, rather than rely on the undisclosed conduct, they claim reliance on their purported "expectation" that Defendants would *not* run afoul of their fiduciary duties. Opp. 13; *see also* FAC ¶ 129. This argument only confirms Plaintiffs' improper attempt to revive dismissed fiduciary duty claims.

Plaintiffs' only other response is that cases dismissing "scheme" liability claims for failure to plead reliance are somehow distinguishable based on causation. Opp. 13-16. This too fails. Because Plaintiffs could not have relied on conduct they assert was undisclosed, Plaintiffs cannot plead reliance and their "scheme" liability claims fail.

---

[2] While Plaintiffs cite FAC ¶ 130 as support for their supposed reliance, Opp. 13-14, that paragraph merely asserts Defendants' failure to disclose the scheme, not Plaintiffs' reliance.

## II. *Janus* Requires Dismissal of Claims against Daidone for Failing to Assert His "Ultimate Authority" Over Alleged Misstatements in Fund Documents

While conceding Daidone cannot be liable for Fund prospectuses he did not sign, Plaintiffs contend, Opp. 16-19, he is liable for statements in prospectuses he did sign *even though the FAC does not assert he had "ultimate authority" for such statements.* Plaintiffs' argument conflicts with *Janus*' holding that the "maker of a statement is the person or entity *with ultimate authority* over the statement, including its content and whether and how to communicate it." *Janus Capital Grp. v. First Derivative Traders,* 131 S. Ct. 2296, 2302 (2011) (emphasis added).

Defendants previously demonstrated the FAC's failure to allege Daidone's "ultimate authority." Def. Mem. 10-11. Rather than address—much less dispute—this failure, Plaintiffs argue that "ultimate authority" is somehow "mooted" or "subsumed" by signing an allegedly misleading document. Opp. 19. This ignores *Janus'* recognition that while "attribution is necessary," "ultimate authority" is a distinct and separate requirement for liability. *Janus,* 131 S. Ct. at 2302; *see also In re Optimal U.S. Litig.*, No. 10 Civ. 4095(SAS), 2011 WL 4908745, *5 (S.D.N.Y. Oct. 14, 2011) (reversing pre-*Janus* ruling that defendant was liable absent "ultimate authority" allegation).

As in *Janus*, the Funds had the "statutory obligation" to file the prospectuses, which the FAC asserts the Funds "caused" to be filed. Def. Mem. 10. Neither the FAC nor Plaintiffs' Opposition alleges that Daidone—as opposed to the Funds themselves, the boards who oversaw them, or the lawyers who prepared the prospectuses—had "ultimate authority" for the alleged misstatements. *Id.* at 11. At best, the FAC alleges Daidone assisted those with ultimate authority for the Fund's alleged misstatements. *See* FAC ¶¶ 23, 29, 47. That Daidone was one of numerous signatories to the prospectuses does not establish his "ultimate authority" for those Fund filings, requiring dismissal of primary liability claims against him under Rule 10b-5(b).

### III. Lead Plaintiff Zagunis and Other Named Plaintiffs Cannot Show Reliance

Contrary to Plaintiffs' assertion, Defendants do not argue the "false premise" that dividend reinvestments by Lead Plaintiff Zagunis and others are not securities. Opp. 43. Instead, Defendants showed that alleged dividend reinvestments by those Plaintiffs are not actionable because Plaintiffs do not allege they *relied* on representations during the class period, when dividend reinvestments were being made for them *automatically*. Def. Mem. 15-16. Plaintiffs do not dispute that Plaintiffs Zagunis, DVL 401(k), Luff, Miller, and Shah made no investment decisions during the putative class period. *See, e.g.*, Dkt. No. 227, Exh. GGG, Luff testimony at 22:21-24:15 (testifying dividend reinvestment was "automatic" and that she gave the instruction for the automatic reinvestments "before the class period").

