**MEMO ENDORSED**

STULL, STULL & BRODY
*COUNSELORS AT LAW*
6 EAST 45th STREET
NEW YORK, N.Y. 10017

TELEPHONE
212-687-7230

TELECOPIER
212-490-2022

November 14, 2012

**BY HAND**

Honorable William H. Pauley
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street
New York, NY 10007

NOV 1 5 2012

12/3/12

Re:  *In re: Smith Barney Fund Transfer Agent Litigation*
     05 Civ. 7583 (WHP)

Dear Judge Pauley:

Along with WeissLaw LLP (formerly Weiss & Lurie), we are Co-Lead Counsel for Plaintiffs in the above titled action. We write requesting a pre-motion conference pursuant to Rule III (A) (i) and (ii) of the Court's Individual Practice rules.

Plaintiffs seek leave to file a motion to amend the Fourth Consolidated and Amended Complaint ("Complaint") pursuant to Rule 15(a) of the Federal Rules of Civil procedure to address Plaintiffs' deficient allegations of reliance in connection with their Rule 10b-5(a) and (c) "Scheme Liability" claim. *In re Smith Barney Transfer Agent Litig.*, 2012 U.S. Dist. LEXIS 115264, at *25 (S.D.N.Y. Aug. 15, 2012) ("August 15 Decision").

As explained below, the proposed amendment is narrow in scope, addresses a fundamental element of this litigation specifically identified by the Court and, since Plaintiffs have prepared and attached the proposed revisions of the relevant paragraphs, can be executed immediately. Moreover, because the proposed amendment is limited to one single (albeit critical) issue, Plaintiffs believe that full briefing of Smith Barney Fund Management LLC, CitiGroup Global Markets, Inc. (the "Citi Defendants" or "Citi") and Lewis E. Daidone ("Daidone," together, "Defendants") anticipated motion to dismiss can and should be limited to the reliance issue, and can therefore be completed in four to six weeks.

As Your Honor may recall, following the December 15, 2011 appointment of Co-Lead Counsel, the Court held a conference on January 13, 2012 at which Plaintiffs were granted permission to file a new complaint to be amended in "any way that the plaintiff deem[ed] appropriate[]," and Defendants were granted the right to raise any issues they believed were appropriate on a motion to dismiss. *See* Jan. 13, 2012 Hr'g Tr. At 5:15-19.

Hon. William H. Pauley
United States District Judge
November 14, 2012
Page 2

Count I of the Complaint alleges a primary violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) promulgated against all Defendants ("Scheme Liability Claim"). Defendants moved to dismiss Plaintiffs' Scheme Liability Claim arguing, *inter alia*, that Defendants' conduct was not "inherently deceptive" and that Plaintiffs had not sufficiently plead reliance on that conduct. *See* Dkt. No. 221.

In granting in part and denying in part Defendants' motion to dismiss, the Court found that "conceal[ing] a scheme designed to channel transfer agent cost savings away from the Funds, to which the savings rightfully belonged" was "inherently deceptive" conduct, *In Re Smith Barney Transfer Agent Litig.*, 2012 U.S. Dist. LEXIS 115264, at *21, and "...[d]efendants' deceptive conduct arguably [made] it 'necessary or inevitable' that the Funds would issue misleading prospectuses." *Id.*, at *24.[1] Despite these findings, the Court ultimately held that Plaintiffs had not alleged that the Citi Defendants "owed them a duty to disclose" their deceptive conduct, and thus had failed to adequately plead the *Affiliated Ute* presumption of reliance. *Id.* at *22-23. *See also Id.* *25 ("Nonetheless, Plaintiffs' allegations of reliance are deficient. Plaintiffs do not invoke the well-recognized *Affiliated Ute*...presumption [].")

Plaintiffs believe that amendment of the handful of paragraphs attached hereto will remedy the reliance pleading deficiency referenced above by curing Plaintiffs' failure to adequately allege that Defendants owed them a duty of disclosure, and that once amended, the Complaint will successfully invoke the *Affiliated Ute* presumption of reliance.

