USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                    :
IN RE SMITH BARNEY TRANSFER                         :        05 Civ. 7583 (WHP)
AGENT LITIGATION                                    :
                                                             MEMORANDUM & ORDER
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs in this securities fraud action move to certify a class of investors in

several mutual funds in the Smith Barney Family of Funds (the "Funds"). For the following

reasons, Plaintiffs' motion is granted.


## BACKGROUND

### I.    Factual Background

        Plaintiffs are investors in the Funds. (Fourth Consolidated and Amended Class

Action Complaint, dated Feb. 28, 2012 ("FAC") ¶¶ 1, 11-19.) At all relevant times, Defendant

Lewis E. Daidone served as Senior Vice President and Director of Smith Barney Fund

Management LLC ("Smith Barney"), Managing Director of Citigroup Global Markets, Inc.

("CGMI"), and Principal Accounting Officer to many of the Funds. (FAC ¶ 23.)

        Historically, First Data Investor Service Group ("First Data") served as transfer

agent for the Funds. (FAC ¶¶ 45-46.) When First Data's contract expired, Daidone and others

convinced the Funds' boards of directors to replace First Data with an in-house transfer agent

named Citicorp Trust Bank, fsb ("CTB"). (FAC ¶¶ 2-3, 79, 85-106.)

        Although CTB was nominally responsible for providing the Funds' transfer agent

services, it subcontracted the vast majority of the transfer agent work to First Data for

significantly lower fees than First Data had previously charged as the transfer agent for the

Funds.[1]  (FAC ¶¶ 2-3, 64, 72-73.)  But rather than remitting those savings to the Funds, CTB

continued to charge the Funds the higher rate, thereby earning substantial profits.  (FAC ¶¶ 1-5,

7-8, 31.)  First Data also agreed to provide a specified amount in annual asset management and

investment banking business to Citigroup affiliates over the term of CTB's agreement with First

Data.  (FAC ¶¶ 5, 17, 80-84.)  Daidone signed Securities and Exchange Commission ("SEC")

filings that failed to disclose the transfer agent scheme.  (FAC ¶ 23, App'x A.)

On September 30, 2003, a former Citigroup employee alerted the SEC to the

scheme.  (FAC ¶ 115.)  In May 2005, the SEC settled with Citi Asset Management and CGMI,

which agreed to pay more than $200 million in fines and disgorge the profits that the scheme

generated.  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595

F.3d 86, 91 (2d Cir. 2010).  The SEC then established a Fair Fund under the Sarbanes-Oxley Act

to distribute the disgorged moneys plus interest to the Funds.  (Declaration of Peter H. White,

dated Feb. 15, 2013 ("White Decl.") Ex. Q.)  In May 2010, the SEC distributed more than $100

million to the Funds, including Funds in which Plaintiffs invested.  (White Decl. Ex. S.)

II.     Procedural History

This action began on August 26, 2005, with the filing of Chilton v. Smith Barney

Fund Management, LLC, No. 05 Civ. 7583 (WHP).  Several subsequently filed actions were

consolidated and this Court appointed Operating Local 649 Annuity Trust Fund ("Local 649") as

Lead Plaintiff.  On June 26, 2006, Local 649 filed a consolidated amended complaint alleging

securities fraud in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934

and breach of fiduciary duty in violation of section 36(b) of the Investment Advisers Act of

1940.  On September 26, 2007, this Court dismissed the consolidated amended complaint in its

---

[1]  In December 1999, First Data was sold to PFPC Worldwide, which assumed the role of sub-
transfer agent.  (FAC ¶¶ 30, 33.)  This Court refers to First Data and PFPC collectively as "First
Data."

entirety.  See In re Smith Barney Fund Transfer Agent Litig., No 05 Civ. 7583 (WHP), 2007 WL 2809600, at *5 (S.D.N.Y. Sept. 26, 2007).  Local 649 appealed.

On February 16, 2010, the Court of Appeals vacated and remanded this Court's dismissal of the section 10(b) claim.  Thereafter, Defendants filed another motion to dismiss the section 10(b) claim raising arguments not reached in the prior decisions.  On January 25, 2011, this Court dismissed the 10(b) claim as to those Smith Barney funds in which no named plaintiff invested (the "Dismissed Funds").  See In re Smith Barney Transfer Agent Litig., 765 F. Supp. 2d 391, 403 (S.D.N.Y. 2011).  This Court then granted Plaintiffs' application for time to locate purchasers of the Dismissed Funds and for leave to file a second amended complaint.  Plaintiffs filed a second amended complaint on May 5, 2011 and a third amended complaint on June 30, 2011.

