**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SMITH BARNEY TRANSFER AGENT LITIGATION | CIVIL ACTION<br>05 Civ. 7583 (WHP) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**STULL, STULL & BRODY**
Jules Brody
Mark Levine
6 East 45th Street
New York, NY 10016
(212) 687-7230

**WEISSLAW LLP**
Joseph H. Weiss
Richard A. Acocelli
Michael A. Rogovin
1500 Broadway
16th Floor
New York, NY 10036
(212) 682-3025

Co-Lead Counsel for Plaintiffs
and Class Counsel

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................... 2

II.   DESCRIPTION OF THE LITIGATION ............................................ 4

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 9

      A.    The Settlement Is the Result of Good Faith, Arm's-Length
            Negotiations by Well-Informed and Experienced Counsel ................. 10

      B.    The Settlement Generally Satisfies the Criteria for Final
            Approval of a Class Action Settlement ................................ 12

            1.    The Complexity, Expense and Likely Duration of the
                  Litigation Support Preliminary Approval ................... 13

            2.    The Reaction of the Class to the Settlement ............... 14

            3.    The Substantial Risks of Establishing Liability and Damages
                  Strongly Support Preliminary Approval of the Settlement ....... 15

            4.    The Stage of the Proceedings at the Time of the Settlement
                  Supports Preliminary Approval ............................. 16

            5.    The Risks of Maintaining the Class Action Through
                  Trial Supports Preliminary Approval ....................... 17

            6.    The Ability of Defendant to Withstand a Judgment
                  Larger Than the Settlement Supports Preliminary Approval ........ 18

            7.    The Range of Reasonableness of the Settlement Fund in
                  Light of the Best Possible Recovery and Attendant Risks
                  Supports Preliminary Approval of the Settlement ............ 18

IV.   THE PLAINTIFFS REQUEST THAT THE COURT APPROVE
      THE APPOINTMENT OF  RG/2 CLAIMS ADMINISTRATION LLC
      AS CLAIMS ADMINISTRATOR ................................................... 19

V.    THE PROPOSED SCHEDULE IS REASONABLE ................................... 20

VI.   THE FORM AND METHOD OF PROVIDING NOTICE IS
      REASONABLE  AND IS THE BEST PRACTICABLE NOTICE
      AND SHOULD BE APPROVED ................................................... 22

i

VII.   THE PLAN OF ALLOCATION IS REASONABLE
       AND SHOULD BE PRELIMINARILY APPROVED .................................................. 24

VIII.  CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Armstrong v. Board of School Directors of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ................................................................9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................................................................12

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009) ..........................................................10

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................11

*Dorn v. Eddington Sec., Inc.*,
08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan. 20, 2011) ...................24

*In re Alloy, Inc. Sec. Litig.*,
03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) .....................13

*In re AOL Time Warner, Inc. Sec.& ERISA Litig.*,
02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. April 6, 2006) ...............11,14

*In re Currency Conversion Fee Antitrust Litig.*,
01 MDL 1409, M-21-95, 2006 U.S. Dist. LEXIS 81440(S.D.N.Y. Nov. 8, 2006)............ 10

*In re Giant Interactive Group., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................11

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................24

*In re Initial Public Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................10, 11

*In re Initial Public Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007).........................19

i

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)......11, 13, 18

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................................12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................................9, 10, 14

*In re Michael Milken & Associate Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................................................24

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................10

*In re Veeco Instruments Inc. Sec. Litig.*,
  05 MDL 01695,2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) .............................12

*Karvaly v. eBay Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ...............................................................................................9

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).....................................................................................................18

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ...............................................................................................14

*Police & Fire Ret. Sys. v. Indymac MBS, Inc.*,
  2013 U.S. App. LEXIS 13203 (2d Cir. June 27, 2013)…………………………………….15
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................................9, 11

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 99840 (S.D.N.Y Nov. 20, 2008)...........................................9, 12, 24

Lead Plaintiff David Zagunis ("Zagunis") and the Named Plaintiffs, Jeffrey Weber, the DVL 401(k) Plan, Bharat U. Shah, Steven W. Hall, Richard W. Rees, and Renee Miller who are also, collectively, the certified class representatives, ("Plaintiffs")[1], on behalf of themselves and the Court-certified Class,[2] have reached a proposed Settlement of the above-captioned securities class action lawsuit (the "Action") for a total of $4,950,000.00 in cash (the "Settlement Amount"). If approved, the proposed Settlement will resolve all claims in the Action.  Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, approving the form and manner of providing notice of the Settlement to the Class, and setting a hearing date at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and Plaintiffs' Expenses.

---

[1]     All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Amended Stipulation and Agreement of Settlement executed by the Parties on August 8, 2013 ( the "Amended Stipulation"), attached hereto as Exhibit to the Declaration of Mark Levine ("Levine Declaration").

