UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE SMITH BARNEY TRANSFER
AGENT LITIGATION

CIVIL ACTION
NO. 05 Civ. 7583 (WHP)

---

### SUPPLEMENTAL DECLARATION OF MARK LEVINE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

MARK LEVINE declares, under penalty of perjury of the laws of the United States, as follows:

1. I am a senior attorney with Stull, Stull & Brody, co-Lead Counsel for the Plaintiffs in the captioned certified class action (the "Action"),[1] and counsel to Lead Plaintiff Zagunis and Plaintiffs Hall, Miller, Shah and Rees. On March 21, 2013, Stull, Stull & Brody and WeissLaw LLP were appointed Class Counsel by the Court. I submit this Supplemental Declaration in Support of Preliminary Approval of Settlement.

2. On July 31, 2013, the parties appeared at pre-motion conference wherein Plaintiffs requested permission to file a motion seeking preliminary approval of the proposed Settlement ("Preliminary Approval Motion"). On August 2, 2013, the Court entered a scheduling order (Dkt. 282) setting August 9, 2013 as the last date for Plaintiffs to file their Preliminary Approval Motion and supporting papers; (2) August 23, 2013 for any opposition; (3) August 30, 2013 for Plaintiffs to file a reply, if any; and (4) September 4, 2013 for the Court to hold a preliminary approval hearing.

---

[1] All capitalized terms not otherwise defined shall have the same meaning as those set forth in the Amended Stipulation of Settlement executed by the parties on August 8, 2013 ("Amended Stipulation"), which contains the terms and conditions of the proposed settlement of the Action ("Settlement").

1

3. On August 9, 2013, pursuant to the August 2 scheduling order, Lead Plaintiff submitted his Preliminary Approval Motion and supporting papers. In connection with that filing, I submitted a Declaration, which among other things, explained the efforts Lead Counsel had made to obtain Class Period transfer agent records which would theoretically contain, among other things, Class Member names, last known addresses and trading information pertaining to their investments in the seventeen (17) former Smith Barney funds that are the subject of the Settlement (the "Funds"). I also explained the difficulties encountered in obtaining the Class Period Fund accountholder and transactional records due to, among other things, the sale to, and assumption of management of the Funds by, Legg Mason, Inc. ("Legg Mason") in 2006 and the subsequent transfer agent change for most former Smith Barney funds, including the Funds at issue.

4. On August 8, 2013, following Lead Counsel's application, the Court modified the schedule to allow Plaintiffs until August 19, 2013 to seek and submit supplemental declarations from the entities most likely to have custody and control of the relevant Class Period accountholder and transactional records to address the availability and accessibility of those records (Dkt. 283); i.e., Legg Mason, which assumed management of the Smith Barney mutual funds, including Funds at issue, in 2006; BNY Mellon Investments (USA) Inc. ("BNY Mellon"), which was retained by Legg Mason to serve as transfer agent to the Legg Mason funds (which included the Funds) in April 2009; and Boston Financial Data Services, Inc. ("Boston Financial"), which succeeded BNY Mellon as transfer agent to the Legg Mason funds (including the Funds) and currently serves in that capacity (collectively, the "Successor Entities" ). (Dkt. 283) The Court also extended the Opposition due date to August 26, 2013. I am unaware of any opposition to the Preliminary Approval Motion that was filed.

5.  By August 19, 2013, Plaintiffs had received, pursuant to subpoena, declarations from Legg Mason and BNY Mellon but did not file those declarations for the reasons explained in Plaintiffs' August 19, 2013 letter to the Court ("August 19 Letter"). A copy of the August 19 Letter is annexed hereto as Exhibit 1. Both of those declarations are being submitted herewith.

6.  On August 20, 2013, the Court entered an order (pursuant to Plaintiffs' request in the August 19 Letter) giving Plaintiffs until August 30, 2013 to continue to seek a declaration from Boston Financial that clarified the existence and/or accessibility of the Class Period Fund accountholder and transactional records (Dkt. 284).

7.  On August 30, 2013, I received a declaration from Boston Financial.

8.  The declaration submitted on behalf of Legg Mason, which is the Declaration of Dana N. Pescosolido, annexed hereto as Exhibit 2, established that Legg Mason does not and has never had any of the documents necessary to identify the names and last known addresses of Class Members.

9.  The declaration submitted on behalf of BNY Mellon, which is the Declaration of Michael G. McCarthy, annexed hereto as Exhibit 3, establishes that BNY Mellon likely has no accessible Class Period Fund accountholder and transactional records, and to the extent that there is a possibility of there being backup tapes that might provide such information, the costs, time and uncertainty involved in locating and restoring the backup tapes, especially in view of the limited settlement fund available, makes it impracticable to undertake such a project.In March 2013 Boston Financial had also been subpoenaed by Plaintiffs for records that would among other things, identify the Class Members and their transactions. Plaintiffs had engaged in many communications with Boston Financial's inside counsel and outside counsel to determine if the Class Period Fund accountholder and transactional information was available. Among other

3

things, I had posed to Boston Financial pointed questions as to the existence, accessibility, custody and control of the Class Period accountholder and transactional records and Boston Financial clearly responded. As reflected in the email to me from Adam Sisitsky of Levin Mintz, Boston Financial's outside counsel, dated August 8, 2013, any records which may have identified the names and addresses of Class Members and/or their Class Period Fund transactional history had been "purged" from Boston Financial's system. *See* Exhibit 4, annexed hereto.

