UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IN RE SMITH BARNEY FUND TRANSFER AGENT LITIGATION | CIVIL ACTION<br>NO: 05 CIV-7583 (WHP) |

---

## STATUS REPORT OF LEAD COUNSEL AND PROPOSED AMENDED PLAN OF ALLOCATION

### Summary

Following months of intensive third-stage outreach to brokers and nominees seeking transactional records for potential Class Members[1] who maintained accounts with brokers/nominees during the relevant Damages Period ("Third Stage Outreach")[2], Lead Counsel and Court-appointed claims administrator RG/2 Claims, LLC ("RG/2") have obtained transactional records that establish Class Membership for an additional 62,544 persons or entities ("Newly Identified Class Members").[3]

However, after organizing and analyzing the newly-obtained transactional data, RG/2 has concluded that although nearly 75% of the transactional records obtained for the Newly Identified Class Members include sufficient documentation to perfect a claim under the current plan of allocation ("POA"), most of those new claims yield Recognized Losses well below the $10.00 minimum threshold required for recovery in the current POA. Moreover,

---

[1] Capitalized terms not otherwise defined shall have the same meaning as the terms defined in the August 8, 2013 Amended Stipulation and Agreement of Settlement ("Amended Stipulation") and the Long-Form Notice of (I) Pendency of Class Action; (II) Proposed Settlement; (III) Settlement Fairness Hearing; and (IV) Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Plaintiffs' Expenses ("Notice").

[2] The Third-Stage Outreach stage of the notice, allocation and distribution process, which is described in greater detail below, was proposed by Lead Counsel in a letter-brief requesting pre-motion hearing on August 27, 2014 (Dkt. No. 316), the proposed Order Relating to Notice and Administration of Settlement entered on October 9, 2014 ("Dkt No.320), and discussed with the Court at the pre-motion hearing conducted on October 8, 2014. The "first stage" of the notice, allocation and distribution process refers to Lead Counsel and RG/2's attempts to obtain full Class Member transactional records from the various transfer agents who have administered the Smith Barney Funds and Legg Mason legacy funds prior to preliminary approval of the Settlement. The "second stage" of the notice, allocation and distribution process refers to the direct notice program authorized by the Court pursuant to preliminary approval of the Settlement.

[3] As described in greater detail below, the notice program and claims process identified over 3100 bona-fide class members ("Previously Identified Class Members") and valid claims.

the remaining portion of the newly-obtained transactional records are incomplete for the purposes of calculating valid claims under the current POA.

Nonetheless, new transactional records indisputably identify over 62,000 new Class Members, and together with the 3,172 persons or entities who submitted valid claims during the claims process, to date a total of 65,716 Class Members have been located and identified as potentially eligible to recover from the Settlement Fund.

Thus, in an effort to distribute the Settlement Fund as fairly and equitably as possible in light of the cumulative data and records Lead Counsel and RG/2 have in their possession, Plaintiffs propose revising the POA to distribute uniform pro-rata payments from the Net Settlement Fund to all 62,716 Newly Identified Class Members as well as the 3,172 Previously Identified Class Members ("Uniform Payment").[4]  Further, Plaintiffs propose that for those Class Members whose records demonstrate a valid Recognized Loss in accordance with the formula set forth in the current POA, whether through the claims process or as calculated by RG/2 from the newly-obtained transactional records, that amount of Recognized Loss should be added to that Class Member's Uniform Payment and distributed on that basis.

**Background and Results of Efforts by Plaintiffs' Counsel to Obtain Additional Data**

As Lead Counsel has previously advised the Court, Class Members had the opportunity to submit claims for a period of approximately nine months.  Despite the efforts of Lead Counsel and RG/2 to provide notice of the Settlement and claim forms to as many Class Members as possible (resulting in provision of over 100,000 direct mailing notices), RG/2 has calculated the total Recognized Losses for the claims received to date, assuming that claims in need of further verification are resolved in the claimants' favor, is slightly more than $200,000.  That figure does

---

[4] As described in greater detail below, depending upon the magnitude of the funds remaining in the Net Settlement Fund following final approval of the Settlement, the Uniform Payment will range from $32.00 to $62.00 per Class Member.

2

not take into account reductions that would have been made under the current POA for Class Members who continue to hold the relevant Smith Barney Funds at the time of the May 2010 SEC Distribution.