Nor do Plaintiffs dispute that "an alleged fraud cannot be in connection with the purchase or sale of a security if the transaction occurs prior to the fraud." *Perez-Rubio v. Wyckoff*, 718 F. Supp. 217, 236 (S.D.N.Y. 1989). For dividend reinvestments, the operative "transaction" was the purchase of Fund shares with an automatic reinvestment option, a "transaction" that pre-dated the class period. There is no reason to defer a decision on reliance here since Plaintiffs have already produced transaction records and deposition testimony showing their non-reliance.[3]

### IV. New Plaintiff and Money Funds Claims are Time-Barred

#### A. *American Pipe* Tolling Does Not Apply When Plaintiffs Lack Standing

Plaintiffs' insistence that *American Pipe* either legally or equitably tolls their claims ignores a fatal flaw—there can be no tolling where no named plaintiff had standing to assert claims in the first place. *American Pipe* tolling "should not apply where the plaintiff that

---

[3] *See* Dkt. No. 227, Exhs. NNN-PPP, UUU, VVV-WWW, AAAA (account statements of Plaintiffs DVL 401(k), Luff, Miller, Shah, and Zagunis); FFF-MMM (deposition excerpts of Plaintiff DVL 401(k) Plan, Luff, Miller, Rees, Shah, Weber, Robert Yiambellis, and Zagunis).

brought the dismissed claim was found by the court to lack standing .... [W]here a Plaintiff lacks standing—there is no case... And *if there is no case, there can be no tolling.*" *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653(PAC), 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) (citations omitted; emphasis added) ("*DLJ Mortg.*"); *see also* Def. Mem. 17-18. When it held that "Plaintiffs lack standing to pursue claims related to [funds] in which no named plaintiff invested," Dkt. No. 121 at 12, this Court determined there was "no case." Because the New Plaintiffs' Claims were not asserted by a Plaintiff with standing to do so until *after* the five-year statute of repose expired, there "can be no tolling" and the claims are untimely. Def. Mem. 16.

That the Consolidated and Amended Complaint purported to assert claims concerning all 105 Funds misses the point. *See* Opp. 21, 36. *American Pipe* recognizes that tolling applies only to "asserted members of the class *who would have been parties* had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (emphasis added). The legal construct *American Pipe* indulges—that unnamed class members are parties—does not authorize tolling for claims *no* named plaintiff had standing to assert. *American Pipe*'s rationale has no application here, where Plaintiffs lacked standing and thus were *never* really parties to the suit. *See* Def. Mem. 17-18.

### B. Plaintiffs' Cases Claiming that *American Pipe* Tolls Claims for Plaintiffs Who Lack Standing are Inapposite

Plaintiffs' argument that four district courts in this circuit have rejected Defendants' arguments is misleading. Opp. 33. In fact, the three principal cases on which Plaintiffs rely are distinguishable. Two permitted additional plaintiffs to be added because plaintiffs reasonably believed their interests were represented or failed to anticipate standing deficiencies. *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 670 (S.D.N.Y.

DOC ID-18565762.1                           -6-

2011) ("*Morgan Stanley*") ("a reasonable class member could have believed that [plaintiff] ha[d] standing to sue"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372 (S.D.N.Y. 2011) (additional plaintiffs "should not be punished for their failure to anticipate or timely remedy the standing deficiencies of the original [] Complaint."). No such finding is possible here, since putative class members and their counsel either had notice or argued that named Plaintiffs lacked standing. *See In re Smith Barney Transfer Agent Litigation*, 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *10 (S.D.N.Y. Apr. 17, 2006).