Permitting amendment would be consistent with Rule 15(a)(3) of the Federal Rules of Civil Procedure which mandates that "the court should freely give leave when justice so requires." *See Chenensky v. New York Life Insurance Company*, 2012 U.S. Dist. LEXIS 8986, at *2 (S.D.N.Y. Jan. 10, 2012). In this instance, Plaintiffs' Co-Lead Counsel, who were appointed within the past year, have acted diligently in seeking an amendment as soon as practicable in light of the parties' attempt to resolve the litigation through formal mediation immediately following the issuance of the Court's August 15 Decision. Issues concerning reliance in Rule 10b-5(a) and (c) scheme liability litigation, including when and how deceptive conduct reaches Class members and to what extent a mutual fund advisor has a duty to disclose conduct to its shareholders are evolving, and relatively little Second Circuit guidance exists. As such, even if Defendants could assert delay, which they cannot, delay "absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Id.* at *3, *quoting Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). There is no such bad faith present here.

Moreover, Defendants cannot assert that they will be prejudiced by the substance of the amendment or that the amendment will be futile. First, Plaintiffs' pleading deficiency was

---

1 The Court also clarified that Rule 10b-5(b) omissions and Rule 10b-5(a) and (c) Scheme Liability allegations can co-exist, rejecting Defendants argument and ruling that the presence of "deceptive acts committed in addition to[] misleading statement or omission" "does not defeat Plaintiffs' scheme liability claim." *Id.* at *20.

Hon. William H. Pauley
United States District Judge
November 14, 2012
Page 3

specifically addressed by the Court, is far from settled law in the Second Circuit and since, as discussed above, Plaintiffs have otherwise successfully stated a Scheme Liability Claim, invoking the *Affiliated Ute* presumption would appropriately bring participants in inherently deceptive conduct back into the case.

Second, Plaintiffs' amendment will likely withstand Defendants' imminent challenges. Binding authority suggests that based upon their service as Fund advisors and the resultant close relationship with Smith Barney Fund investors, Citi Defendants owe a duty to disclose material information and conduct to those investors. According to the Second Circuit's opinion issued in this case:

> Under the circumstances alleged in the complaint, the defendants had an obligation to negotiate the best possible arrangement for the Funds. In addition, they were obligated to disclose candidly to shareholders the material features of the arrangements they crafted. *See generally Overton v. Todman & Co.*, 478 F.3d 479, 485 (2d Cir. 2007). ***These obligations required the defendants to make clear to both the Board and the Funds' shareholders that CAM was assuming nearly the full benefit of the discounts generated by First Data.*** (Emphasis added)

*Operating Local 649 Annuity Trust Fund et.al. v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 93 (2d Cir. 2010). *See also Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 549 (6th Cir. 2012) ("Pursuant to Stoneridge, if Nonneman had a fiduciary relationship or other similar relation of trust with defendants, then the instruction that reliance may be presumed is correct as a matter of law"); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 330 (S.D.N.Y. 2012) ("[A] duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them," *citing Chiarella v. United States*, 445 U.S. 222, 227-229 (1980)).

*Janus* does not change this result, because *Janus* involves liability for *statements* under Rule 10b-5(b). *See Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011). The fact that the Funds and not the Citi Defendants had a statutory obligation to file prospectuses does not alleviate the Citi Defendants of the obligation to disclose material *conduct* to the Funds' shareholders, including conduct concerning their true structuring of the transfer agent arrangement, and that they "were assuming nearly the full benefit of the discounts generated by First Data. *Operating Local 649 Annuity Trust Fund,* 595 F.3d at 93.

Finally, granting the proposed amendment would be consistent with the policy underlying Rule 15 by providing "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Siegel v. Converters Transportation, Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (*quoting* 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1471, at 359 (1971)).