In an August 31, 2011 letter to the Court, Local 649 disclosed that it had not purchased any of the funds at issue in the case. On September 22, 2011, this Court granted Local 649's request to withdraw as Lead Plaintiff.  See In re Smith Barney Transfer Agent Litig., 823 F. Supp. 2d 202, 206 (S.D.N.Y. 2011).  Following additional motion practice, this Court appointed David Zagunis as the new Lead Plaintiff on December 15, 2011.  See In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2011 WL 6318988, at *1 (S.D.N.Y. Dec. 15, 2011).  On January 13, 2012, this Court authorized Plaintiffs to file a fourth amended complaint asserting a "scheme liability" claim for the first time.  Plaintiffs filed the Fourth Consolidated and Amended Class Action Complaint on March 7, 2012.

On August 15, 2012, this Court granted in part and denied in part Defendants' motion to dismiss the Fourth Amended Complaint.  Because Plaintiffs failed to plead reliance on the alleged deceptive scheme, this Court dismissed the "scheme liability" claims.  See In re

Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 163 (S.D.N.Y. 2012).  However, this

Court denied Daidone's motion to dismiss the Rule 10b-5(b) claim against him because he

signed certain misleading disclosure documents.[2]  See In re Smith Barney, 884 F. Supp. 2d at

165.  By Order dated December 19, 2012, this Court denied Plaintiffs' request to file a Fifth

Amended Complaint.


DISCUSSION

I.      Legal Standard

        Federal Rule of Civil Procedure 23, which governs class certification, "does not

set forth a mere pleading standard."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551

(2011).  Rather, "[t]he party seeking class certification must affirmatively demonstrate

compliance with the Rule, and a district court may only certify a class if it is satisfied, after a

rigorous analysis, that the requirements of Rule 23 are met."  In re Am. Int'l Grp., Inc. Sec.

Litig., 689 F.3d 229, 237-38 (2d Cir. 2012) (internal quotation marks and alterations omitted).

        The moving party must first satisfy Rule 23(a), which "requires that a proposed

class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the

class, (3) involve class plaintiffs whose claims are typical of the class, and (4) involve a class

representative or representatives who adequately represent the interests of the class."  Myers v.

Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)).  In addition, "the

proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-

Mart, 131 S. Ct. at 2548.  Plaintiffs here rely on Rule 23(b)(3), which "requires the party seeking

certification to show that 'questions of law or fact common to class members predominate over

---

[2] This Court granted Daidone's motion to dismiss with respect to misstatements and omissions in documents on which his signature does not appear.  See In re Smith Barney, 884 F. Supp. 2d at 165.

any questions affecting only individual members' and that class treatment would be superior to individual litigation." Myers, 624 F.3d at 547 (quoting Fed. R. Civ. P. 23(b)(3)).

Generally, "claims alleging violations of Section[] 10(b) . . . of the Exchange Act are especially amenable to class certification." In re SLM Corp. Sec. Litig., No. 08 Civ. 1029 (WHP), 2012 WL 209095, at *3 (S.D.N.Y. Jan. 24, 2012) (internal quotation marks omitted). And, "[i]n light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 179 (2d Cir. 1990).

II.    Rule 23(a) Requirements

Daidone does not challenge Plaintiffs' showing with respect to Rule 23(a)'s numerosity, commonality, and adequacy requirements, and this Court finds that the proposed class satisfies these requirements. Daidone argues, however, that Plaintiffs fail to satisfy the typicality requirement.

A.  Typicality

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted). "Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." In re Currency Conversion Fee Antitrust Litig., 264 F.R.D. 100, 111 (S.D.N.Y. 2010). Thus, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiffs satisfy Rule 23(a)(3)'s typicality requirement because "their injuries derive from a unitary course of conduct by a single system[.]" Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997). The same material omissions that purportedly defrauded the named plaintiffs operated as a fraud on all shareholders. To the extent that these incomplete disclosures injured the named plaintiffs, they injured all members of the proposed class. And "[t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 40 (E.D.N.Y. 2008) (quoting DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995)). Accordingly, Plaintiffs demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed R. Civ. P. 23(a)(3).