[2]     All persons and entities, and their successors in interest, that purchased or redeemed shares of the following Smith Barney mutual funds between September 11, 2000 and June 24, 2004 ('Class Period') pursuant to a prospectus signed by Lewis E. Daidone and who were damaged thereby: Smith Barney Aggressive Growth Fund, Inc.; Smith Barney Allocation Series, Inc.—Allocation Growth Portfolio; Smith Barney Appreciation Fund, Inc.; Smith Barney Income Fund Series—Smith Barney Convertible Fund; Smith Barney Income Fund Series—Smith Barney Diversified Strategic Income Fund; Smith Barney Income Fund Series—Smith Barney High Income Fund; Smith Barney Income Fund Series—Smith Barney Premium Total Return Fund; Smith Barney Fundamental Value Fund, Inc.; Smith Barney World Funds, Inc.—International All Cap Growth Portfolio; Smith Barney Managed Governments Fund, Inc.; Smith Barney Investment Funds, Inc.—Peachtree Growth Fund; Smith Barney Investment Funds, Inc.—Investment Grade Bond Fund; Smith Barney Investment Funds, Inc.—Small Cap Growth Fund; Smith Barney Investment Trust—Large Capitalization Growth; Smith Barney Managed Municipals Fund, Inc.; Smith Barney Money Funds, Inc.—Cash Portfolio; and Smith Barney Equity Funds, Inc.—Social Awareness Fund.

## I.    INTRODUCTION

Subject to Court approval, and as described herein, Plaintiffs, on behalf of themselves and the Class, have agreed to settle all claims asserted in the Action against the Defendant,[3] in exchange for (i) a payment of $4,950,00.00 in cash to be deposited into an interest-bearing escrow account within ten days of preliminary approval.

As set forth in the Amended Stipulation, if approved, the Settlement will resolve all claims against the Defendant and the Dismissed Citi Defendants.  Plaintiffs' principal reason for entering into the Settlement is the substantial cash benefit provided for the Class considered against the significant risk that a smaller recovery – or, indeed, no recovery – might be achieved after a trial of the Action and the very real risk that Defendant would be unable to fund a judgment that was greater than the Settlement Amount even if Plaintiffs were successful at trial in proving liability and damages.[4]

The Settlement was reached only after extensive litigation and prolonged arm's-length settlement negotiations – including a full-day in-person merits mediation session and additional negotiations, through telephone and email, facilitated by Jonathan Marks, a highly experienced and highly respected mediator of complex litigation, including securities litigation.    A Memorandum of Understanding was executed on April 25, 2013, only two months before the

---

[3]    The "Defendant" is Lewis E. Daidone ("Daidone").  Smith Barney Fund Management LLC ("Smith Barney") and Citigroup Global Markets, Inc. ("Citigroup") are referred to as the Dismissed Citi Defendants and are also parties to the Settlement.  Daidone and the Dismissed Citi Defendants are sometimes referred to as "Defendants".

[4]    There is also the risk that this Action would not survive a motion for summary judgment which would terminate the Action prior to trial.

Court ordered conclusion of fact discovery, in a case where the pre-trial conference was scheduled to be conducted only three months later.

During the course of the litigation, Lead Plaintiff and the Original Lead Plaintiff, through the Original Lead Counsel (as defined below) and Lead Counsel, among other things: (i) conducted an extensive investigation into the Class's claims; (ii) drafted four detailed amended complaints; (iii) successfully appealed the dismissal of the original complaint; (iv) in large part, successfully opposed two later motions by Defendants to dismiss the Action; (v) successfully moved for class certification; (vi) engaged in an extensive discovery program, including the review and analyses of hundreds of thousands of documents and the review and analyses of depositions of 29 witnesses taken in a related proceeding by the U.S. Securities and Exchange Commission ("SEC"); and (vi) engaged in face to face and telephonic meetings (facilitated through Jonathan Marks) regarding a possible settlement of the Action over the course of several months, before reaching an agreement in principle to settle the Action.  As a result, Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted in the Action at the time the Settlement was reached.

The Plaintiffs themselves have closely monitored and participated in this litigation from the time they became involved in the litigation, were aware of, and approved the settlement negotiations, and agree that the Settlement should be approved.  Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of the Class.

At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers in support of the Settlement, and will be asked to make a

3

determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action.   At this juncture, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated or made available to the Class and the Settlement Hearing may be scheduled.

Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving the Proposed Settlement and Providing for Notice ("Preliminary Approval Order"), which has been agreed upon by the Parties, a copy of which is attached as Exhibit A to the Amended Stipulation.   The Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Amended Stipulation; (ii) approve the form and manner of giving notice to the Class; and (iii) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Net Settlement Fund and Co-Lead Counsel's application for attorneys' fees and Litigation Expenses and Plaintiffs' Expenses.[5]

## II.   DESCRIPTION OF THE LITIGATION

This Action involves Defendant allegedly omitting, in prospectuses of seventeen Smith Barney Funds in which Defendant's signature allegedly appears ("the Prospectuses"), material facts about an arrangement whereby entities related to the Dismissed Citi Defendants were allegedly  receiving kick-backs in connection with transfer fund agreements with a third party regarding the transfer agent functions previously performed by a third party.   In particular, the

---

[5]   Lead Counsel have been notified that the Original Lead Counsel may submit an application for attorney's fees and litigation expenses.  Lead Counsel reserve the right to object to that application.

Prospectuses allegedly omitted to state that the Citi-related entities had restructured the transfer agent function by retaining a sub-transfer agent to perform most of the transfer agent functions and duties while paying the sub-transfer agent only a small portion of the transfer agent fees charges to and collected from the Smith Barney funds and retaining the majority of those fees for their benefit and failing to pass those cost savings to Plaintiffs and the other members of the Class.

Following disclosure of this kick-back scheme, on August 26, 2005, *Chilton v. Smith Barney Fund Management LLC, and Citigroup Global Markets, Inc.*, 05-cv-7583 (WHC) (S.D.N.Y.) was filed in this Court by and on behalf of certain persons who purchased or sold shares in mutual funds sponsored by Smith Barney (the "Smith Barney Funds") asserting violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder ("Rule 10b-5"), and Section 36(b) of the Investment Company Act of 1940 ("ICA") relating to the alleged improper institution and retention of transfer agent fees from the Smith Barney Funds.  Between August 26 and September 30, 2005, four other class actions alleging substantially similar facts were filed in this Court.

On December 28, 2005, this Court consolidated the five actions.  Operating Local 649 Annuity Trust Fund ("Local 649") and Plaintiff Jeffrey Weber ("Weber") moved for selection as lead plaintiff and for designation of their attorneys, Bernstein Liebhard LLP ("Bernstein Leibhard") as lead counsel in the Action.  A group of shareholders comprising the Chiumento Group also moved for selection as lead plaintiff and for designation of their attorneys, Stull, Stull & Brody and Weiss & Lurie, as co-lead counsel.  On April 17, 2006 the Court appointed Local 649 and Weber as Lead Plaintiff ("Original Lead Plaintiff") in the Action to pursue the

claims alleged, and the Court further approved the appointment of Bernstein Liebhard as Lead Counsel ("Original Lead Counsel") for Original Lead Plaintiff and the putative class.

On June 1, 2006, Original Lead Plaintiff filed an Amended Consolidated Class Action Complaint ("First Amended Complaint"), which charged, among others, Daidone and the Dismissed Citi Defendants with violations of Sections 10(b) of the Exchange Act and Rule 10b, and violations of the ICA. On September 26, 2007, the Court issued an opinion and order granting the Defendants' motion to dismiss the First Complaint in its entirety, and granting Original Lead Plaintiff leave to replead. Instead of repleading, the Original Lead Plaintiff appealed the Court's September 26 Order to the Second Circuit on April 15, 2008. On February 16, 2010, the Second Circuit issued an order and opinion vacating the Court's dismissal of the Exchange Act claims and affirming the dismissal of the ICA claims.

On April 28, 2010, Defendants renewed their motion to dismiss the First Amended Complaint's Section 10(b) claims on grounds not reached in this Court's September 26, 2007 decision. On January 25, 2011, the Court granted in part, and denied in part, Defendants' motion to dismiss. In the January 25 Order, the Court held that plaintiffs lacked standing to pursue claims related to the Smith Barney Funds in which no named plaintiff invested.

On May 5, 2011, Original Lead Plaintiff filed the Second Amended Consolidated Class Action Complaint ("Second Amended Complaint"), which charged, Daidone and the Dismissed Citi Defendants with violations of Sections 10(b) of the Exchange Act and Rule 10b-5. The

Second Amended Complaint added ten additional named plaintiffs, who had purchased various Smith Barney Funds, most not purchased by the Original Lead Plaintiff.[6]

Between May 2011 and August 2011, the Parties engaged in class discovery, which included full day depositions of all Plaintiffs, responses to interrogatories, written responses to document requests, and extensive document production.

On August 31, 2011, Local 649 withdrew as Original Lead Plaintiff.  On December 15, 2011, the Court entered an order replacing the Original Lead Plaintiff with Zagunis as Lead Plaintiff (hereinafter "Lead Plaintiff") and replacing Original Lead Counsel Bernstein Liebhard with the law firms of WeissLaw LLP and Stull, Stull & Brody as Lead Counsel (hereinafter "Lead Counsel") for Lead Plaintiff and the putative class.