10. As part of its efforts to comply with the subpoena in a reasonable manner, Boston Financial had agreed to provide a declaration from an operations person with knowledge about the existence, accessibility, custody and control of the Fund Class Period accountholder and transactional records. I had understood that a declaration would be produced that would explain that the documents were not available and had been purged. That continued to be my understanding until after 5 p.m. of August 19, 2013, when I was expecting to receive the Boston Financial declaration but instead received an email from Mr. Sistisky informing me that counsel had just "learned that while running through the points in the final draft affidavit with the officer who was to sign it, [Boston Financial] learned new information from [the officer who was going to sign the affidavit] that he thought that there might actually be a way, previously not considered by [Boston Financial's] operations people, that we could obtain the requested information." *See* email from Adam Sisitsky to Mark Levine, dated August 19, 2013, annexed hereto as Exhibit 5.

11. I received a further email from Mr. Sisitsky on August 27, 2013, which was a follow up to Mr. Sisitsky's previous email of August 19, 2013 informing me that Boston Financial could produce certain reports. Mr. Sisitsky's August 27, 2013 email indicated that

4

Boston Financial had the "capability of creating a report that would show the transaction history that had previously been purged from Legg Mason shareholder accounts beginning in April, 2009 through May 31, 2010." *See* email from Adam Sisitsky to Mark Levine dated August 27, 2013 ("August 27 Email"), annexed hereto as Exhibit 6. Mr. Sisitsky went on to explain that "the report would show purchases and redemptions made during the timeframe of April, 2009 through May 31, 2010." *Id.*

12.  Rather than revealing that Boston Financial had determined how to produce the documents necessary to identify the class members, Mr. Sisitsky's August 27 email in fact confirmed that the requested information was not available. I quickly responded the same day to Mr. Sistisky that such a report would not be helpful because it would not identify the purchasers of the Funds during the broader Class Period or each Fund's unique damages period, and thus, he should not produce the report, he should not do anything to further damage the information in the report (should it later turn out to be of value in some respect) and that he should as soon as possible send me a draft of the declaration that was to be signed by the Boston Financial officer.

13.  The declaration I received from Boston Financial, executed by Paul Leary, a Vice President of Boston Financial, which is entitled the Declaration of Boston Financial Data Services, Inc. (the "Leary Declaration"), annexed hereto as Exhibit 7, indicates:

> 9.  Based on a review of Boston Financial's records and discussions with Boston Financial employees who manage the record retention system, I have reached the conclusion that even if a report were created which would show the transaction history made in all accounts identified in the Report, which had been purged in accordance with our regular business practices; such a report would not provide adequate information to identify the last known names and addresses of each of the persons or entities that purchased or sold Fund shares during the respective damages periods and/or provide a complete record of their purchases, sales and holdings in the Funds during the respective damages periods.

*See* Leary Declaration at ¶9

14. In light of the confirmation of the disposition of the Class Period Fund account holder and transactional records, Plaintiffs are also submitting the Declaration of William W. Wickersham, the Vice President, Business Development and Client Relations of RG/2 Claims Administration LLC ("RG/2"), the proposed claims administrator of the Settlement (the "Wickersham Declaration"). The Wickersham Declaration establishes the reasonable steps that will be taken to reach as many class members as possible through the use of the mailing notice to Depository Trust Company member firms, firms contained on a proprietary list maintained by RG/2, maintenance of a website and publication in *The USA Today*.[2] *See* Wickersham Declaration at ¶¶7-10. As Mr. Wickersham indicates it is typical that most class members in securities class actions are identified through such methods as opposed to direct lists obtained through transfer agents. *Id.* at ¶¶ 8-9.

15. Plaintiffs are confident that RG/2 has the necessary experience and has outlined procedures to be followed by RG/2 that are sufficient to protect the class member's rights to due process and complies with Rule 23 of the Federal Rules of Civil Procedure.

16. The Court had previously indicated a preference for Class Members to be paid from the Settlement fund directly. Although that would have been preferable, because of the inability to obtain Class Period Fund accountholder and transactional records from any current or former transfer agent or Fund advisor, it is impossible to do so. Instead the procedure proposed, similar to that used in the typical securities class actions, requires class members to submit a complete proof of claim.

---

[2] As part of Lead Plaintiff's Preliminary Approval Motion, Lead Plaintiff also seeks to have the Court appoint RG/2 as the Claims Administrator for the Settlement.

17.     Pursuant to the proposed Preliminary Approval Order submitted on August 9, 2013 as Exhibit A to the Amended Stipulation, Lead Counsel and RG/2 will continue efforts to practicably identify Class Members and provide direct notice to them throughout the notice process.  We believe, however, that based upon information in the Legg Mason, BNY Mellon and Boston Financial declarations and previous communications with those Successor Entities, the vast majority (if not all) of names and addresses of Class Members for notice purposes will necessarily come from brokers and other intermediaries.

Executed this 30th[th] day of August, 2013.

_____
MARK LEVINE