Plaintiffs believe that there are a variety of reasons for the low level of claims response and claims-related Recognized Losses, most of which involve the age of the transactional information necessary to successfully contact Class Members and for Class Members to complete claim forms. Neither Citigroup related entities, the purported Class Members themselves, the brokers nor nominees who held Smith Barney investments in Class Members' names nor the various transfer agents, who from one time or another, may have had control of underlying transactional records seem to have reliably maintained those records in a way that make them accessible for the purposes of completing a claim form as contemplated by the current POA.

In conjunction with developing a revised POA that aspires to provide a recovery to as many Class Members as possible, and despite previous roadblocks, Lead Counsel and RG/2 renewed efforts to obtain whatever transactional records from brokers and nominees (as opposed to the Class Members or transfer agents) were available to support a solid basis for a revised alternative allocation.

Given the reality of low claims response, Plaintiffs believe it is preferable to distribute as much of the Settlement proceeds to as many of the persons or entities that were actually affected by the alleged fraudulent activity rather than making a massive *Cy Pres* distribution or returning the Settlement Proceeds derivatively to the Legg Mason legacy funds. As such, Third Stage Outreach efforts were focused on locating records that allowed RG/2 to, at minimum, establish Class Membership, even if such records did not support full documentation of a valid claim under the current POA. In short, Lead Counsel and RG/2 intensified the outreach to certain brokers and nominees to gain an understanding of the actual transactional records that were

available, what would be required to gain access to that data, and to ultimately secure the data's production.

More specifically, RG/2 contacted approximately 50 brokers and nominee firms through telephonic, email and U.S. Mail communications in an effort to obtain full transactional records for as many potential Class Members as possible. This group included virtually the entire subset of brokers and nominees who had in any way responded to the original notice program. During the Third Stage Outreach, RG/2 made numerous attempts to contact these broker and nominee firms to request transactional records and explain why this information was being requested. This contact included providing details of the transactional information needed, discussing appropriate data file formats, ascertaining what type of order was needed to facilitate the retrieval of the data (*i.e.,* Court order or subpoena), and following-up on previous requests. Lead Counsel was regularly kept apprised of the progress and status of the Third Stage Outreach. For firms that were able to supply the requested information, RG/2 received, cleansed and imported the data into their proprietary database and calculated the damages for each unique account based on the current POA. RG/2 further conferred with the broker and nominee firms, where necessary, to produce the most perfected data under the circumstances.

Lead Counsel also worked with certain brokers and nominees in coordinating the efforts to locate transactional records. When a broker or nominee required a subpoena to search for and produce any transactional records they could locate and access, to the extent they were in possession of such records, Lead Counsel prepared, served and pursued the subpoenas. This effort involved significant time spent in telephonic and email communication and time spent coordinating with RG/2.

Additionally, based on the fact that several Named Plaintiffs held their mutual funds through Primerica (which was an entity related to Smith Barney and Citigroup) and were able to obtain Class Period transactional documents directly from Primerica during prosecution of the

4

litigation, Lead Counsel prepared and served a subpoena on Primerica.[5] Outside counsel for Primerica worked cooperatively with Lead Counsel to locate and produce transactional records, but ultimately was unable to locate any relevant records that were in a format that could be reasonably produced.

Following the Third Stage Outreach, Lead Counsel believes that continuing the ever more cumbersome and remote search for additional transactional records has reached the point of diminishing marginal returns given the significant time and expense and low likelihood of success involved, and the best course forward is to work with the data and claims in hand to distribute the Settlement proceeds as fairly as possible in accordance with the proposed revised POA described herein.

## Proposed Revised Plan of Allocation

The proposed revised POA contemplates direct payments of pro-rata Net Settlement proceeds to persons or entities for whom records have established them to be, through either the original claims process or the Third-Stage Broker Outreach, bona-fide Class Members. The Revised POA shall have two components and two categories of recovery:

1) Uniform Payment: all persons or entities shall be eligible for a single pro-rata Uniform Payment from the Net Settlement if transactional data provided during the claims process or obtained via the Third Stage Outreach demonstrates that the person or entity qualifies as a member of Settlement Class;

2) Uniformed Payment *plus* Recognized Loss: all Class Members who have qualified for a Uniform Payment as described herein may be eligible to receive a single distribution consisting of their entire Recognized Loss *in addition* to a Uniform Payment, provided (i) they have submitted a claim establishing Class Membership which demonstrates a Recognized Losses under current POA, *or* (ii) Third Stage Outreach transactional records establish Class Membership and demonstrates a Recognized Loss under the current POA.  In either case, the Recognized Loss shall be paid without regard to whether such Recognized Loss exceeds the $10.00 threshold under the current POA.