The third case, *Plumbers & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I* held that "considerations of policy" permitted new plaintiffs' intervention. No. 08 CV 1713 (ERK)(WDW), 2011 U.S. Dist. LEXIS 152695 at *13 (S.D.N.Y. Dec. 13, 2011). The only "policy" arguably furthered here—allowing class members with notice of standing deficiencies to sit on their rights for five years—conflicts with the purpose behind statutes of repose, *i.e.*, to create an absolute bar to claims once the period of repose expires.[4]

### C.    The Statute of Repose May Not Be Tolled

*American Pipe* counsels courts to consider "whether tolling the limitation in a given context is consonant with the legislative scheme." 414 U.S. at 558. Here, 28 U.S.C.A. § 1658(b)(2) imposes "an unqualified bar on actions instituted '5 years after [the] violation,' ... giving defendants total repose after five years." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010). Though *American Pipe* may tolerate tolling in limited circumstances, none of those is present here, where Plaintiffs were on notice for years that named Plaintiffs lacked standing. If Plaintiffs were correct, as long as the initial complaint purported to include all 105 Funds,

---

[4] *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), is likewise inapposite because it does not address *American Pipe* tolling when claims are dismissed for lack of standing.

additional funds and Plaintiffs could be added at will, long after the statute of repose. Permitting such an expansion of this six year old controversy obviously undermines the statutes of repose's "aim to create certainty." *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 622 (S.D.N.Y. 2011) ("*Footbridge*") (citations omitted).

While Plaintiffs concede that *equitable* tolling cannot override the statute of repose, they nonetheless contend *American Pipe* tolling is "legal." Opp. 27. But even the authorities Plaintiffs cite require a "statutory source" for legal tolling. *See, e.g., Morgan Stanley*, 810 F. Supp. 2d at 667; Opp. 25. Plaintiffs' argument that Rule 23 is a "statutory source" is nonsensical; Rule 23 is not a statute, but is a judicially-created procedural rule that cannot enlarge substantive rights. *See* Def. Mem. 21-22.

Moreover, Plaintiffs incorrectly suggest, Opp. 25, that Defendants' authorities "ignore" that *American Pipe* is a form of legal tolling predicated on Rule 23. Those cases actually considered *and rejected* this argument. *Footbridge*, 770 F. Supp. 2d at 626 (recognizing *American Pipe* as equitable, not legal, tolling and rejecting Rule 23 as the required statutory source); *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011) ("*IndyMac*") (recognizing but rejecting contrary authority in refusing to toll statute of repose); *Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011) ("*Lehman*") (refusing to toll statute of repose because "even if Rule 23 did include or imply such a tolling rule, the Federal Rules of Civil Procedure may 'not abridge, enlarge or modify any substantive right.'").[5]

---

[5] Due to uncertainty about *American Pipe's* application, this Court recently certified an interlocutory appeal to decide whether *American Pipe* tolling applies to the statute of repose in Section 13 of the Securities Act of 1933. *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, No. 09 Civ. 8755(SHS) (S.D.N.Y. Mar. 15, 2011) (order granting motion to certify appeal).

### D. Even if Otherwise Permitted, Equitable Tolling is Not Appropriate Here

Remarkably, the Opposition suggests Plaintiffs were blindsided by the Court's earlier ruling on their lack of standing. Opp. 32. But, by 2005, Plaintiffs' current counsel Stull, Stull & Brody and Weiss & Lurie had argued in this case that the PSLRA "requires separate representation for the purchasers of each individual security involved in alleged violations of the federal securities laws." Dkt. No. 32 at 4. While Plaintiffs' counsel now conveniently suggest the standing requirements were unclear, they previously argued the need for a representative of each Fund was "axiomatic." *Id.* at 4-5.[6] Despite such arguments, Plaintiffs did nothing to assert their claims until *after* the statute of repose had expired.

### E. New Plaintiff Claims Do Not Relate Back to the Original Complaint

Recognizing that tolling cannot save their untimely claims, Plaintiffs alternatively argue they should benefit from Rule 15(c)'s relation back doctrine. But that argument fails for many of the same reasons as Plaintiffs' tolling arguments. *First*, as with tolling, "a party may not take advantage of relation back [] if it is not actually a party to the action in the first place." *DLJ Mortg.*, 2010 WL 6508190, at *3. *Second*, "the Rule 15(c) relation back doctrine does not apply to [the] statute[] of repose." *Lehman*, 800 F. Supp. 2d at 483. *Third*, relation back under Rule 15 is prohibited by the Rules Enabling Act. *See, e.g., IndyMac*, 793 F. Supp. 2d at 643.