Plaintiffs would be pleased to appear at a conference to discuss the proposed motion with the Court.

Hon. William H. Pauley
United States District Judge
November 14, 2012
Page 4

Respectfully,

*/s/ Mark Levine*

Mark Levine

cc:   Jessica B. Pulliam, Esq. (all copied via email)
      Alex Bourelly, Esq.
      Richard Morvillo, Esq.
      Peter White, Esq.
      Jeffrey Robertson, Esq.
      Peter Vigeland, Esq.
      Lori Martin, Esq.
      Richard Acocelli, Esq.
      Patrick Slyne, Esq.

*[Handwritten notation:]* Application granted. The parties are directed to appear for a pre-motion conference on December 12, 2012 at 10:00 a.m.

SO ORDERED:

_____
WILLIAM H. PAULEY, U.S.D.J.   11/30/12

## RELIANCE

~~118.  Investment advisors have a fiduciary duty to act in the best interests of the mutual funds they advise and the shareholders of those mutual funds. Here, Plaintiffs reasonably expected Defendants would act with uncompromising fidelity and undivided loyalty to the Smith Barney Funds and to the Plaintiffs and the other members of the Class as Smith Barney Fund shareholders.~~

<u>118.   In addition to inherently deceptive conduct, the kickback scheme included concealing material facts that rendered Plaintiffs and the Class unable to divine that they were at the mercy of faithless fiduciaries. The concealed material facts included that: (i) Plaintiffs were being grossly overcharged for transfer agent services; (ii) expenses categorized as transfer agent fees in Fund prospectuses and other documents files with the SEC were not transfer agent fees at all, but instead included kickbacks that the Smith Barney Defendants wrongfully pocketed; (iii) the kickback scheme secretly and improperly channeled transfer agent cost savings away from the Funds and on to Citibank, the Smith Barney Defendants' parent company; and (iv) the kickback scheme predictably caused returns to Fund shareholders to be artificially lowered and wrongfully damaged Plaintiffs and the Class. Not only did Defendants' inherently deceptive conduct reach the market, but each of the Defendants had affirmative duties to disclose candidly to shareholders the material features of the transfer agent fee arrangements they crafted and to make clear to Fund shareholders that the Smith Barney Defendants were assuming nearly the full benefit of the transfer agent fee discounts generated pursuant to the scheme. More particularly:</u>

<u>(a)   Daidone, under Rule 10b-5, as maker of public statements in Fund prospectuses and other documents filed with the SEC, had an affirmative duty to speak truthfully and to not omit any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Daidone's omission of material facts, as set forth in Count II, rendered his public statements materially false and misleading and violated his duty to disclose;</u>

1

REDLINE OF PROPOSED AMENDMENT TO
FOURTH CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

    (b)    the Smith Barney Defendants were fiduciaries to the Funds and to the Funds' shareholders. The Smith Barney Defendants' affirmative obligation to disclose material facts concerning the kickback scheme arise from their duties of uncompromising fidelity and undivided loyalty. The Funds' shareholders were entitled to know information Smith Barney Defendants possessed concerning the kickback scheme. The Smith Barney Defendants breached their duty to disclose and concealed material facts about the kickback scheme from Plaintiffs and the Class;

    (c)    the Smith Barney Defendants were in a position of trust and confidence with the Funds' shareholders that gave rise to an affirmative duty to disclose the material facts concerning their kickback scheme. The Smith Barney Defendants were "insiders" to the Funds and had access to non-public information related to the kickback scheme. The Smith Barney Defendants then used that non-public information to take unfair advantage of the Plaintiffs and the Class who were uniformed because the Smith Barney Defendants concealed the kickback scheme in violation of their position of trust and confidence and their duty to disclose; and

    (d)    the Smith Barney Defendants' inherently deceptive conduct reached the market through prospectuses and other documents filed with the SEC. By, among other things, misleading the Funds' boards, the Smith Barney Defendants' made it "necessary or inevitable" that the Funds disseminated prospectuses and other public documents that omitted material adverse facts, misled investors and rendered Plaintiffs unable to divine that they were at the mercy of faithless fiduciaries. Because of their fiduciary relationship and/or relation of trust and confidence with the Funds' shareholders, the Smith Barney Defendants' each had an affirmative duty to disclose the material facts concerning the kickback scheme.