There is little risk here that "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (internal quotation marks omitted). First, it is inconsequential that some named plaintiffs made their class-period purchases through automatic payroll deductions or dividend and capital gains reinvestments. Because these plaintiffs continued purchasing shares—albeit automatically—during the class period, they made their investment decisions in connection with the challenged omissions. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006) (emphasizing the "broad interpretation" given to section 10(b)'s and Rule 10b-5's "in connection with" requirement). Indeed, "it would be illogical to hold that a monthly exchange of value in terms of dollars for [] shares at market price could be anything other than purchases of securities." Deutschman v. Beneficial Corp.,

761 F. Supp. 1080, 1087 (D. Del. 1991). Whether the named plaintiffs read the disclosure documents at issue is similarly unimportant to the typicality inquiry. As discussed below, Plaintiffs are entitled to a class-wide presumption of reliance. And "[i]n the context of complex securities litigation, attacks on the adequacy of the class representatives based on the representative's ignorance or credibility are rarely appropriate." In re SLM, 2012 WL 209095, at *8 (internal quotation marks omitted).

Finally, there is no merit to Daidone's contention that the claims of named plaintiffs who participated in the 2010 Fair Fund distribution are atypical. To be sure, "[a] plaintiff may not recover twice for the same injury." Phelan v. Local 305 of the United Ass'n of Journeymen, 973 F.2d 1050, 1063 (2d Cir. 1992); see also Murphy v. Gallagher, 761 F.2d 878, 885 (2d Cir. 1985) ("[S]ection 28(a) [of the Securities Exchange Act] expressly prohibits double recovery."). But there is no evidence that the named plaintiffs have been fully compensated. More fundamentally, typicality focuses chiefly on the nature of plaintiffs' claims, not on possible defenses to those claims. See In re Flag Telecom, 574 F.3d at 35. Thus, "the presence of individualized defenses, such as mitigation, going only to damages [is] generally regarded as no barrier to class certification." In re Currency Conversion Fee Antitrust Litig., 264 F.R.D. at 116 (internal quotation marks omitted). Plaintiffs satisfy Rule 23(a)(3)'s typicality requirement.

III.    Rule 23(b)(3) Requirements

Daidone does not dispute that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), and this Court finds that Plaintiffs carry their burden in this respect. Daidone argues, however, that Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance requirement.

A. Predominance

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010) (internal quotation marks omitted). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011) (internal quotation marks omitted). The elements of a private securities fraud suit based on violations of § 10(b) and Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1207 (2013) (internal quotation marks omitted).

The Supreme Court has recognized that "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." Halliburtion, 131 S. Ct. at 2184. Indeed, the Court recently clarified that—unless plaintiffs successfully invoke a class-wide presumption of reliance—the predominance requirement "would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation." Wal-Mart, 131 S. Ct. at 2552 n.6. Citing Wal-Mart, Daidone argues that class certification is unwarranted because no class-wide reliance presumption is applicable.

"Where a plaintiff does not allege actual reliance, the Supreme Court has 'found a rebuttable presumption of reliance in two different circumstances.'" In re Smith Barney, 884 F. Supp. 2d at 162 (quoting Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008). Plaintiffs concede that the first such presumption—the fraud-on-the-market presumption—does not apply because the securities at issue never traded in an efficient market. Instead, they invoke the doctrine of Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), under which courts presume reliance "if there is an omission of a material fact by one with a duty to disclose[.]" Stoneridge, 552 U.S. at 159.

The Affiliated Ute presumption applies only in connection with "claims 'involving primarily a failure to disclose[.]'" Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 n.5 (2d Cir. 2005) (quoting Affiliated Ute, 406 U.S. at 153)). But articulating this rule is easier than applying it. The distinction between misstatements and omissions is often illusory. A statement is misleading when it omits the truth. Thus, in most securities fraud cases, an affirmative misstatement can be cast as an omission and vice versa. Differentiating misstatements from omissions is a futile logomachical exercise. "The labels by themselves, therefore, are of little help." Wilson v. Comtech Telecomms. Corp., 648 F.2d 88, 93 (2d Cir. 1981).

In view of this semantic difficulty, "[w]hat is important is to understand the rationale for a presumption of causation in fact in cases like Affiliated Ute, in which no positive statements exist: reliance as a practical matter is impossible to prove." Wilson, 648 F.2d at 93. The Affiliated Ute doctrine, in other words, is a pragmatic one. When a defendant's fraud consists primarily of omissions, "[r]equiring a plaintiff to show a speculative set of facts, i.e., how he would have behaved if omitted material information had been disclosed, places an

unrealistic evidentiary burden on the 10(b) plaintiff." Joseph v. Wiles, 223 F.3d 1155, 1162 (10th Cir. 2000); see also Titan Grp., Inc. v. Faggen, 513 F.2d 234, 239 (2d Cir. 1975) ("[I]n instances of total non-disclosure, as in Affiliated Ute, it is of course impossible to demonstrate reliance[.]"). Accordingly, reliance is presumed when it would be impossible to prove.