Following the December 15, 2011 appointment of Lead Counsel and Lead Plaintiff, Defendants made available to Lead Counsel, *inter alia*, hundreds of thousands of pages of confidential and non-public documents, along with numerous deposition transcripts and exhibits from a related SEC proceeding.  Plaintiffs proceeded to review and analyze, with the assistance of their retained expert, the discovery produced by Defendants.  On February 28, 2012, Plaintiffs filed the Fourth Consolidated Amended Complaint ("Fourth Amended Complaint"), which charged Daidone, Thomas Jones ("Jones"), and the Dismissed Citi Defendants with violations of Sections 10(b) of the Exchange Act and Rule 10b-5.  The Fourth Amended Complaint also included for the first time a specific "scheme liability" claim under Rule 10b-5(a) and 10b-5(c) against Daidone, Jones and the Dismissed Citi Defendants.

---

[6]     The Third Amended Complaint was filed on June 30, 2011 which merely added one additional named plaintiff

On March 14, 2012, Lead Plaintiff moved to partially lift the PSLRA discovery stay that had been established by the Court following the filing of the Fourth Amended Complaint.  On April 25, 2012, the Court denied Lead Plaintiff's application, but granted Lead Plaintiff the right to serve certain document retention subpoenas.

On March 30, 2012, the Former Defendants, Jones and Daidone moved to dismiss the Fourth Amended Complaint.  On August 15, 2012, the Court issued an order and opinion granting in part, and denying in part, the motions to dismiss the Fourth Amended Complaint filed by Former Defendants, Jones and Daidone.  In its order and opinion, the Court, among other things, dismissed all claims against the Former Defendants and Jones.

Following the Court's August 15 Order and Opinion on the motion to dismiss the Fourth Amended Complaint, the Parties began discussing the possibility of resolving the Action through full merits mediation.  The Parties subsequently retained Jonathan Marks ADR for that purpose.  A full day mediation took place before Mr. Marks on November 7, 2012.  Although the initial mediation was unsuccessful, the Parties continued to communicate through Mr. Marks over the course of the next few months in an effort to resolve the Action.

Following the Plaintiffs' written responses to document requests, production of documents, responses to interrogatories and depositions, on January 18, 2013, Lead Plaintiff renewed a motion to certify the putative class and certify the Plaintiffs as Class representatives.  Daidone opposed class certification.  On March 21, 2013, the Court certifying the Class, certified the Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.

On April 19, 2013, Lead Plaintiff, Plaintiffs, Daidone and the Former Defendants reached a settlement in principle, subject to further documentation and approval by the Court.

On July 31, 2013, the Parties executed a stipulation of settlement and on August 8, 2013, the parties executed an Amended Stipulation of Settlement.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"The settlement of complex class action litigation is favored by the Courts." *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 U.S. Dist. LEXIS 99840, at *1 (S.D.N.Y Nov. 20, 2008). *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) requires judicial approval for the compromise of class claims.  Judicial review of a class action settlement consists of two steps: preliminary approval and a subsequent settlement fairness hearing.  At preliminary approval, the standards are more relaxed than for final approval.  *See Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007).  The Court's function in the preliminary approval stage is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Prudential*, 163 F.R.D. at 209 (quoting *Armstrong v. Bd. of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)).  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and

falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

When a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval. In other words, the court must make a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006). The Court does not make a final determination of the merits of the proposed settlement at the preliminary approval stage, however. *See Prudential*, 163 F.R.D. at 210. The full evaluation is made at the final approval stage, following notice of the settlement to Class Members. *Id.* Plaintiffs request that the Court takes the first step in the settlement approval process and grant preliminary approval of the Settlement so that notice of the Settlement can be given to the previously certified Class.

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, factors considered by courts in granting final approval of class action settlements demonstrate that the Settlement is well "within the range of possible approval" and that preliminary approval should be granted. *Initial Pub. Offering*, 243 F.R.D. at 87.

### A.   The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart*, 396 F.3d at 116 (noting a strong "presumption of fairness" where a settlement is the product of arm's-length

negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *41 (S.D.N.Y. Nov. 8, 2010) (same).   The use of a mediator in settlement negotiations further supports this presumption of fairness and the conclusion that the Settlement achieved here was free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *40 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation.").