---

[5] Primerica had not provided names or addresses of any potential Class Members in response to the original Notice program.

Class Members will receive one single distribution regardless of how many different the Smith Barney Funds were purchased or sold during the relevant Damages Periods. Whether or not the Class Member continued to hold the relevant Smith Barney Fund[s] at the time of the May 2010 SEC Distribution shall not be a factor in determining the distribution described herein. To the extent that there is not sufficient money in the Settlement Fund after deduction of any Court awarded attorneys' fees, litigation expenses or Plaintiffs' expenses, the amount of flat sum payment will be reduced pro rata.

### Estimated Range of Uniform Payment

The following chart provides underlying information and data relevant to the calculation of an estimated range of Uniform Payment to be distributed to each Class Member pursuant to the proposed revised POA. As demonstrated below, the potential range of the Uniform Payment is estimated to be $32 to $62 per Class Member.[6]

---

[6] The estimates utilize rounding and are subject to further data analysis and refinement. The estimates have been included to provide the Court with an approximate range of potential payouts under the proposed revised POA.

| | |
|---|---|
| **Settlement Fund** | $4,950,000 |
| **Projected Total Costs of Notice and Administration** | $556,000[7] |
| **Estimate of Total Recognized Losses**[8] | $251,000 |
| **Amount of Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses requested in Notice** | $1,945,250 |
| **Funds available for calculation of Uniform Payment assuming reduction for all requested Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses**[9] | $2,197,750 |
| **Funds available for calculation of Uniform Payment assuming no reduction for Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses** | $4,143,000 |
| **Amount of Uniform Payment assuming (i) reduction for total recognized losses and all Notice and Administration costs, and (ii) reduction of all requested Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses** | $32<br><br>(i.e., $2,197,750 ÷ 65,716) |
| **Amount of Uniform Payment assuming (i) reduction for total recognized losses and Notice and Administration costs, and (ii) no reduction for Attorneys' Fees, Litigation Expenses and Plaintiffs' Expenses** | $62<br><br>(i.e., $4,193,000 ÷ 65,716) |

## Proposed Schedule

RG/2 estimates that based on the amount of further work to be performed, will require an additional 30 to 45 days to provide a full claims report to the Court. Therefore, Lead Counsel proposes the following deadlines through scheduling of the Settlement Hearing:

---

[7] Includes the amount of fees and expenses for notice and administration already approved by the Court, the amount subject to an application to the Court filed on December 24, 2014 (Dkt. 322) and an estimate made by RG/2 of additional fees and expenses likely to be incurred between now and the final distribution.

[8] Cumulative Recognized Losses from all claims submitted and all calculations based upon Third Stage Outreach transactional records obtained.

[9] This calculation assumes that the Court will make an award as per the amounts set forth in the notice which would result in a reduction of the money available for flat payment of attorneys' fees as requested by Plaintiffs Lead Counsel as well as Bernstein Liebhard, as well as the expenses requested by both firms and the requested Plaintiffs' expenses. Plaintiffs' counsel understand that the amount of attorneys' fees, Litigation Expenses and Plaintiffs' Expenses awarded are left to the discretion of the Court.

RG/2 claims report and declaration of efforts to notify the Class shall be filed no later than February 27, 2015;

All memoranda or other documents in support of final approval of the Settlement and application for Attorneys' Fees, Litigation Expenses or Plaintiffs' Expenses shall be filed no later than March 6, 2015

All memoranda or other documents in opposition to approval of the Settlement or application for of Attorneys' Fees, Litigation Expenses or Plaintiffs' Expenses shall be filed no later than March 20, 2015;

Any reply regarding the approval of the Settlement or Attorneys' Fees, Litigation Expenses or Plaintiffs' Expenses shall be filed no later than March 30, 2015;

Settlement Hearing: At the convenience of the Court.

Dated: January 8, 2015

                Respectfully submitted,

                STULL, STULL & BRODY
By:  /s/Mark Levine
     Jules Brody
     Mark Levine
6 East 45th Street
New York, NY 10016
(212) 687-7230

WEISSLAW LLP
Richard A. Acocelli
Michael A. Rogovin
1500 Broadway
New York, NY 10036
(212) 682-3025

Co-Lead Counsel for Plaintiffs