Rule 15(c)'s requirement of relation back only "but for a mistake" is not a throwaway. Yet, Plaintiffs do not bother to address Second Circuit authority directly contradicting their position that Rule 15(c) does not apply to changes of plaintiffs. Opp. 36 n. 13. *Advanced Magentics, Inc. v. Bayfront Partners, Inc.*, ("*Bayfront*") recognizes that while Rule 15(c)

---

[6] This Court's precedent—predating even the initial complaints—recognized that a named plaintiff must have purchased the security at issue to have standing. *See* Def. Mem. 22. Indeed, by then numerous courts had held that *American Pipe* tolling did not toll claims where named plaintiffs lacked standing. *See id.* at 17-18 n. 9 (citing similar pre-2006 holdings).

addresses changes in defendants, "*it is also applicable to a proposed change in plaintiffs.*" 106 F.3d 11, 19 (2d Cir. 1997) (emphasis added).[7]  Plaintiffs cannot demonstrate their failure to name plaintiffs for every Fund, Dkt. No. 55 at 6 n.5, was "but for a mistake."

Plaintiffs' suggestion that the FAC corrects "inconsequential pleading errors," Opp. 36 is false. Not only does the FAC attempt to add new parties, it also purports to state an entirely new claim for "scheme" liability. Adding new plaintiffs with new claims is hardly a change that is "merely formal and in no way alters the known facts and issues on which the action is based." *Bayfront*, 106 F.3d at 19 (citations omitted). Rather, it would expand dramatically Plaintiffs' claims and the scope of this suit.

### F.  Weber's Money Funds Cash Portfolio Claims are Time-Barred

Weber concedes he did not "specifically assert[]" a Money Funds claim in earlier complaints, but argues that his claim is still timely due to "continuous standing" based on claims asserted by others. Opp. 42. Putting aside the novel concept of "continuous standing" and absurdity of his *sub silentio* allegation, Weber's arguments ignore the "unqualified bar" the statute of repose imposes, Def. Mem. 19-20, and that "a repose period can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues." *Footbridge*, 770 F. Supp. 2d at 622. As demonstrated, the repose period expired long before Weber asserted this claim in the FAC, despite his earlier assertion of other claims, and there is no equitable or other basis to revive it. Def. Mem. 24-25.

### CONCLUSION

For the reasons set forth above and in Defendants' opening memorandum of law, Defendants respectfully request that the Court dismiss Counts I and II of the FAC.

---

[7] Plaintiffs' reliance on *Bayfront* is misplaced since it permitted substitution under Rule 17(a), which unlike Rule 15(c), is not constrained by the statute of repose. *Bayfront*, 106 F.3d at 18-19.

Dated: May 11, 2012

Respectfully submitted,

MORVILLO LLP

By: /s/ Richard J. Morvillo
   Richard J. Morvillo
   1101 Seventeenth Street, NW
   Suite 1006
   Washington, DC 20004
   (301) 807-9300

SCHULTE ROTH & ZABEL LLP

By: /s/ Peter H. White
   Peter H. White
   Jeffrey F. Robertson
   Katherine L. Schuerman
   1152 Fifteenth Street, NW
   Suite 850
   Washington, DC 20005
   (202) 729-7470

*Counsel for Defendants Smith Barney Fund Management LLC, Citigroup Global Markets Inc. and Lewis E. Daidone*

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Lori A. Martin
   Lori A. Martin
   Peter K. Vigeland
   399 Park Avenue
   New York, NY 10022
   (212) 230-8800

*Counsel for Defendants Smith Barney Fund Management LLC and Citigroup Global Markets Inc.*

...

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2012, I served the foregoing on all parties by filing this document with the Clerk of Court using the CM/ECF system, pursuant to Local Rule 5.2.

/s/ Jeffrey F. Robertson
Jeffrey F. Robertson