Plaintiffs' claims are based upon inherently deceptive conduct *in addition to* the omission of material adverse facts concerning Defendants' kickback scheme that Plaintiffs had a right to know and that each of the Defendants had affirmative duties to disclose. Had the omitted material adverse facts concerning the kickback scheme been disclosed so that Plaintiffs could have known the truth, Plaintiffs would not have transacted in the Funds shares. The Defendants were obligated to share the material information concerning the transfer agency kickback scheme discussed herein and set out above but failed to do so. As such, Plaintiffs and all putative Class

2

members' reliance is presumed, and Plaintiffs' invoke the presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

## CAUSES OF ACTION

### COUNT I

### SCHEME LIABILITY

**Primary Violation Of §10(b) Of The Exchange Act And Rule 10b-5(a) and (c) Promulgated Thereunder Against ~~All~~The Smith Barney Defendants**

123. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein ~~except those paragraphs that refer to the issuance of materially false and misleading public statements.~~. Plaintiffs bring Count I on behalf of themselves and all other Class members that purchased and/or sold of the mutual fund shares or other ownership interests of one or more of the Smith Barney Funds.

124. Throughout the Class Period, Defendants, and each of them, carried out a plan, scheme, and course of conduct that was intended to and did: (i) deceive the investing public, including Plaintiffs and the other Class members, as alleged herein; and (ii) induce Class members to purchase shares of the Smith Barney Funds at distorted prices, and prices would continue to be adversely impacted by Defendants' scheme. In furtherance of their unlawful scheme and course of conduct, Defendants took the actions set forth herein. Moreover, Defendants' plan, scheme and course of conduct was carried out at the CAM business unit level through Defendants and caused harm to Plaintiffs and the other members of the Class.

125. Defendants knew that, as investment advisors, the Smith Barney Defendants owed a duty of uncompromising fidelity and undivided loyalty to the Smith Barney Funds and the plaintiffs and the other members of the Class as Smith Barney Fund shareholders and as investment advisers each of the Smith Barney Defendants had affirmative duties to disclose

3

candidly to shareholders the material features of the transfer agent fee arrangements they crafted and to make clear to Fund shareholders that the Smith Barney Defendants were assuming nearly the full benefit of the transfer agent fee discounts generated pursuant to the scheme.

126. The Smith Barney Defendants knew that the economic opportunity to negotiate for, and secure, discounted transfer agency fees belonged to the Smith Barney Funds and their shareholders.

127. The Smith Barney Defendants knew that they were obligated to negotiate the best possible transfer agency arrangement for the Smith Barney Funds and their shareholders.

128. The Smith Barney Defendants knowingly committed violations of federal securities laws.

129. Plaintiffs and the other members of the Class reasonably expected the Smith Barney Defendants would act with uncompromising fidelity and undivided loyalty to the Smith Barney Funds and Plaintiffs and the other members of the Class as Smith Barney Fund shareholders.

130. Had Plaintiffs and the other members of the Class known that the Smith Barney Defendants were lining their own pockets at the expense of Smith Barney Funds' shareholders by engaging in the scheme as alleged herein, Plaintiffs and other members of the Class would not have transacted in the Smith Barney Funds to continually pay improper kickbacks to Citigroup.

131. Defendants' deceptive conduct caused Plaintiffs and the other members of the Class to suffer damages by improperly draining assets from the Smith Barney Funds to Citigroup and causing the NAVs of the Smith Barney Funds to be lower than they would have been, but for the Defendants' wrongful acts, conduct and scheme.