   Here, the Fourth Amended Complaint identifies certain statements that Plaintiffs label false and misleading. Plaintiffs also annex to their operative complaint a lengthy "Compendium of Materially False and Misleading Class Period Statements by Fund." But Plaintiffs' identification of certain affirmative representations does not, by itself, show that this is primarily a misstatements case. Rather, Plaintiffs claim that the challenged statements are misleading because they fail to mention anything about the transfer agent scheme that Daidone and others concocted. A diligent investor could scour the relevant prospectuses and learn only that (1) CTB served as the Funds' transfer agent; (2) First Data served as the Funds' sub-transfer agent; and (3) both of these entities performed certain services for the Funds. These disclosures are truthful, as far as they go. But what makes them misleading is what they do not say: that CTB did virtually nothing, that First Data performed the bulk of the transfer agent services at a discounted rate, and that Citigroup pocketed the difference.

   Under these circumstances, "reliance as a practical matter is impossible to prove." Wilson, 648 F.2d at 93. While investors could potentially rely on the disclosures that CTB and First Data performed certain functions, they could not know—and therefore could not rely on—the fact that this arrangement was implemented to generate profits for Citigroup at the Funds' expense. Thus, Plaintiffs' claims "involve[e] primarily a failure to disclose," Affiliated Ute, 406

U.S. at 153.[3]  Because the omissions are material, Smith Barney, 595 F.3d at 95, and because

there was a duty of disclosure, see 15 U.S.C. §§ 80a-8, 80a-24, 80a-29, class-wide reliance is

presumed.

The Second Circuit's decision in Starr, on which Daidone principally relies, is not

to the contrary.  In Starr, Georgeson sent letters to shareholders describing its services and

stating its fee, but did not disclose that the same services could be obtained elsewhere at no

charge.  Starr, 412 F.3d at 104.  Declining to apply the Affiliated Ute presumption, the Court of

Appeals observed that the plaintiff "focuses most heavily on allegedly misleading statements

made in the Georgeson letter and claims that these statements—individually and collectively—

intentionally left shareholders with an overall false impression that they had no choice but to

exchange their shares through Georgeson."  Starr, 412 F.3d at 109 n.5 (internal quotation marks

and alterations omitted) (emphasis in original).  Here, by contrast, the affirmative disclosures are

less extensive.  And unlike the statements in Starr, there was no disclosure in this case of the real

nature of the arrangement.  This is not, in other words, a case where "[Plaintiffs'] principal

objection to the omissions . . . is that the omissions exacerbated the misleading nature of the

affirmative statements[.]"  Starr, 412 F.3d at 109 n.5.

Further, contrary to Daidone's argument, the doctrine of judicial estoppel does not

preclude Plaintiffs from invoking the Affiliated Ute presumption.  In their briefs to the Court of

Appeals, Plaintiffs asserted that "Defendants fundamentally misrepresented the services

performed by the transfer agents . . . . In other words, Defendants portrayed kickbacks as

administrative fees, and shareholders were charged fees for 'services that simply did not exist.'"

---

[3] Daidone argues that the Affiliated Ute presumption is available only in cases of "total non-disclosure[.]"  Burke v. Jacoby, 981 F.2d 1372, 1379 (2d Cir. 1992) (internal quotation marks omitted).  But the Supreme Court explained that the doctrine applies to cases "involving primarily a failure to disclose[.]"  Affiliated Ute, 402 U.S. at 153.  In any event, the relevant disclosures here are so sparse that, in practical terms, they approximate total non-disclosure.

And the Second Circuit adopted this reasoning, explaining that "defendants categorized the fees that [Citigroup] pocketed as 'other fees,' when in fact, they were far more akin to 'management fees,' a category that, under SEC rules, was required to be separately stated." Smith Barney, 595 F.3d at 93. But the Fourth Amended Complaint, which superseded the version of the complaint at issue on appeal, does not rely on allegations of misleading fee disclosures, so Plaintiffs' characterizations of the earlier complaint are irrelevant. Thus, Plaintiffs' Affiliated Ute argument is not "clearly inconsistent with its earlier position" and judicial estoppel does not apply. In re Adelphia Recovery Trust, 634 F.3d 678, 695 (2d Cir. 2011) (internal quotation marks omitted).

Daidone's attempt to rebut the Affiliated Ute presumption is also unavailing. To rebut the class-wide presumption of reliance on material omissions, a defendant must "prov[e] by a preponderance of the evidence that disclosure of that information would not have altered the plaintiff's investment decision." duPont v. Brady, 828 F.2d 75, 78 (2d Cir. 1987). Of course, "[t]he finding of materiality by its very nature establishes that the information omitted would have been considered important by investors generally." duPont, 828 F.2d at 78. Here, for example, the Court of Appeals already held that "there exists a substantial likelihood that a reasonable investor would consider it important that her fiduciary was, in essence, receiving kickbacks." Smith Barney, 595 F.3d at 95. "It thus will be only the unusual case in which compatible findings of materiality and nonreliance can be made." duPont, 828 F.2d at 78.