Here, the Settlement was achieved only after protracted arm's-length negotiations – including a full-day, highly contentious mediation session that included fully briefed opening and reply submissions, comprehensive merits presentations and extensive post-mediation telephonic negotiations over the course of several months.  These settlement discussions were conducted under the auspices of a highly respected and experienced mediator.[7]  *See In re Giant Interactive Group., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms' length negotiations); *In re AOL Time Warner, Inc. Sec.& ERISA Litig.*, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *26 (S.D.N.Y. April 6, 2006) (noting that involvement of mediator in settlement negotiations helped "ensure that the proceedings were free of collusion and undue pressure").

_____

[7]      Jonathan Marks, ADR.

Moreover, in determining the good faith of the proposal Settlement, the Court should consider the judgment of Lead Counsel. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629, at *36 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125  (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Lead Counsel are among the nation's leading securities class action litigation firms.  Accordingly, their judgment that the Settlement is in the best interest of the Class should be given considerable weight. Consequently, the Court has ample evidence that the Settlement was negotiated in good faith by well-informed counsel, and was not the product of collusion.

### B.   The Settlement Generally Satisfies the Criteria for Final Approval of a Class Action Settlement

The Second Circuit has identified nine factors that district courts must consider in determining whether to finally approve a class action settlement.  To the extent that they are applicable at this stage, they can be used as guidelines for considering preliminary approval:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Warner Chilcott*, 2008 U.S. Dist. LEXIS 99840, at *3-4 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

**1.      The Complexity, Expense and Likely Duration of the Litigation Support Preliminary Approval**

Plaintiffs have been litigating this case for almost eight years, and thus far have had a previous motion to dismiss reversed in their favor on appeal, defeated in large part two other motions to dismiss, and succeeded in obtaining class certification. Substantial discovery has been conducted. At the time the Parties reached the Settlement, Plaintiffs were preparing to take the depositions of Defendant and third parties. The Court-approved discovery schedule was soon to expire and the pre-trial conference was to follow in short order. Plaintiffs also expected that, Defendant would move for summary judgment.

If the Action did not settle, the Parties faced the expense and delay of completing fact and expert discovery, additional motion practice (including summary judgment, *Daubert* motions, motions *in limine*, trial, post-trial motions and potential appeals. *See, e.g.*, *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *43-44 ("Although Plaintiffs have conducted significant fact discovery, the costs and duration of completing fact discovery, conducting expert discovery, additional motion practice, trial preparation, the trial itself, post-trial motions, and any appeals would be substantial."); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement in complex securities fraud case where issues "were likely to be litigated aggressively, at substantial expense to all parties"). Defendant has acted vigorously to have the case dismissed or limit its scope since its inception. There is no reason to believe that Defendant would be any less aggressive going forward.

Continued litigation would be extremely expensive, and would delay any recovery, which is particularly significant where, as here, Class Members have already been waiting so long for relief.[8] Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *31 (because of their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials") (citations omitted).   Moreover, because continued litigation increases  litigation expenses, it could result in less recovery.

### 2.     The Reaction of the Class to the Settlement

The Plaintiffs actively monitored the litigation and were well aware of the settlement negotiations that were occurring.   Plaintiffs support the proposed Settlement and want the proposed Settlement to be submitted to the Court for preliminary approval.   Because notice has not been sent to the Class yet, it is impossible to predict how the rest of the Class will react to the Settlement.   Plaintiffs will comment on this issue further in connection with their motion for final approval of the Settlement.

---

[8]     Delay would further increase the likelihood of Plaintiffs being unable to locate Class Members and give those harmed an opportunity to share in any recovery.

14

### 3.    The Substantial Risks of Establishing Liability and Damages Strongly Support Preliminary Approval of the Settlement

The proposed Settlement creates a settlement fund of $4,950,000.00 in cash.   This recovery provides an substantial benefit to the Class, especially in light of the risks posed by trial.   The benefit of the proposed Settlement must be weighed against the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, possibly many months, or even years, into the future.

The claims alleged by the Plaintiffs involve numerous complex legal and factual issues. If the Action were to proceed to trial, to prove liability Plaintiffs would have to overcome numerous defenses.   Among other things, the Parties disagree about: (i) whether Defendant had made any statements as defined by the securities laws; (ii) if Defendant had made statements, whether these statements omitted any material facts regarding the transfer fee arrangement and transfer agent fees; (iii) whether Defendant had a legal duty under the Exchange Act to disclose the sub-transfer agent arrangement that was allegedly omitted; (iv) whether the information regarding the transfer fee arrangements and transfer agent was material; and (v) whether Defendant acted with *scienter*.[9]   To prove damages Plaintiff would have to prove: (i) whether the net asset value of the shares of the Smith Barney Funds were affected by the transfer agent agreements; (ii) whether the Dismissed Citi Defendants used the transfer agent fee saving for their benefit and not for the benefit of the Smith Barney Funds; (iii) the payment of the transfer

---

[9]     There were also significant issues as to whether Defendant faced liability with respect to many of the Funds at issue due to the Second Circuit's recent ruling in *Police & Fire Ret. Sys. v. Indymac MBS, Inc.,* 2013 U.S. App. LEXIS 13203 (2d Cir. June 27, 2013), which addressed the issue whether the statute of repose would be tolled as to class members with funds covered by the class definition in the complaint but who had not initially brought claims.

agent savings to the Dismissed Citi Defendants rather than the Smith Barney Funds resulted in legally cognizable damages to the Class; and (iv) that the Class did not realize the benefit of the settlement in the redacted SEC action.   The Parties also disagree on the appropriate methodology for determining damages, if liability were established.