This is not the unusual case. While some named plaintiffs testified that they never read the Funds' disclosure materials, others explained that disclosure of the transfer agent scheme would have impacted their investment decisions. When asked whether he cared how much was charged for transfer agent fees, Plaintiff Bharat U. Shah testified that "if [] a major

portion of it was profits that were realized which [were] going back and it was not disclosed, that would be a big problem." (Declaration of Mark Levine, dated Jan. 18, 2013 ("Levin Decl.") Ex. J: Dep. Tr. at 177:8-12.) Plaintiff Renée Miller similarly testified that disclosure of the scheme would have affected her decision-making: "Q: Why would that small amount of money be important to you?  A: Because of the principle of how it was used.  I don't care how small or large the sum is." (Levin Decl. Ex. L: Dep. Tr. at 160:15-19.) In view of this testimony, Daidone fails to carry his heavy burden of "proving by a preponderance of the evidence that disclosure of [the scheme] would not have altered the plaintiff's investment decision." duPont, 828 F.2d at 78.  Thus, the class-wide Affiliated Ute presumption applies and "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3).[4]

IV.     Composition of the Class

By Memorandum & Order dated January 25, 2011 (the "January 25 Order"), this Court dismissed, for want of standing, Plaintiffs' claims relating to funds in which no named plaintiff invested. See In re Smith Barney, 765 F. Supp. 2d at 399-400.  Plaintiffs now attempt to reinstate the Dismissed Funds on the basis of the Second Circuit's recent decision in NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012), cert. denied, ---S. Ct.----, 2013 WL 1091772, at *1 (Mar. 18, 2013).

NECA's impact on this case is uncertain.  What is certain, however, is that Plaintiffs did not seek this Court's leave to move for reconsideration of the January 25 Order under Rule 54(b).  And Plaintiffs' terse discussion of NECA in their moving papers gives short

---

[4] This conclusion is consistent with Court's prior determination that Plaintiffs failed to plead reliance on any deceptive scheme. See In re Smith Barney, 884 F. Supp. 2d at 162.  Plaintiffs did not invoke the Affiliated Ute presumption in connection with their "scheme liability" claim.

shrift to a complex issue. Accordingly, this Court declines to revisit the January 25 Order at this juncture and excludes the Dismissed Funds from the certified class.


CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is granted.

This Court certifies the following class:

> All persons and entities, and their successors in interest, that purchased or redeemed shares of the following Smith Barney mutual funds between September 11, 2000 and June 24, 2004 ('Class Period') pursuant to a prospectus signed by Lewis E. Daidone and who were damaged thereby: Smith Barney Aggressive Growth Fund, Inc.; Smith Barney Allocation Series, Inc.—Allocation Growth Portfolio; Smith Barney Appreciation Fund, Inc.; Smith Barney Income Fund Series—Smith Barney Convertible Fund; Smith Barney Income Fund Series—Smith Barney Diversified Strategic Income Fund; Smith Barney Income Fund Series—Smith Barney High Income Fund; Smith Barney Income Fund Series—Smith Barney Premium Total Return Fund; Smith Barney Fundamental Value Fund, Inc.; Smith Barney World Funds, Inc.—International All Cap Growth Portfolio; Smith Barney Managed Governments Fund, Inc.; Smith Barney Investment Funds, Inc.—Peachtree Growth Fund; Smith Barney Investment Funds, Inc.—Investment Grade Bond Fund; Smith Barney Investment Funds, Inc.—Small Cap Growth Fund; Smith Barney Investment Trust—Large Capitalization Growth; Smith Barney Managed Municipals Fund, Inc.; Smith Barney Money Funds, Inc.—Cash Portfolio; and Smith Barney Equity Funds, Inc.—Social Awareness Fund.

This Court excludes from the class Daidone and any person or entity related to or affiliated with Daidone during the Class Period. This Court also excludes any person or entity that engaged in the wrongful conduct alleged in the Fourth Amended Complaint. This Court appoints Jeffrey Weber, the DVL 401(k) Plan, Bharat U. Shah, Steven W. Hall, David Zagunis, Richard W. Rees, and Renée Miller as class representatives. Further, this Court appoints Stull, Stull & Brody and WeissLaw LLP as class counsel under Rule 23(g).

The Clerk of Court is directed to terminate the motion pending at ECF No. 266.

Dated: March 21, 2013
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*