The prospect of proving damages raised significant risks and those risks support granting preliminary approval of the Settlement.   Plaintiffs expect that they would be able to prove that the tens of millions of dollars in transfer agent fees that the Dismissed Citi Defendants were able to save was a result of their failure to share those savings with the Smith Barney Funds. Defendants would have attempted to show, among other things, that virtually all of the money that Plaintiffs would have claimed was pocketed by the Dismissed Citi Defendants was paid back to the Smith Barney Funds by way of a settlement with the SEC, or that the fees charged in line with those changes by other mutual funds advisors.   Thus, although Plaintiffs would argue that the benefit of the SEC settlement was limited because many Class Members likely sold their shares before a distribution of the SEC settlement was made (almost five years after the Class period ended) Defendant would argue that the Funds were already compensated.

In addition, Plaintiffs are confident that even if they were to prevail on liability and damages at trial, Defendants would appeal the verdict, especially in light of the dispute surrounding damages.   At best, the appeals process would lead to further delays, and at worst, it would lead to a recovery that is less than the Settlement Amount or possibly no recovery at all.

## 4.      The Stage of the Proceedings at the Time of the Settlement Supports Preliminary Approval

Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims against Defendant after nearly

eight years of intensive litigation.   This understanding is based on the extensive dispositive motion practice regarding the parameters of the case, extensive document production, including transcripts of depositions of 29 witnesses in a related SEC proceeding, and the Plaintiffs were subject to rigorous discovery and certified.   Moreover, Plaintiffs gained a thorough understanding regarding the collectability of a judgment in an amount greater than the Settlement Amount.

At the time the Settlement was reached, there was a clear view of the strengths and weaknesses of the claims.   Thus, the Settlement is the product of serious, informed, non-collusive negotiations, is well within the range of possible approval, and does not have any obvious deficiencies.   Therefore, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

As described below in Section III (B)(6), an understanding of Daidone's financial position, with his limited resources, also was a significant factor in the decision to settle, because it confirmed Daidone would not have the resources to satisfy a judgment larger than the Settlement Amount .

### 5. The Risks of Maintaining the Class Action Through Trial Supports Preliminary Approval

Although Plaintiffs are confident that this action will continue to satisfy Rule 23, there is always a risk that circumstances could change and the Court could find a reason to decertify the class.  The Second Circuit's recent decision in *IndyMac* raises a question as to whether at least some of the Plaintiffs could be subject to a motion for decertification.  Approval of the proposed Settlement avoids that risk.

17

6.      **The Ability of Defendant to Withstand a Judgment Larger Than the Settlement Supports Preliminary Approval**

Lead Counsel's understanding is that, due to public policy and contractual considerations, there was a substantial risk that Daidone would not be indemnified by his former employer should the case continue to trial and the jury find that he had violated the securities laws, even if his conduct was only reckless. Moreover, it is unlikely that he would be able to pay an amount greater than the Settlement Amount. This supports preliminary approval. In fact, there are serious questions as to whether it would ever have been permissible for the Dismissed Citi Defendants to indemnify Daidone if he was found liable. Indeed, case law suggests that under such circumstance, attempts to obtain indemnification through litigation would have failed. Defendant has provided an affidavit to Lead Counsel attesting to his limited financial resources which supports the assertion that he would not be able to fund a larger settlement or satisfy a judgment larger than the Settlement Amount.

7.      **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks Supports Preliminary Approval of the Settlement**

In analyzing the size of the Settlement Amount compared to the best possible recovery and in view of the attendant risks, "the issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *57. "[I]n any case, there is a range of reasonableness with respect to a settlement." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

18

The proposed Settlement will provide Class Members with a $4.95 million recovery, before any award of attorneys' fees, Litigation Expenses, and Plaintiffs' expenses.  Although this is a small percentage of Plaintiffs' estimate of the maximum damages attributable to the alleged wrongdoing, it is reasonable under the circumstances.  *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (finding that 6.25% of estimated damages was "at the higher end of the range of reasonableness of recovery in class action securities litigations").

The proposed Settlement compares favorably with recent settlements in other securities class action cases.  In recent years, courts in this District have frequently approved settlements in securities class action cases that provide as little as 2% of estimated damages.  *See, e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (2% of estimated recovery).  Moreover, when the risks of the case, including the risk of non-collection, are taken into account, it is clear that the recovery is well within an acceptable range.

## IV.   THE PLAINTIFFS REQUEST THAT THE COURT APPROVE THE APPOINTMENT OF  RG/2 CLAIMS ADMINISTRATION LLC AS CLAIMS ADMINISTRATOR

In connection with the proposed Settlement, Lead Counsel have proposed RG/2 Claims Administration LLC ("RG/2" or the "Claims Administrator"), a leading class action administration firm to act as the claims administrator for the Action, after seeking bids from four (4) qualified class action administration firms.  Plaintiffs sought a firm that would best be suited for this case in light of the issue regarding the ability to identify Class Members and best assure that Class Members reasonably possible would have access to the notice, that the firm could efficiently process the claims in view of the risk of their being large quantities of claimants that

are not eligible to file claims and pricing of services.  Based on multiple communications with four firms it appeared that RG/2 was the most suitable.

## V.    THE PROPOSED SCHEDULE IS REASONABLE

The Plaintiffs have outlined in the proposed Preliminary Approval Order submitted herewith a proposed schedule for moving forward with the settlement approval process.  Under Plaintiffs' plan, no later than ten (10) business days after entry of the Preliminary Approval Order (the "Notice Date"), RG/2, the Claims Administrator, will provide a copy of the Mailed Notice and Proof of Claim Form, substantially in the forms attached as Exhibit A-1 and A-2 to the Amended Stipulation (the "Notice Packet"), by first-class mail to those members of the Class whose name and last-known address, to the extent such records exist, can be practicably identified and accessed through reasonable effort.[10]  Additionally, the Claims Administrator shall send a copy of the Notice Packet to all practicably and reasonably-identified and/or likely Class Period record purchasers of Smith Barney Fund shares who were not also beneficial purchasers and owners of those shares, including brokers and other nominees who purchased or redeemed Smith Barney Fund shares during the Class Period for the benefit of another person.  All such brokers, nominees and other record purchasers of Smith Barney Fund Class Period shares will be requested to forward the Notice Packet to such beneficial owners.  The Claims Administrator will use all reasonable efforts to give notice to such beneficial owners by: (i) making additional copies of the Notice Packet available to any broker, nominee or other record purchaser who,

---

[10]     As set forth in the Levine Declaration, the Plaintiffs have attempted to, but have been unable to obtain the names and last known addresses of most Class Members.  The Levine Declaration explains the efforts made to obtain such a list and the steps taken to assure that the notice program results in the best notice reasonable under the circumstances.

prior to the Settlement Hearing, requests the Notice Packet for distribution to beneficial owners; or (ii) mailing additional copies of the Notice Packet to beneficial owners whose names and addresses the Claims Administrator receives from any broker, nominee or other record purchasers.

Contemporaneously with the mailing of the Notice Packet, the Claims Administrator will cause copies of the Long-Form Notice and Proof of Claim Form to be posted continuously on a website designated for this Action from which Class Members may download copies of the Long-Form Notice and Proof of Claim Form. A copy of the Long-Form Notice is attached as Exhibit B to the Amended Stipulation. Not later than ten (10) calendar days after the Notice Date, the Claims Administrator will cause the Summary Notice, substantially in the form attached as Exhibit C to the Amended Stipulation to be published once in the national edition of *USA Today* and to be transmitted once over the *PR Newswire*.

In connection with preliminary approval of the Settlement, the Court will be asked to set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Mailing Notice and Proof of Claim to those members of the Class whose name and accurate last known address to the extent such record exists can be practically identified and accessed through reasonable methods ("Notice Date") | 10 business days after the Notice Date |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, Plaintiffs' Counsel's Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses | 30 calendar days before the Settlement Hearing |
| Receipt deadline for objections and requests to opt back into the Class | 15 calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's earliest convenience starting no earlier than 70 days after the notice date |
| Deadline for submitting Claim Forms | Post- marked 120 calendar days after the Notice Date |

## VI.   THE FORM AND METHOD OF PROVIDING NOTICE IS REASONABLE AND IS THE BEST PRACTICABLE NOTICE AND SHOULD BE APPROVED

Ideally, it would have been preferable for Plaintiffs to have been able to obtain complete mailing lists of the names of Class Members and their last known addresses, but that was, if impossible, certainly highly impractical in this case.[11]   As indicated in the Levine Declaration,

---

[11]    Even in the typical section 10(b) settlement with an issuer, although the transfer agent would produce a shareholder list it would identify only nominal owners.  Nominal owners typically comprise a very small portion of the total number of shareowners.  Because of that, the Claims Administrator depends, in large part, on the nominal holders to identify the beneficial holders and either directly send them the mailing notice or provide to the Claims Administrator a

the passage of time and the succession of managers of the former Smith Barney Funds have led to the unfortunate situation such that the transfer agent records either were purged and no longer exist or would require such an investment of time and money to see if they do exist that, in view of the limited settlement fund, it is not practical even to conduct such a search.  Despite the lack of a shareholder list, Lead Counsel have taken steps to ensure that the Notice is the best notice practicable under the circumstances through the Long-Form Notice on the Web, Summary Notice in the *USA Today* and transmitted over the *PR Newswire,* and perhaps most important by notifying more than one thousand potential nominees, each of which is required to check its records for beneficial holders and to provide the Claims Administrator with the identity of the Class Members or to provide the Mailing Notice directly to such beneficial holders.

Lead Counsel believe that, because the Long-Form Notice (using the Web), Mailing Notice and Summary Notice (using publication in the *USA Today* and transmitting over the *PR Newswire* fairly apprise Class Members of their rights with respect to the proposed Settlement, they represent part of a program providing for the best notice practicable under the circumstances satisfying the requirements of due process and Rule 23 and should be approved by the Court.[12]

---

list identifying beneficial holders.  Thus, the overwhelming majority of beneficiary holders are dependent on the nominees taking the appropriate action.  The situation is not dissimilar here in that RG/2 will send Notice to over one thousand  potential nominees (such as stock brokerage firms that might hold stock for beneficiaries) who will presumably identify beneficial holders and act appropriately to facilitate notice.

[12]     The Publication Notice advises Class Members of the essential terms of the Settlement and directs Class Members to an online Long Form Notice, which provides more detailed information about the terms of the settlement, reasons for the Settlement, Plaintiffs' Counsel's application for attorneys' fees, litigation expenses, Plaintiffs' expenses the proposed plan for allocating proceeds of the Settlement among Class Members and the releases. It also will set forth the procedure for objecting to the Settlement or opting out of the Settlement

*See Dorn v. Eddington Sec., Inc.*, No 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *11

(S.D.N.Y. Jan. 20, 2011); *Warner Chilcott*, 2008 U.S. Dist. LEXIS 99840, at *7-9; *In re Global*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004).

**VII.   THE PLAN OF ALLOCATION IS REASONABLE
        AND SHOULD BE PRELIMINARILY APPROVED**

Plaintiffs, together with their expert, devised the Plan of Allocation.  The Plan of

Allocation is explained in detail in the ¶¶ 48-61 of the Long-Form Notice.  The objective of the

Plan of Allocation is to equitably distribute the Settlement Fund to those Class Members who

suffered the greatest loss resulting from the alleged violations of the Federal Securities Laws.

The theory of loss is based upon the diminution of value in class period investments being equal

to the fees improperly charged to the various Smith Barney Funds and retained by Smith Barney

entities.  Because there are so many potential claims, many claimants' losses are extremely small

and the fund available to pay those claims is limited, the plan of allocation is devised so that

claimants will not be paid unless they would otherwise be entitled to at least ten (10) dollars.  In

addition, although claimants are required to produce appropriate transaction documentation, the

Plan of Allocation gives preference to those with complete documentation, but recognizes that

due to the fact that the transactions at issue were so long ago, it may be difficult for some

claimants to produce full documentation.  Those who can produce some, but not complete,

documentation, will be eligible for a default recovery, if there is money available after those who

provided full documentation have been fully paid.  For purposes of equity, the Settlement Fund

---

and will provide specifics on the date, time and place of the Settlement Hearing.  Thus, the
notices provided more than satisfy Plaintiffs' obligation to the Class.  *See, e.g. In re Michael
Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice need only describe the
terms of the settlement generally).

will be broken up proportionately into pools for each of the seventeen (17) funds according to the amount of "improper fees" paid to each fund. The Long-Form Notice (¶ 54) illustrates the amount of "improper fees" paid to each fund.

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Lead Plaintiff's Motion and enter the accompanying Order.

Dated: August 12, 2013

New York, New York                                    Respectfully submitted,

**STULL, STULL & BRODY**

By:     /s/   Mark Levine
        Jules Brody
        Mark Levine
        6 East 45th Street
        New York, NY 10016
        (212) 687-7230

**WEISSLAW LLP**
Joseph H. Weiss
Richard A. Acocelli
Michael A. Rogovin
1500 Broadway
New York, NY 10036
(212) 682-3025

Co-Lead Counsel for Plaintiffs and
Class Counsel